**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Tiara Avaness (SBN 343928)
*tavaness@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS IGLESIAS, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>        vs.<br><br>ARIZONA BEVERAGES USA, LLC.<br><br>                              Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1.  VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. seq.*<br><br>2.  VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, BUSINESS AND PROFESSIONS CODE § 17500, *et. seq.*<br><br>3.  VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et. seq.*<br><br>4.  UNJUST ENRICHMENT<br><br>5.  BREACH OF EXPRESS WARRANTY<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Thomas Iglesias ("**Plaintiff**"), individually and on behalf of all other similarly situated purchasers (the "**Class**"), brings this class action lawsuit against AriZona Beverages USA, LLC, ("**Defendant**"), and alleges as follows:

## INTRODUCTION

1.      Defendant falsely labels and advertises its AriZona beverage products, including but not limited to: AriZona Kiwi Strawberry Fruit Juice Cocktail, Lemonade Fruit Juice Cocktail, Mucho Mango Fruit Juice Cocktail, Fruit Punch Fruit Juice Cocktail, Watermelon Fruit Juice Cocktail, Pineapple Fruit Juice Cocktail, Iced Tea with Peach Flavor, Arnold Palmer Half & Half Iced Tea Lemonade, Golden Bear Strawberry Lemonade, RX Energy Herbal Tonic, Green Tea with Ginseng and Honey, Diet Peach Iced Tea, Diet Raspberry Iced Tea, Diet Lemon Iced Tea, Orangeade, Grapeade, and Lemonade Drink Mix (collectively referred to as the "**Products**") as being "All Natural," "100% Natural," or "100% All Natural," when in reality, each of the Products contains at least one of the following ingredients that are not natural: added coloring (including but not limited to "beta carotene," "fruit and vegetable juices," "annatto," and "vegetable juice"); ascorbic acid; high fructose corn syrup; malic acid; erythritol; and "natural flavors." The Products are pictured below, and they also come in different sizes. Figures 1-17, *infra.* The prominent label attribute "ALL NATURAL," "100% NATURAL," or "100% ALL NATURAL," is depicted on the front of the Product container to mislead consumers into believing that the Products are entirely natural.

2.      Defendant also falsely labels and advertises a subset of its AriZona beverage products, including but not limited to AriZona Kiwi Strawberry Fruit Juice Cocktail, Lemonade Fruit Juice Cocktail, Mucho Mango Fruit Juice Cocktail, Fruit Punch Fruit Juice Cocktail, Watermelon Fruit Juice Cocktail, Orangeade, and Grapeade (collectively referred to as the "**Preservative Products**") as containing "No Preservatives," when in reality, each of the Preservative Products contains ascorbic acid, a well-known preservative. The prominent label "No Preservatives" is depicted on

CLASS ACTION COMPLAINT

the front of the packaging, to mislead consumers into believing that the Preservative Products do not contain preservatives.

*Figure 1.1 (Front Label)*

1   *Figure 1.2 (Back Label)[1]*



**INGREDIENTS**

FILTERED WATER, HIGH
FRUCTOSE CORN SYRUP
(GLUCOSE-FRUCTOSE SYRUP),
PEAR JUICE FROM
CONCENTRATE, KIWI JUICE FROM
CONCENTRATE, CITRIC ACID,
NATURAL FLAVORS,
STRAWBERRY JUICE FROM
CONCENTRATE, FRUIT AND
VEGETABLE JUICE FOR COLOR,
ASCORBIC ACID (VITAMIN C),
GUM ACACIA, ESTER GUM, BETA
CAROTENE FOR COLOR

3.    Despite Defendant's "All Natural" representation, Defendant also includes in this Product the following unnatural, artificial, and/or synthetic ingredients: beta carotene, high fructose corn syrup, citric acid, ascorbic acid, fruit and vegetable juice for color, and natural flavors. This information is barely visible in the back of the products. Furthermore, even if consumers see these

---

[1] To demonstrate all label sides of the Products, Plaintiff inserts the product labels as they are available online. Where available or to improve legibility, Plaintiff inserts the Products' ingredients sourced from Defendant's website at https://drinkarizona.com/.

4

CLASS ACTION COMPLAINT

ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

4.     Despite Defendant's "No Preservatives" representation, Defendant also includes in this Product a well-known preservative, ascorbic acid. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that this ingredient is a preservative because they lack specialized knowledge.

*Figure 2.1 (Front Label)*



CLASS ACTION COMPLAINT

*Figure 2.2 (Back Label)*



INGREDIENTS ▲

FILTERED WATER, HIGH
FRUCTOSE CORN SYRUP
(GLUCOSE-FRUCTOSE SYRUP),
LEMON JUICE FROM
CONCENTRATE, PEAR JUICE
FROM CONCENTRATE, CITRIC
ACID, NATURAL FLAVOR,
ASCORBIC ACID (VITAMIN C),
GUM ACACIA, ESTER GUM, BETA
CAROTENE (FOR COLOR)

5.      Despite Defendant's "All Natural" representation, Defendant also includes in this Product the following unnatural, artificial, and/or synthetic ingredients: high fructose corn syrup, citric acid, natural flavor, ascorbic acid, and beta carotene. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

CLASS ACTION COMPLAINT

6.      Despite Defendant's "No Preservatives" representation, Defendant also includes in this Product a well-known preservative, ascorbic acid. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that this ingredient is a preservative because they lack specialized knowledge.

*Figure 3.1 (Front Label)*



CLASS ACTION COMPLAINT

*Figure 3.2 (Back Label)*



7.    Despite Defendant's "All Natural" representation, Defendant also includes in this Product the following unnatural, artificial, and/or synthetic ingredients: beta carotene, citric acid, natural flavors, and ascorbic acid. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

8.    Despite Defendant's "No Preservatives" representation, Defendant also includes in this Product a well-known preservative, ascorbic acid. This information is barely visible in the back

CLASS ACTION COMPLAINT

of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that this ingredient is a preservative because they lack specialized knowledge.

*Figure 4.1 (Front Label)*





**CLASS ACTION COMPLAINT**

1

*Figure 4.2 (Back Label)*



**INGREDIENTS** ▲

FILTERED WATER, PEAR JUICE
FROM CONCENTRATE, SUGAR,
MANGO PUREE, APPLE JUICE
FROM CONCENTRATE, CITRIC
ACID, PINEAPPLE JUICE FROM
CONCENTRATE, NATURAL
FLAVORS, VEGETABLE JUICE FOR
COLOR, STRAWBERRY JUICE
FROM CONCENTRATE, ASCORBIC
ACID (VITAMIN C), CHERRY JUICE
FROM CONCENTRATE, GUM
ACACIA, ESTER GUM

9.    Plaintiff believes there are at least two formulations for the Fruit Punch Product.

10.    With respect to the formulation listed in Figure 4.2 above, despite Defendant's "All Natural" representation, Defendant also includes in this Product the following unnatural, artificial, and/or synthetic ingredients: citric acid, natural flavors, ascorbic acid, and vegetable juice for color. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

CLASS ACTION COMPLAINT

11.     With respect to the alternative formulation, despite Defendant's "All Natural" representation, Defendant also includes in this Product the following unnatural, artificial, and/or synthetic ingredients: high fructose corn syrup, citric acid, natural flavors, ascorbic acid, and fruit and vegetable juice for color. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

12.     With respect to both variations of the Product, despite Defendant's "No Preservatives" representation, Defendant also includes in this Product a well-known preservative, ascorbic acid. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that this ingredient is a preservative because they lack specialized knowledge.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

*Figure 5.1 (Front Label)*



CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

*Figure 5.2 (Back Label)*



FILTERED WATER, SUGAR, PEAR JUICE FROM CONCENTRATE, MANGO PUREE, PINEAPPLE JUICE FROM CONCENTRATE, CITRIC ACID, KIWI JUICE FROM CONCENTRATE, WATERMELON JUICE FROM CONCENTRATE, FRUIT AND VEGETABLE JUICE FORM COLOR, NATURAL FLAVOR, CHERRY JUICE FROM CONCENTRATE, GUM ACACIA, ASCORBIC ACID (VITAMIN C), ESTER GUM

13.     Despite Defendant's "100% Natural" representation, Defendant also includes in this Product the following unnatural, artificial, and/or synthetic ingredients: citric acid, natural flavor, ascorbic acid, and fruit and vegetable juice for color. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

*Figure 6.1 (Front Label)*




**CLASS ACTION COMPLAINT**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

*Figure 6.2 (Back Label)*



14.     Plaintiff believes there are at least two formulations for the Orangeade Product.

15.     With respect to the formulation listed in Figure 6.2 above, despite Defendant's "All Natural" representation, Defendant also includes in this Product the following unnatural, artificial, and/or synthetic ingredients: high fructose corn syrup, annatto, citric acid, natural orange flavor with

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

other natural flavors, ascorbic acid, and beta carotene. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

16.    With respect to the alternative formulation, despite Defendant's "All Natural" representation, Defendant also includes in this Product the following unnatural, artificial, and/or synthetic ingredients: high fructose corn syrup, annatto, citric acid, natural orange flavor, ascorbic acid, and beta carotene. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

17.    With respect to both formulations, despite Defendant's "No Preservatives" representation, Defendant also includes in this Product a well-known preservative, ascorbic acid. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that this ingredient is a preservative because they lack specialized knowledge.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

*Figure 7.1 (Front Label)*



CLASS ACTION COMPLAINT

*Figure 7.2 (Back Label)*



18.     Plaintiff believes there are at least two formulations of the Grapeade Product.

19.     With respect to the formulation listed in Figure 7.2 above, despite Defendant's "All Natural" representation, Defendant also includes in this Product the following unnatural, artificial, and/or synthetic ingredients: high fructose corn syrup, citric acid, natural flavors, ascorbic acid, and fruit and vegetable juice for color. This information is barely visible in the back of the products.

CLASS ACTION COMPLAINT

Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

20.     With respect to the alternative formulation, despite Defendant's "All Natural" representation, Defendant also includes in this Product the following unnatural, artificial, and/or synthetic ingredients: high fructose corn syrup, citric acid, ascorbic acid, and fruit and vegetable juice for color. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

21.     With respect to both formulations, despite Defendant's "No Preservatives" representation, Defendant also includes in this Product a well-known preservative, ascorbic acid. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that this ingredient is a preservative because they lack specialized knowledge.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

*Figure 8.1 (Front Label)*



CLASS ACTION COMPLAINT

1

*Figure 8.2 (Ingredients)*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16



17    22.    Plaintiff believes there are at least two formulations for the Lemonade Drink Mix

18  Product.

19    23.    With respect to the formulation listed in Figure 8.2 above [2], despite Defendant's "All

20  Natural" representation, Defendant also includes in this Product the following unnatural, artificial,

21  and/or synthetic ingredients: citric acid, natural flavors, and vegetable juice for color. This

22  information is barely visible in the back of the products. Furthermore, even if consumers see these

23  ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or

24  synthetic because they lack specialized knowledge.

25    24.    With respect to the alternative formulation, despite Defendant's "All Natural"

26  representation, Defendant also includes in this Product the following unnatural, artificial, and/or

27  synthetic ingredients: citric acid and natural flavor. This information is barely visible in the back of

28

---

[2] https://drinkarizona.com/collections/mixes/products/lemonade-sugar-free-powder-stix-12-case

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

*Figure 9.1 (Front Label)*



CLASS ACTION COMPLAINT

1

*Figure 9.2 (Back Label)*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



**INGREDIENTS**                                    ▲

FILTERED WATER, SUGAR, LEMON
JUICE FROM CONCENTRATE,
STRAWBERRY PUREE, PEAR
JUICE FROM CONCENTRATE,
NATURAL FLAVORS, HONEY,
CITRIC ACID, FRUIT AND
VEGETABLE JUICE FOR COLOR,
ASCORBIC ACID (VITAMIN C)

25         25.      Despite Defendant's "All Natural" representation, Defendant also includes in this

26   Product the following unnatural, artificial, and/or synthetic ingredients: citric acid, natural flavors,

27   ascorbic acid, and fruit and vegetable juice for color. This information is barely visible in the back

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

*Figure 10.1 (Front Label)*



Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

1

*Figure 10.2 (Back Label)*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



**INGREDIENTS** ▲

PREMIUM BREWED GREEN TEA
USING FILTERED WATER, CANE
SUGAR, PEAR JUICE FROM
CONCENTRATE, MANGO PUREE,
ORANGE BLOSSOM HONEY,
CITRIC ACID, LEMON JUICE FROM
CONCENTRATE, NATURAL
FLAVORS, ASCORBIC ACID
(VITAMIN C), GUM ACACIA,
CAFFEINE, BETA CAROTENE FOR
COLOR, VITAMIN E ACETATE,
ESTER GUM, GUARANA ROOT
EXTRACT, VITAMIN A PALMITATE,
PANAX GINSENG EXTRACT,
ELEUTHERO ROOT EXTRACT,
SCHISANDRA EXTRACT.

25

26        26.      Despite Defendant's "All Natural" representation, Defendant also includes in this

27   Product the following unnatural, artificial, and/or synthetic ingredients: natural flavors, ascorbic

28   acid, citric acid, and beta carotene for color. This information is barely visible in the back of the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

products. Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

*Figure 11.1 (Front Label)*



CLASS ACTION COMPLAINT

*Figure 11.2 (Back Label)*



**INGREDIENTS** ▲

PREMIUM BREWED BLEND OF BLACK TEAS USING FILTERED WATER, HIGH FRUCTOSE CORN SYRUP (GLUCOSE- FRUCTOSE SYRUP), CITRIC ACID, NATURAL PEACH FLAVOR, ASCORBIC ACID (VITAMIN C)

27.    Despite Defendant's "All Natural" representation, Defendant also includes in this Product the following unnatural, artificial, and/or synthetic ingredients: high fructose corn syrup, citric acid, natural peach flavor, and ascorbic acid. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

CLASS ACTION COMPLAINT

*Figure 12.1 (Front Label)*



**CLASS ACTION COMPLAINT**

*Figure 12.2 (Back Label)*



**INGREDIENTS** ▲

FILTERED WATER, HIGH
FRUCTOSE CORN SYRUP
(GLUCOSE-FRUCTOSE SYRUP),
PINEAPPLE JUICE FROM
CONCENTRATE, MANGO PUREE,
PEAR JUICE FROM
CONCENTRATE, ORANGE JUICE
FROM CONCENTRATE, LEMON
JUICE FROM CONCENTRATE,
NATURAL FLAVOR, CITRIC ACID,
PECTIN, MALIC ACID, BETA
CAROTENE FOR COLOR,
ASCORBIC ACID (VITAMIN C)

28.     Despite Defendant's "All Natural" representation, Defendant also includes in this Product the following unnatural, artificial, and/or synthetic ingredients: high fructose corn syrup, malic acid, citric acid, natural flavor, ascorbic acid, and beta carotene for color. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

*Figure 13.1 (Front Label)*



**CLASS ACTION COMPLAINT**

*Figure 13.2 (Back Label)*



**INGREDIENTS** ▲

PREMIUM BREWED BLEND OF BLACK TEAS USING FILTERED WATER, CANE SUGAR, LEMON JUICE FROM CONCENTRATE, PEAR JUICE FROM CONCENTRATE, CITRIC ACID, ASCORBIC ACID (VITAMIN C), NATURAL FLAVORS, GUM ACACIA, ESTER GUM

29.     Despite Defendant's "All Natural" representation, Defendant also includes in this Product the following unnatural, artificial, and/or synthetic ingredients: citric acid, natural flavors, and ascorbic acid. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

/ / /

/ / /

*Figure 14.1 (Front Label)*



**CLASS ACTION COMPLAINT**

1

*Figure 14.2 (Back Label)*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20



**INGREDIENTS**

PREMIUM BREWED BLEND OF
BLACK TEAS USING FILTERED
WATER, ERYTHRITOL, NATURAL
FLAVOR, PEACH JUICE
CONCENTRATE, CITRIC ACID,
STEVIA LEAF EXTRACT

21

22      30.      Despite Defendant's "All Natural" representation, Defendant also includes in this

23  Product the following unnatural, artificial, and/or synthetic ingredients: erythritol, natural flavor,

24  and citric acid. This information is barely visible in the back of the products. Furthermore, even if

25  consumers see these ingredients, they do not necessarily know that these ingredients are unnatural,

26  artificial, and/or synthetic because they lack specialized knowledge.

27  / / /

28  / / /

*Figure 15.1 (Front Label)*



CLASS ACTION COMPLAINT

1  *Figure 15.2 (Back Label)*



**INGREDIENTS**

PREMIUM BREWED BLEND OF BLACK TEAS USING FILTERED WATER, ERYTHRITOL, LEMON JUICE CONCENTRATE, NATURAL FLAVOR, CITRIC ACID, STEVIA LEAF EXTRACT

31.      Despite Defendant's "All Natural" representation, Defendant also includes in this Product the following unnatural, artificial, and/or synthetic ingredients: erythritol, natural flavor and citric acid. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

/ / /

/ / /

/ / /

/ / /

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

*Figure 16.1 (Front Label)*



**CLASS ACTION COMPLAINT**

1  *Figure 16.2 (Back Label)*



32.     Despite Defendant's "All Natural" representation, Defendant also includes in this Product the following unnatural, artificial, and/or synthetic ingredients: high fructose corn syrup, natural flavors, ascorbic acid, and citric acid. This information is barely visible in the back of the products. Furthermore, even if consumers see these ingredients, they do not necessarily know that these ingredients are unnatural, artificial, and/or synthetic because they lack specialized knowledge.

37

CLASS ACTION COMPLAINT

1

*Figure 17.1 (Front Label)*

2

3

4

5

6

7

8

9

10

11

12

13

14



15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1

*Figure 17.2 (Back Label)*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19



20       33.      Despite Defendant's "All Natural" representation, Defendant also includes in this

21  Product the following unnatural, artificial, and/or synthetic ingredients: erythritol, natural flavor,

22  and citric acid. This information is barely visible in the back of the products. Furthermore, even if

23  consumers see these ingredients, they do not necessarily know that these ingredients are unnatural,

24  artificial, and/or synthetic because they lack specialized knowledge.

25  / / /

26  / / /

27  / / /

28  / / /

CLASS ACTION COMPLAINT

34.     Plaintiff brings this class action lawsuit on behalf of all purchasers of the Products within the State of California, during the last four years.

35.     Plaintiff brings this class action against Defendant, who is among the United States' leading producers of beverage products.[3] Defendant has realized that, based on the public's concern about natural and healthy foods, there is a financial benefit to be derived in selling products claiming to be natural. Accordingly, Defendant labels the Products as "All Natural," "100% Natural," or "100% All Natural," and labels the Preservative Products as containing "No Preservatives," even though the Products, collectively, contain added coloring, ascorbic acid, high fructose corn syrup, malic acid, erythritol, and natural flavors, in violation of California advertising laws. These artificial, unnatural, and/or synthetic ingredients are disclosed in small font on the back label.

36.     **Primary Litigation Objective.** Plaintiff seeks to secure injunctive relief to stop Defendant's unlawful labeling and advertising of the Products and to dispel the public misconception caused by the misrepresentation, damages, restitution, disgorgement of the Products' purchase price premium, and Defendant's ill-gotten gains for the Class, as consistent with permissible law, for Defendant's false and misleading advertising in violation of California's Business & Professions Code § 17200, *et seq.* ("**UCL**"), Business & Professions Code § 17500, *et seq.* ("**FAL**"), and the Consumers Legal Remedies Act Civil Code § 1750, *et seq.* ("**CLRA**"), as well as for breach of express warranty and unjust enrichment. Defendant made, and continues to make, false and misleading statements in its advertising of the Products. Specifically, Defendant labels the Products as "All Natural," "100% Natural," or "100% All Natural," and labels the

---

[3] *See* M. Riddler, *Leading Beverage Companies Worldwide in 2020, Based on Sales*, STATISTA (Mar. 24, 2022), https://www.statista.com/statistics/307963/leading-beverage-companies-worldwide-based-on-net-sales/#:~:text=Leading%20beverage%20companies%20worldwide%20in,sales%20(in%20million%20U.S.%20dollars)&text=The%20Coca%2DCola%20Co.&text=PepsiCo%20Inc.&text=Heineken%20N.V. (last visited Dec 22, 2022); *Top 100 Beverage Companies*, BEVERAGE COMPANIES, https://www.beveragecompanies.com/ (last visited Dec 22, 2022).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

Preservative Products as containing "No Preservatives," (depicted in capital letters on the front label) and markets them as such, even though the Products contain added coloring, ascorbic acid, high fructose corn syrup, malic acid, erythritol, and natural flavors.

37.     By letter dated December 12, 2022, Plaintiff advised Defendant of its false and misleading claims pursuant to California Civil Code Section 1782, subdivision (a) regarding Defendant's use of added coloring, preservatives, ascorbic acid, high fructose corn syrup, malic acid, erythritol, and natural flavors. Plaintiff has provided Defendant with notice of its violations of the CLRA pursuant to Civil Code § 1782(a).[4]

## **PARTIES**

38.     **Plaintiff:** Plaintiff is, and at all times relevant hereto was, a citizen of California. Plaintiff purchased the Mucho Mango Fruit Juice Cocktail from a Foods Co. in San Francisco, California on several occasions since 2017. Plaintiff paid approximately $4 for the Product. In making his purchase, Plaintiff relied upon Defendant's labeling and advertising claims, namely, the "All Natural" and "No Preservatives" labels clearly printed on the front of the Product. These claims were prepared and approved by Defendant and its agents and disseminated statewide and nationwide, to encourage consumers to purchase the Products. If Plaintiff had known that Defendant's representations were false and misleading, he would not have purchased the Product.

39.     **Plaintiff's Future Harm:** Plaintiff would like to purchase the Product again only if he can be sure that Defendant is compliant with the state consumer protection laws. Plaintiff continues to see Defendant's Products in stores available for purchase, and desires to purchase them again if the representations regarding "All Natural" and "No Preservatives" were in fact true. Plaintiff is an average consumer who is not sophisticated in manufacturing process of various

---

[4] Plaintiff presently seeks only injunctive relief under the CLRA, pursuant to Cal. Civ. Code § 1782(d). Plaintiff intends to amend and seek damages and restitution under the CLRA once Defendant has had a thirty (30) day window of opportunity to cure its unlawful conduct.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

beverages or formulations of Defendant's Products, including specific artificial and/or synthetic ingredients added to the Products.  Since Plaintiff would like to purchase the Products again to obtain the benefits of the challenged representations that Defendant continues to use—despite the fact that the Products were once marred by false advertising or warranties—Plaintiff would likely and reasonably, but incorrectly, assume the Products are true to and conform with the challenged representations on their labels, packaging, and Defendant's advertisements, including Defendant's website(s) and social media platforms.  Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products such that Plaintiff may buy them again, believing they are no longer falsely advertised and warranted and instead believing that they comply with the challenged representations. In this regard, Plaintiff is currently and in the future deprived of the ability to rely on the representations made by Defendant to purchase the Products.

40.     AriZona Beverages USA, LLC, is a Limited Liability Company headquartered in Woodbury, New York.  AriZona Beverages USA, LLC, maintains its principal business office at 60 Crossways Park Drive W., Woodbury, New York 11797. AriZona Beverages USA, LLC, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California. AriZona Beverages USA, LLC, is the owner, manufacturer, and distributor of the Products, and is the company that created and/or authorized the false, misleading, and deceptive packaging of the Products.

## JURISDICTION AND VENUE

41.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

CLASS ACTION COMPLAINT

42.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a citizen of California who resides in San Francisco County; Defendant made the challenged false representations to Plaintiff in San Francisco County; Plaintiff purchased the Product in this County; and Plaintiff consumed the Product in this County. Moreover, Defendant receives substantial compensation from sales in San Francisco County, actively advertises and sells Products in San Francisco County, and Defendant made numerous misrepresentations through its advertising and labeling of Products which had a substantial effect in San Francisco County. Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendant and California. Defendant is authorized to do and is doing business in California.

## FACTUAL ALLEGATIONS

43.     The average consumer spends generally not more than 13 seconds to make an in-store purchasing decision.[5] That decision is heavily based upon the product's front labeling because consumers do not have time to review and read every portion of the label and inspect in detail the rear label which depicts in small print the ingredients. Based on its front label, reasonable consumers believe that the Products contain only "natural" ingredients and do not contain any preservatives.

44.     Generally, consumers' ability to interpret nutrition label information on the back is poor, and the prominent labels—typically featured on the front packaging—are particularly important to consumers.[6]

---

[5] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN (Jan. 13, 2015), https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-window/ (citing *Shopping Takes Only Seconds… In-Store and Online*, EHRENBERG-BASS INSTITUTE OF MARKETING SCIENCE (2015)) (last visited Dec 22, 2022).
[6] *See* Lisa M. Soederberg Miller and Diana L. Cassady, *The Effects of Nutrition Knowledge of Food Label Use: A Review of the Literature*, 92 APPETITE 207 (2015); A B Marietta, et al., *Knowledge, Attitudes, and Behaviors of College Students Regarding the 1990 Nutrition Labeling Education Act Food Labels*, 99 J. Am. Diet Ass'n 445 (1999).

43

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

45.     Consumers are willing to pay more for all natural and preservative-free products because of the association with a healthy and organic diet. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people, 88% of Americans are willing to pay more for healthier foods.[7] This sentiment is further evidenced by the fact that global sales of health foods reached $1 trillion in 2017, according to Euromoniter.[8]

46.     By representing the Products to be "All Natural," "100% Natural," or "100% All Natural," and as containing "No Preservatives," Defendant seeks to capitalize on consumers' preference for food items with no artificial additives.

47.     Defendant's practice of capitalizing on consumers' preferences for healthier products is deceptive. This deception continues today, as consumers continue to purchase the Products under the mistaken belief that they are all natural and preservative-free based on Defendant's false, deceptive, and misleading label claims of "All Natural," "100% Natural," "100% All Natural," and "No Preservatives."

48.     Plaintiff and other consumers of the Products made their purchase decisions in reliance upon Defendant's advertised claims that that Products are "All Natural," "100% Natural," or "100% All Natural," and that the Products contain "No Preservatives." Plaintiff and other consumers relied on the advertising being truthful and would not know that the Products actually contained ingredients contrary to the front and prominent labeling. In fact, even if consumers did see the small font disclosures of ingredients[9] on the back label where the artificial and/or synthetic

---

[7] *See* Gagliardi, Nancy, *Consumers Want Health Foods—And Will Pay More For Them*, FORBES, https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/?sh=6c4b83da75c5 (referencing Nielsen's 2015 Global Health and Wellness Report) (last visited Dec 22, 2022).

[8] *See Id.* (referencing study by EUROMONITOR "Health and Wellness the Trillion Dollar Industry in 2017") (last visited Dec 22, 2022).

[9] For example, see figures 5.1 and 5.2, where 100% natural disclosure is yet again depicted on the back label in a prominent font and contrasting coloring (white against red background), as well as "no preservatives, no artificial color." In a different contrasting color, less visible and in a smaller

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

ingredients and preservatives were disclosed, consumers are not experts in manufacturing processes, and would not know that some or all of the ingredients are not natural or are preservatives based on vague description of these ingredients. Importantly, the consumers have no reasons to look for these ingredients or disclosures because after finding the "All Natural" and similar representations on the front labels, they expect the products to be natural. Furthermore, Defendant yet again reassures consumers in prominent font even on the back labels of some Products that they are "all natural" and have "no preservatives" or "artificial" colors. Importantly, a person walking through a grocery aisle, seeking to buy natural and preservative-free food and drinks, would not have time to carefully inspect the backside disclosures contradicting the front label claiming the Products to be "All [or 100%] Natural" and containing "No Preservatives."

49.     By falsely labeling the Products as being "All Natural," "100% Natural," or "100% All Natural," and as containing "No Preservatives," Defendant has profited from consumers' preference for food products that are perceived to be natural, healthier, and made free from any preservatives, added coloring, ascorbic acid, high fructose corn syrup, malic acid, erythritol, and natural flavors.

**Defendant's "All Natural" Label Claim**

50.     Defendant labels and advertises its Products being "All Natural," "100% Natural," or "100% All Natural" In reality, the Products cannot be lawfully labeled as "All Natural," "100% Natural," or "100% All Natural" because they contain added <u>coloring</u> (fruit and vegetable juices, vegetable juice, annatto, and beta carotene), <u>ascorbic acid</u>, <u>high fructose corn syrup,</u> <u>malic acid,</u> <u>erythritol</u>, and <u>natural flavors</u>.

---

font is the list of ingredients – which if enlarged become blurred. (*See also* https://www.walmart.com/ip/AriZona-Watermelon-Fruit-Juice-Cocktail-128-fl-oz/44981931?ath bd g =L1200a AriZona Watermelon Fruit Juice Cocktail, 128 fl oz - Walmart.com Watermelon Fruit Juice Cocktail, 128 fl oz - Walmart.com) (Last accessed Dec 22, 2022)

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

51.     On November 10, 2015, in response to citizen petitions and consumer requests, the Food and Drug Administration ("FDA") announced the establishment of a docket to receive information and comments on the use of the term "natural" in the labeling of human food products to determine whether a definition of "natural" should be established.

52.     Among the 7,687 public comments received by the FDA, numerous comments stated "natural" should only be used for foods which are free from ingredients such as added coloring, ascorbic acid, high fructose corn syrup, malic acid, erythritol, and natural flavors, indicating that consumers are confused by products with "natural" claims containing those ingredients.[10] Some representative examples include:

a.     "When I see the word 'Natural' on packaging, I expect the contents to have only ingredients as they are found in nature. No chemicals, **_no coloring_**, **_no flavoring_**, no GMO's."[11] (Excerpt from comment from Kristine Milochik. Posted 02/23/2016) (emphasis added).

b.     "I think **_the term 'Natural' should be banned from food labeling._** It is too ambiguous! It should be removed from all descriptors, including: Natural Flavor, Natural colors, All Natural and so on. I think for the interest of transparency all food ingredients should be simply labeled. The consumer has the right to know what they are eating or drinking."[12]

c.     "I firmly believe that consumers should be made aware of what they are purchasing when shopping for food and too many times companies are fooling the public by using the word 'Natural' when in fact it is not. When I see the word Natural on a food product, I consider

---

[10] *Use of the Term "Natural" in the Labeling of Human Food Products*, REGULATIONS.GOV, https://www.regulations.gov/docket/FDA-2014-N-1207/comments (last visited Dec 22, 2022).

[11] Excerpt from comment. Kristine Milochik, Comment on *Use of the Term "Natural" in the Labeling of Human Fod Products*, FDA (Feb. 23, 2016), https://www.regulations.gov/comment/FDA-2014-N-1207-4240 (emphasis added) (last visited Dec 22, 2022).

[12] Daniel Kinkelaar, Comment on *Use of the Term "Natural" in the Labeling of Human Food Products*, FDA (Aug. 26, 2016), https://www.regulations.gov/comment/FDA-2014-N-1207-5109 (emphasis added) (last visited Dec 22, 2022).

CLASS ACTION COMPLAINT

this to mean that it ***is free from all additives***, GMOs, ***Preservatives***, Drugs, or ***colors***. ***It is in it's [sic] natural state.*** I would like to see the FDA put more stringent requirements on companies who wish to use this term in their products."[13]

        d.    "The term 'Natural' should only appear on foods that are organic ***without any preservatives*** or man-made chemicals. The food should be GMO-free ***and contain no added colors, flavors, or synthetic substances***. If a food product fails to meet any of these requirements, then it should not be allowed to have the label 'Natural' on it."[14]

        e.    "Natural should indeed mean ***no preservatives, additives***, GMO's and ***or flavor or color enhancers***…"[15]

        f.    "Natural should mean ***no added colors, flavoring, or preservatives***, including citric acid. Natural should mean minimally processed and GMO free."[16]

        g.    "Natural should be used only when ***no artificial/synthetic flavors or colorings or preservative***s have been used. Natural should never be used for any product containing geneticall[y] engineered ingredients, including ascorbic acid, folic acid, or anything other GE mineral/supplementation."[17]

---

[13] Artemis Hader, Comment on *Use of the Term "Natural" in the Labeling of Human Food Products*, FDA (Feb. 18, 2016), https://www.regulations.gov/comment/FDA-2014-N-1207-4090 (emphasis added) (last visited Dec 22, 2022).

[14] Sara Burr, Comment on *Use of the Term "Natural" in the Labeling of Human Food Products*, FDA (Mar. 16, 2016), https://www.regulations.gov/comment/FDA-2014-N-1207-4814 (emphasis added) (last visited Dec 22, 2022).

[15] Excerpt from comment. Roy Collicutt, Comment on *Use of the Term "Natural" in the Labeling of Human Food Products*, FDA (Mar. 15, 2016), https://www.regulations.gov/comment/FDA-2014-N-1207-4778 (emphasis added) (last visited Dec 22, 2022).

[16] Catherine Willick, Comment on *Use of the Term "Natural" in the Labeling of Human Food Products*, FDA (Feb. 16, 2016), https://www.regulations.gov/comment/FDA-2014-N-1207-4064 (emphasis added) (last visited Dec 22, 2022).

[17] Kathryn Mahony, Comment on *Use of the Term "Natural" in the Labeling of Human Food Products*, FDA (May 5, 2015), https://www.regulations.gov/comment/FDA-2014-N-1207-4849 (emphasis added) (last visited Dec 22, 2022).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

h.    "Ascorbic acid may or may not be natural, depending on the source and should be labeled that way."[18]

i.    "I don't want food with GMO's [sic] or High Fructose Corn Syrup to be able to legally place "Natural" on their label. I feel it is misleading and wrong. ***You will not find GMO's [sic] in nature or High Fructose Corn Syrup. If it is not found in nature it should not be labeled natural***."[19]

j.    "Natural should mean no genetically modified ingredients, no hormones or antibiotics, ***no high fructose corn syrup, and no preservatives or additives***."[20]

k.    "No highly processed/artificial sweeteners or sugar substitutes [such as] . . . erythritol."[21]

l.    "Food additives Maltodextrin and ***Natural flavors*** are used to enhance and preserve the products flavors and appearance. These two additives ***should not be considered natural*** because it alters the food changing it from its original state."[22]

53.    Thus, reasonable consumers do not expect ingredients such as added colors, ascorbic acid, high fructose corn syrup, malic acid, erythritol, and natural flavors to be present in products labeled "All Natural," "100% Natural," or "100% All Natural."

---

[18] Excerpt from comment. James Scott, Comment on *Use of the Term "Natural" in the Labeling of Human Food Products*, FDA (Dec. 16, 2015), https://www.regulations.gov/comment/FDA-2014-N-1207-1711 (last visited Dec 22, 2022).

[19] Joshua Harrison, Comment on *Use of the Term "Natural" in the Labeling of Human Food Products*, FDA (Nov. 23, 2015), https://www.regulations.gov/comment/FDA-2014-N-1207-0334 (emphasis added) (last visited Dec 22, 2022).

[20] Steve Malafy, Comment on *Use of the Term "Natural" in the Labeling of Human Food Products*, FDA (Dec. 27, 2015), https://www.regulations.gov/comment/FDA-2014-N-1207-1853 (emphasis added) (last visited Dec 22, 2022).

[21] Excerpt from comment. Kristen Behrens, Comment on *Use of the Term "Natural" in the Labeling of Human Food Products*, FDA (Oct. 18, 2016), https://www.regulations.gov/comment/FDA-2014-N-1207-6143 (emphasis added) (last visited Dec 22, 2022).

[22] Excerpt from comment. Absydee Molina, Comment on *Use of the Term "Natural" in the Labeling of Human Food Products*, FDA (Oct. 26, 2016), https://www.regulations.gov/comment/FDA-2014-N-1207-6622 (emphasis added) (last visited Dec 22, 2022).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

54.     To date, the FDA has not announced its decision to further define or regulate the term "natural" in food labeling.

55.     The "All Natural," "100% Natural," and "100% All Natural" labels are prominently and conspicuously printed on the front of the Products. But the added coloring agents, ascorbic acid, high fructose corn syrup, malic acid, erythritol, and natural flavors in the Products render the label claims false. The added coloring agents (regardless of their source), ascorbic acid, high fructose corn syrup, malic acid, erythritol, and natural flavors are not ingredients consumers would normally expect to be included products that are labeled as "All Natural."

56.     There are market incentives for companies to label their products as "natural." According to a national representative survey, more than half of consumers look for products with "natural" food label, often under "the false belief that they're produced without…artificial ingredients."[23]

57.     Consumers expect and seek out foods and beverages that are truly "all natural" and free from the ingredients which are artificially or synthetically processed such as coloring additives (including fruit/vegetable juices, annatto, beta-carotene), ascorbic acid, high fructose corn syrup, malic acid, erythritol, and natural flavors.

**Coloring Additives**

58.     The FDA does not regard foods with added coloring as natural, no matter the source of the coloring agent.  According to their guidelines, they "have considered 'natural' to mean that nothing artificial or synthetic (including colors regardless of source) is included in, or has been added to, the product that would not normally be expected to be there (56 FR 60421 at 60466)."[24]

---

[23] Andrea Rock, "Peeling Back the 'Natural' Food Label." *Consumer Reports,* 27 January 2016. https://www.consumerreports.org/food-safety/peeling-back-the-natural-food-label/  (Last visited Dec 22, 2022).

[24] Leslie Kux, *FDA Rulemaking Re Term Natural*, Nov. 12, 2015. https://www.federalregister.gov/documents/2015/11/12/2015-28779/use-of-the-term-natural-in-

CLASS ACTION COMPLAINT

59.     Thus, if a product contains any color additives, it cannot be truthfully labeled as "natural."

60.     Furthermore, the process by which naturally sourced food coloring is added to products alters their status, rendering them no longer "natural," but artificial and/or synthetic. The specific food coloring agents in the Products are "vegetable juice," "fruit and vegetable juices," "annatto," and "beta carotene."

61.     Annatto extract is extracted from the seeds of the *Bixa orellana* tree. The extraction process involves the use of solvents such as methanol, ethanol, 2-propanol, acetane, ethyl acetate, and hexane.[25] Residues of these solvents remain present in the finished annatto extract product, and make their way into the foods and beverages that use annatto extract as ingredients.[26] This method of extraction, coupled with the residual solvents present in annatto extract, makes it an artificial and synthetic ingredient, and renders any "All Natural" claims false, misleading, and deceptive.

62.     Reasonable consumers would not expect annatto extract, a compound extracted with chemical solvents such as methanol and ethanol, to be present in foods and beverages labeled "All Natural," "100% Natural," or "100% All Natural."

---

the-labeling-of-human-food-products-request-for-information-and-comments (last visited Dec 22, 2022).

[25] *See* Yusai Ito, et al., *Analysis of Residual Solvents in Annatto Extracts Using a Static Headspace Gas Chromatography Method*, 3 AM. J. OF ANALYTICAL CHEMISTRY 638, 638 (2012); Claudia R. Cardarelli, et al., *Characterization of Different Annatto Extracts Based on Antioxidant and Colour Properties*, 41 FOOD SCIENCE AND TECHNOLOGY 1689 (2008).

[26] *See* Yusai Ito, et al., *Analysis of Residual Solvents in Annatto Extracts Using a Static Headspace Gas Chromatography Method*, 3 AMERICAN J. OF ANALYTICAL CHEMISTRY 638, 638 (2012) ("With the established HSGC method, six residual solvents (methanol, ethanol, 2-propanol, acetone, ethyl acetate, and hexane) in 23 commercial annatto-extract products that consist of seven bixin-based and 16 norbixin-based products were quantified.").

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 | F: (213) 788-4070 | clarksonlawfirm.com

63.     Beta carotene used for commercial purposes, such as food additives, is often chemically produced, rather than naturally harvested, to save costs.[27] Beta carotene is synthesized using two main complex chemical processes, Wittig reactions and Grignard compounds.[28]

**Approximately 98% of commercial beta carotene is synthesized**.[29]

64.     Upon information and belief, the beta carotene present in the Products is chemically synthesized, not naturally harvested. In fact, given the pricing of the Products and Defendant's ability to sell some of its beverages for $0.99, it is highly likely that Defendant utilizes synthesized beta-carotene. Furthermore, the process for extracting beta carotene makes the ingredient unnatural.

65.     Defendant misleadingly fails to state which particular "vegetable" and "fruit" juices are used for coloring; however, the commercial extractions of these ingredients from vegetables and fruits makes these ingredients artificial and/or synthetic. These processed ingredients are added to the Products to change the composition of the product from its natural state, in an amount, type, and/or form which a reasonable consumer would not expect. Indeed, as stated above, the FDA does not recognize food that contains these ingredients as "natural," and neither do consumers.

---

[27] Ludmila Bogacz-Radomska and Joanna Harasym, *β-Carotene—Properties and Production Methods*, 2 FOOD QUALITY AND SAFETY 69, 70-71 (2018).

[28] *Id.* At 71 ("One strategy for obtaining carotenoids in the Wittig reaction is to combine two phosphonium salt molecules, each containing 15 carbon atoms, and one dialdehyde molecule containing 10 carbon atoms. Then the reaction products are subjected to an isomerization reaction resulting in symmetric compounds being formed of the 40 carbon atoms, including β,β-carotene, lycopene, or astaxanthin . . . . To use Grignard compounds, it is necessary to combine one diketone molecule and two methanol molecules, thereafter compound containing 40 carbon atoms is obtained.").

[29] Irene Hjorth Jacobsen, et al., *Recombinant β-Carotene Production by Yarrowia lipolytica – Assessing the Potential of Micro-Scale Fermentation Analysis in Cell Factory Design and Bioreaction Optimization*, FRONTIERS IN BIOENGINEERING AND BIOTECHNOLOGY (Feb. 13, 2020), https://www.frontiersin.org/articles/10.3389/fbioe.2020.00029/full#:~:text=Commercially%20%CE%B2%2Dcarotene%20is%20produced,synthesis%20from%20acetone%2C%20butadiene%2C%20di (last visited Dec 22, 2022).

CLASS ACTION COMPLAINT

Reasonable consumers do not expect a product prominently labeled as "All Natural," "100% Natural," or "100% All Natural" to have added coloring, regardless of source, to alter the color of the Products.

**Ascorbic Acid**

66.     Ascorbic acid intended for industrial uses, such as as a food additive, is rarely extracted from natural sources due to high production costs.[30] Instead, ascorbic acid is mass produced for use in foods and beverages through a chemical process which involves hydrogenation, double fermentation, ion exchange, esterification, dissolving, decoloring, filtering, crystallization, centrifugation, vacuum drying, and sieving before the ascorbic acid is synthesized.[31] In fact, commercial production of ascorbic acid involves a multi-step chemical and/or enzymic synthesis.[32] Moreover, ascorbic acid commonly used in commercial foods and beverages typically comes from corn, and 90% of corn in the United States is genetically engineered.[33] The final form of the commercial ascorbic acid is white powder that contains no traces of fruits or vegetables, and instead, a synthesized compound that originally came from fruits/vegetables, after undergoing chemical processes.

67.     Upon information and belief, the ascorbic acid used by Defendant in the Products is not a naturally occurring ascorbic acid, but instead is synthesized by chemical processes.

---

[30] *Ascorbic Acid Journey: From Production to Applications*, DOLCHEM QUALITY CHEMICALS, https://www.dolchem.com/blog/ascorbic-acid-journey-from-production-to-applications/ (last visited Dec 22, 2022). Dolchem is a producer of ascorbic acid, and is an expert on the synthesizing process.
[31] *Id.*
[32] *See* Günter Pappenberger and Hans-Peter Hohmann, *Industrial Production of L-Ascorbic Acid (Vitamin C) and D-Isoascorbic Acid*, ADVANCED BIOCHEMISTRY, ENG'G, AND BIOTECHNOLOGY 143 (2014).
[33] Laura Dodson, *Recent Trends in GE Adoption*, U.S. DEPARTMENT OF AGRICULTURE, https://www.ers.usda.gov/data-products/adoption-of-genetically-engineered-crops-in-the-us/recent-trends-in-ge-adoption.aspx#.U1b1TYKjIuI) (last updated July 17, 2020) (last visited Dec 22, 2022).

CLASS ACTION COMPLAINT

68.     Reasonable consumers would not expect synthetic ascorbic acid, manufactured from an extensive chemical process, to be present in foods and beverages labeled "All Natural," "100% Natural," or "100% All Natural."

### High Fructose Corn Syrup

69.     High fructose corn syrup is a synthetic compound "that is made from corn . . . using chemicals (caustic soda, hydrochloric acid) and enzymes (α-amylase and glucoamylase) to hydrolyze corn starch to corn syrup containing mostly glucose and a third enzyme (glucose isomerase) to isomerize glucose in corn syrup to fructose to yield HFCS products."[34]

70.     According to the FDA, high fructose corn syrup cannot be considered a natural ingredient because it undergoes fundamental chemical changes in the manufacturing process.[35]

71.     Reasonable consumers would not expect high fructose corn syrup, a synthetic compound manufactured from an extensive chemical process, to be present in foods and beverages labeled "All Natural," "100% Natural," or "100% All Natural."

### Malic Acid

72.     Malic acid produced for industrial uses, such as the malic acid that is "widely used in the food industry . . . is generally obtained through chemical synthesis."[36] Malic acid produced for use as a food additive is called DL-Malic Acid. DL-Malic Acid is commercially produced in a few

---

[34] Kay Parker, et al., *High Fructose Corn Syrup: Production, Uses and Public Health Concerns*, 5 BIOTECHNOLOGY AND MOLECULAR BIOLOGY REV. 71, 71 (2010).

[35] Lorraine Heller, *HFCS is Not 'Natural,' Says FDA*, BEVERAGEDAILY.COM (Apr. 1, 2008), https://www.beveragedaily.com/Article/2008/04/02/HFCS-is-not-natural-says-FDA (last visited Dec 22, 2022).

[36] POLYNT GROUP, *Malic Acid for Food*, https://www.polynt.com/malic-acid-in-food/ (last visited Dec 22, 2022); James Han, *What is Malic Acid (E296) in Food? Benefits, Uses, Safety, Side Effects*, FoodAdditives.net (Jan. 19, 2020), https://foodadditives.net/acidulents/malic-acid/ ("Malic acid sold in the market usually refers to its DL form . . . . [DL-Malic Acid] does not occur naturally and according to the FDA, it can be commercially produced by hydration of fumaric acid or maleic acid.") (last visited Dec 22, 2022).

CLASS ACTION COMPLAINT

ways, including by the hydration of fumaric acid or maleic acid[37] and by "the catalytic oxidation of benzene to maleic acid, which is converted to Malic Acid by heating with steam under pressure."[38]

73.     Upon information and belief, the malic acid present in the Products is chemically synthesized and artificial.

74.     The chemical synthesis of malic acid creates an artificial, not natural, ingredient which cannot be truthfully labeled as "natural."

75.     Reasonable consumers would not expect synthetic malic acid, a compound manufactured from an extensive chemical process, to be present in foods and beverages labeled "All Natural," "100% Natural," or "100% All Natural."

**Erythritol**

76.     Erythritol is an artificial sweetener that is "generally crafted from GMO cornstarch and has been referred to as an 'invisible GMO ingredient.'"[39] It is manufactured through a "multi-step process that starts with the fermentation of a pure culture of a non-toxic microorganism—*Moniliella pollinis*—that feeds on a carbohydrate-based medium and ends with the purification of erythritol from the fermentation broth."[40] The erythritol present in the Products is an artificial and synthetic ingredient.

77.     Erythritol is an artificial and synthetic compound which cannot truthfully be labeled as "natural."

---

[37] *Id.*

[38] Monice Zondlo Fiume, et al., *Final Report on the Safety Assessment of Malic Acid and Sodium Malate*, 20 Int'l J. of Toxicology, 47, 48 (June 15, 2000), https://journals.sagepub.com/doi/pdf/10.1080/109158101750300946 (last visited June 22, 2022).

[39] MERITAGE MEDICAL NETWORK, *What is Erythritol? Erythritol Side Effects and Dangers* (May 14, 2018), https://meritagemed.com/erythritol/ (last visited Dec 22, 2022).

[40] Donald F. Schmidt, *GRAS Determination for Erythritol for Use in Human Food*, TOXSTRATEGIES (June 5, 2018), https://www.fda.gov/media/132946/download (submitted to and published by the FDA) (last visited Dec 22, 2022).

CLASS ACTION COMPLAINT

78.     Reasonable consumers would not expect erythritol, a synthetic compound manufactured from an extensive chemical process, to be present in foods and beverages labeled "All Natural," "100% Natural," or "100% All Natural."

**Natural Flavors**

79.     The FDA defines "natural flavor" as:

> [T]he essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from spice, fruit, or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional.

> 20  C.F.R. § 101.22.

80.     Ingredients that qualify as a "natural flavor" often have constituent components which are artificial or synthetic and may not qualify as "natural" ingredients. *See Lam v. General Mills, Inc.*, 859 F.Supp.2d 1097, 1102 (holding that a product with no natural ingredients can still qualify as naturally flavored). Many of the ingredients compatible with the FDA's definition of "natural flavors" are artificial or highly processed, despite being derived from natural ingredients. Upon information and belief, the "natural flavors" present in the Products are artificial or synthetic and cannot be truthfully labeled as "natural."

81.     In fact, flavor agents are chemical compounds that have particular chemical structure. They are designed to create unique flavor sensations when consumed. Adding these ingredients alters the natural state of the products. Frequently, the "natural flavors" ingredients are <u>synthesized</u> and undergo chemical processes to be able to produce the desired "natural" taste. However, even if the natural flavors are not synthesized, their extraction necessitates the use of various ingredients

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

such as ethanol, propylene, glycor, glycerine, and others – which are then added to the "natural flavors." Moreover, natural flavors also frequently include other non-natural solvents and/or by-products which were used during the extraction of these flavors and synthesis. Although Defendant does not disclose its proprietary ingredient composition, extraction, or synthesis, other than indicating that "natural flavors" were added, this ingredient is not natural even if it was not synthesized based on its extraction, production/formulation, and chemical residues that they carry.[41]

82.     Reasonable consumers would not expect "natural flavors" to be present in foods and beverages labeled "All Natural," "100% Natural," or "100% All Natural." They expect to taste natural products, instead of altered synthetic and/or artificial ingredients added to change the taste to be more pleasing. Consumers trust that Defendant's claims are truthful when they are actually false and misleading.

### Defendant's "No Preservatives" Label Claim

83.     Defendant advertises and displays on the front of the Preservative Products that they contain "No Preservatives," thereby misleading reasonable consumers to believe that these products are free of preservatives. However, these Preservative Products contain a well-known and well-documented preservative, ascorbic acid.

84.     A chemical preservative is defined by the FDA as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applies for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22(a)(5).

---

[41] MATHEW ATTOKARAN, *Natural Food Flavors and Colorants,* 31-34 (2d ed. 2017).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

85.     The FDA classifies and identifies ascorbic acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of uses of preservatives like ascorbic acid, including in beverages.[42]

86.     Ascorbic acid's classification as a preservative is further confirmed by a Warning Letter sent by the FDA to Chiquita Brands International, Inc., indicating that their "products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid, but their labels fail to declare these preservatives with a description of their functions. 21 C.F.R. 101.22."[43]

87.     Ascorbic acid acts as a preservative in the Products regardless of the subjective purpose or intent for why Defendant added ascorbic acid to the Products, including as a flavoring agent.

88.     Consumers are willing to pay more for products with "No Preservatives" because of the perceived higher quality and health benefits associated with preservative-free foods.

89.     By representing that the No Preservative Products have "No Preservatives," Defendant seeks to capitalize on consumers' preference for less processed products with no preservatives.

90.     Defendant's practice of capitalizing on consumers' preferences for preservative-free products is false and deceptive. This deception continues today, as consumers continue to purchase the Products under the mistaken belief that they are preservative-free based on Defendant's false, deceptive, and misleading labeling and advertising of the Products as having "No Preservatives."

---

[42] International Food Information Council and U.S. Food and Drug Administration, *Overview of Food Ingredients, Additives & Colors*, FOOD AND DRUG ADMINISTRATION, https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors (last updated Feb. 6, 2018) (last visited Dec 22, 2022).

[43] Food and Drug Administration, *Fresh Express Incorporated 10/6/10*, ARCHIVED FDA WARNING LETTERS (Oct. 6, 2010), https://www.fdalabelcompliance.com/letters/ucm228663.

CLASS ACTION COMPLAINT

91.    Plaintiff and other consumers of the Products made their purchase decisions in reliance upon Defendant's advertised claims that the Products contain "No Preservatives."

### The Products Mislead Reasonable Consumers

92.    The reasonable consumer will pay a price premium for products with an "All Natural," "100% Natural," "100% All Natural," or "No Preservatives" label because they believe these products are healthier, more nutritious, or otherwise have different attributes than products that do not have the label, all things being equal. Thus, these market forces push producers, like Defendant, to deceptively label their products as "All Natural," "100% Natural," or "100% All Natural," or as containing "No Preservatives," to give themselves a market advantage.

93.    The Products' labels have the "capacity, likelihood, or tendency to deceive or confuse the public" into believing that they are fully natural and are truthfully labeled. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002) and *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985)) (The California Supreme Court has recognized "that [consumer protection] laws prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'").

94.    Reasonable consumers such as Plaintiff do not have specialized knowledge necessary to identify ingredients in the Products as being inconsistent with Defendant's advertised claim of being "All Natural," "100% Natural," or "100% All Natural," or as containing "No Preservatives."

95.    Defendant knows that consumers are willing to pay more for foods that are labeled "All Natural," "100% Natural," "100% All Natural," or "No Preservatives" because they perceive it to be a healthier alternative to similar products without any preservatives or unnatural ingredients, and advertises the Products with the intention that consumers rely on the representation made on the front of the Products' packaging made in all capital letters with prominent bold font.

CLASS ACTION COMPLAINT

96.     Plaintiff and other consumers purchased the Products due to their belief that the Products are healthier, more nutritious, or otherwise have different attributes than products that do not have the "All Natural," "100% Natural," "100% All Natural," or "No Preservatives" labels.

97.     Plaintiff and the Class made their purchasing decisions in reliance upon Defendant's advertised claims that that Products are "All Natural," "100% Natural," or "100% All Natural," and that they contain "No Preservatives."

98.     Plaintiff and the Class reasonably and detrimentally relied upon the Products' front labels indicating that the Products are "All Natural," "100% Natural," or "100% All Natural," and that they contain "No Preservatives."

99.     Defendant's profits are attributable, in part, to Plaintiff's reasonable and detrimental reliance on Defendant's misleading and false advertising of the Products as being "All Natural," "100% Natural," or "100% All Natural," and as containing "No Preservatives."

100.    Plaintiff and the Class would not have purchased the Products had they known that the Products were falsely and misleadingly advertised, and that the "All Natural," "100% Natural," "100% All Natural," and "No Preservatives" claims were false, misleading, and deceptive.

101.    Defendant's conduct threatens California consumers by using false, deceptive, and misleading labels. Defendant's conduct also threatens other companies, large and small, who "play by the rules." Defendant's conduct stifles competition, negatively impacts the marketplace, and reduces consumer choice.

102.    There is no practical reason for the false or misleading labeling and advertising of the Products, other than to mislead consumers as to the actual ingredients of the Products being purchased by consumers while simultaneously providing Defendant with a financial windfall as a result of money saved from lower supply costs. If Defendant cannot provide "all natural" and "no preservative" products, it simply should stop the consumers deception by removing these claims from the label, or remove the artificial and synthetic ingredients, and preservatives.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

103.     Plaintiff makes the allegations herein upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys.

104.     Defendant's false and misleading labeling and advertising of the Products violates the California Consumers Legal Remedies Act, particularly California Civil Code § 1750, *et seq.*  As such, Defendant has committed *per se* violations of Business and Professions Code § 17200, *et seq.*, Business and Professions Code § 17500. Defendant is also in breach of express warranty and has been unjustly enriched.

105.     The Products are all manufactured by Defendant and distributed through Defendant's authorized sellers.

106.     The Products all include at least one of the following ingredients: added coloring; ascorbic acid; high fructose corn syrup, malic acid, erythritol, and natural flavors.

107.     The Products are all labeled and advertised as being "All Natural," "100% Natural," or "100% All Natural." The Preservative Products are labeled as containing "No Preservatives"

108.     Consumers of the Products have been deceived, injured, and damaged in the same way.

## CLASS ALLEGATIONS

109.     Plaintiff brings this action on his behalf and on behalf of all other persons similarly situated. The Class which Plaintiff seeks to represent comprises:

> All persons who purchased the Products in the State of California, for personal consumption and not for resale during the time period of four years prior to the filing of the complaint through the present.

110.     Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

111.     **Exclusions.** Excluded from the Class are: (a) Defendant's officers, directors, and employees, and legal representatives; (b) any entities in which Defendant has controlling interests;

(c) federal, state, and/or local governments; (d) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

112.    **Numerosity.** The class is so numerous and likely consists of hundreds of thousands of individuals, the joinder of whom is impracticable.

113.    **Common Questions Predominate.** There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual Class members. Common questions of law and fact include, but are not limited to, the following:

a.    Whether Defendant's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code § 1750, *et seq.*;

b.    Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code § 1750, *et seq.*;

c.    Whether Defendant represented the Products as having characteristics or qualities that they do not have in violation of Civil Code § 1750, *et seq.*;

d.    Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code § 1750, *et seq.*;

e.    Whether Defendant's labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code § 17500, *et seq.*;

f.    Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code § 17500, *et seq.*;

g.    Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code § 17200, *et seq.*;

h.    Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code § 17200, *et seq.*;

i.     Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code § 17200, *et seq.*;

j.     Whether Plaintiff and the Class paid more money for the Products than they actually received; and

k.     How much more money Plaintiff and the Class paid for the Products than they actually received.

114.     **Typicality**. Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

115.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations and material omissions. Plaintiff purchased the Product under the false belief that they were "All Natural" or that they contained "No Preservatives." Plaintiff relied upon Defendant's packaging and would not have purchased the Products if he had known that the representations made by Defendant were false, misleading, and deceptive.

116.     **Adequacy**. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

117.     **Superiority.** A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

118.     **Substantial Benefit/Manageability.** The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device

presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

119.    Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

120.    Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

<u>**COUNT ONE**</u>

**Violation of California Consumers Legal Remedies Act,**

**California Civil Code § 1750, *et seq.***

121.    Plaintiff repeats and realleges all allegations of the previous paragraphs and incorporate the same as if set forth herein at length.

122.    Plaintiff brings this cause of action pursuant to Civil Code § 1750, *et seq.*, the Consumers Legal Remedies Act ("CLRA"), on his own behalf and on behalf of all other persons similarly situated.

123.    Plaintiff and the Class members are "consumers" within the meaning of California Civil Code § 1761(d).

124.    The sale of Defendant's products to Plaintiff's and Class members constitutes a "transaction" within the meaning of California Civil Code § 1761(e).

125.     Defendant's Products are "goods" within the meaning of California Civil Code §
1761(a).

126.     The CLRA prohibits certain "unfair methods of competition and unfair or deceptive
acts or practices" in connection with a sale of goods and prohibits "representing that goods or
services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that
they do not have." California Civil Code § 1770 (d)(5).

127.     The CLRA also prohibits representing that the products are of "a particular standard,
quality, or grade" when it is of another. California Civil Code § 1770(a)(7).

128.     The CLRA prohibits advertising goods with the intent not to sell them as advertised
and representing the goods have been supplied in accordance with a previous representation
when they have not. California Civil Code § 1770(a)(9) and (a)(16).

129.     The practices described herein, specifically Defendant's packaging, advertising, and
sale of the Products, were intended to result and did result in the sale of the Products to the
consuming public and violated and continue to violate the CLRA by (1) using deceptive
representations in connection with the Products, including representing them as having
characteristics, benefits and qualities they do not have; (2) representing them to be of a particular
quality and standard as "All Natural," "100% Natural," or "100% All Natural," and as containing
"No Preservatives" while they were neither "all natural" nor preservative-free and contained added
coloring, ascorbic acid, high fructose corn syrup, malic acid, erythritol, and natural flavors; and (3)
advertising and packaging the Products with intent not to sell them as advertised—specifically as
being "All Natural," "100% Natural," "100% All Natural," and as containing "No Preservatives."

130.     Defendant fraudulently deceived Plaintiff and the Class by misrepresenting the
Products as having characteristics which they do not have, e.g., advertising the Products in such a
way to represent them being "All Natural," "100% Natural," or "100% All Natural," and as
containing "No Preservatives," when the Products contain coloring additives, ascorbic acid, high

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

fructose corn syrup, malic acid, erythritol, and natural flavors. In doing so, Defendant misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

131.    Defendant fraudulently deceived Plaintiff and the Class by labeling and advertising the Products with the intent not to sell them as advertised. Specifically, Defendant intentionally labeled and misrepresented the Products as being "All Natural," "100% Natural," or "100% All Natural," and as containing "No Preservatives," and failed to disclose the artificial and synthetic ingredients and the preservatives present in the Products. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

132.    Defendant knew or should have known, through the exercise of reasonable care, that the Products' labeling and advertising were misleading.

133.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

134.    Defendant's labeling and advertising of the Products were a material factor in Plaintiff's and the Class's decisions to purchase the Products. Based on Defendant's labeling and advertising of the Products, Plaintiff and the Class reasonably believed that they were purchasing products that were healthier, more nutritious, or otherwise had different attributes than products that do not have the "All Natural," "100% Natural," "100% All Natural," and "No Preservatives" labels. Had they known the truth of the matter, Plaintiff and the Class would not have purchased the Products.

135.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiff paid for a beverage that

CLASS ACTION COMPLAINT

was different from what he reasonably expected to receive when he decided to make his purchase. Plaintiff would not have purchased the Product had he known that the Products contained ingredients that rendered the "All Natural" and "No Preservatives" claims false.

136. Defendant's false and misleading labeling and advertising should be enjoined due to its false, misleading, and/or deceptive nature.

137. By letter dated December 12, 2022, Plaintiff advised AriZona Beverages USA, LLC of its false and misleading claims pursuant to California Civil Code § 1782(a).

138. **Injunction:** Pursuant to Section 1780(a) of the Act, Plaintiff and members of the Class are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendant's false advertising campaign. Plaintiff has no adequate remedy at law because Defendant continues to advertise and sell the Products with the "all natural" labeling and "no preservative" claims despite having artificial and/or synthetic ingredients, and preservatives. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff and the Class – who see the Products and wish to purchase the Products. Consumers are not well versed in the manufacturing of the Products and would not know that the claims are still false/misleading. Accordingly, Plaintiff seeks an injunction to enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise require Defendant to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendant's false and misleading advertising.

139. Plaintiff respectfully requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2).

a. **No Adequate Remedy at Law:** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

(1)     **Injunctive relief** is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to deceptively label the Products as being "All Natural," "100% Natural," "100% All Natural," and as containing "No Preservatives."

(2)     **Injunctive relief** is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent future harm— none of which can be achieved through available legal remedies.

(3)     Further, **injunctive relief**, in the form of packaging or label modifications, is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such modifications would include, reformulating the Products so they do not contain the aforementioned ingredients or removing the "All Natural," "100% Natural," "100% All Natural," and "No Preservatives" label claims. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members overpay pay for the falsely labeled Products), rendering injunctive relief a necessary remedy.

(4)     Alternatively, if Plaintiff cannot recover damages, an equitable award of restitution is appropriate. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

## COUNT TWO

### Violation of California False Advertising Law,

### Business & Professions Code § 17500, *et seq.*

140.    Plaintiff repeats and reallege the allegations set forth in the preceding paragraphs, and incorporate the same as if set forth herein at length.

141.    Plaintiff brings this cause of action pursuant to Business and Professions Code § 17500, *et seq.*, on his own behalf and on behalf of all other persons similarly situated.

142.    California's False Advertising Law, California Business and Professions Code § 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

143.    Defendant knowingly disseminated misleading claims regarding the Products in order to mislead the public about the ingredient makeup of the Products.

144.    Defendant controlled the labeling, packaging, production and advertising of the Products. Defendant knew or should have known, through the exercise of reasonable care, that its representations and omissions about the ingredients of the Products were untrue, deceptive, and misleading.

145.    Defendant's action of displaying misleading claims and omissions about the ingredients of the Products in prominent type face on each of the Products' front labels is likely to deceive the general public.

146.    Defendant's actions in violation of Section 17500 were false and misleading such that the general public is and was likely to be deceived.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

147.    As a direct and proximate result of Defendant's conduct alleged herein in violation of the FAL, Plaintiff and members of the Class, pursuant to Section 17535, are entitled to an order of this Court enjoining such future wrongful conduct on the part of Defendant, and requiring Defendant to disclose the true nature of its misrepresentations.

a.   **No Adequate Remedy at Law:** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

(1)   **Broader Scope.** The scope of permissible plaintiffs under the FAL is broader than the CLRA to include, for example, individuals or entities who purchased the Products for non-personal, non-family, and non-household purposes. Thus, Plaintiff and Class members may be entitled to restitution under the FAL, while not entitled to damages under the CLRA.

(2)   **Injunctive Relief to Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to deceptively label the Products and deliberately omit that the Products contain coloring additives, ascorbic acid, high fructose corn syrup, malic acid, erythritol, and natural flavors that render the Products no longer as being "All Natural," "100% Natural," or "100% All Natural," or as containing "No Preservatives."

(3)   **Injunctive Relief to Cease Misconduct.** Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of label modifications, is necessary to dispel public misperception about the Products that has resulted from years of

69

CLASS ACTION COMPLAINT

Defendant's unfair, fraudulent, and unlawful marketing efforts. Such modifications would include, but are not limited to, reformulating the Products or removing the false "All Natural," "100% Natural," "100% All Natural," and "No Preservatives" labeling. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members overpay for the falsely labeled Products), rendering injunctive relief a necessary remedy.

(4) **Procedural Posture—Incomplete Discovery & Pre-Certification.** This is an initial pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff(s)'s individual claims and any certified class. Plaintiff therefore reserves the right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for Plaintiff and/or any certified class or

70

subclass. Such proof, to the extent necessary, will be presented prior

to the trial of any equitable claims for relief and/or the entry of an order

granting equitable relief.

148.    Plaintiff and the Class have suffered injury in fact and have lost money as a direct and

proximate result of Defendant's false representations. Plaintiff purchased the Products in reliance

upon the claims and omissions by Defendant that the Products are "All Natural," "100% Natural,"

or 100% All Natural," and contain "No Preservatives," as represented by Defendant's labeling and

advertising. Plaintiff would not have purchased the Products if he had known that the claims and

advertising as described herein were false and misleading.

149.    **Restitution:** Plaintiff and members of the Class also request an order requiring

Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully

acquired by Defendant by means of such acts of false advertising, plus interests and attorneys' fees.

150.    **Injunction:** Plaintiff and members of the Class request injunctive relief to enjoin

Defendant's misconduct to prevent ongoing and future harm that will result.

151.    **Punitive Damages:** Plaintiff and members of the Class also request punitive damages.

Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious,

oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by

law. Defendant's conduct is malicious as Defendant acted with the intent to cause Plaintiff and

consumers to pay for products that they were not, in fact, receiving. Defendant willfully and

knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probably

consequences of its conduct and failed to avoid misleading consumers, including Plaintiff.

Defendant's conduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented

and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful

conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted,

approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

152.     Plaintiff may appropriately plead an FAL claim for equitable restitution alongside CLRA claims for damages, as only equitable relief is available under the FAL. *See Cepelak v. HP Inc.*, No. 20-cv-02450-VC, 2021 WL 5298022 (N.D. Cal. 2021) ("For example, a Plaintiff may be able to state a claim for equitable relief . . . alongside a claim for damages based on a theory of fraud under the CLRA.") (citing *Elgindy v. AGA Service Co.*, No. 20-cv-06304-JST, 2021 WL 1176535, at *15 (N.D. Cal. Mar. 29, 2021) (declining to dismiss the plaintiffs' claims nder the unlawful and unfair prongs of the UCL because only equitable relief was available under this legal theory, despite the availability of a legal remedy for the plaintiffs' claims on a fraud-based theory).

## COUNT THREE

### Violation of California Unfair Competition Law

### Business and Professions Code § 17200 *et seq.*

153.     Plaintiff repeats and realleges the allegations set forth above, and incorporate the same as if set forth herein at length.

154.     Plaintiff brings this cause of action pursuant to Business and Professions Code § 17200, *et seq.*, on his own behalf and on behalf of all other persons similarly situated.

155.     The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

### A.     "Unfair" Prong

156.     Under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.,* a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

157.     Defendant's advertising and labeling of the Products as being "All Natural," "100% Natural," and "100% All Natural," and as containing "No Preservatives" when the Products contain coloring additives, ascorbic acid, high fructose corn syrup, malic acid, erythritol, and natural flavors

is false, misleading, and deceptive.

158.     Defendant's false advertising of the Products causes injuries to consumers, who do not receive the promised benefits from the Products in proportion to their reasonable expectations.

159.     Through false, misleading, and deceptive labeling of the Products, Defendant seeks to take advantage of consumers' desire for "natural" and preservative-free products, while reaping the financial benefits of manufacturing lower quality Products.

160.     When Defendant labels the Products as being "All Natural," "100% Natural," or "100% All Natural," and as containing "No Preservatives," it provides false promises to consumers and stifles competition in the marketplace.

161.     Consumers cannot avoid any of the injuries caused by Defendant's false and misleading advertising of the Products.

162.     Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code § 17200. The courts "weigh the utility of the Defendant's conduct against the gravity of the harm alleged to the victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F. 3d 1152, 1169 (9th Cir. 2012).

163.     Defendant's material omissions result in financial harm to consumers. The only utility realized by Defendant's conduct is the increase in Defendant's profits, obtained by deceiving consumers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of its harm.

164.     Some courts require the "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

165.     Defendant's advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

166.     Defendant knew or should have known of its unfair conduct.

167.     As alleged in the preceding paragraphs, the material misrepresentations by Defendant

73

CLASS ACTION COMPLAINT

detailed above constitute an unfair business practice within the meaning of California Business & Professions Code § 17200.

168.    There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have marketed the Products without making any false statements about the Products' ingredients.

169.    All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

170.    **Injunction:** Pursuant to Business & Professions Code § 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.  Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations.

171.    **Restitution:** Plaintiff and the Class additionally request an order awarding restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial. To the extent restitution is the only available remedy under the unfair prong, Plaintiff and the Class have no available remedy at law, and thus, are entitled to restitution under this prong.

172.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for the Product. Plaintiff would not have purchased the Product if he had known that the Product's "All Natural," "100% Natural," "100% All Natural," and "No Preservatives" label claims were false.

173.    **Punitive Damages:** Plaintiff seeks punitive damages to this cause of action for violation of the UCL on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful    conduct    described    herein    constitutes    malicious,    oppressive,    and/or

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

### B. "Fraudulent" Prong

174.    California Business and Professions Code § 17200, *et seq*. considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 1267 (1992).

175.    Defendant's advertising of the Products as being "All Natural," "100% Natural," or "100% All Natural," and as containing "No Preservatives," without referring to their actual characterization, is likely to deceive members of the public into believing that the Products are natural.

176.    Defendant's advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes fraudulent conduct.

177.    Defendant knew or should have known of its fraudulent conduct.

178.    As alleged in the preceding paragraphs, the material misrepresentations and omissions by Defendant detailed above constitute a fraudulent business practice in violation of California Business & Professions Code § 17200.

179.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from

labeling the Products as being "All Natural," "100% Natural," or "100% All Natural," and as containing "No Preservatives."

180.    All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

181.    **Injunction:** Pursuant to Business & Professions Code § 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.  Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations.

182.    **Damages and/or Restitution:** Plaintiff and the Class additionally request an order awarding damages (or if not available) restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

183.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff and the Class paid an unwarranted premium for the Products. Plaintiff and the Class would not have purchased the Products if they had known that the Products were neither "natural" nor preservative-free.

184.    **Punitive Damages:** Plaintiff seeks punitive damages to this cause of action for violation of the UCL on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful    conduct    described    herein    constitutes    malicious,    oppressive,    and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including

CLASS ACTION COMPLAINT

Plaintiff. Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

### C. "Unlawful" Prong

185.    California Business and Professions Code § 17200, *et seq.,* identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

186.    Defendant's advertising of the Products, as alleged in the preceding paragraphs, violates California Civil Code § 1750, *et seq.,* California Business and Professions Code § 17500, *et seq.*

187.    Defendant's packaging, labeling, and advertising of the Products, as alleged in the preceding paragraphs, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct.

188.    Defendant knew or should have known of its unlawful conduct.

189.    As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code § 17200.

190.    There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have refrained from omitting the true characteristics of the Products.

191.    All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

192.    **Injunction:** Pursuant to Business and Professions Code § 17203, Plaintiff and the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations.

193.    **Restitution:** Plaintiff and the Class additionally request an order awarding restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

194.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for the Product. Plaintiff would not have purchased the Product if he had known that Defendant purposely deceived consumers into believing that the Products were "All Natural," "100% Natural," or "100% All Natural," and that they contained "No Preservatives."

195.    **Punitive Damages:** Plaintiff seeks punitive damages to this cause of action for violation of the UCL on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers.  The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

CLASS ACTION COMPLAINT

**D. Plaintiff is Entitled to Equitable Relief**

196.     As a result of the business acts and practices described above, Plaintiff and members of the Class, pursuant to Section 17203, are entitled to an order enjoining such future wrongful conduct on the part of Defendant and such other orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

a.     **No Adequate Remedy at Law:** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

(1)     **Broader Statute of Limitations.** The applicable limitations period is four years for claims brought under the UCL, which is one year longer than the applicable statute of limitations under the FAL and CLRA. Thus, class members who purchased the Products between 3 and 4 years prior to the filing of the complaint will be barred from the Class if equitable relief were not granted under the UCL.

(2)     **Broader Scope of Conduct.** The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein to include, for example, the overall false and misleading marketing scheme of labeling the Products as being "All Natural," "100% Natural," and "100% All Natural," and as containing "No Preservatives." The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements related to representations and omissions made on the type of products at issue). Thus, Plaintiff and class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive

79

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

(3)     **Injunctive Relief to Cease Misconduct & Dispel Misperception.**
Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to deceptively label the Products. Injunctive relief is necessary to prevent Defendant from continuing to engage in this unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unlawful marketing efforts. Such modifications could include, but are not limited to, reformulating the Products so they do not contain artificial ingredients, or remove the "All Natural," "100% Natural," "100% All Natural," and "No Preservative" label claims. Such relief is not available through a legal remedy, as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members will pay for

80

the falsely labeled Products), rendering injunctive relief a necessary remedy.

(4) **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

(5) **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves the right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

197.    Pursuant to Civil Code § 3287(a), Plaintiff and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class are entitled to interest in an amount according to proof.

CLASS ACTION COMPLAINT

198.    Plaintiff may appropriately plead a UCL claim for equitable restitution alongside CLRA claims for damages, as only equitable relief is available under the UCL. *See Cepelak v. HP Inc.*, No. 20-cv-02450-VC, 2021 WL 5298022 (N.D. Cal. 2021) ("For example, a Plaintiff may be able to state a claim for equitable relief under the unfair prong of the UCL alongside a claim for damages based on a theory of fraud under the CLRA.") (citing *Elgindy v. AGA Service Co.*, No. 20-cv-06304-JST, 2021 WL 1176535, at *15 (N.D. Cal. Mar. 29, 2021) (declining to dismiss the plaintiffs' claims nder the unlawful and unfair prongs of the UCL because only equitable relief was available under this legal theory, despite the availability of a legal remedy for the plaintiffs' claims on a fraud-based theory).

## COUNT FOUR

### Unjust Enrichment

199.    Plaintiff repeats and realleges the allegations set forth above, and incorporates the same as if set forth herein at length.

200.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold the Products to Plaintiff and members of the Class in a manner that was unfair, unconscionable, and oppressive.

201.    Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

202.    As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

203.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

204.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, without justification, from selling the Products to

Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under such circumstances making it inequitable to do so constitutes unjust enrichment.

205.    The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by Defendant.

206.    Plaintiff and members of the Class have no adequate remedy at law.

## COUNT FIVE

### Breach of Express Warranty

207.    Plaintiff repeats and realleges all the allegations of the previous paragraphs and incorporate the same as if set forth herein at length.

208.    Defendant expressly warrants that the Products are "All Natural," "100% Natural," "100% All Natural," and contain "No Preservatives," as set forth above. Defendant's claims constitute an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff placed importance on Defendant's claims.

209.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

210.    Defendant breached the terms of the contract, including the express warranties, with Plaintiff and the Class by not providing Products that conform to the advertising and label claims.

211.    As a result of Defendant's breach of contract, Plaintiff and the Class have been damaged in an amount to be determined at trial.

/ / /

/ / /

CLASS ACTION COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment and relief on all Causes of Action as follows:

A.    **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

B.    **Declaratory Relief:** For an order declaring that Defendant's conduct violated the statutes and laws references herein;

C.    **Injunction:** For an order requiring Defendant to immediately cease and desist from selling the unlawful manner described herein; requiring Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

D.    **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

E.    **Pre- and Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted;

F.    **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

G.    **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

H.    **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a jury trial on all triable issues.

DATED: December 23, 2022                    Respectfully submitted,
                                            **CLARKSON LAW FIRM, P.C.**


                                            */s/ Yana Hart*
                                            Ryan J. Clarkson, Esq.
                                            Yana Hart, Esq.
                                            Tiara Avaness, Esq.

                                            *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT