**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS IGLESIAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ARIZONA BEVERAGES USA, LLC,<br><br>Defendant. | Case No. 4:22-cv-09108-JSW<br>Case Filed: December 23, 2022<br>FAC Filed: March 10, 2023<br><br>*Assigned to Hon. Jeffrey S. White*<br><br>**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><u>Hearing Information:</u><br>Date:      October 24, 2025<br>Time:      9:00 a.m.<br>Courtroom: 5, 2nd Floor |

# REDACTED—PUBLICLY FILED

*(left margin)* Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 24, 2025, at 9:00 a.m., in Courtroom 5 of the United States District Court for the Northern District of California, Oakland Courthouse, 1301 Clay Street, Oakland, California 94612, the Honorable Jeffrey S. White presiding, Plaintiff Thomas Iglesias ("Plaintiff") will and hereby does move to certify this case as a class action under Fed. R. Civ. P. 23(b)(2) and (b)(3).

Plaintiff moves this Honorable Court for an Order as follows:

1.      That this case is certified to proceed to the merits as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on all causes of action set forth in Plaintiff's First Amended Class Action Complaint filed against Defendant Arizona Beverages USA, LLC ("Defendant") on behalf of the following Class:

> All persons who purchased the Products in the state of California, for personal consumption and not for resale during the time period of four years prior to the filing of the complaint through the present.

(the "Class").

2.      That Plaintiff Thomas Iglesias be appointed as Class Representative.

3.      That Ryan J. Clarkson, Bahar Sodaify, and Alan Gudino of Clarkson Law Firm, P.C., be appointed as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

This motion is based upon this notice of motion and motion, the memorandum of points and authorities set forth below, the declarations, exhibits, and other evidence submitted in support, the pleadings and records on file in this action, and any other matters the Court may consider at the hearing.

Dated: May 15, 2025                    **CLARKSON LAW FIRM, P.C.**

By: */s/ Alan Gudino*
       Ryan J. Clarkson
       Bahar Sodaify
       Alan Gudino

       *Attorneys for Plaintiff*

1

2

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ................................................................................................ 1

II.   COMMON FACTS AND EVIDENCE SUPPORT THE CLASS CLAIMS ......................... 2

    A.    Defendant Uniformly and Prominently Labeled the Products as "All Natural" During the Class Period ................................................................................................ 2

    B.    Defendant Agrees the "All Natural" Representation Is Material to Consumers ........ 2

    C.    The "All Natural" Claim Leads Reasonable Consumers to Believe that the Products Contain Ingredients that Have Not been Highly Processed .......................................... 4

III.  LEGAL STANDARD .......................................................................................... 6

IV.   ARGUMENT .................................................................................................... 6

    A.    The Class Is Adequately Defined ........................................................................ 6

    B.    The Rule 23(a) Criteria Are Satisfied ................................................................ 7

        1.    Numerosity .................................................................................................. 7

        2.    Commonality ............................................................................................... 8

        3.    Typicality .................................................................................................. 10

        4.    Adequacy ................................................................................................... 11

V.    THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED ......................................... 13

    A.    Predominance ................................................................................................. 13

        1.    The Class's Claims Will Be Resolved Through Objective Standards and Common Evidence that Apply Class-wide ................................................................. 14

            a)    California's Consumer Protection Laws ............................................. 14

            b)    Breach of Express Warranty ............................................................. 16

        2.    The Class's Damages Model Is Capable of Measuring Class-wide Damages and Is Consistent with the Class's Theory of Liability ................................. 17

        3.    Superiority ................................................................................................. 18

VI.   THE PROPOSED CLASS SATISFIES RULE 23(B)(2) ............................................... 19

VII.  CONCLUSION ................................................................................................ 20

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1

**TABLE OF AUTHORITIES**

Page No.

2

**Cases**

3

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................. 6, 13

4

5

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) ................................................................ 15

6

7

*Ang v. Bimbo Bakeries USA, Inc.*,
    No. 13-cv-01196-WHO
    2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) .......................... 16

8

9

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001).................................................... 10

10

11

*Astiana v. Kashi Co.*,
    291 F.R.D. 493 (S.D. Cal. 2013)........................................... 7, 8

12

13

*Bailey v. Rite Aid Corp.*,
    338 F.R.D. 390 (N.D. Cal. 2021) ....................................... 7, 17

14

15

*Beck-Ellman v. Kaz USA*,
    283 F.R.D. 558 (S.D. Cal. 2012) ............................................ 10

16

17

*Bradach v. Pharmavite, LLC*,
    735 F. App'x. 251 (9th Cir. 2018) .......................................... 15

18

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017)................................................... 6

19

20

*Broomfield v. Craft Brew All., Inc.*,
    No. 17-cv-01027-BLF
    2018 WL 4952519 (N.D. Cal. Sept. 25, 2018)................9, 11, 19

21

22

*Capaci v. Sports Rsch. Corp.*,
    No. CV 19-3440 FMO (FFMx)
    2022 WL 1133818 (C.D. Cal. Apr. 14, 2022) ........................... 7

23

24

*Castro v. Paragon Indus., Inc.*,
    No. CV 19-3440 FMO (FFMx)
    2020 WL 1984240 (E.D. Cal. Apr. 27, 2020) ......................... 13

25

26

*Colgan v. Leatherman Tool Grp., Inc.*,
    135 Cal.App.4th 663 (2006)..................................................... 17

27

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018)......................................................................... 19

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011)......................................................................... 11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)....................................................................................... 13

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
326 F.R.D. 592 (N.D. Cal. 2018).............................................................. 9, 18

*Forcellati v. Hyland's, Inc.*,
No. CV 12–1983–GHK (MRWx)
2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)......................................... 6, 7, 14

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018)..........................................9, 15, 17, 18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)....................................................8, 10, 11, 13

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992)......................................................................... 10

*Harris v. Palm Springs Alpine Ests., Inc.*,
329 F.2d 909 (9th Cir. 1964)...................................................................... 6, 7

*Hawkins v. Kroger Co.*,
337 F.R.D. 518 (S.D. Cal. 2020)................................................................... 14

*Hilsley v. Ocean Spray Cranberries Inc.*,
No. 17cv2335-GPC(MDD)
2018 WL 6300479 (S.D. Cal Nov. 29, 2018)................................................. 8

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013)...................................................................... 15

*In re ConAgra Foods*,
90 F. Supp. 3d 919 (C.D. Cal. 2015) ........................................................... 16

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) .................................................................... 9

*In re Emulex Corp. Sec. Litig.*,
210 F.R.D. 717 (C.D. Cal. 2002) .................................................................. 12

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ........................................................................ 11

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................... 16, 17

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
    267 F.R.D. 583 (N.D. Cal. Mar. 28, 2010).................................................... 11

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ................................................................................. 14

*Johns v. Bayer Corp.*,
    280 F.R.D. 551 (S.D. Cal. 2012)............................................................. 11, 15

*Johnson v. Cal.*,
    543 U.S. 499 (2005) ....................................................................................... 10

*Jordan v. L.A. County*,
    669 F.2d 1311 (9th Cir. 1982)......................................................................... 8

*Keegan v. Am. Honda Motor Co., Inc.*,
    284 F.R.D. 504 (C.D. Cal. 2012) .................................................................... 7

*Krommenhock v. Post Foods, LLC*,
    334 F.R.D. 552, 576 (N.D. Cal. 2020)........................................................... 17

*Kumar v. Salov N. Am. Corp.*,
    No. 14-CV-2411-YGR
    2016 WL 3844334 (N.D. Cal. July 15, 2016) ............................................... 10

*Lambert v. Nutraceutical Corp.*,
    870 F.3d 1170 (9th Cir. 2017)....................................................................... 17

*Lilly v. Jamba Juice Co.*,
    308 F.R.D. 231 (N.D. Cal. 2014) .................................................................. 16

*Lovette v. Zale Del., Inc.*,
    No. 3:18-cv-0727-L-RBB
    2019 WL 2492503 (S.D. Cal. June 13, 2019) ............................................... 14

*Lytle v. Nutramax Lab'ys, Inc.*,
    No. ED CV 19-0835 FMO (SPx)
    2022 WL 1600047 (C.D. Cal. May 6, 2022)................................................. 17

*Martin v. Monsanto Co.*,
    No. ED CV 16–2168–JFW (SPx)
    2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) ......................................... 14, 16

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Martinelli v. Johnson & Johnson*,
    No. 2:15-cv-01733-MCE-DB
    2019 WL 1429653 (E.D. Cal. Mar. 28, 2019) .......................................................... 18

*McMorrow v. Mondelez Int'l, Inc.*,
    No. 17-cv-2327-BAS-JLB
    2021 WL 859137 (S.D. Cal. Mar. 8, 2021) ............................................................ 17

*Milan v. Clif Bar & Co.*,
    340 F.R.D. 591 (N.D. Cal. 2021) ........................................................... 10, 15, 17

*Miller v. Fuhu Inc.*,
    No. 2:14-cv-06119-CAS-AS
    2015 WL 7776794 (C.D. Cal. Dec. 1, 2015) .......................................................... 15

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US)*
    713 F. Supp. 3d 660 (N.D. Cal. 2024) ................................................................... 10

*Mueller v. Puritan's Pride, Inc.*,
    No. 3:16-cv-06717-JD
    2021 WL 5494254 (N.D. Cal. Nov. 23, 2021) ....................................................... 20

*Mullins v. Premier Nutrition*,
    No. 13-cv-01271-RS
    2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ........................................................ 15

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ...................................................................................... 8

*Park v. Cytodyne Techs., Inc.*,
    No. GIC 768364
    2003 WL 21283814 (Cal. Super. Ct. May 30, 2003) ............................................. 14

*Prescott v. Reckitt Benckiser LLC*,
    No. 20-cv-02101-BLF
    2022 WL 3018145 (N.D. Cal. July 29, 2022) .................................................... 9, 17

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) .............................................................................. 7

*Rodman v. Safeway, Inc.*,
    No. 11-cv-03003-JST
    2014 WL 988992 (N.D. Cal. Mar. 9, 2014) .......................................................... 15

*Schneider v. Chipotle Mexican Grill, Inc.*,
    328 F.R.D. 520 (N.D. Cal. 2018) ........................................................................... 13

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ................................................................................................... 6

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

*Sinatro v. Barilla Am., Inc.*,
    2024 WL 2750018 (N.D. Cal. May 28, 2024) .................................................. 11

*Smith v. Keurig Green Mountain, Inc.*,
    No. 18-cv-06690-HSG
    2020 WL 5630051 (N.D. Cal. Sept. 21, 2020).................................................. 20

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)......................................................................... 10

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012) ............................................................ 15, 19

*Testone v. Barlean's Organic Oils, LLC*,
    No. 19-CV-169 JLS (BGS)
    2021 WL 4438391 (S.D. Cal. Sept. 28, 2021) ............................................ 8, 17

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)....................................................................................... 13

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996)......................................................................... 19

*Velazquez v. GMAC Mortg. Corp.*,
    605 F. Supp. 2d 1049 (C.D. Cal. 2008) ........................................................ 16

*Wal-Mart Stores, Inc., v. Dukes*,
    564 U.S. 338 (2011)...................................................................................... 8, 9

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008)......................................................................... 14

*Wolph v. Acer Am. Corp.*,
    272 F.R.D. 477 (N.D. Cal. 2011) .................................................................... 6

*Young v. Neurobrands, LLC*,
    No. CV 19-3440 FMO (FFMx)
    2020 WL 11762212 (N.D. Cal. Oct. 15, 2020)............................................ 8, 20

*Zakaria v. Gerber Prods. Co.*,
    755 Fed. App'x 623 (9th Cir. 2018) .............................................................. 17

*Zakaria v. Gerber Prods. Co.*,
    No. LA CV15–00200 JAK (Ex)
    2016 WL 6662723 (N.D. Cal. Mar. 23, 2016)............................................ 9, 18

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**California Codes**

Cal. Bus. & Prof. Code § 17203 ................................................................................. 17

Cal. Bus. & Prof. Code § 17535 ................................................................................. 17

Cal. Civ. Code 1780(a)(3) .......................................................................................... 17

Cal. Comm. Code § 2313(1)(a)-(b) ............................................................................ 16

**Federal Rules**

Fed. R. Civ. P. 23................................................................................................*passim*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

I. **INTRODUCTION**

Defendant Arizona Beverages USA, LLC has built a billion-dollar brand on a simple yet powerful promise, prominently displayed across its popular AriZona beverages: "All Natural." This representation appeals to the millions of consumers who actively seek products free from heavily processed and man-made ingredients. The problem is that it's false.

In reality, Defendant's beverages contain multiple highly processed and unnatural ingredients, including ascorbic acid, malic acid, erythritol, artificial coloring agents, and high fructose corn syrup. Despite ███████████████████████ and years of litigation, Defendant continues to falsely market its Products as "All Natural." Internal documents confirm that Defendant's deceptive labeling strategy is a calculated effort to ███████████ ████████████████████████████████████████ ████████████████. But because the promise is false, Defendant's conduct falls squarely within California's prohibition on unfair competition and deceptive advertising.

Like most false advertising cases, this matter is perfectly suited for class treatment under Rule 23 of the Federal Rules of Civil Procedure, as Plaintiff Iglesias now seeks on behalf of California consumers who, like him, were misled by Defendant's false promise. The class is sufficiently numerous, and Defendant's uniform use of the prominent "All Natural" label raises common questions of law and fact that predominate over all others, including whether "All Natural" is false and whether consumers paid an unlawful price premium as a result. Typicality is satisfied because Plaintiff purchased the Products in reliance on the same false "All Natural" promise, which applies uniformly to all Class members. He, along with experienced Class Counsel, is also well-equipped to fairly and adequately represent the Class.

Plaintiff seeks to certify classes for both injunctive relief and monetary damage and has standing for both. To quantify the price premium resulting from Defendant's misrepresentation, Plaintiff has engaged leading experts in consumer behavior and economics. Survey expert Patricia A. Yanes will conduct a conjoint analysis to measure the premium consumers paid due to the deceptive "All Natural" claim. Economist Gareth J. Macartney will apply that data, along with

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1  actual sales figures, to quantify class-wide damages. This damages model is fully aligned with

2  Plaintiff's theory of liability and will rely on common evidence applicable across the Class.

3      For these and other reasons examined below, all Rule 23 requirements are satisfied, and

4  Plaintiff respectfully requests the Court grant his motion for class certification.

5  ## II.   COMMON FACTS AND EVIDENCE SUPPORT THE CLASS CLAIMS

6      ### A.   Defendant Uniformly and Prominently Labeled the Products as "All Natural"
7                During the Class Period

8      Throughout the Class Period,[1] Defendant consistently and prominently displayed the "All

9  Natural" claim[2] on the front of its Products,[3] deliberately positioning it to capture consumer

10 attention and convey the impression that the Products contain only natural ingredients. *See* Gudino

11 Decl., Ex. 1 (illustrating the uniform use of the "All Natural" representation across all AriZona

12 Products); *see also* Gudino Decl., Ex. 2, Vultaggio Dep. at 88:5-11; 88:20–89:1; 108:18-22; 120:2-

13 8; 133:21–134:3; 152:20-25; 155:20-23  (discussing the use of the "All Natural" representation on

14 the Products during the Class Period). The "All Natural" claim is a central feature of the Products'

15 branding and marketing—prominently placed on the front label in bold, oversized font and

16 strategically contrasted against vibrant, eye-catching packaging to maximize consumer impact.

17 Gudino Decl., Ex. 1 (Product images prominently featuring "All Natural" claim).

18     ### B.   Defendant Agrees the "All Natural" Representation Is Material to Consumers

19     Defendant deliberately and strategically used the "All Natural" claim as a core marketing

20 message to leverage growing consumer demand for natural products. Internal communications

21 confirm this intent: as stated by Defendant's Executive Vice President and Chief Sales Officer,

---

[1] The "Class Period" is December 23, 2018, through the present. *See* ECF No. 29 ¶ 118.

[2] For purposes of this motion, the statements "All Natural," "100% Natural," and "100% All Natural" on the Products' front labels are treated as materially identical representations. *See* Gudino Decl., Ex. 2, Vultaggio Dep. at 36:8-20; 87:15–88:3 (explaining that Defendant uses these "All Natural" claims interchangeably).

[3] Products refers to Defendant's AriZona beverages at issue: (1) Kiwi Strawberry Fruit Juice Cocktail; (2) Lemonade Fruit Juice Cocktail; (3) Mucho Mango Fruit Juice Cocktail; (4) Iced Tea with Peach Flavor; (5) Arnold Palmer Half & Half Iced Tea Lemonade; (6) Golden Bear Strawberry Lemonade; (7) RX Energy Herbal Tonic; (8) Green Tea with Ginseng and Honey; (9) Diet Peach Iced Tea; (10) Diet Raspberry Iced Tea; (11) Diet Lemon Iced Tea; (12) Orangeade; (13) Grapeade; (14) Lemonade Drink Mix; (15) Watermelon Fruit Juice Cocktail; (16) Pineapple Fruit Juice Cocktail; and (17) Fruit Punch (collectively, the "Products"). ECF No. 29 ¶ 9.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

2                          Gudino Decl., Ex. 3 at DI-ESI 011420. Defendant's marketing materials

3 consistently reinforce this positioning, describing its beverages as "

4 ," and free from "

5 ." *Id.*, Ex. 4 at DI-ESI 046386–88. These statements affirm that

6 Defendant fully recognized the persuasive power of the "natural" claim and intentionally made it a

7 central element of its branding and market strategy.

8            Defendant's internal strategy documents confirm that its brand identity is intentionally built

9 around the message that its Products are made with "

10 ." *Id.*, Ex. 5 at DI-ESI 022072. In its 2020 marketing plan, Defendant explicitly

11 positioned its use of natural ingredients as a competitive advantage, relying on consumer data that

12 showed strong demand—

13 . *Id.*, Ex. 6 at DI-ESI 022076, 022087. Defendant further acknowledged that its

14 beverages, described internally as "                    ," were crafted to appeal to

15 . *Id.*, Ex. 4 at DI-ESI 046386–88. These materials leave

16 no doubt that Defendant not only understood the power of the "natural" claim but intentionally

17 leveraged it to drive consumer purchases and distinguish its brand in the marketplace.

18           Deposition testimony also confirms that Defendant's use of the "All Natural" claim was a

19 calculated and intentional strategy. Don Vultaggio, Defendant's founder and designated Rule

20 30(b)(6) witness, testified that he thought it was important to let people know that Defendant uses

21 "            " because AriZona is an "                    " and the perception is that

22 it "                        ." *Id.*, Ex. 2, Vultaggio Dep. at 56:3-12.

23 The "All Natural" claim was therefore used to communicate to consumers that the beverages are

24 made from the "                            " as it is "

25 ." *Id.* at 56:9-12. This testimony, along with internal communications and

26 external marketing materials, makes clear that Defendant deliberately crafted and promoted the "All

27 Natural" message to influence consumer purchasing decisions. The consistent use of this message

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

across product lines and distribution channels further supports that its materiality can be demonstrated on a class-wide basis.

**C.    The "All Natural" Claim Leads Reasonable Consumers to Believe that the Products Contain Ingredients that Have Not been Highly Processed**

Courts in this Circuit, including this one, recognize that "All Natural" claims can mislead when products contain highly processed ingredients. As this Court held in denying Defendant's motion to dismiss, "Plaintiff has plausibly alleged that a reasonable consumer would be deceived by the 'All Natural' representations on the Products' labels," and that "a beverage labeled as 'All Natural' should not include color additives, ascorbic acid, HFCS, malic acid, erythritol, or natural flavors." ECF No. 47 at 6:1–3; 7:7–9. Defendant's supplier communications, internal emails, and consumer complaints further confirm that this understanding is reasonable and widely shared.



Defendant's own ingredient suppliers raised ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As one supplier explicitly warned, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Gudino Decl., Ex. 7 at DI-ESI 004288. ▮▮▮▮▮▮▮▮▮▮▮ stating: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Consumers echoed this concern. Defendant received multiple complaints challenging ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ One consumer wrote, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.*, Ex. 8 at DI-0260. Another stated, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.*, Ex. 9 at DI-0268. Additional consumers emphasized: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*Id.*, Ex. 10 at DI-

1    0269), and ███████████████████████████████████████

2    ███████████████████████████████████████ (*Id*., Ex. 11 at

3    DI-0270). These complaints further underscore that reasonable consumers understand "All Natural"

4    to mean the exclusion of heavily processed ingredients such as HFCS and ascorbic acid.

5          In addition to Defendant's own marketing research, Plaintiff's market research and survey

6    expert, J. Michael Dennis, Ph.D., has designed and will conduct a consumer perception study to

7    determine whether the "All Natural" representation is misleading to consumers. Dennis Decl. ¶ 17.

8    Specifically, the proposed consumer survey will measure the extent to which "All Natural" leads

9    consumers to believe that "All of the ingredients in the products exist in nature (not man-made)"

10   and that "[n]one of the ingredients in the products have been changed through artificial processing."

11   *Id*. ¶ 39.

12         Dr. Dennis's survey was rigorously designed and conforms to best practices. To ensure the

13   survey data is reliable, Dr. Dennis built in various safeguards, including but not limited to: (1) non-

14   leading questions; (2) impartial and balanced response options; (3) randomizations to control for

15   potential order effects; (4) unrelated consumer perception questions designed to disguise research

16   objectives; (5) control questions to filter out "noise" in the measurement of consumer perceptions;

17   (6) cognitive interviews; and (7) pretesting. *Id*. ¶ 47.

18         With the assistance of a reputable online market research company, Dr. Dennis will collect

19   approximately 300 interview completions for each of the five product groups (1,500 total). *Id*. ¶ 67.

20   Dr. Dennis's report will clearly document his findings and conclusions. *Id*. ¶ 68. It will also clearly

21   and transparently document the methodology used for the survey, including any changes made to

22   the survey questionnaire based on the cognitive interviews and pretesting. *Id*. Moreover, Dr. Dennis

23   will document any statistical adjustments made to the results, which account for any "noise" from

24   respondents who fail the control filter used in the survey. *Id*. ¶ 47. The report will also document

25   the results of sensitivity tests used to evaluate any impact on the results attributable to respondent-

26   driven factors such as age, gender, level educational obtainment, geographical location, time spent

27   answering the survey questions, and past purchase history of AriZona-branded beverage products.

28   *Id*. ¶ 68.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

III.    **LEGAL STANDARD**

Courts recognize that consumer protection claims are ideal for class treatment and that any doubt as to the propriety of certification should be resolved in favor of certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913 (9th Cir. 1964). Under Rule 23, "'[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Rule 23(b)(2) permits the court to certify a class where the party against whom the relief is sought "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) allows certification where common questions of law or fact predominate over individual ones and where "a class action is superior to other available methods." Fed. R. Civ. P. 23(b)(3). Pertinent factors in this determination include, (A) the class members' interests in individually controlling the action, (B) whether any litigation concerning the controversy has already begun, (C) the desirability of concentrating the litigation in the forum, and (D) the difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). As discussed below, each requirement set forth under Rule 23(a), (b)(2), and (b)(3) is satisfied, warranting certification of the Class.

IV.    **ARGUMENT**

A.    **The Class Is Adequately Defined**

While no ascertainability requirement exists in the Ninth Circuit, a class must still be adequately defined. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124, n.4 (9th Cir. 2017); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) ("The class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member."). A class is adequately defined where objective criteria can be applied to determine eligibility as a class member. *Forcellati v. Hyland's, Inc.*, No. CV 12–1983–GHK (MRWx), 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014).

//

*Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

The Class here is well-defined as: "All persons who purchased the Products in the State of California, for personal consumption and not for resale during the time period of four years prior to the filing of the complaint through the present." ECF No. 29 ¶ 118. The Class is objectively and sufficiently definite. It "identifies purchasers of Defendant's Products that included the material misrepresentations. Because the alleged misrepresentations appeared on the actual packages of the Products purchased, there is no concern that the class includes individuals who were not exposed to the misrepresentation." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013); *Forcellati*, 2014 WL 1410264, at *5 ("Here, Plaintiffs have precisely defined their class based on an objective criterion: purchase of Defendants' . . . products within a prescribed time frame. This is enough to satisfy Rule 23(a)'s implied ascertainability requirement."). Furthermore, "[t]here is no requirement that 'the identity of the class members . . . be known at the time of certification.'" *Astiana*, 291 F.R.D. at 500 (citations omitted). "As long as the class definition is sufficiently definite to identify putative class members, '[t]he challenges entailed in the administration of this class are not so burdensome as to defeat certification.'" *Id.*

**B.    The Rule 23(a) Criteria Are Satisfied**

**1.    Numerosity**

Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Harris*, 329 F.2d at 913-14. "Impracticability does not mean impossibility," but rather asks the court to assess the difficulty or inconvenience of joining all members of the class. *Harris*, 329 F.2d at 913-14. No cutoff number exists to determine numerosity, but courts have consistently held that joinder is impracticable where the class is composed of more than 40 persons. *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012); *Rannis v. Recchia*, 380 F. App'x 646, 650-51 (9th Cir. 2010) (numerosity requirement satisfied when class includes at least 40 members). Here, numerosity is satisfied because there were more than ▮▮▮▮▮▮ units of the Products sold during the Class Period. Macartney Decl. at 25. From this, it is reasonable to infer that there are more than one million aggrieved members of the Class. The Class is therefore sufficiently numerous. *See Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 398 (N.D. Cal. 2021) (sales data of 600,000 units sold established numerosity); *see also Capaci v. Sports

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1   *Rsch. Corp.*, No. CV 19-3440 FMO (FFMx), 2022 WL 1133818, at *5 (C.D. Cal. Apr. 14, 2022)

2   (numerosity satisfied based on wholesale sales data where "common sense" indicated retailers sold

3   enough units to support a class of at least 40 members).

4              **2.    Commonality**

5         Commonality requires the existence of "questions of law or fact common to the class" and is

6   construed liberally and permissively. Fed. R. Civ. P. 23(a)(2); *Jordan v. L.A. County*, 669 F.2d 1311,

7   1320 (9th Cir. 1982); *Young v. Neurobrands, LLC*, No. CV 19-3440 FMO (FFMx), 2020 WL

8   11762212, at *3 (N.D. Cal. Oct. 15, 2020). Notably, even "a single [common] question' will do."

9   *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 359 (2011) (citation omitted). The class's "claims

10  must depend upon a common contention . . . [and] . . . must be of such a nature that it is capable of

11  class-wide resolution—which means that determination of its truth or falsity will resolve an issue

12  that is central to the validity of each one of the claims in one stroke." *Id.* As the Ninth Circuit

13  explained: "All questions of fact and law need not be common to satisfy the rule. The existence of

14  shared legal issues with divergent factual predicates is sufficient, as is a common core of salient

15  facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d

16  1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc.*, 564 U.S. at 338.

17        In false advertising cases, "variation among class members in their motivation for purchasing

18  the product, the factual circumstances behind their purchase, or the price that they paid does not

19  defeat the relatively 'minimal' showing required to establish commonality." *Astiana*, 291 F.R.D. at

20  502. In fact, "it is an error of law for a court to inquire into the motives of each individual class

21  member at the class certification stage." *Testone v. Barlean's Organic Oils, LLC*, No. 19-CV-169

22  JLS (BGS), 2021 WL 4438391, at *4 (S.D. Cal. Sept. 28, 2021). Moreover, "[i]n determining

23  whether the 'common question' prerequisite is met, a district court is limited to resolving whether

24  the evidence establishes that a common question is capable of class-wide resolution, not whether

25  the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop.,*

26  *Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666–67 (9th Cir. 2022).

27        In false advertising cases, courts routinely find that commonality has been satisfied based on

28  the question of whether the label would be deceptive to a reasonable consumer. *Hilsley v. Ocean*

*Spray Cranberries Inc.*, No. 17cv2335-GPC(MDD), 2018 WL 6300479, at \*4 (S.D. Cal Nov. 29, 2018) (citing cases); *see also Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2018 WL 4952519, at \*5 (N.D. Cal. Sept. 25, 2018) ("Numerous courts have recognized that a claim concerning alleged misrepresentations on packaging to which all consumers were exposed is sufficient to satisfy the commonality requirement because it raises the common question of whether the packaging would mislead a reasonable consumer."); *Prescott v. Reckitt Benckiser LLC*, No. 20-cv-02101-BLF, 2022 WL 3018145, at \*4 (N.D. Cal. July 29, 2022) (same).

Plaintiff has identified numerous common questions in his First Amended Complaint. *See* ECF No. 29 ¶ 122 (listing common questions). These questions satisfy commonality because answering whether Defendant misrepresented the Products as having certain characteristics or qualities—being "natural"—will resolve "in one stroke" a central issue underlying each Class member's claims under California's consumer protection laws. *See Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 607-08 (N.D. Cal. 2018) (citing cases reasoning "Plaintiffs argue that the common question is: 'was Defendant's 'Made From Real Ginger' label likely to deceive reasonably consumers?' In other consumer fraud cases in this district, courts have found similar common questions to be sufficient to satisfy commonality.") (citations omitted); *see also Wal-Mart Stores, Inc.*, 564 U.S. at 359 (holding that even a single common question is sufficient).

Notably, the common questions here will be resolved by application of the same facts because Plaintiff and Class members all purchased and were exposed to the Products bearing the same, prominent "All Natural" misrepresentation. Iglesias Decl. ¶¶ 3, 4; *see* Gudino Decl., Ex. 2, Vultaggio Dep. at 88:5-11; 88:20–89:1; 108:18-22; 120:2-8; 133:21–134:3; 152:20-25; 155:20-23 (discussing the use of the "All Natural" representation on Arizona Kiwi Strawberry, Lemonade, Mucho Mango, Fruit Punch, and Pineapple Juice Cocktails during the Class Period); *Hadley v. Kellogg Sales Co*., 324 F. Supp. 3d 1084, 1099 (N.D. Cal. 2018) (citing *Zakaria v. Gerber*, No. LA CV15–00200 JAK (Ex), 2016 WL 6662723, at \*8 (N.D. Cal. Mar. 23, 2016)) ("[C]ourts have repeatedly recognized that '[w]here the alleged misrepresentation appears on the label or packaging of each item being sold, class-wide exposure to it may be inferred.'"); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 569 (C.D. Cal. 2014) ("Because all class members were exposed to the statement

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

and purchased [the] products, there is 'a common core of salient facts.'"); *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *4-5 (N.D. Cal. July 15, 2016) (finding "sufficient common questions of fact and law" when "[t]he central question here is whether [defendant's] labels were likely to deceive a reasonable consumer."); *Milan v. Clif Bar & Co.*, 340 F.R.D. 591, 598 (N.D. Cal. 2021) (finding commonality where "the main liability question . . . is the same: were the challenged statements likely to mislead an objectively reasonable consumer.").

In *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, this Court certified a class in an "All Natural" mislabeling case, finding that materially identical representations were capable of class-wide resolution and that "common evidence demonstrate[d] that the Challenged Statements [were] material to a reasonable consumer." 713 F. Supp. 3d 660, 673 (N.D. Cal. 2024) (citation omitted). The same reasoning applies here, where the "All Natural" label was deployed uniformly across Defendant's Products to target health-conscious consumers. *See* Gudino Decl., Ex. 1. The "All Natural" representation here is featured on every Product label throughout the Class Period, thereby satisfying the commonality requirement. *Id.*

### 3.    *Typicality*

Typicality is satisfied if "the unnamed class members have injuries similar to those of the named plaintiffs and the injuries result from the same, injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001), *abrogated on other grounds by Johnson v. Cal.*, 543 U.S. 499 (2005). However, "[t]ypicality does not mean that the claims of the class representatives must be identical or substantially identical to those of absent class members." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Rather, they need only be "reasonably co-extensive with those of absent class members[.]" *Hanlon*, 150 F.3d at 1020. Typicality also "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (cleaned up).

Courts find typicality in cases where defendants utilize "sufficiently similar" labeling claims or omissions. *See, e.g., Beck-Ellman v. Kaz USA*, 283 F.R.D. 558, 566 (S.D. Cal. 2012) (certifying claims on behalf of all models in "heating pad" product line where all "heating pads contain[ed] similar omission[s]" and were "sufficiently similar"). Thus, Plaintiff may represent all members of

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

the Class, regardless of which Product variety they purchased. *See In re TFT–LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. Mar. 28, 2010) ("The typicality requirement does not mandate that the products purchased . . . must be the same as those of absent class members.").

Typicality, like commonality, is satisfied here because Plaintiff and the Class all purchased the Products bearing the same material and deceptive "All Natural" representation. *See* Iglesias Decl. ¶¶ 3, 4; Gudino Decl., Ex. 2, Vultaggio Dep. at 88:5-11; 88:20–89:1; 108:18-22; 120:2-8; 133:21–134:3; 152:20-25; 155:20-23 (discussing the use of the "All Natural" representation on Arizona Kiwi Strawberry, Lemonade, Mucho Mango, Fruit Punch, and Pineapple Juice Cocktails during the Class Period). Plaintiff purchased the Products by relying on Defendant's representation and believing the claim to be true. Iglesias Decl. ¶ 4. Plaintiff's purchasing decisions and willingness to pay more for the Products were directly influenced by his reliance on this representation. *Id*. No more is required to satisfy typicality. *See, e.g.*, *Broomfield*, 2018 WL 4952519, at *5-6 (finding typicality satisfied where plaintiffs relied on deceptive representations causing them to pay more for products); *Sinatro v. Barilla Am., Inc.*, No. 22-cv-03460-DMR, 2024 WL 2750018, at *9 (N.D. Cal. May 28, 2024) (typicality satisfied where plaintiffs sought relief for products purchased in reliance on allegedly false and misleading labels); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) (typicality satisfied where plaintiffs and class were exposed to the same misrepresentations).

### 4.    *Adequacy*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has articulated two criteria for determining legal adequacy: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether they will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). As to the latter, "[t]he relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Both criteria support certification here.

//

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    First, Plaintiff's interests are fully aligned with those of the proposed Class, and no conflicts

2    exist between them. *See* Iglesias Decl. ¶ 8. Plaintiff purchased the Products based on Defendant's

3    uniform labeling claim that they were "All Natural," which he understood to mean the Products did

4    not contain highly processed ingredients. Iglesias Decl. ¶¶ 3, 4; Gudino Decl., Ex. 13, Iglesias Dep.

5    at 74:9-10 ("I believed it was all natural when I was buying the products."). He testified that this

6    representation was important to him and a reason for his purchases. *Id.* at 106:14–18 ("Q: Why did

7    you purchase the Mucho Mango? . . . A: I thought it was okay. Seemed like it was a hundred percent

8    natural. That's what it said."). Plaintiff's claims and those of the Class arise from the same uniform

9    misrepresentation, and he seeks the same equitable and monetary relief for the Class as he does for

10   himself. Iglesias Decl. ¶¶ 9, 10.

11   Second, Plaintiff has shown an active and ongoing commitment to representing the Class. He

12   has responded to written discovery, sat for a deposition, and is prepared to continue prosecuting

13   through trial and any appeal if necessary. Iglesias Decl. ¶¶ 6-7. Plaintiff has demonstrated his

14   dedication to vigorously pursuing this action by staying informed of case developments and

15   responding diligently to discovery requests. *Id.* ¶ 7. Plaintiff understands the nature of a class action

16   and his duty to fairly and adequately represent the interests of the Class. *Id.* ¶¶ 6-7.

17   Plaintiff's counsel are equally committed to pursuing this action in the best interests of the

18   Class and have no conflicts of interest. Gudino Decl. ¶ 4. When determining whether class counsel

19   is adequate, "a court may examine the attorneys' professional qualifications, skill, experience, and

20   resources. The court may also look at the attorneys' demonstrated performance in the suit itself." *In*

21   *re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (citation omitted). Clarkson Law

22   Firm, P.C. is a well-respected firm with extensive experience in complex and class action litigation,

23   having successfully litigated numerous similar consumer protection class actions. Gudino Decl., Ex.

24   12. Class counsel also have the resources necessary to vigorously litigate this action. *Id.* ¶ 4.

25   Throughout this litigation, Plaintiff and his counsel have diligently safeguarded the interests

26   of the Class. They successfully opposed most of Defendant's motion to dismiss (ECF No. 47) and

27   have gathered extensive class-wide evidence supporting class certification. *Id.* This includes

28   conducting a thorough pre-litigation investigation of Defendant's labeling and advertising, serving

comprehensive written discovery, resolving discovery disputes through detailed meet-and-confer efforts, and analyzing voluminous discovery responses. *Id.* Additionally, Plaintiff's counsel subpoenaed third-party records, engaged in mediation efforts, consulted with leading experts, deposed Defendant's Rule 30(b)(6) corporate representatives, and skillfully managed the day-to-day aspects of the litigation. *Id.* Thus, the adequacy requirement has been fully satisfied.

## V.    THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED

### A.    Predominance

Because common questions of law and fact lie at the core of this case, Rule 23(a)(2) is satisfied, triggering the (b)(3) analysis on whether these questions predominate over individual ones. *Hanlon*, 150 F.3d at 1022 ("In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues."). Under Rule 23(b)(3), "[a] class action may be maintained if . . . the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to the other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied here.

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-4 (2016) (quoting *Amchem*, 521 U.S. at 623). Evaluating predominance "begins . . . with the elements of the underlying cause[s] of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted). Courts generally find that predominance is satisfied where, as here, "a defendant's uniform policies are challenged[.]" *Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at *10 (E.D. Cal. Apr. 27, 2020) (citations omitted). Similarly, "[i]n cases alleging misrepresentation, common issues predominate when plaintiffs are exposed to [a] common set of representations about a product." *Schneider v. Chipotle Mexican Grill, Inc*., 328 F.R.D. 520, 539-40 (N.D. Cal. 2018) (cleaned up). That is precisely the case here.

1

### 1. The Class's Claims Will Be Resolved Through Objective Standards and Common Evidence that Apply Class-wide

2

a) California's Consumer Protection Laws

3    The legal standard for false advertising is the same under the UCL, FAL, and CLRA. *See*

4  *Lovette v. Zale Del., Inc.*, No. 3:18-cv-0727-L-RBB, 2019 WL 2492503, at *2 (S.D. Cal. June 13,

5  2019); *see also Forcellati*, 2014 WL 1410264, at *9 ("For purposes of class certification, the UCL,

6  FAL, and CLRA are materially indistinguishable."). "[T]hese laws prohibit 'not only advertising

7  which is false, but also advertising which[,] although true, is either actually misleading or which has

8  a capacity, likelihood or tendency to deceive or confuse the public,'" *Williams v. Gerber Prods.*

9  *Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citation omitted). In all cases, the advertising is "judged by

10 the effect it would have on the reasonable consumer." *Martin v. Monsanto Co.*, No. ED CV 16–

11 2168–JFW (SPx) 2017 WL 1115167, at *6 (C.D. Cal. Mar. 24, 2017); *see also Hawkins v. Kroger*

12 *Co.*, 337 F.R.D. 518, 543 (S.D. Cal. 2020) ("California consumer protection laws take an objective

13 approach of the reasonable consumer, not the particular consumer.") (citation omitted).

14    Therefore, under both the UCL and FAL, relief is available without individualized proof of

15 deception, reliance, and injury. *See In re Tobacco II Cases*, 46 Cal.4th 298, 320 (2009). "Although

16 Plaintiff must prove actual reliance as an element of the CLRA claim, reliance may be presumed as

17 to the entire Class if [Defendant's] misrepresentations were material." *Martin*, 2017 WL 1115167,

18 at *6; *see also In re Tobacco II*, 46 Cal. 4th at 327. ("[A] presumption, or at least an inference, of

19 reliance arises wherever there is a showing that a misrepresentation was material."). As noted above,

20 Plaintiff read and relied on the "All Natural" representation, believing that the Products did not

21 contain highly processed ingredients. *See*, *supra*, § IV., B., 3. Moreover, the "All Natural"

22 representation was important to Plaintiff in deciding to buy the Products, and had he known the

23 truth, he would not have purchased them. *Id.*; Iglesias Decl. ¶ 4.

24    "Materiality is part of the 'reasonable consumer' standard applied under the California unfair

25 competition and false advertising statutes." *Park v. Cytodyne Techs., Inc.*, No. GIC 768364, 2003

26 WL 21283814, at *2 (Cal. Super. Ct. May 30, 2003). "A representation is material . . . if a reasonable

27 consumer would attach importance to it *or* if the maker of the representation knows or has reason

28 to know that its recipient regards or is likely to regard the matter as important in determining his

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

choice of action." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (citation and quotations omitted); *see also Mullins v. Premier Nutrition*, No. 13-cv-01271-RS, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016) ("[M]ateriality may be established by common proof '[b]ecause materiality is judged according to an objective standard,' and so '[t]he alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all [consumers] composing the class.'") (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013)). Therefore, "[t]his objective test renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate 'class members' individual interaction with the product.'" *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (citation omitted).[4]

While Plaintiff does not need to prove materiality at this stage, it is clear the "All Natural" representation is material. *Hadley*, 324 F. Supp. 3d at 1115; *Milan v. Clif Bar & Co.*, 340 F.R.D. 591, 599 (N.D. Cal. 2021) ("Questions of materiality and reliance also do not defeat predominance.")*; see, supra,* § II., C; *see also* Macartney Decl. ¶¶ 21, 23 (explaining how product attributes, such as the "All Natural" representation, motivates consumer purchasing decisions).

Because each member of the Class was exposed to the "All Natural" representation (*see, supra,* § II., A.), "the predominating common issues include whether [Defendant] misrepresented" that the Products are natural, "and whether the misrepresentations were likely to deceive a reasonable consumer." *Johns*, 280 F.R.D. at 557. The answer to these objective questions will apply to the entire Class equally, such that their claims will rise or fall together. *Rodman v. Safeway, Inc.*, No. 11-cv-03003-JST, 2014 WL 988992, at *9 (N.D. Cal. Mar. 9, 2014) ("The scope and proper interpretation of the objective words of the parties' agreement is a common question that applies commonly to all members of the class, is an issue whose resolution will drive resolution of the

---

[4] *See also Bradach v. Pharmavite, LLC*, 735 F. App'x. 251, 254-55 (9th Cir. 2018) ("CLRA and UCL claims are ideal for class certification because they will not require the court to investigate class members' individual interaction with the product.") (citation and quotations omitted); *Miller v. Fuhu Inc.*, No. 2:14-cv-06119-CAS-AS, 2015 WL 7776794, at *16(C.D. Cal. Dec. 1, 2015) ("Since materiality, like the reasonable consumer test, concerns objective features of allegedly fraudulent representations and omissions, not subjective questions of how those representations and omissions were perceived by each individual consumer, materiality presents common questions of fact suitable for class litigation.").

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

litigation, and will predominate over any individualized issues."). Similarly, whether the "All Natural" representation is likely to mislead a reasonable consumer can be proven with common evidence, as described in detail above. *See*, *supra*, § II., A-C. (summarizing common evidence of Defendant's strategy to foster and exploit consumers' understanding of the "All Natural" representation as not containing highly processed ingredients, and how the Products fail to conform).

In addition, the UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008). Plaintiff alleged predicate violations, including whether the Products violate the CLRA and FAL (prohibiting deceptive and material marketing claims). *See* ECF No. 29 ¶¶ 196-206. Whether Defendant is liable for these predicate violations is a predominating common question, and a determination of Defendant's liability will apply equally to the Class, because "[t]he label is either illegal or it is not." *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014); *see also Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 242 (N.D. Cal. 2014) (proving the unlawful prong of the UCL does "not depend upon any issues specific to individual consumers."). Predominance has therefore been satisfied.

b)    <u>Breach of Express Warranty</u>

Plaintiff seeks certification of his express warranty claim, which require showing that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) (quotation omitted); *see also* Cal. Comm. Code § 2313(1)(a)-(b). Because each Class Member was exposed to the misleading message that the Products are natural, "[w]hether such [] statement[s] constitute[] an express warranty, [and] whether that warranty was breached. . . are issues subject to common and generalized proof." *Martin*, 2017 WL 1115167, at *7. Additionally, "[b]ecause reliance is not an element of express warranty claims under California law, common questions predominate and class action treatment is appropriate." *In*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 411 (S.D.N.Y. 2015) (citations omitted); *see also Hadley*, 324 F. Supp. 3d at 1117-18.

### 2. The Class's Damages Model Is Capable of Measuring Class-wide Damages and Is Consistent with the Class's Theory of Liability

The UCL, FAL, and CLRA all "authorize a trial court to grant restitution to private litigants asserting claims under those statutes." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal.App.4th 663, 694 (2006); *see also* Cal. Bus. & Prof. Code §§ 17203, 17535; Cal. Civ. Code § 1780(a)(3). "Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving. California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.'" *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017) (citation omitted) (reversed on other grounds).

"It is well-established that the price premium attributable to an alleged misrepresentation on product labeling or packaging is a valid measure of damages in a mislabeling case." *Hadley*, 324 F. Supp. 3d at 1104 (quotations and citations omitted); *accord Prescott*, 2022 WL 3018145, at *10. Conjoint analysis is widely accepted as a reliable economic tool for isolating price premia. *Hadley*, 324 F. Supp. 3d at 1107 (citing cases).[5] The Ninth Circuit confirmed that "plaintiffs can measure class-wide damages using methods that evaluate what a consumer would have been willing to pay for the product had it been labeled accurately," so long as those methods "reflect supply-side considerations and marketplace realities that would affect product pricing." *Zakaria v. Gerber Prods. Co.*, 755 Fed. App'x 623, 624 (9th Cir. 2018). In mislabeling cases, like this, courts have:

> found that conjoint analyses can adequately account for supply-side factors—and can therefore be utilized to estimate price premia without running afoul of *Comcast*—when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period.

---

[5] *See also Lytle v. Nutramax Lab'ys, Inc.*, No. ED CV 19-0835 FMO (SPx), 2022 WL 1600047, at *17 (C.D. Cal. May 6, 2022) ("Conjoint surveys, like the one proposed by plaintiffs' expert, are a well-established method for measuring class-wide damages in CLRA mislabeling cases.") (citing cases); *Milan*, 340 F.R.D. at 601; *McMorrow v. Mondelez Int'l, Inc.*, No. 17-cv-2327-BAS-JLB, 2021 WL 859137, at *14 (S.D. Cal. Mar. 8, 2021); *Testone*, 2021 WL 4438391, at *16; *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 411 (N.D. Cal. 2021); *Krommenhock v. Post Foods, LLC.*, 334 F.R.D. 552, 576 (N.D. Cal. 2020).

*See Hadley*, 324 F. Supp. 3d at 1105; *see also Fitzhenry-Russell*, 326 F.R.D. at 606 (proposed conjoint analysis "calculated the price premium consumers paid for the [challenged] claim," because the conjoint survey (1) "used actual market-clearing prices"; and "(2) took into account the fixed quantity of supply of [the product]").

Here, Plaintiff's survey expert, Patty Yanes, has designed and will conduct a conjoint analysis to isolate and quantify the market price premium associated with the "All Natural" representation, which then can be used to calculate the amount of restitution and damages owed to the Class. *See* Yanes Decl. ¶¶ 14-22, 23-30, 31, 32-37, 38 (explaining nature of conjoint surveys, summarizing the steps she will follow to implement the conjoint survey and analysis, and obtaining an appropriate sample of respondents). Ms. Yanes also identifies the product attributes that will be included in the survey (brand, label claims, and price), and the reasons for selecting these attributes. *Id.* ¶¶ 23-30, 38-42. In addition to following accepted conjoint survey design principles, Ms. Yanes will account for supply-side factors both in the survey and in her market simulation (*id.* ¶ 22).

Because Ms. Yanes' survey incorporates real market prices and uses the same quantity of products in her market simulation as were sold in the real world (i.e., holding quantity fixed), her survey properly accounts for supply-side factors. *See Martinelli v. Johnson & Johnson*, No. 2:15-cv-01733-MCE-DB, 2019 WL 1429653, at *4 (E.D. Cal. Mar. 28, 2019) (declining to strike expert testimony where "the conjoint analysis . . . factored supply-side data into its design"). Once the conjoint analysis reveals the price premia attributable to the "All Natural" representation, that premia "can then be multiplied by the number of units purchased by each class member to determine both total and individual damages." *Zakaria*, 2016 WL 6662723, at *16; *see also* Macartney Decl. ¶¶ 48-51. Accordingly, Plaintiff has provided a model consistent with his theory of liability that is capable of measuring class-wide damages.

### 3. Superiority

Whether "a class action is superior . . . for fairly and efficiently adjudicating the controversy" depends on "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Here, because the Products at issue are relatively inexpensive, members of the Class have no interest in controlling individual actions, which is sufficient to satisfy superiority. *See Tait*, 289 F.R.D. at 486 (Superiority "is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'") (quotation omitted). In addition, Plaintiff is only aware of one other case involving the Products that is pending against Defendant. However, that case was filed in May 2019 and involves a putative New York-only class over the Products' "No Preservatives" representations. *See Ashour v. Arizona Beverages USA, LLC, et al.*, Case No. 1:2019-cv-07081 (S.D.N.Y.). Finally, this case focuses not on every consumer's interactions with the Products but instead on Defendant's uniform labeling practices. This minimizes any manageability concerns, which in any event cannot defeat class certification where, as here, "no realistic alternative exists." *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). Thus, a class action is the superior method.

## VI. THE PROPOSED CLASS SATISFIES RULE 23(B)(2)

Under Rule 23(b)(2), "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." This standard is satisfied.

First, Plaintiff has standing to pursue injunctive relief. He attests that he relied on the "All Natural" representation when deciding to purchase the Products. *See* Iglesias Decl. ¶ 4. He states that he would purchase the Products again if he could be sure the Products were in fact natural. *Id*. ¶ 5. However, because Defendant continues to use the same or similar misleading representation, Plaintiff cannot confidently trust the accuracy of the labeling now or in the future. *Id*. As a result, he is under a continuing threat of future harm. This is precisely the type of injury that supports standing for injunctive relief. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018) (a "previously deceived consumer" may face a threat of future harm when they desire to purchase a product but cannot rely on its labeling); *Broomfield v. Craft Brew Alliance, Inc.*, No. 17-

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

cv-01027-BLF, 2018 WL 4952519, at *8 (N.D. Cal. Sept. 25, 2018) (certifying Rule 23(b)(2) class where plaintiffs expressed interest in purchasing products again if the labeling were truthful).

Second, Plaintiff alleges that Defendant has engaged in uniform deceptive labeling practices that affect the entire Class. The Products at issue are all marketed with the same "All Natural" representation, applied systematically across the product line and promotional channels. *See* Gudino Decl., Ex. 1. Because this conduct applies generally to the Class, certification under Rule 23(b)(2) is appropriate. *See* Fed. R. Civ. P. 23(b)(2); *Mueller v. Puritan's Pride, Inc.*, No. 3:16-cv-06717-JD, 2021 WL 5494254, at *8 (N.D. Cal. Nov. 23, 2021) (certifying Rule 23(b)(2) class where deceptive marketing impacted all class members in a uniform manner).

Third, Plaintiff seeks injunctive relief to prohibit Defendant from continuing to disseminate false and misleading representation about the naturalness of the Products. *See* ECF No. 29 ¶¶ 56. Such relief would benefit the Class by preventing further consumer deception. *Smith v. Keurig Green Mountain, Inc.*, No. 18-cv-06690-HSG 2020 WL 5630051, at *11 (N.D. Cal. Sept. 21, 2020); *Young*, 2020 WL 11762212, at *7. Accordingly, the requirements of Rule 23(b)(2) are satisfied.

## VII.  **CONCLUSION**

For the foregoing reasons, the Court should certify this case as a class action, appoint Plaintiff as the Class Representative, and appoint Plaintiff's counsel as Class Counsel.


Dated: May 15, 2025                           **CLARKSON LAW FIRM, P.C.**

                                              By: */s/ Alan Gudino*
                                                     Ryan J. Clarkson
                                                     Bahar Sodaify
                                                     Alan Gudino

                                                     *Attorneys for Plaintiff*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265