**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS IGLESIAS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>ARIZONA BEVERAGES USA, LLC,<br><br>                    Defendant. | Case No. 4:22-cv-09108-JSW<br>FAC Filed: March 10, 2023<br><br>CLASS ACTION<br><br>Assigned to Hon. Jeffrey S. White<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Information<br>Date:  August 1, 2025<br>Time:  9:00 a.m.<br>Ctrm:  5, 2nd Floor |

**TABLE OF CONTENTS**

**Page No.**

I.   STATEMENT OF ISSUES TO BE DECIDED ................................................................ 1

II.  INTRODUCTION ........................................................................................................... 1

III. STATEMENT OF FACTS ............................................................................................... 3

    A.   Plaintiff Relied on the Products' "All Natural" Label, Which Was Material to His Purchase Decision ................................................................................................. 3

    B.   Plaintiff Stopped Purchasing the Products ........................................................... 5

    C.   Plaintiff Seeks Class and Monetary Relief as Evidenced by the Record ................... 6

IV.  LEGAL STANDARD ...................................................................................................... 7

V.   ARGUMENT .................................................................................................................... 8

    A.   Plaintiff Relied on the Products' "All Natural" Label, and Defendant's Post-Suit Purchase Theory Misstates the Record and Law ............................................ 8

    B.   Plaintiff's Testimony Establishes Reliance and the Basis of the Bargain, Precluding Summary Judgment on Breach of Express Warranty ................................ 15

    C.   Plaintiff's Claim for Economic Injury and Monetary Relief Remain ...................... 16

    D.   Plaintiff's Testimony Establishes Triable Issues of Fact on Damages and Price Premium .......................................................................................................... 19

    E.   Plaintiff Has Article III Standing to Seek Injunctive Relief Based on Ongoing Risk of Deception ............................................................................................ 21

    F.   Plaintiff Satisfies Article III's Redressability Requirement for Both Injunctive and Monetary Relief ........................................................................................... 24

VI.  CONCLUSION ................................................................................................................ 25

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# **TABLE OF AUTHORITIES**

**Page No.**

*Adickes v. S. H. Kress & Co.*,
   398 U.S. 144 (1970)......................................................................................... 10

*Aguilar v. Boulder Brands, Inc.*,
   No. 12cv01862 BTM (BGS),
   2013 U.S. Dist. LEXIS 81378 (S.D. Cal. June 10, 2013)............................... 16

*Alcala v. Monsanto Co.*,
   No. C-08-04828 PJH (DMR),
   2014 U.S. Dist. LEXIS 38594 (N.D. Cal. Mar. 24, 2014). ............................ 19

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...................................................................................... 8, 10

*Ashour v. Ariz. Bevs. USA LLC*,
   No. 19 Civ. 7081 (AT),
   2025 U.S. Dist. LEXIS 59539 (S.D.N.Y. Mar. 28, 2025) ..................... 12, 13, 16

*Bostwick v. SN Servicing Corp.*,
   No. 21-cv-02560-LB,
   2023 WL 114217 (N.D. Cal. Jan. 5, 2023)................................................. 8, 22

*Brazil v. Dole Packaged Foods, LLC*,
   660 F. App'x 531 (9th Cir. 2016).............................................................. 19, 20

*Buckland v. Threshold Enterprises, Ltd.*,
   155 Cal. App. 4th 798 (2007).......................................................................... 14

*Caldwell v. Nordic Naturals, Inc.*,
   No. 23-cv-02818-EMC,
   2024 WL 24325 (N.D. Cal. Jan. 2, 2024)....................................................... 15

*Carter v. Ford Motor Co.*,
   561 F.3d 562 (6th Cir. 2009)........................................................................... 18

*Cimoli v. Alacer Corp.*,
   546 F. Supp. 3d 897 (N.D. Cal. 2021)............................................................. 23

*Cooper v. Sely*,
   2013 U.S. Dist. LEXIS 115705 (C.D. Cal. Aug. 13, 2013) .............................. 9

*Crawford v. Ariz. Bevs. USA LLC*,
   No. 22-cv-220-DWD,
   2024 U.S. Dist. LEXIS 58769 (S.D. Ill. Mar. 30, 2024) ...................... 12, 13, 21

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ........................................................................ 21, 24

*E.E.O.C. v. Boeing Co.*,
   577 F.3d 1044 (9th Cir. 2009) ............................................................................ 9

*Evraets v. Intermedics Intraocular, Inc.*,
   29 Cal. App. 4th 779 (1994) .............................................................................. 15

*Fieldstone Co. v. Briggs Plumbing Products, Inc.*,
   54 Cal. App. 4th 357 (Cal. Ct. App. 1997) ........................................................ 15

*Fuller v. Idaho Dep't of Corr.*,
   865 F.3d 1154 (9th Cir. 2017) ........................................................................... 10

*Gasser v. Kiss My Face*,
   2018 WL 4847071 (N.D. Cal. Apr. 4, 2018) ...................................................... 24

*Gordon v. Ramirez-Palmer*,
   No. CIV S-02-2454 GEB GGH P,
   2006 U.S. Dist. LEXIS 56205 (E.D. Cal. Aug. 11, 2006) .................................. 18

*Hadley v. Kellogg Sales Co.*,
   273 F. Supp. 3d 1052 (N.D. Cal. 2017) .............................................................. 15

*Hale v. Sharp Healthcare*,
   183 Cal. App. 4th 1373 (2010) ............................................................................ 9

*Ham v. Hain Celestial Grp., Inc.*,
   70 F. Supp. 3d 1188 (N.D. Cal. 2014) ................................................................ 15

*Hathaway v. Idaho-Pacific Corp.*,
   No. 4:15-CV-86-BLW,
   2017 U.S. Dist. LEXIS 23245 (D. Idaho Feb. 17, 2017) .................................... 19

*Hawkins v. Kroger Co.*,
   512 F. Supp. 3d 1079 (S.D. Cal. 2021) ............................................................ 8, 11

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ...................................................................................... 8, 15

*Islam v. City of Bridgeton*,
   804 F. Supp. 2d 190 (D.N.J. 2011) .................................................................... 17

*Jewel v. Nat'l Sec. Agency*,
   673 F.3d 902 (9th Cir. 2011) .............................................................................. 24

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

*Jou v. Kimberly–Clark Corp.*,
  2013 U.S. Dist. LEXIS 173216 (N.D. Cal. 2013)....................................................... 14

*Julian v. TTE Tech., Inc.*,
  No. 20-cv-02857-EMC,
  2020 U.S. Dist. LEXIS 215039 (N.D. Cal. Nov. 17, 2020) ...................................... 20

*Kang v. P.F. Chang's China Bistro, Inc.*,
  844 F. App'x 969 (9th Cir. 2021)........................................................................... 14

*Khasin v. R. C. Bigelow, Inc.*,
  2016 U.S. Dist. LEXIS 115850 (N.D. Cal. Aug. 29, 2016) ...................................... 20

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020) ............................................................................ 22

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ..................................................................................... 9, 12

*Lanovaz v. Twinings N. Am., Inc.*,
  726 F. App'x 590 (9th Cir. 2018)...................................................................... 22, 23

*Lara v. Mahony*,
  2022 U.S. Dist. LEXIS 228166 (W.D. Tex. July 18, 2022)...................................... 17

*Lemmons v. Georgetown Univ. Hosp.*,
  241 F.R.D. 15 (D.D.C. 2007) ................................................................................... 17

*Mohiuddin v. Raytheon Elec. Sys.*,
  No. CV 06-5020 GAF (MANx),
  2007 U.S. Dist. LEXIS 115570 (C.D. Cal. May 9, 2007) ........................................ 18

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
  No. 20-cv-09077-JSW,
  2021 U.S. Dist. LEXIS 150394 (N.D. Cal. Aug. 6, 2021) ........................................ 23

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*,
  210 F.3d 1099 (9th Cir. 2000) ................................................................................... 8

*Olosoni v. HRB Tax Grp.*,
  No. 19-cv-03610-SK,
  2020 U.S. Dist. LEXIS 259489 (N.D. Cal. Mar. 24, 2020) ........................................ 9

*P & K Prop., LLC v. Hartford Cas. Ins. Co.*,
  No. C 11-06606 SI,
  2013 U.S. Dist. LEXIS 18851 (N.D. Cal. Feb 12, 2013).............................................. 9

*Pino v. Birch Benders, LLC*,
  2022 WL 4913320 (N.D. Cal. Oct. 3, 2022) ............................................................ 23

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Provenz v. Miller*,
 102 F.3d 1478 (9th Cir. 1996)......................................................................... 21

*Rahman v. Mott's LLP*,
 No. 13-cv-03482-SI,
 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018).............................................. 23

*Rasco v. Potter*,
 No. H-05-0034,
 2007 U.S. Dist. LEXIS 106216 (S.D. Tex. Jan. 4, 2007)
 265 F. App'x 279 (5th Cir. 2008)............................................................ 18, 19

*Red v. Kraft Foods, Inc*,
 2012 WL 8019257 (N.D. Cal. Apr. 12, 2012)............................................... 14

*Reeves v. Sanderson Plumbing Prods., Inc.*,
 530 U.S. 133 (2000)..................................................................................... 10

*Rintoul v. Old Dominion Freight Line, Inc.*,
 No. 3:21-cv-01733-JR,
 2024 U.S. Dist. LEXIS 106251 (D. Or. Apr. 23, 2024) ................................. 9

*Schwartz v. Bai Brands*,
 2022 U.S. Dist. LEXIS 156872 (C.D. Cal. Aug. 19, 2022) ................22, 23, 24

*Silva v. B&G Foods*,
 No. 20-cv-00137-JST,
 2021 U.S. Dist. LEXIS 132074 (N.D. Cal. July 15, 2021) .......................... 11

*Simpson v. California Pizza Kitchen, Inc.*,
 989 F. Supp. 2d 1015 (S.D. Cal. 2013).......................................................... 14

*Sonner v. Schwabe*,
 911 F.3d 989 (9th Cir. 2018)......................................................................... 11

*Strategic Partners v. Vestagen*,
 2017 U.S. Dist. LEXIS 201114 (C.D. Cal. July 31, 2017)............................. 12

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Asso.*,
 809 F.2d 626 (9th Cir. 1987).......................................................................... 10

*United States v. Crawford*,
 239 F.3d 1086 (9th Cir. 2001)........................................................................ 18

*Versarge v. Twp. of Clinton*,
 984 F.2d 1359, 1363 (3d Cir. 1993)............................................................... 18

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Waterhouse v. City of Lancaster*,
  No. CV 12-00923 SJO (SHx),
  2013 U.S. Dist. LEXIS 188026 (C.D. Cal. Mar. 13, 2013)..........................................24

*Williams v. Gerber Prods.*,
  552 F.3d 934 (9th Cir. 2008)....................................................................................14

*Wilson v. Frito-Lay N. Am., Inc.*,
  260 F. Supp. 3d 1202 (N.D. Cal. 2017).................................................................19

## **Rules**

Fed. R. Civ. P. 23(a)...............................................................................................14

Fed. R. Civ. P. 23(b)(2)............................................................................................7

Fed. R. Civ. P. 23(b)(3)....................................................................................2, 7, 17

Fed. R. Civ. P. 56(a)............................................................................................7, 8

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## I.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the Court can resolve the element of reliance conclusively against Plaintiff on summary judgment despite his consistent, unequivocal testimony that he relied on the "All Natural" representation in choosing to purchase the Arizona products because this attribute was materially significant to him, as well as uncontroverted evidence that Plaintiff ceased purchasing Arizona products after suit was filed and would purchase the beverages again, but only if it he could be sure they delivered the advertised all-natural benefit.

2.    Whether the Court can grant summary judgment in favor of Defendant on Plaintiff's express warranty claim, despite Plaintiff's repeated testimony that he relied on the "All Natural" label on every Arizona product he purchased, and where privity is not at issue because the express warranty is based on the products' affirmative label.

3.    Whether the Court can conclude as a matter of law that Plaintiff suffered no economic injury where the record establishes that Plaintiff purchased the products in reliance on the "All Natural" claim, and where the existence of a price premium attributable to the challenged label is supported by expert evidence.

4.    Whether the Court can determine, as a matter of law, that Plaintiff has abandoned his claims for monetary or class-wide relief based solely on isolated or ambiguous responses during a deposition, despite a full record prior to and post deposition confirming his affirmative pursuit of class and monetary relief—including  Plaintiff's class certification motion, expert damages reports, sworn declaration, and complaint—and that contains no clear, knowing, or unequivocal waiver of that relief.

5.    Whether Plaintiff has Article III standing for injunctive relief, where he has demonstrated a concrete and ongoing injury—namely, his continued inability to rely on Defendant's "All Natural" label—and has expressed a clear willingness to purchase the products in the future if they are in fact all natural, thereby establishing that the injury is redressable through an injunction.

## II.    INTRODUCTION

Defendant's motion for summary judgment distorts the record, speculates about facts not in evidence, selectively cites deposition testimony, and invites the Court to resolve disputed factual

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    issues that are the exclusive province of the jury. At the summary judgment stage, this is
2    fundamentally improper.

3    For example, Defendant claims Plaintiff no longer intends to purchase the products, but that
4    argument misrepresents Plaintiff's testimony. Instead, Plaintiff testified that he remains willing to
5    purchase the products in the future if he could be sure they were all natural as advertised. Courts
6    have consistently held that this type of testimony suffices to establish standing under Article III.

7    Defendant's efforts to negate reliance and economic injury fare no better. Its arguments rest
8    on selective citation to testimony and a misreading of California law, which requires only that the
9    misrepresentation be a substantial factor in the purchase decision. Plaintiff's testimony provides
10   ample basis on which a jury can find actual reliance in his favor. He repeatedly testified that he
11   purchased the products because of the all-natural label, ceased purchasing the products altogether
12   after filing suit, and would buy them again but only if he could be sure the all-natural promise that
13   drove his earlier purchases were in fact true.  Defendant's attempt to undercut that testimony through
14   ambiguous deposition snippets at best highlights the existence of disputed issues of fact—precisely
15   what must be reserved for trial.

16   Finally, Defendant asserts that Plaintiff "abandoned" class-wide relief and damages based
17   only on vague, isolated remarks from a lengthy deposition. That argument ignores the overwhelming
18   weight of the record, which includes: the prayer for monetary relief in the complaint, expert reports
19   in support of class certification under Rule 23(b)(3) identifying a court-approved method of
20   quantifying class-wide harm, and a sworn declaration post-deposition affirming Plaintiff's ongoing
21   intent to pursue damages on behalf of the class. There is no "clear and unequivocal" waiver of
22   monetary relief here—nor anything that could otherwise meet the high bar necessary to establish
23   abandonment under the law.

24   In sum, Defendant's motion hinges on disputed facts, ignores binding summary judgment
25   standards, and improperly asks this Court to disregard all of the evidence favoring Plaintiff's
26   position while resolving factual ambiguities in its favor. When the record is properly viewed in the
27   light most favorable to Plaintiff, summary judgment must be denied.

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

### III.    STATEMENT OF FACTS

### A.    Plaintiff Relied on the Products' "All Natural" Label, Which Was Material to His Purchase Decision

Plaintiff testified that he purchased multiple Arizona beverage products over time, including Mucho Mango, Kiwi Strawberry, Grapeade, Lemonade, Green Tea with Ginseng and Honey, and Fruit Punch. *See* Declaration of Alan Gudino ("Gudino Decl."), Ex. A ("Iglesias Dep.") at 94:20–25, 96:15–17, 99:19–22, 101:2–4, 103:7–8, 105:2–3. He consistently and unequivocally testified that the "All Natural" or "100% Natural" labeling was a substantial and material reason he chose to purchase each product:

Q. Why did you purchase the Mucho Mango?

A. I thought it was okay. Seemed like it was a hundred percent natural. That's what it said.

*Id.* at 106:14, 17–18.

\*\*\*

Q. Why did you purchase the Kiwi Strawberry?

A. Also it says a hundred percent natural. I'm thinking it's a natural product.

*Id.* at 107:23; 108:9–10.

\*\*\*

Q. What about the Grapeade product; why did you buy that?

A. Again, I'm thinking I'm buying a hundred percent natural product.

Q. So it's the grape taste and the hundred percent natural product label for the reasons for the Grapeade?

A. Yes, sir.

*Id.* at 109:4–5, 13–14, 19–22.

\*\*\*

Q. The Green Tea with ginseng and honey, why did you buy that?

A. Yeah, I thought I was buying a healthy product, a hundred percent natural.

*Id.* at 110:5–6, 21–22.

\*\*\*

Q. And the Lemonade; why did you buy the Lemonade?

A. It said it was a hundred percent natural.

*Id.* at 111:10–11, 17.

\*\*\*

Q. And then I think we have the Fruit Punch. Why did you buy the Fruit Punch?

A. Fruity taste, and it was a hundred percent natural.

*Id.* at 112:3–4, 8–9.

\*\*\*

Plaintiff further confirmed that the "All Natural" statement appeared on all of Defendant's products he purchased and that he saw the claim at the time of purchase:

Q. Did you see the "All Natural" statement on any of the products?

A. Yes, sir.

Q. Which ones?

A. All of them.

*Id.* at 129:22-23; 130:2–4.

\*\*\*

Q. And when do you recall first seeing that statement, "a hundred percent natural"?

A. When making a purchase.

Q. When making your first purchase or subsequent to that?

A. No, my first purchase.

Q. Is that true for all the products that you've testified to buying?

A. Well, they're the same—the products come from the same thing. So when I see the "hundred percent" on each one, I think it's the same, a hundred percent natural, yes.

*Id.* at 139:14–16; 139:19–140:2.

\*\*\*

Plaintiff also made clear that he is seeking the removal of the misleading label:

Q. What are you seeking?

A. Change that "natural" thing on the—the "hundred percent natural" on the product. Just

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    change it. Stop lying to consumers; that's it.

2        *Id*. at 138:7, 10-12.

3        This consistent testimony demonstrates that the "All Natural" claim was material to

4    Plaintiff's belief about the products' nature and quality and directly influenced his decision to

5    purchase them. Defendant's argument that Plaintiff cannot establish reliance is belied by this

6    testimony and record. *See* ECF 102-4 ¶ 4 (Plaintiff declared that "In deciding to purchase these

7    products, I reviewed and relied on the labeling that described them as "All Natural" or "100%

8    Natural." These representations were important to me because I believed I was buying beverages

9    made only with natural ingredients."); ECF 29 ¶ 55 (Plaintiff alleged that "In making his purchase,

10    Plaintiff relied upon Defendant's labeling and advertising claims, namely, the "All Natural" labels

11    clearly printed on the front of the Product").

12    **B.    Plaintiff Stopped Purchasing the Products**

13        After learning that Arizona's beverages might not be truly natural, Plaintiff contacted

14    Clarkson Law Firm to investigate the products and their labeling. Gudino Decl., Ex. A at 73:7-13.

15    Plaintiff also testified: "After it was filed, I stopped buying the product," and "I know I stopped

16    purchasing when this was filed." *Id*. at 113:17–18; 114:23-24. When asked directly whether he had

17    purchased any products *after* the December 23, 2022 filing date, he clearly responded: "No, sir." *Id*.

18    at 118:5–10.

19        When asked about the timing of earlier purchases, Plaintiff was transparent about the limits

20    of his memory, as is common for consumers of low-cost goods spanning a few years of purchase

21    history. He admitted, "I don't remember my last purchase of any of those," and when asked if he

22    knew when that last purchase occurred, stated: "No, I don't, sir." *Id*. at 114:19–20; 114:25–115:2.

23        Where he was able, however, Plaintiff provided estimated timeframes. For example, when

24    asked about his last purchase of Mucho Mango, he testified: "I'm going to say from, what, '16 to—

25    to the lawsuit." *Id*. at 94:24–25. Although Defendant seeks to tie "the lawsuit" to the December

26    2022 filing, Plaintiff never defined the phrase—and it is at least equally reasonable to interpret it as

27    referring to his September 2021 legal engagement or demand letter during the investigation stage

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

of the litigation. When specifically asked whether the filing was in December 2022, Plaintiff responded only: "Something like that, yes, sir." *Id.* at 95:1–4.

A similar exchange occurred for the Kiwi Strawberry product. Plaintiff testified that he purchased it "more or less the same time frame, between '17 and the lawsuit," and simply agreed "Yes, sir" when opposing counsel reframed "the lawsuit" as the 2022 filing. *Id.* at 97:11–15. Regarding Grapeade, Plaintiff initially stated he purchased it between 2017 and 2021. *Id.* at 99:19–100:5. Later, when asked, "And you did purchase the Grapeade in 2022; you just don't remember what month? Right?" he answered: "Yes, sir." *Id.* at 115:19–21. This ultimately is consistent with what Plaintiff otherwise testified—that he could not remember exact timing as to last purchases, but knows he did not continue purchasing the products post-filing.

Taken as a whole, Plaintiff's testimony reflects actual reliance, and would support a jury finding on that element: he testified repeatedly and consistently that he saw the "All Natural" labels, relied on that promise specifically in deciding to purchase the products, did not purchase any products once legal action commenced, and will only purchase them again if he can be sure the material promise on which he previously relied were in fact true. Even assuming some ambiguity about the precise definition of "the lawsuit," Plaintiff's testimony is coherent and credible, and the timeline—whether anchored in the 2021 legal engagement or 2022 filing—raises, at minimum, a factual dispute. Defendant will be free to argue to the jury Plaintiff's inability to remember every timing and other detail—regarding purchases of an everyday consumer product—impinges his credibility, but it would be improper to conclusively determine any ambiguity against Plaintiff at summary judgment.

## C.   Plaintiff Seeks Class and Monetary Relief as Evidenced by the Record

During his deposition, Plaintiff was asked what relief he was seeking in this case. Underscoring the other evidence of actual reliance, and confirming the importance of the label claim to him, Plaintiff responded that he wanted Defendant to "change that 'natural' thing on the—the 'hundred percent natural' on the product. Just change it. Stop lying to consumers; that's it." *Id.* at 138:10–12. When asked whether that was the primary relief he sought, he confirmed, "Yes, sir." *Id.* at 138:17–19. Plaintiff was never directly asked about his formal requests for money damages

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

consistent throughout this litigation. Nor did Plaintiff state he was abandoning this consistently-sought relief or that he was otherwise limiting the scope of relief or waiving the right to pursue any class-wide or monetary recovery.

Plaintiff's sworn declaration, post deposition, further undermines any argument as to abandonment. In it, Plaintiff reaffirms his position from the start—he is seeking relief individually and on behalf of a proposed class, including monetary compensation. *See* ECF No. 102-4 ¶ 6 ("General Understanding of Class and Claims. I understand that I am suing Defendant on behalf of myself and a proposed class of California consumers who purchased AriZona beverages labeled as 'All Natural' or '100% Natural.' **I am seeking to stop Defendant from making misleading labeling claims and to obtain compensation for consumers who overpaid based on those misrepresentations.**") (emphasis added); *id.* ¶ 9 ("Primary Litigation Objective. My primary reason for bringing this case is to stop Defendant from misrepresenting its products as 'All Natural' when they are not, **and to recover the money that consumers paid under the false impression that the Products were all natural**.") (emphasis added).

After the September 19, 2024 deposition, Plaintiff moved for class certification under Rule 23(b)(2) and (b)(3), seeking to certify a class for injunctive relief and damages. *See* ECF No. 102 at 17:3–18:23 (explaining the class-wide damages model); ECF No. 102-4 ¶¶ 6, 9. With that motion, Plaintiff submitted expert reports to support the quantification of class-wide damages that Plaintiff has sought from the inception of litigation and consistently throughout. He retained Patricia A. Yanes to "design and describe a market research survey and analysis that would enable [her] to assess the market price premium (measured in dollars and/or percentage terms) resulting from the All Natural Claim in the labeling and marketing of the Class Products." ECF No. 102-3 ¶ 12. Plaintiff also retained Dr. Gareth J. Macartney "to investigate if a common Class-wide methodology can be used to calculate Class-wide damages in this case." ECF No. 102-2 ¶ 7. The record as a whole confirms Plaintiff's continued pursuit of both injunctive and monetary relief individually and on behalf of the putative class.

## IV.   LEGAL STANDARD

Summary judgment under Rule 56(a) is only warranted "if the movant shows that there is no

genuine dispute at to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet this high burden, "the moving party must produce either evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A genuine dispute exists where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).

In assessing a summary judgment motion, a court "does not make credibility determinations or weigh conflicting evidence," but rather "views the evidence in the light most favorable to the non-moving party and draws all factual inferences in the non-moving party's favor." *Bostwick v. SN Servicing Corp.*, Case No. 21-cv-02560-LB, 2023 WL 114217, at *4 (N.D. Cal. Jan. 5, 2023). Summary judgment "can only be entered if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Hawkins v. Kroger Co.*, 512 F. Supp. 3d 1079, 1084-85 (S.D. Cal. 2021). "Any doubt as to the existence of any issue of material fact requires denial of the motion[.]" *Id.* at 1084.

## V.    ARGUMENT

### A.    Plaintiff Relied on the Products' "All Natural" Label, and Defendant's Post-Suit Purchase Theory Misstates the Record and Law

Defendant argues that Plaintiff cannot establish reliance because he allegedly continued purchasing Arizona products after retaining counsel and after purportedly learning that the "All Natural" label was false. This argument fails because: (1) it misstates California law, which requires only that a misrepresentation be a substantial factor in the consumer's decision—not the sole reason; and (2) it misrepresents the evidentiary record, relying on speculation, ambiguous deposition excerpts, and assumptions not grounded in actual testimony.

California law is clear that to establish reliance under the UCL, FAL, or CLRA, a plaintiff need only show that the misrepresentation played a substantial part in the purchasing decision. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) ("It is not . . . necessary that [the plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

decisive factor influencing his conduct . . . It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision."); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 n.9 (2011); *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1385 (2010). As this district court has explained, "as long as reliance on the misleading advertising was a substantial factor in causing plaintiff's decision to buy, the requirements of reliance and causation are met." *Olosoni v. HRB Tax Grp.*, No. 19-cv-03610-SK, 2020 U.S. Dist. LEXIS 259489, at *20 (N.D. Cal. Mar. 24, 2020) (cleaned up).

Plaintiff's testimony squarely satisfies this standard. He consistently testified that he purchased Arizona products—including Mucho Mango, Kiwi Strawberry, Grapeade, Lemonade, Green Tea with Ginseng and Honey, and Fruit Punch—because of the "All Natural" or "100% natural" representations prominently displayed on the labels. Gudino Decl., Ex. A, Iglesias Dep. at 106:14, 17–18; 107:23; 108:9–10; 109:4–5, 13–14, 19–22; 110:5–6, 21–22; 111:10–11, 17; 112:3–4, 8–9; 129:22-23; 130:2–4; 139:14–16; 139:4–9; 139:19–140:2. When asked why he purchased the products, he explained: "So when I see the 'hundred percent' on each [product], I think it's the same, a hundred percent natural . . . ." *Id.* at 139:25–140:2. He also confirmed that the "All Natural" statement appeared on every product he purchased: "Yes, sir. . . . All of them." *Id.* at 129:22–23; 129:25–130:4.

Defendant's attempt to conclusively rebut all the evidence of actual reliance rests on assumptions not in the record, speculation, and a reading of the deposition that improperly construes ambiguities in Defendant's favor in contravention to the law. *See Cooper v. Sely*, 2013 U.S. Dist. LEXIS 115705, at *7 n.2 (C.D. Cal. Aug. 13, 2013) (refusing to find a fact disputed because the party's claim relied on assumed facts not in evidence (citing *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1050 (9th Cir. 2009))); *P & K Prop., LLC v. Hartford Cas. Ins. Co.*, No. C 11-06606 SI, 2013 U.S. Dist. LEXIS 18851, at *17 (N.D. Cal. Feb 12, 2013) (assuming facts in the light most favorable to the nonmovant); *Rintoul v. Old Dominion Freight Line, Inc.*, No. 3:21-cv-01733-JR, 2024 U.S. Dist. LEXIS 106251, at *4 (D. Or. Apr. 23, 2024) ("[W]hen evaluating a summary judgement motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

viewed in the light most favorable to the nonmoving party." (citing *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Asso.*, 809 F.2d 626, 631 (9th Cir. 1987))). It also invites the Court to weigh evidence, which is the function of the jury—not the Court. *See Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150–51 (2000) (at summary judgment, courts may not weigh the evidence or make credibility determinations (citation omitted)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.") (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017) ("In assessing whether a genuine issue of material fact exists for trial, [courts] do not weigh the evidence, nor make factual or credibility determinations.").

The record supports Plaintiff's position that he ceased purchasing Defendant's products after confirming the "All Natural" label was false. After hearing that the products might not be natural, Plaintiff contacted Clarkson Law Firm to investigate. Gudino Decl., Ex. A at 73:7-13. His testimony supports that he thereafter stopped purchasing the products at issue: "After it was filed, I stopped buying the product," and "I know I stopped purchasing when this was filed." *Id*. at 113:17–18; 114:23–24. When asked directly whether he had purchased any products after the December 23, 2022 filing date, he answered unequivocally: "No, sir." *Id*. at 118:5–10.

While Defendant seeks to tie "the lawsuit" to the December 2022 filing date, Plaintiff never defined that term. It is at least equally reasonable—particularly from a layperson's perspective—to interpret "the start of the lawsuit" as referring to Plaintiff's legal engagement or the September 2021 demand letter. For example, when asked when he last purchased Mucho Mango, Plaintiff stated: "I'm going to say from, what, '16 to—to the lawsuit." *Id*. at 94:24–25. When pressed about the filing date, he replied only, "Something like that, yes, sir." *Id*. at 95:1–4. A similar exchange occurred for Kiwi Strawberry: Plaintiff testified he purchased it "more or less the same time frame, between '17 and the lawsuit," and only agreed "Yes, sir" after counsel recharacterized "the lawsuit" as the December 2022 filing. *Id*. at 97:11–15. For Grapeade, Plaintiff initially estimated purchases

between 2017 and 2021, consistent with no purchases following investigation of the facts into this lawsuit or the filing itself. *Id*. at 99:19–100:5. When later asked if he purchased Grapeade in 2022 without recalling the specific month, he responded: "Yes, sir." *Id*. at 115:19–21. This testimony reflects ordinary uncertainty about exact timing of purchases, not any knowing continuation of purchases after confirmation of the alleged misrepresentation. As the jury would also hear, Plaintiff was candid about understandable limits of his memory, stating: "I don't remember my last purchase of any of those," and "No, I don't, sir," when asked if he knew exactly when his last purchase occurred. *Id*. at 114:19–20; 114:25–115:2. At most, the record reveals minor ambiguities about timing—nothing that would justify a finding, as a matter of law, that reliance is lacking.

Regardless, any inconsistency as to actual reliance would not be dispositive. *See Silva v. B&G Foods*, No. 20-cv-00137-JST, 2021 U.S. Dist. LEXIS 132074, at *4 (N.D. Cal. July 15, 2021) (declining to grant summary judgment in a false advertising case because "a court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence" and observing "the Court will not… choose among these deposition excerpts… Whether Schier or Silva relied on the "0g Trans Fat!" representation is a disputed question of material fact that cannot be decided at summary judgment.") A jury could reasonably credit Plaintiff's repeated and uncontroverted testimony that he (i) saw the "All Natural" label, (ii) purchased the products for that reason, (iii) stopped purchasing them after filing suit, and (iv) would like to purchase them again but only if he could be sure they delivered the promised all-natural benefit which drove all of his previous purchases. Against this backdrop of facts, a jury could likewise elect to disregard any testamentary evidence supporting post-investigation but pre-suit purchases in early 2022 as an inconsistency explained by Plaintiff's honest inability to remember precise timing for everyday purchases made years ago. *See generally Sonner v. Schwabe*, 911 F.3d 989, 992 (9th Cir. 2018) (reversing grant of summary judgment in false advertising case and observing "a plaintiff need only show a triable issue of material fact to proceed to trial, not foreclose any possibility of the defendant's success"); *see also Hawkins v. Kroger,* 512 F. Supp. 3d 1079, 1093 (S.D. Cal 2021) (denying summary judgment in false advertising case, even though "Plaintiff's testimony regarding her reliance on the '0g Trans Fat' label may not be entirely consistent," because "she did *not* admit

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1   that she did *not* rely on the… label… [and] [t]o the extent Plaintiff made admissions and gave

2   inconsistent testimony, these weaknesses are not so great as to justify finding that no genuine dispute

3   of material fact exists as to reliance or causation[.]") (emphasis in the original) (internal quotations

4   omitted).

5          The portions of the testimony on which Plaintiff was unequivocal support actual reliance. A

6   jury would also be more, or at least equally, willing to credit this testimony given other record

7   evidence overwhelmingly demonstrating "All Natural" is material to consumers and drives purchase

8   behavior, as it did with Plaintiff. *See* ECF No. 102, Section II. B and C; ECF No. 102-5 (Gudino

9   Decl. ISO MCC) at Exs. 2, 3, 4, 5, 6 (Defendant's internal communications, marketing materials,

10   strategic plans, and executive testimony all confirm that the "All Natural" claim was a deliberately

11   crafted, centrally promoted message used to capitalize on consumer demand for natural products,

12   underscoring its materiality to purchasing decisions and reinforcing that it was intended to—and

13   did—influence consumers); *see also* ECF No. 102-2  (Macartney Decl.) ¶¶ 21, 23 (explaining how

14   product attributes, such as the "All Natural" representation, motivates consumer purchasing

15   decisions); ECF No. 102-4 (Plaintiff's Decl.) ¶ 4  ("In deciding to purchase these products, I

16   reviewed and relied on the labeling that described them as "All Natural" or "100% Natural." These

17   representations were important to me because I believed I was buying beverages made only with

18   natural ingredients.") This record evidence, at trial, would further support a jury finding crediting

19   Plaintiff's repeated testimony that he in fact relied on the prominent "All Natural" promise and

20   considered the claim important in his purchasing decisions. *See Kwikset*, 51 Cal. 4th at 326–27

21   (materiality supports inference of reliance); *Kane*, 973 F. Supp. 2d at 1138; *see also Strategic*

22   *Partners v. Vestagen,* 2017 U.S. Dist. LEXIS 201114 (C.D. Cal. July 31, 2017) (observing that

23   unless the evidence is "so one-sided" in movant's favor, summary judgment is improper).

24          Defendant's reliance on two out-of-circuit cases in which it was also a party—*Ashour* and

25   *Crawford*—is unpersuasive, as the legal standards, factual circumstances, and plaintiff conduct in

26   those cases are materially different from the record here. *See Ashour v. Ariz. Bevs. USA LLC*, No.

27   19 Civ. 7081 (AT), 2025 U.S. Dist. LEXIS 59539 (S.D.N.Y. Mar. 28, 2025); *Crawford v. Ariz.*

28   *Bevs. USA LLC*, No. 22-cv-220-DWD, 2024 U.S. Dist. LEXIS 58769 (S.D. Ill. Mar. 30, 2024).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

In *Ashour*, the court granted summary judgment based on overwhelming, affirmative evidence that plaintiffs continued purchasing the challenged products long after learning of the alleged misrepresentation—including after filing the lawsuit. *Ashour*, 2025 U.S. Dist. LEXIS 59539, at \*6, \*19-20. The record there included direct testimony that plaintiffs continued to knowingly purchase the same "No Preservatives" labeled beverages, despite knowledge of falsity, for other specific reasons, such as that they liked the taste and because that they found the products to have good value. *Id.* at \*6. These post-lawsuit purchases were also corroborated by receipts. *Id.* Under these circumstances, the court concluded that no reasonable jury could find reliance and that plaintiffs could not establish but-for causation. *Id.* at \*19-20.

That is meaningfully different than the record here. Plaintiff gave no such testimony, offered no admissions, and there is no documentary evidence showing he continued to purchase Arizona beverages after filing his lawsuit much less until his deposition. To the contrary, Mr. Iglesias testified that he relied on the "All Natural" claim when making his Product purchases and ceased purchasing them post-suit. There is no contrary evidence in the record. Unlike plaintiffs in *Ashour* who admitted post-suit purchases, including specific motivations for doing so despite knowledge of falsity, Plaintiff here simply affirmed the limits of exact memory ("Q. Do you know when the last purchase of any Arizona product was? A. No, I don't, sir." *See* Gudino Decl., Ex. A, Iglesias Dep. at 114:25–115:2.). Plaintiff's testimony that he would purchase the Products again but only if he could be sure they delivered the promised all-natural benefit further disclaims the type of evidence that drove the decision in *Ashour*—i.e., proof that plaintiffs desire for another product benefit was so strong they continued to buy it anyway not withstanding knowledge of falsity as to a challenged attribute.

Defendant's reliance on *Crawford*, 2024 U.S. Dist. LEXIS 58769, at \*11-13, is likewise misplaced. It was decided under Illinois law and involved a plaintiff who affirmatively testified that he continued buying the product even after confirming falsity—because he considered the product's price to be fair. No such testimony necessarily negating the actual reliance about which Plaintiff did in fact testify exists here.

Defendant's reliance on non-binding, out-of-district cases fares no better, as none support summary judgment under the facts here. In *Red v. Kraft Foods, Inc.*, the court addressed typicality under Rule 23(a) and did not reach the issue of whether post-suit purchases bar a showing of reliance in consumer fraud claims. No. CV 10-1028-GW(AGRx), 2012 WL 8019257, at *12 (N.D. Cal. Apr. 12, 2012). *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798 (2007), is also inapplicable. There, the plaintiff admitted she purchased the product solely to bring a lawsuit and did not rely on the truth of the product's claims. *Id.* at 808. That is not the case here, on either front— Plaintiff testified repeatedly that he relied on the "All Natural" label in deciding to purchase the products, and only reached out to counsel to investigate upon learning that the products might not, in fact, be natural as promised. Gudino Decl., Ex. A, Iglesias Dep. at 106:14, 17-18, 107:23; 108:9- 10, 109:4–5, 13-14, 19-22, 110:5-6, 21-22, 111:10-11, 17, 112:3-4, 8-9, 129:22-23; 130:2-4, 139:14-16; 139:4-9, 139:19–140:2. Likewise, *Simpson v. California Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015 (S.D. Cal. 2013), involved an implied warranty claim, not misrepresentation, and turned on a plaintiff's failure to inspect product labeling that could have revealed the issue. Here, Plaintiff relied on clear, front-label "All Natural" representations, and the falsity is not discernible through inspection. Gudino Decl., Ex. A, Iglesias Dep. at 106:14, 17-18, 107:23; 108:9-10, 109:4– 5, 13-14, 19-22, 110:5-6, 21-22, 111:10-11, 17, 112:3-4, 8-9, 129:22-23; 130:2-4, 139:14-16; 139:4- 9, 139:19–140:2; *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (consumers are not "expected to look beyond misleading representations on the front of the box to discover the truth"); *Jou v. Kimberly–Clark Corp.*, No. C-13-03075 JSC , 2013 U.S. Dist. LEXIS 173216, at *34 (N.D. Cal. 2013) ("Defendant cannot rely on disclosures on the back or side panels of the packaging to contend that any misrepresentation on the front of the packaging ['pure & natural' diapers] is excused."); *Kang v. P.F. Chang's China Bistro, Inc.*, 844 F. App'x 969, 971 (9th Cir. 2021) (the "reasonable consumers might not 'look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print.'") (citing *Williams*, 552 F.3d at 940).

Plaintiff's uncontroverted testimony that he relied on a prominent, front label representation, made no post-filing purchases, and would buy the Products again but only if they in fact delivered the all-natural benefit that drove his prior purchases, together with record evidence supporting

materiality as to all consumers, would support a jury finding in Plaintiff's favor on reliance. This case is also unlike those on which Defendant relies where plaintiffs admitted to purchasing after filing, explicitly acknowledging they did so despite known falsity, because other attributes drove those post-filing purchases. None of that is present here.

### B. Plaintiff's Testimony Establishes Reliance and the Basis of the Bargain, Precluding Summary Judgment on Breach of Express Warranty

To establish breach of express warranty under California law, a plaintiff must show: "(1) the seller's statements constitute an 'affirmation of fact or promise' or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached." *Caldwell v. Nordic Naturals, Inc.*, No. 23-cv-02818-EMC, 2024 WL 24325, at *8 (N.D. Cal. Jan. 2, 2024). Privity of contract is not a requirement for actions based upon an express warranty. *Evraets v. Intermedics Intraocular, Inc.*, 29 Cal. App. 4th 779, 789, n.4 (1994); *Fieldstone Co. v. Briggs Plumbing Products, Inc.*, 54 Cal. App. 4th 357, n.10 (Cal. Ct. App. 1997) ("As a general rule, privity of contract is a required element of an express breach of warranty cause of action. However, there is an exception where plaintiff's decision to purchase the product was made in reliance on the manufacturers' written representations in labels or advertising materials.") (citations omitted). Courts in this Circuit have also held that when a plaintiff states a viable consumer protection claim, that same showing typically satisfies the express warranty standard. *See, e.g*, *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1095 (N.D. Cal. 2017); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1198 (N.D. Cal. 2014).

Plaintiff repeatedly testified that he relied on the "All Natural" promise in deciding to purchase the products, stopped purchasing them after he filed suit, and would purchase them again but only if he could be sure the products delivered the all-natural benefit that drove his earlier purchases. This uncontroverted evidence would amply support a jury finding in favor of Plaintiff on reliance under California law, which requires only that a misrepresentation be a "substantial factor" in the purchase decision—not the sole or even predominant reason. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). Plaintiff repeatedly testified that he relied on the products "All Natural" label in making his purchase decision. Gudino Decl., Ex. A, Iglesias Dep. at 106:14, 17-

18, 107:23; 108:9-10, 109:4–5, 13-14, 19-22, 110:5-6, 21-22, 111:10-11, 17, 112:3-4, 8-9, 129:22-23; 130:2-4, 139:14-16; 139:4-9, 139:19–140:2. He further confirmed that he saw and relied on that statement on all of the products he purchased. *Id.* at 129:22–130:4 ("Q: Did you see the 'All Natural' statement on any of the labels of the products? . . . A. Yes, sir. . . . Q: Which ones? A: All of them."). This testimony satisfies both the reliance requirement and the "basis of the bargain" element under California warranty law. *See Aguilar v. Boulder Brands, Inc.*, No. 12cv01862 BTM (BGS), 2013 U.S. Dist. LEXIS 81378, at *17 (S.D. Cal. June 10, 2013) (denying motion to dismiss express warranty claims where plaintiff relied on the challenged statement).

In contrast, the testimony on which Defendant seeks to rely to negate this element as a matter of law is ambiguous at best. Plaintiff never testified that he knowingly continued buying the products after confirming the label was false. To the contrary, Plaintiff confirmed he did not make any post-suit purchases, nor would he again unless he could confirm the all-natural promise was in fact true. Beyond that, he candidly acknowledged that he could not recall exactly when he stopped purchasing the products or exactly what he knew at the time: "Q. Do you know when the last purchase of any Arizona product was? A. No, I don't, sir." Gudino Decl., Ex. A, Iglesias Dep. at 114:25–115:2.

This record therefore does not contain the kind of "affirmative proof" necessary to negate the basis-of-the-bargain element. Defendant's reliance on *Ashour* is again misplaced. There, plaintiffs admitted they knowingly continued purchasing the products after confirming the misrepresentation and even produced receipts showing purchases weeks before their depositions— clear evidence the challenge attributed had not meaningfully influenced their pre-suit purchase decisions. No such evidence exists here. Plaintiff's testimony instead confirms that after the lawsuit began, Plaintiff did not make any additional purchases and would only do so if he could be sure the all-natural promise that drove his pre-suit purchasing decisions was in fact true.

## C.    Plaintiff's Claim for Economic Injury and Monetary Relief Remain

The full evidentiary record confirms that Plaintiff has not abandoned his claims for economic injury or monetary relief. While Defendant seeks to manufacture a waiver based on isolated deposition testimony, the record in this case demonstrates Plaintiff's consistent and continued

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    pursuit of class-wide damages and restitution.

2         The operative complaint expressly seeks monetary and class-wide relief, and Plaintiff has

3    never amended or withdrawn these claims. *See* ECF No. 29 ¶¶ 148, 160, 182, 193, 204, 205, Prayer

4    for Relief. After Plaintiff's deposition, he moved for class certification and expressly sought

5    certification of a damages class under Rule 23(b)(3). ECF No. 102 at 17:3–18:23 (explaining how

6    Plaintiff's damages model is consistent with the class's theory of liability and is capable of

7    measuring class-wide damages). To support that motion, Plaintiff retained two experts: Patricia A.

8    Yanes, who designed a conjoint analysis to quantify the market price premium attributable to the

9    "All Natural" label (ECF No. 102-3 ¶ 12), and Dr. Gareth J. Macartney, who opined on class-wide

10   damages methodology (ECF No. 102-2 ¶ 7). Plaintiff also submitted a sworn declaration affirming

11   that he is suing on behalf of himself and a proposed class to recover money paid by consumers who

12   were misled by Defendant's "All Natural" claims. ECF No. 102-4 ¶ 9 (noting that Plaintiff seeks to

13   recover "the money that consumers paid under the false impression that the Products were all

14   natural"). Plaintiff's ongoing retention of experts and active pursuit of monetary damages

15   contravenes Defendant's claim that Plaintiff has abandoned those claims.

16        While Plaintiff testified at deposition that he was seeking to have Defendant stop falsely

17   labeling its products, he never stated that he was relinquishing claims for money damages or class

18   relief. *See* Gudino Decl., Ex. A, Iglesias Dep. at 138:2–4, 8, 10–12. 17–19. Any ambiguity in

19   Plaintiff's testimony does not constitute a knowing and express waiver of his legal rights, especially

20   in a complex class action where the technical distinctions between remedies may not be clear to a

21   non-lawyer. Courts in other circuits have recognized that "a deponent's characterization or inability

22   to explain her legal theories does not control" absent an express and explicit wavier. *Islam v. City

23   of Bridgeton*, 804 F. Supp. 2d 190, 198 n.3 (D.N.J. 2011). Other courts have likewise rejected the

24   notion that claims may be forfeited during a deposition absent a clear, unambiguous indication such

25   as an amended pleading or express stipulation. *See Lara v. Mahony*, 2022 U.S. Dist. LEXIS 228166,

26   at *11 (W.D. Tex. July 18, 2022); *Lemmons v. Georgetown Univ. Hosp.*, 241 F.R.D. 15, 32 (D.D.C.

27   2007) ("[I]n the absence of an express and explicit indication that the plaintiff intended to leave one

28   or more of her claims by the wayside . . . the complaint controls on what issues are being presented").

1    Plaintiff's statements made during a deposition under ambiguous questioning fall far short

2    of a clear and knowing abandonment of statutory or class-wide claims. Plaintiff, a reasonable

3    consumer with no legal training, was responding to broad, poorly worded questions without

4    clarification as to the distinction between individual and class-wide relief or between injunctive and

5    monetary remedies. Nothing in the exchange indicates that Plaintiff understood, let alone intended,

6    to relinquish claims for restitution or damages available under California's consumer protection

7    statutes—which would be entirely inconsistent with the record both prior to and post deposition.

8    ECF No. 102-4 ¶ 9 (seeking to recover the money consumers paid for the false advertising). Viewed

9    in context, his focus on changing the label reflects his primary concern—not a legal waiver of his

10   other claims. *See United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001) ("The lay witness

11   may not, however, testify as to a legal conclusion, such as the correct interpretation of a contract.").

12   Defendant never asked Plaintiff if he was "abandoning" any particular form of relief, and Plaintiff

13   never said he was.

14       Every case Defendant cited is therefore readily distinguishable and does not support the

15   proposition that a plaintiff's ambiguous deposition answers can effectuate a waiver of economic

16   claims in a consumer class action. In *Mohiuddin v. Raytheon Elec. Sys.*, No. CV 06-5020 GAF

17   (MANx), 2007 U.S. Dist. LEXIS 115570, at *8-9 (C.D. Cal. May 9, 2007) and *Gordon v. Ramirez-

18   Palmer*, No. CIV S-02-2454 GEB GGH P, 2006 U.S. Dist. LEXIS 56205, at *26-27 (E.D. Cal. Aug.

19   11, 2006), the plaintiffs were proceeding *pro se* and each clearly and unequivocally stated an intent

20   to discontinue their claims, circumstances far different from those here. The other cases on which

21   Defendant relies are likewise inapposite. In *Versarge v. Twp. of Clinton*, 984 F.2d 1359, 1363 n.1

22   (3d Cir. 1993), the withdrawal of damages claims was confirmed by counsel during the deposition

23   and again at oral argument—not by the plaintiff. In *Carter v. Ford Motor Co.*, 561 F.3d 562, 563

24   (6th Cir. 2009), the court found that the plaintiff's unclear pleadings were clarified and narrowed

25   by deposition testimony, which is not the case here. Finally, *Rasco v. Potter*, 265 F. App'x 279 (5th

26   Cir. 2008), offers no substantive guidance or analysis regarding the abandonment of claims. The

27   Fifth Circuit's decision merely affirms the district court's conclusion without explanation, and the

28   underlying summary judgment order is equally uninformative, stating only that "[t]he plaintiff

abandoned his claims of gender (sex) and age discrimination during the taking of his deposition," with no discussion of the circumstances or basis for that finding. *See Rasco v. Potter*, No. H-05-0034, 2007 U.S. Dist. LEXIS 106216, at *4–5 (S.D. Tex. Jan. 4, 2007). As a result, *Rasco* provides no persuasive authority for finding abandonment here; to the contrary, courts in this circuit require the alleged abandonment to be "unequivocal." For example, a court has refused to find that a plaintiff abandoned its claims when the opposing counsel did not "directly and unequivocally" ask whether he was abandoning his allegations during the deposition, even though his deposition testimony appeared as abandonment. *Hathaway v. Idaho-Pacific Corp.*, No. 4:15-CV-86-BLW, 2017 U.S. Dist. LEXIS 23245, at *3-4 (D. Idaho Feb. 17, 2017). And this Court only narrowed a plaintiff's claim when he "unequivocally confirmed" so at his deposition. *E.g.*, *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1211 (N.D. Cal. 2017); *Alcala v. Monsanto Co.*, No. C-08-04828 PJH (DMR), 2014 U.S. Dist. LEXIS 38594, at *3-4 n. 2 (N.D. Cal. Mar. 24, 2014).

Plaintiff's sworn declaration, the expert reports, complaint, and the class certification motion all confirm that Plaintiff continues to seek monetary relief for himself and the class. There is simply no evidence of a clear and express waiver of Plaintiff's damages claims that supports Defendant's abandonment argument. Summary judgment should therefore be denied.

**D.    Plaintiff's Testimony Establishes Triable Issues of Fact on Damages and Price Premium**

Defendant's assertion that Plaintiff cannot establish damages simply because he previously considered the price of the Products to be "fair" or "reasonable" before discovering the truth about the "All Natural" representation is unsupported. Defendant cites no binding authority for the sweeping proposition that a consumer forfeits any claim for damages or restitution merely by purchasing a product at what seemed to be a fair price, or by continuing to purchase it before confirming it does not deliver the promised benefits. *See* ECF No. 109 at 13:24–14:9. The relevant legal question is not whether Plaintiff thought the price was fair at the time of purchase, but whether he paid more than the actual value of the products because of the false "All Natural" claim. *See Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) ("The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

difference between a product as labeled and the product as received."); *Julian v. TTE Tech., Inc.*, No. 20-cv-02857-EMC, 2020 U.S. Dist. LEXIS 215039, at *11 (N.D. Cal. Nov. 17, 2020) (citing *Brazil*, 660 F. App'x at 534); *Khasin v. R. C. Bigelow*, Inc., No. 12-cv-02204-WHO, 2016 U.S. Dist. LEXIS 115850, at *14 (N.D. Cal. Aug. 29, 2016) (same).

Plaintiff's deposition testimony simply reflects that at the time of purchase, when he believed he was receiving an "All Natural" beverage as represented, he believed the price of the products was fair. For example, when asked about Mucho Mango, Plaintiff testified:

> Q. . . Did you think the price of the product of the Mucho Mango *was reasonable*?
>
> A. Yes, sir.
>
> Q Would it be okay to say it *was* fairly priced?
>
> A. Yes, sir.
>
> Gudino Decl., Ex. A, Iglesias Dep. at 107:1-7 (emphasis added).
>
> The same is true for the Kiwi Strawberry and Grapeade flavors:
>
> Q. What about the price of the kiwi; did you think it was a fair price too?
>
> A. Yes, sir.
>
> Q. Provided a good value?
>
> A. I don't know about that, sir.
>
> *Id.* at 108:13–17.
>
> Q. Did you consider the price to be a fair and reasonable price for the Grapeade?
>
> A. Yes, sir.
>
> *Id.* at 109:23–25.

These answers merely reflect Plaintiff's assessment at the time, when he believed the "All Natural" claim. They do not speak to whether Plaintiff, after confirming the products were not as represented, suffered a cognizable economic injury or paid a price premium, as he subsequently alleged and expert evidence supports.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Defendant's reliance on *Crawford* is unavailing. In *Crawford*, the court applied Illinois law and found no damages only because the plaintiff expressly testified he considered the product to be fairly priced and would have paid the same price *even knowing* the true sugar and caloric content. *See* 2024 U.S. Dist. LEXIS 58769, at *12-13. The court's reasoning rested entirely on the absence of any evidence that the plaintiff actually paid a price premium or suffered any injury, and it cited no authority for its conclusion. By contrast, Plaintiff here testified that he was willing to pay more for Defendant's products specifically because of the "All Natural" label (Gudino Decl., Ex. A, Iglesias Dep. at 143:17-20) and confirmed that the products' labeling influenced his purchases (*id.* at 106:14, 17–18; 107:23; 108:9–10; 109:4–5, 13–14, 19–22; 110:5–6, 21–22; 111:10–11, 17; 112:3–4, 8–9; 129:22-23; 130:2–4; 139:14–16; 139:4–9; 139:19–140:2).

Ultimately, whether Plaintiff believed the price was fair goes, at most, to the weight of the evidence and not to the existence of damages as a matter of law. This is especially so given the expert evidence on this point already proffered by Plaintiff, that will be further developed consistent with the scheduling order in this case. *See* ECF No. 102-3 ¶ 12 (Patricia A. Yanes to design and conduct a market research survey assessing the price premium attributable to the "All Natural" claim); ECF No. 102-2 ¶ 7 (Dr. Gareth J. Macartney to evaluate whether a common, class-wide methodology can be used to calculate damages); *see also generally Provenz v. Miller,* 102 F.3d 1478, (9th Cir. 1996)  ("As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case.") (internal quotations omitted).

### E.    Plaintiff Has Article III Standing to Seek Injunctive Relief Based on Ongoing Risk of Deception

Plaintiff has standing to seek injunctive relief because he expressly testified to his willingness to purchase the products again if they in fact were "All Natural" as advertised. *See* Gudino Decl., Ex. A, Iglesias Dep. at 119:3-13 ("Q. And in your view if that was—what you're asserting is a false claim, if that was, quote, fixed, you would purchase the products again? A. I would—if I wanted to, yes, I would. If I decided—if I felt like it, I would buy it again. Q. But right now you don't feel like it; is that correct? A. Right now I just feel like I'm being lied to, and so I'm not messing with their product."). In *Davidson v. Kimberly-Clark Corp.*, the Ninth Circuit held that a previously deceived

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

consumer has standing to seek injunctive relief when they express interest in the product but remain unable to rely on the defendant's representations. 889 F.3d 956, 969-70 (9th Cir. 2018). Plaintiff's testimony demonstrates this type of ongoing interest despite his current inability to rely on Defendant's labeling practices.

Defendant's cited cases involving plaintiffs who disavowed future purchases are inapposite and do not warrant summary judgment here. For instance, in *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018), the plaintiff explicitly stated in her deposition that she would not purchase the product again "even if the company removed the allegedly misleading labels," and so the Ninth Circuit affirmed summary judgment. Similarly, in *Schwartz v. Bai Brands*, 2022 U.S. Dist. LEXIS 156872, at *13 (C.D. Cal. Aug. 19, 2022), the plaintiff repeatedly and unequivocally stated during his deposition that he would not purchase the product again under any circumstances, giving "no indication of any desire to purchase the Beverages again, let alone the requisite concrete intent to sustain Article III standing." In contrast, here, Plaintiff never testified that he would not purchase Defendant's products in the future; instead, his testimony supports that he **"would"** purchase them again if he could be sure they truly delivered the "All Natural" benefits as advertised. Gudino Decl., Ex. A, Iglesias Dep. at 119:3-13 (testifying he would purchase again if the false claim were fixed, as posed by Defendant's counsel). His subsequent testimony as to "present intention" can reasonably be understood as not negating what he otherwise testified, but instead reflecting his lack of **present** intention given his inability to rely on Arizona's labeling, absent injunction, and current knowledge as to falsity. It underscores why injunctive relief is necessary in this case. Regardless, any ambiguity cannot be determined conclusively against Plaintiff on summary judgment. *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 573 (N.D. Cal. 2020) (denying summary judgment on injunctive relief standing even where the plaintiff stated he "would never buy" the product again, because ambiguities in his testimony warranted resolution at trial and his future intent could be further explored); *see also Bostwick*, 2023 WL 114217, at *4 (In assessing a summary judgment motion, a court "does not make credibility determinations or weigh conflicting evidence," but rather "views the evidence in the light most favorable to the non-moving party and draws all factual inferences in the non-moving party's favor.").

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Defendant's reliance on *Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) and *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897 (N.D. Cal. 2021) is misplaced. Defendant proffers them for the proposition that a plaintiff who has been deceived and has become fully aware of the alleged misrepresentation cannot be deceived in the same way again and thus lacks standing for injunctive relief. But this Court rejected that position in *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-cv-09077-JSW, 2021 U.S. Dist. LEXIS 150394, at *9–17 (N.D. Cal. Aug. 6, 2021) (White, J.). In *Moore,* the Court explained that where a plaintiff alleges that she "continues to see the Products available for purchase and desires to purchase them again if the Natural Representations were in fact true," and that she cannot reasonably determine from the ingredient list whether the product is truly natural, those allegations suffice to establish a real and immediate threat of future harm for injunctive standing. 2021 U.S. Dist. LEXIS 150394, at *9–17. The Court also rejected the argument that a consumer's knowledge of the current misrepresentation forecloses future injury, explaining that a plaintiff need not "carefully review the ingredient list to discern if the Products are natural," and emphasizing that a consumer's inability to rely on the truthfulness of labeling is itself a cognizable injury under. *Id.* at *15-17.

This case is analogous to *Moore* and unlike *Lanovaz*, *Schwartz*, *Rahman*, or *Cimoli* because Plaintiff has not made any, much less definitive or repeated, statements disclaiming a desire to purchase the products in the future. Nor is Plaintiff's risk of future harm negated simply because he now questions Defendant's "All Natural" label. As in *Moore*, Plaintiff cannot independently verify the truth of the representation from the ingredient list and remains at risk of further deception. *See* Gudino Decl., Ex. A, Iglesias Dep. at 131:4-7 ("Q. What does the term "all natural" mean to you?; A. That it's all-natural products. No chemicals; no additives; no preservatives."). Plaintiff indicated in his declaration that he continues to see the products available and would purchase them again but cannot rely on Defendant's labeling. ECF No. 102-4 ¶ 5. Plaintiff's present inability to trust Defendant's labeling practices thus constitutes a current and sufficient injury to support standing for injunctive relief. *See Pino v. Birch Benders, LLC*, 2022 WL 4913320, at *2-3 (N.D. Cal. Oct. 3, 2022) (plaintiffs had standing to seek injunctive relief where they alleged they would like to

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

purchase the product again in the future but were unable to rely on defendant's labels); *Gasser v. Kiss My Face*, 2018 WL 4847071, at \*3 (N.D. Cal. Apr. 4, 2018) (finding allegations sufficiently established standing to pursue injunctive relief because the plaintiffs "shop where Defendant's products are sold; however, as the plaintiff in *Davidson*, given their past experience with Defendant, they cannot rely upon Defendant's labeling.") (internal citations committed).

Plaintiff has thus established the type of injury that warrants injunctive relief under Article III: a continued interest in purchasing the products along with an inability to rely on Defendant's representations due to past deception.

### F.    Plaintiff Satisfies Article III's Redressability Requirement for Both Injunctive and Monetary Relief

Defendant's arguments as to redressability depend on a demonstrable falsehood—that Plaintiff supposedly abandoned monetary relief—and on a misunderstanding of the law surrounding imminent harm and injunctive relief. Article III redressability is satisfied so long as the requested injunctive relief would address the alleged injury. Plaintiff's ongoing inability to rely on Defendant's "All Natural" claim is a continuing harm that an injunction would redress by requiring truthful labeling. Moreover, unlike in *Schwartz*, Plaintiff has not expressed any satisfaction with the current labels and has testified that he would purchase the products again if he could be sure they delivered advertised benefits. Gudino Decl., Ex. A, Iglesias Dep. at 138:10–12, 17–19. Plaintiff also continues to seek monetary relief, and there has been no legal "abandonment." *See* V.C, above. The ongoing risk of deception, combined with Plaintiff's claim for damages, is more than sufficient to establish redressability. As the Ninth Circuit has explained, "there [can be] no real question about redressability" when a plaintiff seeks "an injunction and damages, either of which is an available remedy." *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 912 (9th Cir. 2011); *see also Waterhouse v. City of Lancaster*, No. CV 12-00923 SJO (SHx), 2013 U.S. Dist. LEXIS 188026, at \*27 (C.D. Cal. Mar. 13, 2013) (finding the redressability requirement satisfied where plaintiffs' request for relief included an injunction and statutory damages).

///

///

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff requests this Court deny Defendant's Motion in its entirety.

Dated: July 7, 2025                          **CLARKSON LAW FIRM, P.C.**

By: */s/ Alan Gudino*
    Ryan J. Clarkson
    Bahar Sodaify
    Alan Gudino

*Attorneys for Plaintiff*