1
2
3
4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    THOMAS IGLESIAS,                        Case No.  22-cv-09108-JSW

8                    Plaintiff,
                                             **ORDER GRANTING MOTION FOR**
9           v.                               **SUMMARY JUDGMENT**

10   ARIZONA BEVERAGES USA, LLC,             Re: Dkt. No. 109

11                   Defendant.

12

13          Now before the Court is the motion for summary judgment filed by Defendant Arizona

14   Beverages USA, LLC ("ABUSA").  The Court considered the parties' briefs, the record in this

15   case, and relevant legal authority, and it finds the matter suitable for resolution without oral

16   argument.  *See* N.D. Civ. L.R. 7-1(b).  For the following reasons, the Court GRANTS ABUSA's

17   motion.

18                                **BACKGROUND**

19          Plaintiff Thomas Iglesias brings a putative class action against ABUSA for allegedly false

20   and misleading representations that certain Arizona beverages are "All Natural" or "100% All

21   Natural."  Iglesias, a resident of San Francisco, purchased multiple Arizona beverages, including

22   Mucho Mango, Kiwi Strawberry, Grapeade, Lemonade, Green Tea with Ginseng and Honey, and

23   Fruit Punch, between roughly 2016 and 2022.  Iglesias claims that the beverages are not in fact

24   "all natural" because they include "unnatural, artificial, and/or synthetic ingredients" for coloring,

25   preservation, and flavor.  (Dkt. No. 29, Am. Compl., ¶ 12.)  The front labels are shown below:

26
27
28

United States District Court
Northern District of California






(*Id.*, Figs. 1-4, 7, 16.)

After learning that the beverages may contain artificial ingredients, Iglesias reached out to counsel to ask them to investigate.  (Dkt. No. 109-2, Iglesias Dep., 73:7-13.)  Iglesias signed a retainer agreement with counsel on September 9, 2021.  (*Id.* at 72:8-10; Dkt. No. 110-4, Ex. B, Retainer Agreement, at 9.)

On December 14, 2021, counsel for Iglesias sent Hornell Brewing Co., Inc. a warning letter under the California Consumers Legal Remedies Act ("CLRA") asserting that the Arizona beverages were deceptive due, in part, to their "All Natural," "100% Natural," or "100% All Natural" labels.  (Dkt. No. 109-4, Defs.' Ex. C, First Hornell Letter.)  On June 13, 2022, counsel sent another CLRA letter to Hornell.  (Dkt. No. 110-5, Defs'. Ex. D, Second Hornell Letter.)  On December 12, 2022, counsel sent a similar letter to ABUSA.  (Dkt. No. 110-6, Defs.' Ex. E, ABUSA Letter.)  Iglesias testified that he "believed" he reviewed and approved the letters before they were sent.  (Iglesias Dep., 91:14-21, 92:1-23.)

2

1    Iglesias originally filed a complaint against Hornell in March 2022.  *See Iglesias v. Hornell*

2   *Brewing Co., Inc.*, 3:22-cv-01795-TLT.  In December 2022, Plaintiff's counsel learned that

3   Hornell was not responsible for the sale or manufacture of the Arizona beverages with the

4   challenged labels.  (Dkt. No. 58-1, Sodaify Decl., ¶ 3.)  Iglesias then filed the instant action in

5   December 2022.  (Dkt. No. 1, Compl.)  He filed his Amended Complaint in March 2023 and

6   brought five claims: (1) violation of the CLRA; (2) violation of the California False Advertising

7   Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (3) violation of the California Unfair

8   Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (4) unjust enrichment; and (5)

9   breach of express warranty.

10       The Court dismissed the unjust enrichment claim, leaving Iglesias's statutory and breach of

11   express warranty claims.  (Dkt. No. 47, Order Granting, In Part, and Denying, In Part, Mot. to

12   Dismiss.)

13                                    **ANALYSIS**

14       ABUSA argues that Iglesias's deposition testimony warrants, as a matter of law, summary

15   judgment in ABUSA's favor on all remaining claims.  ABUSA first argues that Iglesias cannot

16   prove he relied on any "All Natural" representations or that the representations formed the basis of

17   the bargain of any warranty.  It next argues that Iglesias has abandoned his claim for monetary

18   damages and that he lacks standing for injunctive relief, meaning no cognizable relief remains for

19   Iglesias or the proposed class.

20   **A.    Legal Standard.**

21       Summary judgment is warranted "if the movant shows that there is no genuine dispute as

22   to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

23   56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty*

24   *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if there is sufficient evidence for a

25   reasonable jury to find for the nonmoving party.  *Id.* at 248-49.  "The trial court's inquiry is not

26   whether a reasonable trier of fact is likely to find in favor of the opposing party, but whether it

27   could do so."  *Hawkins v. Kroger Co.*, 512 F. Supp. 3d 1079, 1085 (S.D. Cal. 2021) (citing

28   *McIndoe v. Huntington Ingalls*, 817 F.3d 1170, 1176 (9th Cir. 2016)).

United States District Court
Northern District of California

1    The Court views the evidence in the light most favorable to, and makes all reasonable

2    inferences in favor of, the nonmoving party.  *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014).  The

3    Court does not weigh conflicting evidence or make credibility determinations.  *Zetwick v. Cnty. of*

4    *Yolo*, 850 F.3d 436, 441 (9th Cir. 2017).

5    The party moving for summary judgment bears the initial burden of identifying those

6    portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine

7    issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party

8    meets its burden, the nonmoving party must then go beyond the pleadings and, by its own

9    affidavits or exhibits, demonstrate a genuine issue of fact remains for trial.  *Id.*

10   **B.      Iglesias Has Not Shown a Genuine Dispute of Fact as to Actual Reliance.**

11   In order to prevail on his claims under the UCL, CLRA, and FAL, Iglesias must prove

12   actual reliance on the alleged misrepresentations.  *Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310,

13   326–27 (2011) (UCL and FAL); *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 810

14   (2007), *disapproved of on other grounds by Kwikset*, 51 Cal.4th at 337 (CLRA).  To determine

15   "actual reliance," courts look to "well-settled principles regarding the element of reliance in

16   ordinary fraud actions."  *In re Tobacco II Cases*, 46 Cal.4th 298, 306 (2009).  "Actual reliance

17   occurs when a misrepresentation is an immediate cause of a plaintiff's conduct, which alters his

18   legal relations, and when, absent such representation, he would not, in all reasonable probability,

19   have entered into the contract or other transaction."  *Engalla v. Permanente Med. Grp., Inc.*, 15

20   Cal.4th 951, 976 (1997) (internal marks omitted).  A plaintiff does not need to prove "that those

21   misrepresentations were the sole or even the decisive cause" of the plaintiff's purchase decision.

22   *Tobacco II*, 46 Cal.4th at 328.  Rather, a plaintiff must demonstrate that the misrepresentation was

23   a "substantial factor[] in influencing his decision."  *Id.* at 327 (quoting *Engalla*, 15 Cal.4th at 977).

24   Further, "a presumption, or at least an inference, of reliance arises wherever there is a showing

25   that a misrepresentation was material."  *Id.*

26   ABUSA argues that Iglesias cannot show actual reliance on the "All Natural" or "100%

27   All Natural" labels because he continued to purchase Arizona beverages after engaging counsel,

28   filing suit against Hornell, and sending the CLRA letters.  Iglesias disputes the timeline of his

United States District Court
Northern District of California

purchases and contends that he lacks clear memory into the last purchase of each of the Arizona products.

Iglesias testified unequivocally in his deposition that he purchased Mucho Mango and Kiwi Strawberry through 2022:

> Q. Let me go back to Mucho Mango.  Are you certain that you purchased it in 2016?
> A. Yes, sir.
> Q. Are you certain you purchased it in 2017?
> A. Yes, sir.
> . . . .
> Q. Are you certain you purchased it in 2022?
> A. Yes, sir.
> Q. Sorry?
> A. Yes, sir.
> Q. Same questions for Kiwi Strawberry.  Are you certain you purchased it every year from 2016?
> A. Yes, sir.
> . . . .
> Q. You purchased it in 2022?
> A. Yes, sir.

(Iglesias Dep., 97:16-98:23.)  Iglesias did not know if he purchased Grapeade in 2022:

> Q. You purchased it [Grapeade] in 2016?
> A. '17, '18, '19, '20, '21.
> Q. And 2022?
> A. I don't know about '22.

(*Id.* at 100:2-5.)  Iglesias testified that he could not recall with specificity the dates he purchased the Green Tea with Ginseng and Honey, but he provided that he purchased the beverage between 2017 and 2021:

> Q. And what time period?  When did you make these purchases?
> A. Between '17 and '21, sir.
> Q. So you didn't purchase the Green Tea in 2016?
> A. I don't know the actual dates of that, because that wasn't a purchase that I would buy a lot.  So I don't know if I bought it every year.  I can't say that to this product.

(*Id.* at 101:10-18.)  Finally, Iglesias testified that he purchased the Lemonade and Fruit Punch between 2017 and 2021, but that he could not give specific months.  (103:18-21 (Lemonade); 105:6-15 (Fruit Punch).)  Plaintiff's counsel did not object to this line of questioning.

Iglesias argues that there is a genuine dispute of fact with regard to the timing of his

purchases. He first points to his testimony that he does not remember the last date of purchase of any of the beverages: "I don't remember my last purchases of any of those." (*Id.* at 114:19-20.) He suggests that, as a lay person, he could have misunderstood the date of filing the lawsuit to be the date of the first CLRA letter. His deposition testimony, however, forecloses that possibility. Counsel for ABUSA showed Iglesias a copy of the original complaint in this action immediately before confirming that Iglesias purchased Mucho Mango and Kiwi Strawberry sometime in 2022, after he approved the first CLRA letter:

> Q. D22, do you know what that is, sir?
> A. Class action complaint for Arizona.
> Q. This is the lawsuit in this case, correct?
> A. Yes, sir.
> Q. It was filed on December 23, 2022?
> A. Yes, sir.
> Q. So when you said you bought the Arizona Mucho Mango up to the date of the lawsuit, you're referring up until December 23, 2022?
> A. Close to it, sir.
> ….
> Q. So your last purchase of the Mucho Mango was around July 2022?
> A. I don't recall, sir.
> Q. Your last purchase of the Mucho Mango was in June of 2022?
> A. I don't remember my last purchases of any of those.
> Q. Then how do you know you stopped purchasing in July of 2022?
> A. I know I stopped purchasing when this was filed; that's what I told you.
> ….
> Q. So it's possible it was after July of 2022; it's possible it was before? You don't know?
> A. I know after this [the original complaint] was filed I did not purchase.
> ….
> Q. Right? You did purchase the Mucho Mango in 2022, correct?
> A. I just don't know what month.
> Q. Fair enough. And you did purchase the Kiwi Strawberry in 2022; you just don't know –
> A. Yes, sir.
> Q. -- what month?
> A. Yes, sir.

(*Id.* at 112:25-115:18.) In this context, there is no genuine dispute that, while Iglesias lacks memory of the exact date of his last purchase, he purchased at least two of the challenged beverages in 2022, with knowledge of the alleged misrepresentations. Because Iglesias's counsel sent the first CLRA letter in 2021, (*see* Defs.' Ex. C, First Hornell Letter), his 2022 purchases of Mucho Mango and Kiwi Strawberry necessarily occurred after Iglesias knew that, despite the product labels, the beverages did not contain "all natural" ingredients. In this instance, Iglesias's continued purchases

1    fatally undermine his ability to prove that "absent such representation, he would not, in all reasonable

2    probability, have entered into the contract or other transaction." *Engalla*, 15 Cal.4th at 976.

3         ABUSA contends that the decision in *Ashour v. Arizona Beverages USA LLC*, No. 19-cv-

4    7081-AT, 2025 WL 961682 (S.D.N.Y. Mar. 28, 2025) is directly on point.  In that case, the

5    district court dismissed claims under the CLRA and for breach of express warranty "because [the

6    plaintiff] continued to purchase Arizona products after learning that they contained citric acid."

7    *Id.* at *7.  Finding the argument "dispositive," the court reasoned that the plaintiff could not

8    "establish reliance, that is, that she would have 'behaved differently' had the Arizona products

9    disclosed that they contained the alleged preservative."  *Id.* (quoting *Williams v. Apple, Inc.*, 449

10   F. Supp. 3d 892, 913 (N.D. Cal. 2020) (quoting, in turn, *Mirkin v. Wasserman*, 5 Cal.4th 1082,

11   1093 (1993)).  Here, Iglesias learned that the labels may be misleading by September 2021,

12   formed a belief that they were in fact misleading by no later than December 2021, and yet

13   continued to purchase at least two of the beverages—Mucho Mango and Strawberry Kiwi—in

14   2022.  In other words, armed with the belief that Arizona beverages contained synthetic

15   ingredients or preservatives, Iglesias did not modify his behavior.  He could not have relied in

16   substantial part on the truth of the labels in making his purchases, and he thus cannot show actual

17   reliance.  *See Buckland*, 155 Cal. App. 4th at 808 ("In the case of fraudulent misrepresentation,

18   actual reliance occurs only when the plaintiff reposes confidence in the *truth* of the relevant

19   representation, and acts upon this confidence.").

20        ABUSA also points to another case involving its products, *Crawford v. Arizona Beverages

21   USA LLC*, No. 22-cv-220-DWD, 2024 WL 1345648 (S.D. Ill. Mar. 30, 2024).  In that case, the

22   plaintiff continued to purchase Arizona beverages after learning their true caloric and sugar

23   content.  *Id.* at *4.  Applying Illinois consumer protection laws, the court reasoned that the

24   plaintiff could not have been damaged and could not have found the misrepresentations to be

25   "material" because he continued to purchase the same beverages at the same price despite

26   knowledge of the misrepresentations.  *Id.*  Iglesias contends that ABUSA's reliance on *Crawford*

27   is misplaced, because the plaintiff in *Crawford* testified that he continued to find the price to be

28   fair even after learning of the misrepresentations, whereas Iglesias did not testify to the fairness of

United States District Court
Northern District of California

7

1   the price of the beverages in 2022.  The record does not support Iglesias's contention: Iglesias

2   testified that he found the price of Mango Mucho and Kiwi Strawberry, which he purchased in

3   2022, to be fair and reasonable.  (Iglesias Dep., 107:1-7, 108:13-15.)  Iglesias has not pointed to

4   evidence in the record of a genuine dispute of fact on this point.

5          Iglesias argues that he need not show that he would not have purchased the Arizona

6   beverages in the absence of the misrepresentations because, under the UCL, FAL, and CLRA, he

7   need only show that the representations were a "substantial part" of his decisions to purchase the

8   beverages.  He argues that his testimony, taken as a whole, indicates that the "All Natural"

9   representations on the labels formed a substantial part.  He does not, however, provide any

10  authority which demonstrates that generalized statements of reliance create a dispute of fact in the

11  face of his unambiguous testimony that he purchased the products after learning of the

12  misrepresentations on the labels.

13         Because there is no genuine dispute that Iglesias did not rely on the "All Natural" and

14  "100% All Natural" labels when purchasing the Arizona beverages, Iglesias's claims under the

15  UCL, FAL, and CLRA fail.

16  **C.     Iglesias Cannot Prove Breach of Express Warranty.**

17         In order to prove breach of express warranty under California law, Iglesias must show, "(1)

18  the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2)

19  the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v.*

20  *Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (internal marks omitted).  To determine

21  whether a statement forms part of the basis of the bargain, "the question is whether a promise was

22  conveyed by the seller and thus became 'a term of the parties' contract.' " *Caldwell v. Nordic*

23  *Nats., Inc.*, 709 F. Supp. 3d 889, 906 (N.D. Cal. 2024) (quoting Richard A. Lord, Williston on

24  Contracts 4th § 52.45 (4th ed. 2004)).

25         Courts have split on whether a breach of express warranty claim requires proof of actual

26  reliance where the parties were not in privity.  *See Watkins v. MGA Ent., Inc.*, 574 F. Supp. 3d

27  747, 758 (N.D. Cal. 2021) (discussing split and finding actual reliance required).  If actual reliance

28  is not required, then "[a]ny affirmation, once made, is part of the agreement unless there is 'clear

United States District Court
Northern District of California

8

1    affirmative proof' that the affirmation has been taken out of the agreement." *Weinstat*, 180 Cal.

2    App. 4th at 1229 (quoting Unif. Com. Code § 2-313 cmt. at ¶ 3).

3         As the Court found above, Iglesias did not actually rely on the representations for his post-

4    CLRA letter purchases.

5         ABUSA contends that Iglesias cannot show the "All Natural" claims were part of the basis

6    of the bargain under either standard.  ABUSA points to *Ashour*, 2025 WL 961682, at *8, where

7    the court applied the "affirmative proof" standard.  The *Ashour* court reasoned that "[plaintiff's]

8    continued purchase of Arizona products after she learned that they contain citric acid constitutes

9    such 'affirmative proof' that the 'No Preservatives' label was not a basis of her bargain with

10   Defendants."  *Id.*  It therefore granted summary judgment on the express warranty claim.

11        Iglesias contends that affirmative proof is required and that ABUSA has not shown such

12   proof.  Iglesias attempts to distinguish *Ashour*, 2025 WL 961682, by again trying to create a

13   dispute of fact as to whether he continued to purchase Arizona products after learning of their

14   synthetic ingredients.  However, as the Court found above, there is no genuine dispute that Iglesias

15   continued to purchase Arizona beverages after learning that the "All Natural" representations were

16   false.  Thus, as in *Ashour*, his continued purchases constitute "affirmative proof" that the

17   representations were not the basis of the bargain.  Iglesias considered the price of the beverages to

18   be fair even after learning of the misrepresentations, and so they could not have factored into his

19   agreement.  (*See* Iglesias Dep., 107:1-7, 108:13-15.)

20   **D.    Iglesias Abandoned His Claim for Money Damages.**

21        ABUSA contends that Iglesias abandoned his monetary damages claim in his deposition

22   testimony.  Iglesias testified, in relevant part:

23        Q.  Are you seeking a monetary recovery in this case?
          A.  No, sir.
24        Q.  Sorry?
          A.  No, sir.
25        Q.  What are you seeking?
          A.  Change that.  Just be fair.  Just --
26        Q.  Change what?
          A.  Change the "natural" thing on the – the "hundred percent natural" on the
27        product.  Just change it.  Stop lying to consumers; that's it.
          Q.  Change it to what?
28        A.  Get it out of there.

                                        9

1

> Q.  Remove the "all natural" label?
> A.  Yes, simple.
> Q.  And that's the sum and substance of what you're seeking in this lawsuit?
> A.  Yes, sir.

2

3

(Iglesias Dep., 138:2-19.)

4       ABUSA likens this testimony to that of a plaintiff in *Wilson v. Frito-Lay North*

5  *America, Inc.*, 260 F. Supp. 3d 1202, 1211 (N.D. Cal. 2017).  In that case, the court held

6  that the plaintiff abandoned his claims challenging a "0 grams Trans Fat" label by testifying

7  as follows:

8

> Q. What products are you challenging in this case?
> A. Products—the label that says "all natural."
> Q. And are there any other label statements that you are challenging in this case?
> A. No.

9

10

11

12  *Id.*  The questioning in *Wilson* was more ambiguous than in the instant case.  Instead of inquiring

13  as to what recovery Iglesias is seeking generally, counsel asked Iglesias directly if he was seeking

14  a monetary recovery.  Iglesias's counsel did not object.  Iglesias unequivocally answered in the

15  negative.  His response was not long-winded or confused, but rather straight to the point.  *See,*

16  *e.g.*, *Hathaway v. Idaho-Pac. Corp.*, No. 4:15-cv-86-BLW, 2017 WL 663064, at *2 (D. Idaho Feb.

17  17, 2017) (holding plaintiff did not abandon his claim because, in explaining his negative answer,

18  the "discussion [went] far afield from the original question, raising a question whether [plaintiff]

19  misunderstood the question.").

20       Iglesias argues that his deposition testimony contradicts his pleadings, his declaration in

21  support of his motion for class certification, and the testimony of his experts as to money

22  damages.  This is not a case where Iglesias misunderstood complex legal theories; he was asked

23  directly if he sought a monetary recovery and answered in the negative, without objection from

24  counsel.  *Alcala v. Monsanto Co.*, No. 08-cv-04828-PJH (DMR), 2014 WL 1266204, at *1 n.2

25  (N.D. Cal. Mar. 24, 2014), cited by Iglesias as an example of the affirmative statements required

26  to abandon a claim at a deposition, demonstrates why his counsel's efforts outside of the

27  deposition do not undo his express abandonment in the deposition.  In that case, the plaintiff

28  testified in his deposition that he was complaining about respiratory symptoms only, despite

United States District Court
Northern District of California

1  including other medical problems in his pleadings.  *Id.*  "However, [the plaintiff] tried to keep the

2  door open by stating that if he retained an expert, and if that expert were able to link his Roundup

3  products exposure to his other medical symptoms, he intended to seek damages for those

4  symptoms in [the] lawsuit."  *Id.*  The court ruled that, "[b]ased on [its] review of [the plaintiff's]

5  deposition testimony, he has narrowed his claims in this lawsuit to respiratory problems only."  *Id.*

6  His anticipated efforts to obtain expert testimony to the contrary could not revive the claims.

7  Here, like in *Alcala*, Plaintiff's counsel has retained experts to support his monetary damages

8  theory and included damages in his pleadings.  These efforts were directly contradicted by

9  Iglesias's testimony and so do not negate his abandonment of the claims.

10       Iglesias has abandoned his claim for monetary damages.

11  **E.  Iglesias Lacks Standing to Seek Injunctive Relief.**

12       ABUSA last argues that Iglesias lacks standing to seek injunctive relief because he

13  testified in his deposition that he has no present intention to purchase Arizona beverages.  When a

14  defendant challenges standing at the summary judgment stage, the court may not grant summary

15  judgment if the plaintiff shows a genuine dispute of material fact as to any element of standing.  *In*

16  *re ATM Fee Antitrust Litig.*, 686 F.3d 741, 747 (9th Cir. 2012).  Standing requires an injury in

17  fact, a causal connection between the injury and the challenged conduct, and redressability.  *Lujan*

18  *v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  "A consumer's inability to rely on a

19  representation made on a package, even if the consumer knows or believes the same representation

20  was false in the past, is an ongoing injury that may justify" injunctive relief.  *Davidson v.*

21  *Kimberly-Clark Corp.*, 889 F.3d 956, 961 (9th Cir. 2018).  Where a plaintiff would purchase a

22  product again in the future, but cannot do so because of false advertising, she suffers an injury-in-

23  fact that can confer standing.  *Id.*

24       Here, Iglesias testified, in relevant part:

25       Q.  And in your view if that was – what you're asserting is a false claim, if that
         was, quote, fixed, you would purchase the products again?
26       A.  I would – if I wanted to, yes I would.  If I decided – if I felt like it, I would
         buy it again.
27       Q.  But right now you don't feel like it; is that correct?
         A.  Right now I just feel like I'm being lied to, and so I'm not messing with
28       their product.

United States District Court
Northern District of California

United States District Court
Northern District of California

1        Q. Do you have any present intention to purchase the products again?
    A. No, sir.

2    (Iglesias Dep., 119:3-16.)

3        Iglesias responds that, read in context, his testimony shows he would be willing to

4    purchase the beverages again if he could trust they were "All Natural" as advertised. Iglesias also

5    points to his declaration in support of his pending motion for class certification. He attests:

6            I still see these Arizona beverages for sale and would consider purchasing them

7            again in the future, but I do not feel I can trust the labeling. Unless Defendant
        changes its representations or provides clear and accurate information, I am not
        able to determine whether the products are in fact "natural" as advertised.

8

9    (Dkt. No. 102-4, Iglesias Decl., ¶ 5.)

10        Iglesias has not demonstrated a genuine issue of fact regarding whether he would purchase

11    Arizona beverages again in the future. He has failed to show that his future harm is "actual or

12    imminent" or that there is a likelihood he will "again be wronged in a similar way." *Lujan*, 504

13    U.S. at 564; *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). Iglesias unambiguously testified that

14    he has no present intent to purchase Arizona beverages. (Iglesias Dep., 119:15-16.) His

15    declaration that he would "consider" purchasing the beverages falls short of demonstrating an

16    ongoing injury. *See In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*, No. 20-15742, 2021 WL

17    3878654, at *2 (9th Cir. Aug. 31, 2021) ("plaintiffs' declarations that they would "consider"

18    purchasing properly labeled Coke are insufficient to show an actual or imminent threat of future

19    harm."); *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (plaintiff's

20    "statement that she would 'consider buying' Twinings products does not satisfy this standard.");

21    *Moore v. Mars Petcare US, Inc.*, No. 16-cv-07001-MMC, 2023 WL 4536882, at *4 (N.D. Cal.

22    July 12, 2023) ("a statement that one will not buy a product as currently constituted is not a

23    statement that one will buy it if it is changed.").

24        Because Iglesias has not demonstrated that he intends to purchase the product in the future,

25    or that he would do so if the misleading labels were corrected, he lacks standing to seek injunctive

26    relief.

27    //

28    //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

For the foregoing reasons, the Court GRANTS ABUSA's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: August 14, 2025

_____
JEFFREY S. WHITE
United States District Judge