# EXHIBIT 1

**Defendant's Unredacted Motion and
Memorandum of Points and Authorities
In Support of Motion for Summary
Judgment (Previously Filed Under
Seal at ECF No. 109)**

1   STEVENS & LEE
    Robert P. Donovan (*pro hac vice*)
2   robert.donovan@stevenslee.com
    669 River Drive, Suite 201
3   Elmwood Park, New Jersey 07407
    Telephone: (201) 857-6778
4   Facsimile: (610) 371-7938
5
    WILLENKEN LLP
6   Jason H. Wilson (Bar No. 140269)
    jwilson@willenken.com
7   707 Wilshire Boulevard, Suite 3850
    Los Angeles, California 90017
8   Telephone: (213) 955-9240
    Facsimile: (213) 955-9250
9

10  Attorneys for Defendant,
    ARIZONA BEVERAGES USA LLC
11

12               UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
13

14  THOMAS IGLESIAS, individually and on    CASE NO. 4:22-cv-09108-JSW
    behalf of all others similarly situated,

15                       DEFENDANT'S NOTICE OF MOTION
           Plaintiff,            AND MOTION FOR SUMMARY

16                       JUDGMENT; MEMORANDUM OF
       v.                 POINTS AND AUTHORITIES IN

17                       SUPPORT
    ARIZONA BEVERAGES USA, LLC,

18                       JUDGE: HON. JEFFREY S. WHITE,
           Defendant.         U.S.D.J.

19                       CTRM: 5
                      DATE: August 1, 2025

20                       TIME: 9:00 am
21

22   **TO PLAINTIFF AND PLAINTIFF'S ATTORNEYS OF RECORD:**
23

24       **PLEASE TAKE NOTICE** that on August 1, 2025, at 9:00 am, or as soon thereafter as the

25  matter may be heard, before the Honorable Jeffrey S. White, United States District Judge, at the

26  Oakland Courthouse, 1301 Clay Street, Oakland, California, defendant, Arizona Beverages USA,

27

28             DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
            MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1  LLC ("Defendant"), will and hereby does move, pursuant to Fed. R. Civ. P. 56, for entry of

2  summary judgment in Defendant's favor.

3      This motion is based upon this motion, the accompanying memorandum of points and

4  authorities, the accompanying declaration of counsel, Robert P. Donovan, Esq., the record in this

5  action, and all matters in which the Court may take notice and any arguments presented at the time

6  of hearing.

Dated:  June 20, 2025                    */s/ Robert P. Donovan*
                                        ROBERT P. DONOVAN

                                        STEVENS & LEE
                                        669 River Drive, Suite 201
                                        Elmwood Park, New Jersey 07407
                                        Telephone:  (201) 857-6778
                                        Facsimile:  (201) 857-6761
                                        robert.donovan@stevenslee.com

                                        *Attorneys for Defendant*
                                        *Arizona Beverages USA, LLC*

---

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

06/20/2025 SL1 3023461v1 115260.00012

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................................................................ii

I.      SUMMARY OF ARGUMENT/STATEMENT OF ISSUES PRESENTED.....................1

II.     PROCEDURAL HISTORY .............................................................................................2

III.    UNDISPUTED FACTS GERMANE TO MOTION...........................................................3

        A.      Plaintiff's Testimony About Purchases ...............................................................5

        B.      Plaintiff's Testimony About Ceasing Purchases ..................................................7

IV.     ARGUMENTS AND AUTHORITIES .............................................................................8

        A.      Summary Judgment Standard Under Rule 56 ......................................................8

        B.      Plaintiff Cannot Prove Reliance Because He Continued to Buy
                The Products After Retaining Counsel and After Becoming
                Aware of the Alleged False All-Natural Labels .......................................................9

        C.      Plaintiff's Purchases After Retaining Counsel and Becoming
                Aware of the Alleged False Labels, Mean That He Cannot
                Demonstrate That the All Natural Label Was Relied Upon and/or
                Constituted the Basis of the Bargain of Any Warranty .........................................11

        D.      Plaintiff Abandoned the Claim of Economic Injury by Testifying
                That He is not Seeking Any Monetary Recovery ..................................................12

        E.      No Triable Issue of Fact Exists Concerning Damages Because,
                After Forming Belief That the Products Were Falsely Labeled,
                Plaintiff Continued to Purchase the Products at a Price That He
                Admits Was Fair and/or Reasonable ....................................................................13

        F.      The Evidence Demonstrates That Plaintiff Lacks Article III
                Standing to Seek Injunctive Relief........................................................................14

        G.      Plaintiff Cannot Satisfy His Article III Burden to Demonstrate
                Redressability .......................................................................................................17

CONCLUSION ..........................................................................................................................18

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ............................................................................................. 8

5

6

*Anderson v. SeaWorld Parks & Entertainment, Inc.,*
   2018 WL 1981396 (N.D. Cal. Feb. 20, 2018) ....................................................... 14

7

*Asghari v. Volkswagen Grp. of Am., Inc.,*
   42 F. Supp. 3d 1306 (C.D. Cal. 2013) ................................................................. 12

8

9

*Ashour v. Arizona Beverages USA LLC,*
   2025 WL 961682 (S.D.N.Y. Mar. 28, 2025) ............................................. 9,10,11,12

10

11

*B.C. v. Plumas Unified Sch. Dist.,*
   192 F.3d 1260 (9th Cir. 1999) ............................................................................. 14

12

*Bates v. United Parcel Serv., Inc.,*
   511 F.3d 974 (9th Cir. 2007) ............................................................................... 15

13

14

*Carter v. Ford Motor Co.,*
   561 F.3d 562 (6th Cir. 2009) ............................................................................... 13

15

16

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ............................................................................................. 8

17

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
   598 F.3d 1115 (9th Cir. 2010) ............................................................................. 14

18

19

*Chapman v. Pier 1 Imps. (U.S.), Inc.,*
   631 F.3d 939 (9th Cir. 2011) ............................................................................... 14

20

21

*Cimoli v. Alacer Corp.,*
   546 F. Supp. 3d 897 (N.D. Cal. 2021) ................................................................. 16

22

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ......................................................................................... 14,15

23

24

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ........................................................................................... 15

25

26

*Crawford v. Arizona Beverages USA LLC,*
   2024 WL 1345648 (S.D. Ill. Mar. 30, 2024) ............................................... 10,13,14

27

28

---

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

ii

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ...................................................................................... 15,16,17

*Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*,
   772 F.2d 505 (9th Cir. 1985) ............................................................................................. 13

*Gordon v. Ramirez-Palmer*,
   2006 WL 2346357 (E.D. Cal. Aug. 11, 2006) ................................................................... 13

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ............................................................................................. 9

*Humboldt Baykeeper v. Union Pac. R.R. Co.*,
   2008 WL 4614659 (N.D. Cal. Oct. 16, 2008) ...................................................................... 8

*Joslin v. Clif Bar & Co.*,
   2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) ............................................................... 16,17

*Khasin v. Hershey Co.*,
   2014 WL 1779805 (N.D. Cal. May 5, 2014) ....................................................................... 9

*Lanovaz v. Twinings N. Am., Inc.*,
   726 F. App'x 590 (9th Cir. 2018) ...................................................................................... 16

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .......................................................................................................... 15

*Mohiuddin v. Raytheon Elec. Sys.*,
   2007 WL 9734437 (C.D. Cal. May 9, 2007), *aff'd sub nom. Mohiuddin v.*
   *Raytheon Co.*, 320 F. App'x 788 (9th Cir. 2009) .............................................................. 13

*Morizur v. Seaworld Parks & Entertainment, Inc.*,
   2020 WL 6044043 (N.D. Cal. Oct. 13, 2020) ............................................................... 15,17

*Parsons v. Pettway*,
   2022 WL 16509539 (N.D. Ala. Sept. 21, 2022) ................................................................ 13

*Prescott v. Nestle USA, Inc.*,
   2020 WL 3035798 (N.D. Cal. June 4, 2020) ................................................................. 16,17

*Rahman v. Mott's LLP*,
   2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) .............................................................. 16,17

*Rasco v. Potter*,
   265 F. App'x 279 (5th Cir. 2008) ...................................................................................... 13

*Red v. Kraft Foods, Inc.*,
  2012 WL 8019257 (N.D. Cal. Apr. 12, 2012)................................................................10

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009)........................................................................12

*Schwartz v. Bai Brands, LLC*,
  2022 WL 16935267 (C.D. Cal. Aug. 19, 2022) ...............................................16,17,18

*Simpson v. California Pizza Kitchen, Inc.*,
  989 F. Supp. 2d 1015 (S.D. Cal. 2013) ......................................................................10

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ....................................................................................................15

*Uzuegbunam v. Preczewski*,
  592 U.S. 279 (2021) ....................................................................................................17

*Versarge v. Twp. of Clinton N. J.*,
  984 F.2d 1359 (3d Cir. 2007) .....................................................................................13

*Viggiano v. Hansen Natural Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ........................................................................12

*Watkins v. MTA Entertainment Inc.*,
  574 F.Supp.3d 747 (N.D. Cal. 2021) ..........................................................................12

*Wilson v. Frito-Lay N. Am., Inc.*,
  260 F. Supp. 3d 1202 (N.D. Cal. 2017).........................................................................9

**State Cases**

*Buckland v. Threshold Enters., Ltd.*,
  155 Cal. App. 4th 798 (2007) .....................................................................................10

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011)..................................................................................................9

**State Statutes**

California Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq*...........................*passim*

California False Advertising Law (Cal. Business & Prof. Code § 17500, *et seq.*) ...............*passim*

California Unfair Competition Law (Cal. Business & Prof. Code § 17200, *et seq.*...............*passim*

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................... 8

Fed. R. Civ. Pro. 56 ................................................................................................... 1,8

## I. <u>SUMMARY OF ARGUMENT/STATEMENT OF ISSUES PRESENTED</u>

Defendant, Arizona Beverages USA LLC ("Defendant" or, at times, "ABUSA"), submits the within memorandum of law in support of its motion for entry of summary judgment against Plaintiff pursuant to Fed. R. Civ. Pro. 56. As is set forth more fully below, just grounds exist to grant the motion because:

- On September 9, 2021, Plaintiff retained counsel and, at that time, believed that the all-natural labels on Defendant's products were false. In December 2021, Plaintiff authorized counsel to send a letter that evidenced his knowledge of ingredients in Defendant's products claimed to be unnatural. However, notwithstanding his belief and such knowledge, Plaintiff continued to buy Defendant's beverages in 2022. As a result, Plaintiff cannot demonstrate reliance upon the all natural label and/or that the natural statement was the basis of any bargain, which are elements of his claims under California Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*, "CLRA"), False Advertising Law (Cal. Bus. and Prof. Code § 17500, *et seq.*, "FAL"), Unfair Competition Law (Cal. Bus. and Prof. Code § 17200, *et seq.,* "UCL") and/or express warranty.

- No triable issue of fact exists concerning economic injury because: (1) Plaintiff abandoned that claim by testifying that he is not seeking any monetary relief; and (2) he continued to buy the products, after forming the belief that they were falsely labeled all natural, at a price that he considered to be fair and reasonable.

- Plaintiff lacks Article III standing to obtain injunctive relief. Plaintiff testified that, after filing this action on December 23, 2022, he made sure that he stopped buying Defendant's products. When asked why, Plaintiff testified that: (1) the alleged false label "needs to be fixed" and (2) "then if I decide to drink something that is not so good, it's up to me instead of being tricked into drinking it." He further testified that he has no present intention to purchase Defendant's

1    products again and that his diet requires him only to consume natural foods.

2    Given: (1) Plaintiff's knowledge of the alleged false labeling and of the asserted

3    non-natural ingredients in ABUSA's products; (2) his belief that these products

4    are not natural and; (3) his testimony that he has no intention to purchase the

5    products again, no likely imminent threat of future harm exists.

6    • Plaintiff cannot satisfy his burden under Article III to demonstrate redressability

7    given his lack of standing to obtain an injunction and his testimony that he is

8    not seeking monetary relief.

9    ## II. <u>PROCEDURAL HISTORY</u>

10    Plaintiff filed this action on December 23, 2022. (ECF No. 1). On February 24, 2023,

11    Defendant filed a motion to dismiss and to stay this action. (ECF No. 26). On March 10, 2023,

12    Plaintiff filed the first amended complaint ("FAC") rendering Defendant's motion moot. (ECF

13    No. 29).

14    Plaintiff's claims concern the labels on the following seventeen (17) products bearing the

15    Arizona brand: Kiwi Strawberry Fruit Juice Cocktail ("Kiwi Strawberry"), Lemonade Fruit Juice

16    Cocktail ("Lemonade"), Mucho Mango Fruit Juice Cocktail ("Mucho Mango"), Fruit Punch Fruit

17    Juice Cocktail ("Fruit Punch"), Watermelon Fruit Juice Cocktail ("Watermelon"), Pineapple Fruit

18    Juice Cocktail ("Pineapple"), Iced Tea with Peach Flavor ("Peach"), Arnold Palmer Half & Half

19    Iced Tea Lemonade ("Arnold Palmer"), Golden Bear Strawberry Lemonade ("Golden Bear"), RX

20    Energy Herbal Tonic ("RX Energy"), Green Tea with Ginseng and Honey ("Green Tea"), Diet

21    Peach Iced Tea ("Diet Peach"), Arizona Diet Raspberry Iced Tea ("Diet Raspberry"), Diet Lemon

22    Iced Tea ("Diet Lemon"), Orangeade Fruit Juice Cocktail ("Orangeade"), Grapeade Fruit Juice

23    Cocktail ("Grapeade"), and Lemonade Drink Mix ("Lemonade Mix") (collectively, "Products").

24    (FAC, ¶¶ 9-35).

25    Plaintiff asserts that the labels on the Products falsely state "All Natural," "100% Natural,"

26    and/or "100% All Natural" because they contain one or more of the following ingredients alleged

27    to be not natural: natural flavors, colors (i.e., annatto, beta carotene, fruit and vegetable juice, and

28

---

1  vegetable juice; collectively referred to herein as, "Colors"), high fructose corn syrup ("HFCS"),

2  malic acid, ascorbic acid and erythritol. (FAC, ¶ 9). Plaintiff alleges that he relied on the "All-

3  Natural" Label and that he would not have purchased the Products had he known they were falsely

4  advertised as "All Natural." (*Id.*, ¶¶ 106, 109).

5      Defendant filed a motion to dismiss the FAC on April 14, 2023. (ECF No. 34). On

6  June 16, 2023, this Court entered an order granting, in part, and denying, in part, that motion

7  allowing Plaintiff leave to file a second amended complaint by July 17, 2023. (ECF No. 47).

8  Plaintiff did not amend the FAC and Defendant filed an answer on July 28, 2023. (ECF No. 50).

9  Accordingly, the following claims have been dismissed: equitable restitution, unjust enrichment,

10  fraudulent advertising (apart from the false label claims) and punitive damages under the FAL and

11  UCL. (ECF No. 47). Plaintiff's remaining claims are under the CLRA, UCL, FAL and for breach

12  of express warranty. Plaintiff filed a motion for class certification on May 15, 2025 (ECF No.

13  102) and Defendant's opposition to that motion is due August 15, 2025. (ECF No. 89).

14              **III. UNDISPUTED FACTS GERMANE TO MOTION**

15      On September 9, 2021, Plaintiff retained counsel to file an action against Hornell Brewing

16  Co., Inc. ("Hornell"), and related parties, due to alleged false "All Natural" labels on "Arizona's

17  Fruit Juice Cocktail Beverages." [Donovan Dec., Ex. A, T. 71:23-T.72:10, Ex. B]. At the time he

18  signed the retainer agreement, Plaintiff believed the all-natural labels on Defendant's products

19  were false and misleading. [*Id.*, T. 75:3-6]. Plaintiff testified further as follows:

20      Q.  And what were you – believed that was false and misleading
          at the time that you signed this agreement, D18 [retainer
21          agreement]?
22      A.  Well, I believe I thought I was buying an all-natural product.
        Q.  And you believe that it wasn't all natural?
23      A.  Well, I thought it was.
        Q.  But why would you believe at that time that you were
24          deceived?
25      A.  I didn't know. I bought a lot of product, and then I remember
            just hearing something about that it – it's not all natural, you
26          know. And it started from that, a little inquiry, and I reached
            out to see if that was true or not to Clarkson. **And not**
27          **knowing if it was or not, and – but lo and behold it's true.**

28

**It's not all natural.**  [*Id.*, T. 72:22 – T. 73:13 (emphasis added)].

By letter dated December 14, 2021 ("December 2021 Letter"), Plaintiff notified Hornell of his claims concerning the Arizona beverage products that contained the Colors claimed to be unnatural. (*Id.*, Ex. C). The Plaintiff read the December 2021 Letter before it was sent, agreed with the assertions contained therein and authorized his counsel to send that letter. [*Id.*, Ex. A, T. 91:6-21]. In the December 2021 Letter, Plaintiff referenced the following nine (9) of the Products as being falsely labeled "All Natural" due to the presence of the alleged unnatural Colors: Kiwi Strawberry, Lemonade, Mucho Mango, Fruit Punch, Orangeade, Grapeade, Lemonade Mix, Golden Bear, and RX Energy. (*Id.*, Ex. C, p. 2).

The December 2021 Letter also contained allegations that the Kiwi Strawberry, Fruit Punch, Lemonade, Mucho Mango, Watermelon, Orangeade, and Grapeade were falsely labeled as having "No Preservatives" because they contained ascorbic acid, an ingredient that Plaintiff claimed to be a preservative. (*Id.*, p. 1). Plaintiff testified that he believes that all natural means "no chemicals; no additives; no preservatives" and no "unnatural products in it." [Donovan Dec., Ex. A, T. 131:4-16].

On March 21, 2022, Plaintiff filed suit against Hornell in the United States District Court for the Northern District of California, Case No. 3:22-cv-01795 ("Hornell Action"), claiming that the following Products were falsely labeled all natural because they contained the Colors:  Kiwi Strawberry, Lemonade, Mucho Mango, Fruit Punch, Orangeade, Grapeade, Lemonade Mix, Golden Bear, and RX Energy. (Hornell Action ECF No. 1; Donovan Dec., Ex. F, ¶ 1, pp.1-11).

Plaintiff authorized his counsel to send a second letter to Hornell's attorney, dated June 13, 2022 ("June 2022 Letter"), asserting that all the Products were deceptively labeled all natural because they contained alleged unnatural ingredients and/or preservatives including:  natural flavors, the Colors, HFCS, malic acid, ascorbic acid and erythritol. (Donovan Dec., Ex. A, T. 91:22-T. 92:7; Ex. D, p. 2). Plaintiff agreed with the assertions in that letter. (*Id.*)

.

On June 22, 2022, Plaintiff amended the complaint in the Hornell Action asserting the same claims, as eventually made here, about the same 17 Products being falsely labeled "All Natural" because the Products contained natural flavors, the Colors, HFCS, malic acid, ascorbic acid and erythritol.  (Hornell Action, ECF No. 20; Donovan Dec., Ex. G, ¶¶ 1 and 11-32).  Plaintiff voluntarily dismissed the Hornell Action on January 6, 2023.  (Hornell Action ECF No. 54).

Additionally, Plaintiff authorized his attorneys to send a letter to Defendant, dated December 12, 2022 ("December 2022 Letter"), claiming that the Products were mislabeled as all natural and identifying ingredients claimed to be the basis for his claims including the following: natural flavors, Colors, HFCS, malic acid, ascorbic acid and erythritol.  (*Id.*, T. 92:8-T. 93:7; Ex. E, p. 3).  Plaintiff agreed with the allegations in that letter.  (*Id.*, Ex. A., T. 92:24-T. 93:1).  The June 2022 and December 2022 Letters are virtually identical.  (*Id.*, Exs. D and E).

## A.    PLAINTIFF'S TESTIMONY ABOUT PURCHASES

Plaintiff testified that he bought and consumed the following Products: Mucho Mango, Kiwi Strawberry, Grapeade, Green Tea, Lemonade and Fruit Punch.  [Donovan Dec., Ex. A, T. 93:2-13; T. 94:10-16; T. 104:9-T.105:1].  He further testified as follows regarding the years of his purchases:

> Q.    The lawsuit was filed in December of 2022.  You mean you purchased the Mucho Mango on a regular basis from 2016 to December 2022?
> A.    Something like that, yes, sir.  [*Id.*, T. 95:1-4].
>
> ***
> Q.    Let me go back to Mucho Mango.  Are you certain that you purchased it in 2016?
> A.    Yes, sir.
> Q.    Are you certain you purchased it in 2017?
> A.    Yes, sir.
> Q.    Are you certain that you purchased it in 2018?
> A.    Yes, sir.
> Q.    Are you certain that you purchased it in 2019?
> A.    Yes, sir.
> Q.    Are you certain that you purchased it in 2020?
> A.    Yes, sir.
> Q.    Are you certain that you purchased it in 2021?
> A.    Yes, sir.

Q.   **Are you certain that you purchased it in 2022?**
A.   **Yes, sir.**
Q.   **Sorry?**
A.   **Yes, sir.**
Q.   Same questions for the Kiwi Strawberry.  Are you certain you purchased it every year from 2016?
A.   Yes, sir.
Q.   2017?
A.   Yes, sir.
Q.   2018?
A.   Yes, sir.
Q.   2019?
A.   Yes, sir.
Q.   2020?
A.   Yes, sir.
Q.   You purchased it in 2021?
A.   Yes, sir.
Q.   **You purchased it in 2022?**
A.   **Yes, sir.** [*Id.*, T. 97:16 – T. 98:23 (emphasis added)].

***

Q.   **And you did purchase the Grapeade in 2022; you just don't know what month?  Right?**
A.   **Yes, sir.** [*Id.*, T. 115:19-21 (emphasis added)].

Plaintiff stated that the prices of the Products that he bought, in gallons, were between $4 and $5 dollars per container.  [*Id.*, Ex. A, T. 95:11-T. 96:5; T. 100:15-21; T.102:8-24; T. 104:2-8; T. 105:19-T. 106:2].  He testified that the price of the Mucho Mango stayed "pretty much" the same during the period of his purchases, 2016 to commencement of this lawsuit.  (*Id.*, Ex. A, T. 96:11-14].  Likewise, the price he paid for the Kiwi Strawberry stayed the same between the period that he purchased that product, from 2016 to 2022.  [*Id.*, Ex. A, T. 99:12-18].  Plaintiff considered the prices he paid for all of the Products fair and/or reasonable.  [*Id.*, Ex. A, T. 107:1-7; T. 108:13-15; T. 109:23-25; T. 110:25-T. 111:24; T. 112:6-14].  He does not know how many ABUSA products he purchased and is unaware of how much money he spent.  [*Id.*, T. 95:5-6; T. 99:4-6; T. 100:9-14; T. 102:8-14; T. 103:4-6; T. 103:22-T. 104:1; T. 105:16-21].

Significantly, Plaintiff testified further as follows about his claims in this action:

Q.   Are you seeking a monetary recovery in this case?

A.    No, sir.

Q.    Sorry?

A.    No, sir.

Q.    What are you seeking?

A.    Change that. Just be fair. Just –

Q.    Change what?

A.    Change that "natural" thing on the – the "hundred percent natural" on the product. Just change it. Stop lying to consumers, that's it.

Q.    Change it to what?

A.    Get it out of there.

Q.    Remove the "all natural" label?

A.    Yes. Simple.

**Q.    And that's the sum and substance of what you're seeking in this lawsuit?**

**A.    Yes, sir.** [Donovan Dec., Ex. A, T. 138:2-19 (emphasis added)].

## B.    **PLAINTIFF'S TESTIMONY ABOUT CEASING PURCHASES**

Plaintiff testified that after December 23, 2022, he "made sure that I was not buying" Defendant's product. [*Id.*, T. 112:23-T. 113:21]. He testified further as follows:

Q.    Now, you said you're certain that you stopped purchasing the products after December 12th – sorry, December 23, 2022.

Q.    Have you purchased the products – any other products since December 23, 2022?

A.    No, sir.

Q.    Why not?

A.    Just haven't, sir.

Q.    Is there a reason?

A.    Just the false claim needs to be fixed for me, sir.

Q.    Say again.

A.    The false claim needs to be fixed. **Then if I decide to drink something that's not so good, it's up to me instead of being tricked into drinking it.** [*Id.*, T. 118:5-20 (emphasis added)].

***

Q.    When you say, "the false claim needs to be fixed," what do you mean?

A.    A hundred percent natural.

| | | |
|---|---|---|
| 1 | Q. | And in your view if that was – what you're asserting is a false claim, if that was, quote, fixed, you would purchase the products again? |
| 2 | | |
| 3 | A. | I would – if I wanted to, yes, I would.  If I decided – if I felt like it, I would buy it again. |
| 4 | **Q.** | **But right now you don't feel like it, is that correct?** |
| | **A.** | **Right now I just feel like I'm being lied to, and so I'm not** |
| 5 | | **messing with their product.** |
| | **Q.** | **Do you have any present intention to purchase the** |
| 6 | | **product again?** |
| 7 | **A.** | **No, sir.** [*Id.*, T. 118:25 – T. 119:16; emphasis added]. |

Plaintiff stated that, due to a "health scare" in 2023, he had to change his diet.  [*Id.,* T. 121:15-T. 122:8].  He identified his dietary restrictions as **"just—just eat natural foods**.  No process—no hardly processed foods."  [*Id.*, T. 121:24 – T. 122:1 (emphasis added)].  As part of those restrictions, he was required to reduce sugar intake including purchasing sweetened beverages like Defendant's products.  [*Id.*, T. 133:15-22].

## IV.  <u>ARGUMENTS AND AUTHORITIES</u>

### A.    <u>SUMMARY JUDGMENT STANDARD UNDER RULE 56</u>

Summary judgment is proper where the admissible evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  A genuine dispute exists when there is sufficient evidence such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49 (1986).  Material facts are those which may affect the outcome of the case.  *Id.*  "A party moving for summary judgment who does not have the ultimate burden of persuasion at trial, must produce evidence which either negates an essential element of the nonmoving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Humboldt Baykeeper v. Union Pac. R.R. Co.*, No. C 06-0256 JSW, 2008 WL 4614659, at *1 (N.D. Cal. Oct. 16, 2008) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000)); *see also* Celotex Corp., 477 U.S. at 325.

**B.**   **PLAINTIFF CANNOT PROVE RELIANCE BECAUSE HE CONTINUED TO BUY THE PRODUCTS AFTER RETAINING COUNSEL AND AFTER BECOMING AWARE OF THE ALLEGED FALSE ALL-NATURAL LABELS**

To prevail under the UCL, CLRA and FAL claims, Plaintiff must demonstrate actual reliance on the challenged misrepresentations and that economic injury occurred as a result of that reliance. *See Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1208 (N.D. Cal. 2017). To prove reliance, a plaintiff must demonstrate that the misrepresentation was the immediate cause of the injury producing conduct. *Id.* (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009)). A plaintiff may show that a misrepresentation was an immediate cause of the plaintiff's conduct if plaintiff can prove that, in the absence of the misrepresentation, plaintiff, in all reasonable probability, would not have engaged in the injury producing conduct. *Id.*; *see also Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 330 (2011) (reliance can be proven if the plaintiff establishes he "would not have bought the product but for the misrepresentation"); *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (noting UCL and FAL claims were restricted to individuals who have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." (alteration in original) (citation omitted)); *Khasin v. Hershey Co.*, No. 5:12-CV-01862-EJD, 2014 WL 1779805, at *4 (N.D. Cal. May 5, 2014) (granting summary judgment in favor of defendant on UCL claim where plaintiff's deposition testimony revealed he did not purchase defendant's products as a result of, or in reliance on, misrepresentations or deceptive advertising). The CLRA also requires a plaintiff to establish he suffered damage "as a result of" the alleged misrepresentation. *Hinojos*, 718 F.3d at 1107 (quoting Cal. Civil Code § 1780(a)).

Two recent decisions concerning false label claims on Defendant's products are directly on point and support entry of summary judgment here. *Ashour v. Arizona Beverages USA LLC*, No. 19 Civ. 7081 (AT), 2025 WL 961682 (S.D.N.Y. Mar. 28, 2025), concerned many of the same Arizona brand products that are at issue in this action. One of the plaintiffs asserted California CLRA, UCL and FAL claims but, like Plaintiff here, continued to buy Arizona products after retaining counsel to sue ABUSA about alleged false labeling. *Id.* at *2. The court granted

summary judgment in favor of defendants, including ABUSA, against that plaintiff, because the plaintiff "kept buying Arizona products after learning they contained citric acid" and thereby could not establish reliance, "that is, that she would have 'behaved differently' had the Arizona products disclosed that they contained the alleged preservative." *Id.* at *2.

*Crawford v. Arizona Beverages USA LLC*, No. 22-cv-220-DWD, 2024 WL 1345648 (S.D. Ill. Mar. 30, 2024), concerned claims under the Illinois Consumer Fraud Statute but presented another virtually identical factual circumstance. The court granted summary judgment in favor of ABUSA based upon finding that plaintiff there, by continuing to buy the Defendant's Arnold Palmer Lite product, after learning he has been deceived by the label "Lite," was unable to prove that the alleged misrepresentation was material and/or a determinative cause for his purchases. *Id.*, at *5. In that regard, the court ruled:

> While Plaintiff claims he was misled by the use of the term "Lite" in the period of his use of the product before 2018 or 2019, he nevertheless continued to purchase the same product after learning he had been deceived. Assuming for the moment the "Lite" representation was and is deceptive, and actually deceived Plaintiff before 2018 or 2019, it was not a material misrepresentation to him because he did not act differently once he learned the truth. Put another way, his decision whether to purchase the product after learning of its sugar and caloric content was not determined by the alleged misrepresentation: the "Lite" reference. [*Id.*]

Other cases have followed that rationale. *See Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 809 (2007) (affirming dismissal of complaint because plaintiff "lacked the requisite confidence in the truth and material completeness of their representations, and cannot establish reliance for the purpose of her fraud claims"), *overruled, in part, on the grounds by Kwikset*, 51 Cal. 4th at 337; *Simpson v. California Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1026-27 (S.D. Cal. 2013) (dismissing warranty claim because "Plaintiff had a sufficient opportunity to examine the Contested Pizza prior to purchase. . .[but] has not alleged any justifications for her failure to inspect the Contested Pizza before purchasing and consuming them."); *see also Red v. Kraft Foods, Inc.*, No. CV 10–1028–GW(AGRx), 2012 WL 8019257, at *12 (N.D. Cal. Apr. 12, 2012) (in class

1    action context, court questioned whether a plaintiff could prove materiality if the proofs ultimately

2    showed that the plaintiff purchased the product after filing suit).

3           In *Ashour*, the court found that plaintiff's continued purchases of Defendant's products,

4    after learning that they contained citric acid, was dispositive of the issue of reliance. *Id.*, at *7.

5    Likewise, here, Plaintiff's testimony that he purchased the Products because of the taste and the

6    all-natural labeling (see e.g., Donovan Dec., Ex. A, T.106:14-20; and T.109:4-14), have no bearing

7    upon the same dispositive issue given that Plaintiff continued to buy the Mucho Mango, Kiwi

8    Strawberry and Grapeade in 2022. [Donovan Dec., Ex. A, T. 97:11-98:23; T. 115:19-21]. Plaintiff

9    made those purchases after having retained counsel, after coming to the belief that the all natural

10   labels were false and after reading and authorizing the December 2021 Letter, wherein he

11   identified the Colors and ascorbic acid in those same products that he asserted rendered the labels

12   false. [Donovan Dec., Ex. A, T. 72:22 – T. 73:13; T. 75:3-6; Ex. B and Ex. C].

13          Based upon Plaintiff's testimony, there can be no genuine dispute that Plaintiff's purchases

14   in 2022 were made with the knowledge of the contents of the Products claimed to be not natural,

15   and with the belief that the Products were falsely labeled "All Natural." Due to his continued

16   purchases with such knowledge, Plaintiff cannot demonstrate to a reasonable fact finder that, in

17   the absence of the "All Natural" statement, in all reasonable probability, he would not have bought

18   the Products. This is so because, when possessing the knowledge of that the labels were false and

19   contained the ingredients alleged to be unnatural, he still purchased the Products. Therefore, just

20   grounds exist to grant ABUSA's motion for summary judgment in its favor on the CLRA, UCL

21   and FAL claims.

22   **C.      PLAINTIFF'S PURCHASES AFTER RETAINING COUNSEL AND BECOMING
             AWARE OF THE ALLEGED FALSE LABELS, MEAN THAT HE CANNOT**
23   **DEMONSTRATE THAT THE ALL NATURAL LABEL WAS RELIED UPON
             AND/OR CONSTITUTED THE BASIS OF THE BARGAIN OF ANY WARRANTY**
24

25          To prove breach of express warranty under California law, there must be evidence that

26   Defendants: "(1) made an affirmation of fact or promise or provided a description of its goods; (2)

27   the promise or description formed part of the basis of the bargain; (3) the express warranty was

28

1    breached; and (4) the breach caused injury to the plaintiff." *Viggiano v. Hansen Natural Corp.*,

2    944 F. Supp. 2d 877, 893 (C.D. Cal. 2013) (citation omitted). There is also law that provides

3    "there must be actual reliance where the parties are not in privity." *See Watkins v. MTA*

4    *Entertainment Inc.*, 574 F.Supp.3d 747, 758 (N.D. Cal. 2021). *Sanders v. Apple Inc.*, 672 F. Supp.

5    2d 978, 988 (N.D. Cal. 2009) (reliance upon the representation must be shown to prove breach of

6    warranty); *see also Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1334 (C.D. Cal.

7    2013) (where there is no privity of contract between plaintiff and defendant, a plaintiff must

8    establish he "relied on an alleged warranty."). There is no privity of contract between Plaintiff

9    and Defendant because he purchased the Products at retail stores. [Donovan Dec., Ex A, T. 94:17-

10   19; T. 96:15-17; T.101:2-6; T.103:7-8; T. 116:19-24]. Plaintiff must thereby prove reliance.

11       *Watkins* addressed decisions that reflected a lack of "consensus" regarding whether

12   reliance was required to be proven by plaintiff or whether the defendant had the burden to show

13   lack of reliance on the warranty. *Id.*, 574 F.Supp.3d at 757. The court in *Ashour* applied the

14   requirement of "clear affirmative proof" that the label was not the basis of the bargain. *Id.*, 2025

15   WL 961682, at *8. Under this standard, summary judgment was granted in ABUSA's favor, with

16   respect to a plaintiff's breach of express warranty claim, based upon the ruling that the plaintiff's

17   continued purchases of the Arizona product, after she learned that they contained citric acid,

18   constituted "affirmative proof" that the "No Preservatives" label was not the basis of her bargain

19   with defendants. *Id.*, 2025 WL 961682, at *8. Similarly, here, Plaintiff's continued purchases of

20   the Products, after forming the belief that they were falsely labeled all natural and with knowledge

21   of the Product's contents, constitute "affirmative proof" that the all natural label was not the basis

22   of his bargain with Defendant and/or was not relied upon by Plaintiff. Because Plaintiff cannot

23   prove a necessary element of his claim for breach of warranty, ABUSA is entitled to summary

24   judgment on this claim.

25   **D.    PLAINTIFF ABANDONED THE CLAIM OF ECONOMIC INJURY BY**
         **TESTIFYING THAT HE IS NOT SEEKING ANY MONETARY RECOVERY**
26

27       "District Courts have held that plaintiffs who withdraw claims during their sworn

28

1  deposition testimony have in effect abandoned their claims." *Mohiuddin v. Raytheon Elec. Sys.*,

2  No. CV 06-5020 GAF (MANx), 2007 WL 9734437, at *3 (C.D. Cal. May 9, 2007), *aff'd sub nom.*

3  *Mohiuddin v. Raytheon Co.*, 320 F. App'x 788 (9th Cir. 2009); *see Gordon v. Ramirez-Palmer*,

4  No. CIV S-02-2454 GEB GGH P, 2006 WL 2346357, at *7 (E.D. Cal. Aug. 11, 2006) (plaintiff's

5  deposition testimony that he was asserting claim against only one defendant amounted either to an

6  abandonment of that claim or that plaintiff never intended to file such a claim).

7      Courts in other Circuits have likewise applied this rule holding that when a plaintiff or even

8  his counsel disavow a claim during deposition, that claim has been abandoned. *See Versarge v.*

9  *Twp. of Clinton N. J.*, 984 F.2d 1359, 1363 n.1 (3d Cir. 2007) (plaintiff abandoned all monetary

10  claims at deposition); *Carter v. Ford Motor Co.*, 561 F.3d 562, 566-67 (6th Cir. 2009) (affirming

11  summary judgment where plaintiff testified in deposition that her claims were unrelated to a 2005

12  termination); *Rasco v. Potter*, 265 F. App'x 279, 282 n.2 (5th Cir. 2008) (plaintiff abandoned age

13  and sex discrimination claims at deposition); *see also Parsons v. Pettway*, No. 2:20-cv-806-AMM,

14  2022 WL 16509539, at *6 (N.D. Ala. Sept. 21, 2022) (noting and citing to decisions in Eleventh

15  Circuit that have held that "a plaintiff's unambiguous sworn testimony may abandon claims he

16  pleaded.").

17      Plaintiff cannot demonstrate any economic injury given his unambiguous testimony that

18  he is not seeking a monetary recovery and that injunctive relief is the sum and substance of his

19  suit. [Donovan Dec., Ex. A, T. 138:2-19]. Plaintiff's testimony constitutes an abandonment of the

20  claim for monetary recovery and justifies entry of summary judgment in ABUSA's favor.

21  **E.    NO TRIABLE ISSUE OF FACT EXISTS CONCERNING DAMAGES BECAUSE,**

22  **AFTER FORMING BELIEF THAT THE PRODUCTS WERE FALSELY LABELED, PLAINTIFF CONTINUED TO PURCHASE THE PRODUCTS AT A**

23  **PRICE THAT HE ADMITS WAS FAIR AND/OR REASONABLE**

24      As held in *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505, 513 (9th Cir.

25  1985), "[a]lthough uncertainty as to the amount of damages will not preclude recovery, uncertainty

26  as to the fact of damages may." In *Crawford*, because plaintiff admitted that the products were

27  sold at a fair price and that he purchased the ABUSA products at that same price, "even knowing

28

the actual sugar and caloric content" that formed the basis of the false labeling claim, the court

ruled that plaintiff could not prove actual damage caused by that alleged deception.  2024 WL

1345648, at *5.

Similarly, here, Plaintiff cannot raise a triable fact of economic injury given that: (1) he

bought the Mucho Mango and Kiwi Strawberry, at the same price, between 4 and 5 dollars, both

before and after he formed the belief that the Products were falsely labeled "All Natural" [Donovan

Dec., Ex. A, T. 95:11-96:14; T. 99:12-18]; and (2) he believes that the prices he paid for all the

Products were fair and/or reasonable.  [*Id.*, Ex. A, T. 107:1-7; T. 108:13-15; T. 109:23-25; T.

110:25 – T. 111:24; T. 112:6-14].

## F.    THE EVIDENCE DEMONSTRATES THAT PLAINTIFF LACKS ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF

A court has a duty to examine its own jurisdiction.  *B.C. v. Plumas Unified Sch. Dist.*, 192

F.3d 1260, 1264 (9th Cir. 1999).  Article III limits a federal court's subject matter jurisdiction by

requiring that plaintiffs have standing.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115,

1121 (9th Cir. 2010).  "Standing addresses whether the plaintiff is the proper party to bring the

matter to the court for adjudication."  *Id.* at 1122.  As observed in *Anderson v. SeaWorld Parks & Entertainment, Inc.*, No. 15-cv-02172-JSW, 2018 WL 1981396, at *2 (N.D. Cal. Feb. 20, 2018):

> Because this issue comes before the Court on a motion [for][sic] summary judgment, Plaintiffs must show there are triable issues of fact on the issue of standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("each element" of the standing inquiry "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation").

Under Article III's standing requirement for injunctive relief, a plaintiff must allege that a

"real or immediate threat" exists that he or she will be wronged again.  *City of Los Angeles v.*

*Lyons*, 461 U.S. 95, 111 (1983); *see also Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 946

(9th Cir. 2011) ("[T]o establish standing to pursue injunctive relief ... [plaintiff] must demonstrate

a 'real and immediate threat of repeated injury' in the future.").  The "'threatened injury must be

certainly impending to constitute injury in fact,' and ... 'allegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). The alleged threat cannot be "conjectural" or "hypothetical." *Lyons*, 461 U.S. at 101-02. "[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

For injunctive relief to be proper, Plaintiff must show he suffered an injury that is "likely" to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61. Further, Plaintiff must demonstrate "a sufficient likelihood that [he or she] will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lyons*, 261 U.S. at 111). "[A] person exposed to a risk of future harm may pursue forward-looking injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021).

As stated in *Morizur v. Seaworld Parks & Entertainment, Inc.*, No. 15-cv-02172-JSW, 2020 WL 6044043, at *12 (N.D. Cal. Oct. 13, 2020):

> A consumer may have standing to sue for injunctive relief based on allegedly false advertising even if they "now know[] or suspect[] that the advertising was false at the time of the original purchase[.]" *Davidson*, 889 F.3d at 969. **For example, a plaintiff may be able to prove they would want to purchase the product, but they are unable to rely on a defendant's advertising or labels and so will refrain from purchasing a product they want.** *Id.* at 970. **Alternatively, a plaintiff might prove that they "might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as [they] may reasonably, but incorrectly, assume the product was improved."** *Id.* **In either instance, in order to establish standing under *Davidson*, a plaintiff must prove they want to or intend to purchase the product in the future.** *See also Lanovaz v. Twinings N. Am., Inc.*, 726 Fed. Appx. 590, 591 (9th Cir. 2018) ("A some day intention –

without any description of concrete plans, or indeed even any specification of when the some day will be – does not support a finding of the actual or imminent injury that Article III requires.") . . . . [(alterations in original) (emphasis added)].

A distinctive feature in *Davidson* was that there was a plausible inability to rely on the product's label in the future because that plaintiff had no way of knowing the product was a flushable wipe until after purchase and use. *Davidson*, 889 F.3d at 970-92. Other courts have considered a plaintiff's ability or inability to know whether a representation is truthful when determining standing for injunctive relief under *Davidson*. *See Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906 (N.D. Cal. 2021) (stating that the *Davidson* plaintiff had Article III standing because that plaintiff had no way of determining whether the representation of flushable wipes was in fact true without purchasing the wipes, and finding that "[u]nlike the plaintiff in *Davidson*, plaintiff has not (and cannot) reasonably claim that he has no way of determining whether Defendant's representations are true."); *Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018) (finding that, "[u]nlike *Davidson*, where a consumer's inability to rely on packaging misrepresentations in the future was the ongoing injury, [plaintiff] is able to rely on the packaging now that he understands the 'No Sugar Added' label."); *Joslin v. Clif Bar & Co.*, No. 4-18-cv-04941-JSW, 2019 WL 5690632, at *4 (N.D. Cal. Aug. 26, 2019) (finding plaintiff failed to allege fact of standing given that plaintiff now knew the product did not contain "white chocolate" from the ingredient list); *see also Prescott v. Nestle USA, Inc.*, No. 19-cv-07471-BLF, 2020 WL 3035798, at *6 (N.D. Cal. June 4, 2020) (ruling that plaintiffs lacked Article III standing after they made clear they do not wish to purchase "fake white chocolate").

Additionally, other courts have entered or otherwise affirmed summary judgment in favor of a defendant, on standing grounds, when the plaintiff testifies that he or she will not purchase the product in the future. *See Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (affirming entry of summary judgment that plaintiff lacked standing based on testimony that plaintiff did not intend to purchase the products in the future); *see also Schwartz v. Bai Brands, LLC*, No. LA CV 19-06249-SPG-RAO, 2022 WL 16935267, at *5 (C.D. Cal. Aug. 19, 2022)

1   (granting summary judgment for lack of standing based upon deposition testimony that plaintiff

2   will not purchase the products in the future).

3          Here, there is no evidence of any sufficient likelihood that Plaintiff will again be wronged

4   in a similar way.  The retainer agreement, Plaintiff's testimony, all of the letters he authorized to

5   be sent concerning Defendant's Products, the filing of the Hornell Action, as well as the allegations

6   in this action, show that he believes that the Products are falsely labeled "All Natural" and that he

7   is aware of the presence of the ingredients in the Products that he claims are unnatural.  Plaintiff

8   testified that he "made sure" that he stopped purchasing the Products after the within action was

9   filed on December 23, 2022. [Donovan Dec., Ex. A, T. 113:19-21].  He stated that if he purchased

10  the Products again, he would be doing so with the knowledge that they are "not so good" and that

11  he believes he was being "lied to" by ABUSA so he is "not messing with their product." [Donovan

12  Dec., Ex. A, T. 118:5-T. 119:13].  Significantly, he denied having any present intention to purchase

13  the Products again.  [*Id.*, T. 119:14-16].  Plaintiff testified that his diet requires him to "just—just

14  eat natural foods.  No process—no hardly processed foods." [Donovan Dec., Ex. A, T. 121:24 –

15  T. 122:1].  Plaintiff's testimony forecloses any likelihood that he will suffer any future harm.

16          Plaintiff's testimony conclusively renders him incapable of proving that that any imminent

17  risk of future harm exists and thereby he cannot satisfy the test of Article III standing set forth in

18  *Davidson* and applied in *Morizur*, *Rahman*, *Joslin* and *Prescott*.  Accordingly, just grounds exist

19  to grant ABUSA summary judgment with respect to the claim for injunctive relief due to Plaintiff's

20  lack of Article III standing.

21  **G.     PLAINTIFF CANNOT SATISFY HIS ARTICLE III BURDEN TO**
22  **DEMONSTRATE REDRESSABILITY**

23          "Because redressability is an irreducible component of standing, no federal court has

24  jurisdiction to enter judgment unless it provides a remedy that can redress the plaintiff's injury."

25  *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021) (citations omitted).

26          In *Schwartz*, the plaintiff testified that he was no longer seeking monetary relief after the

27  defendant added the word "flavored" to the label on the beverage. 2022 WL 1693527, at *6.  The

28

1   court dismissed his claim ruling that the plaintiff's admissions that he was satisfied with the new

2   labels and that he does not seek monetary damages, meant that "the remedy he seeks from the

3   Court likely would not redress his alleged injury." *Id.* at *8.

4          Plaintiff cannot prove redressability given that the Products pose no imminent risk of future

5   harm to him (as he is aware of the contents of the Products and has no intention to buy them again)

6   and because he is not seeking any monetary relief.  ABUSA respectfully submits that just grounds

7   thereby exist to grant ABUSA summary judgment due to Plaintiff's lack of standing.

8                                    V. **CONCLUSION**

9          For the foregoing reasons, ABUSA respectfully requests that the Court grant Defendant's

10  motion and enter summary judgment in its favor against Plaintiff's claims.

11                                    Respectfully submitted,

12  Dated:  June 20, 2025              */s/ Robert P. Donovan*
                                       ROBERT P. DONOVAN
13

14                                     STEVENS & LEE
                                       669 River Drive, Suite 201
15                                     Elmwood Park, New Jersey 07407
                                       Telephone:  (201) 857-6778
16                                     Facsimile:  (201) 857-6761
                                       robert.donovan@stevenslee.com
17                                     *Attorneys for Defendant*

18

19

20

21

22

23

24

25

26

27

28