# <u>EXHIBIT 2</u>

**Exhibit to Defendant's Motion for Summary Judgment (Previously Filed Under Seal at ECF No. 109-5 as Exhibit D)**



# CLARKSON
## LAW FIRM

Experience. Integrity. Justice.

June 13, 2022

Yana Hart, Esq.
Partner
Tiara Avaness, Esq.
Associate Attorney

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265
(213) 788-4050 (Main)
(213) 788-4070 (Fax)
(855) 876-1300 (Toll-Free)
www.clarksonlawfirm.com
yhart@clarksonlawfirm.com
tavaness@clarksonlawfirm.com

**VIA EMAIL AND U.S. CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Robert P. Donovan
Stevens & Lee, P.C.
Counsel for Hornell Brewing Co., Inc.
669 River Dr., Suite 201
Elmwood Park, NJ 07407

       Re:    *Thomas Iglesias v. Hornell Brewing Co., Inc.;*
               *Confidential Communication Pursuant to Cal. Evid. Code §§ 1152, 1154 and*
               *Fed. R. Evid. 408*

           Our Client(s)  :     Thomas Iglesias
           Product(s):       AriZona "All Natural" and/or "No Preservative" beverage
                            product line
           Matter(s)     :     California Consumers Legal Remedies Act, California False
                            Advertising Act, California Unfair Competition Law, Notice
                            of Breach of Warranty, Demand to Preserve Evidence

///

///



EXHIBIT
D20

*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 2 of 22

To Whom It May Concern:

On behalf of Thomas Iglesias ("**Plaintiff**") and all others similarly situated,[1] this letter is to notify Hornell Brewing Co., Inc. ("**Defendant**") that it has violated the California Consumers Legal Remedies Act ("**CLRA**") by employing or committing methods, acts, or practices declared unlawful by California Civil Code Section 1770. Defendant also violated California False Advertising Law, codified in Cal. Bus. & Prof. Code § 17500 *et seq.*, ("**FAL**"), and the California Unfair Competition Law, codified in Cal. Bus. & Prof. Code § 17200 *et seq,* ("**UCL**"). Pursuant to California Civil Code Section 1782(a), Plaintiff intends to initiate an action against Defendant in the United States District Court of California for injunctive relief and restitution damages. See Cal. Civ. Code § 1782(a) and (b).

The unlawful acts committed by Defendant in violation of the CLRA include deceptive advertising and labeling of the AriZona beverage products, <u>including but not limited to</u>, Kiwi Strawberry Fruit Juice Cocktail, Lemonade Fruit Juice Cocktail, Mucho Mango Fruit Juice Cocktail, Fruit Punch Fruit Juice Cocktail, Watermelon Fruit Juice Cocktail, Pineapple Fruit Juice Cocktail, Iced Tea with Peach Flavor, Arnold Palmer Half & Half Iced Tea Lemonade, Golden Bear Strawberry Lemonade, RX Energy Herbal Tonic, Green Tea with Ginseng and Honey, Diet Peach Iced Tea, Diet Raspberry Iced Tea, Diet Lemon Iced Tea, Orangeade, Grapeade, and Lemonade Drink Mix ("**Products**") by falsely representing these products are "All Natural," "100% Natural," or "100% All Natural," and contain "No Artificial Flavors," "No Artificial Colors," and "No Preservatives."[2] [3]

---

[1] Plaintiff serves this notice on behalf of all persons who purchased the Products for personal consumption and not for resale in California (the "Plaintiff Class") within the last four (4) years or since the date of Products' launch, whichever time period is shorter (the "Class Period").

[2] All Products include products with a front label that makes "All Natural," "100% Natural," or "100% All Natural" representations. Some products, however, do not include the additional label claiming "No Preservatives" or similar "No Artificial Flavors" claims. For all of the Products, Plaintiff challenges "All Natural," "100% Natural," and/or "100% All Natural" claims. For the Products which contain additional false and/or misleading label claims of "No Preservatives," Plaintiff also challenges the "No Preservatives" claims.

[3] Plaintiff reserves the right to broaden his class definition to include, and hereby puts Defendant on notice of similar violations with respect to other substantially similar products. California courts have ruled that standing to pursue claims involving "substantially similar" products exists in circumstances such as these, i.e., similarity in products, claims, and injury to consumers. *See, e.g., Werdebaugh v. Blue Diamond Growers*, 2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013) (finding standing for purchaser of chocolate almond milk to pursue claims related to unpurchased products of flavored almonds, 16 other varieties of almond milk, and nut chips); *Colucci v. ZonePerfect Nutrition Co.*, 2012 U.S. Dist. LEXIS 183050 (N.D. Cal. Dec. 28, 2012) ("more than enough similarity" between purchased nutrition bar and 19 others not purchased); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012) (purchaser of ice cream permitted to pursue claims involving unpurchased ice cream

*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 3 of 22

        In reality, the Products contain a plethora of ingredients which are not natural and contain well-known preservatives. All of Defendant's Products contain at least one known preservative – citric acid or ascorbic acid. Furthermore, each Product contains at least one of the following ingredients which are not natural: added coloring (including but not limited to "beta carotene," "fruit and vegetable juices," "annatto," and "vegetable juice"); high fructose corn syrup; ascorbic acid; citric acid; natural flavors; malic acid; and erythritol. Defendant makes false, deceptive, and misleading claims and promises to consumers about the Products in a pervasive, statewide, and nationwide labeling scheme that falsely touts the benefits of the Products.

        Defendant's actions violate Sections 1770(a)(5), (a)(7), (a)(9), and (a)(16) of the CLRA, as well as Sections 17200 and 17500, *et seq.* of the California Business and Professions Code, commonly known as the Unfair Competition Law ("**UCL**") and False Advertising Law ("**FAL**"), respectively. Absent these material misrepresentations, Plaintiff and members of the Plaintiff Class would not have purchased the Products and are therefore entitled to restitution in an amount to be determined at trial.

        What follows is a recitation of: (1) Defendant's false, misleading, and deceptive advertising; (2) the basis of Plaintiff's claims; and (3) Plaintiff's demand for relief.

## I.    DEFENDANT'S FALSE AND DECEPTIVE REPRESENTATIONS

        Defendant deceptively labels the products as "All Natural," "100% Natural," or "100% All Natural," and containing "No Artificial Flavors," "No Artificial Colors," and "No Preservatives."

*///*

---

because "Plaintiffs are challenging the same basic mislabeling practice across different product flavors"); *Koh v. S.C. Johnson & Son, Inc.*, 2010 U.S. Dist. LEXIS 654 (N.D. Cal. Jan. 6, 2010) (allowing plaintiff to sue for purchased product (Shout) and unpurchased product (Windex) because the challenged representation on the labels was the same on both products; also recognizing that "there is no bright line rule that different product lines cannot be covered by a single class.").

*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 4 of 22

**Kiwi Strawberry Fruit Juice Cocktail**



**Lemonade Fruit Juice Cocktail**



*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 5 of 22

**Mucho Mango Fruit Juice Cocktail**



**Fruit Punch Fruit Juice Cocktail**



*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 6 of 22

**Watermelon Fruit Juice Cocktail**



**Orangeade Fruit Juice Cocktail**



*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 7 of 22

**Grapeade Fruit Juice Cocktail**



**Lemonade Drink Mix**



*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 8 of 22

**Golden Bear Strawberry Lemonade**



**Rx Energy**



*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 9 of 22

**Iced Tea with Peach Flavor**



**Arnold Palmer Half & Half Iced Tea Lemonade**



*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 10 of 22

**Pineapple Fruit Juice Cocktail**



**Diet Peach Iced Tea**



*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 11 of 22

**Diet Raspberry Iced Tea**



**Diet Lemon Iced Tea**



*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 12 of 22

**Green Tea with Ginseng and Honey**



Defendant falsely represents that the Products do not contain preservatives and are all natural. The Products are labeled as "All Natural," "100% Natural," or "100% All Natural," and containing "No Artificial Flavors," "No Artificial Colors," and "No Preservatives." The Products fail to live up to these claims. The Products contain the well-known preservatives citric acid and ascorbic acid, as well as ingredients that are not natural, such as added coloring (annatto, vegetable juice, fruit and vegetable juices, or beta carotene), citric acid, ascorbic acid, natural flavors, malic acid, erythritol, and high fructose corn syrup. Defendant misleads and deceives consumers into believing they are purchasing Products that are all natural and free from preservatives, when in fact, what they receive is a formulation composed with two well-known preservatives, added coloring, high fructose corn syrup, citric acid, ascorbic acid, malic acid, and erythritol.

Plaintiff purchased the Mucho Mango Fruit Juice Cocktail from Foods Co. in San Francisco, CA on several occasions since 2017. Plaintiff made his purchase decision in part based on his belief that he would receive a product that was all natural and free from preservatives. Plaintiff paid approximately $4 for the Product and would not have bought the Product if he had known it was not all natural or preservative free. Plaintiff would like to purchase the Product again in the future if he could be sure the Product was compliant with California and federal consumer protection laws.

///

## II.    BASIS OF PLAINTIFF'S CLAIMS

### A.  CLRA Violations

Defendant, in connection with its advertising and labeling of the Products, is in violation of California Civil Code Sections 1770(a)(5), (a)(7), (a)(9) and (a)(16) by: (i) representing the Products "have sponsorship, approval, characteristics, ingredients, uses, benefits or qualities" which they do not have; (ii) representing the Products are "of a particular standard, quality, or grade," when they are of another; (iii) advertising the Products "with intent not to sell [the goods] as advertised;" and (iv) "representing [the Products] have been supplied in accordance with a previous representation when it has not."

Indeed, Plaintiff and the proposed Plaintiff Class purchased the Products in reliance upon the uniformly false and misleading label and advertising claims. Plaintiff and the proposed Plaintiff Class would not have purchased the Products if they had known that the label and advertising claims were false, misleading, and deceptive.

### B.  FAL Violations

In addition, Defendant has violated, and continues to violate, the California False Advertising Law, codified at Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("**FAL**"), which prohibits "unfair, deceptive, untrue or misleading advertising." Defendant violates Section 17500 by representing, through false and misleading advertising, and through other express representations, that the Products are natural and preservative free, when in reality, they are not. As described above, these representations are false and misleading.

### C.  UCL Violations

Furthermore, Defendant has violated, and continues to violate, the California Unfair Competition Law, codified at Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("**UCL**"). Among other things, Defendant's conduct constitutes an unfair, unlawful, and fraudulent business practice. Defendant makes material, false representations to consumers concerning its Products, which representations are likely to deceive consumers into purchasing the Products on the mistaken belief that the Products are natural and preservative free, when they are not.

Plaintiff(s) and other similarly situated consumers have been directly injured by Defendant's conduct in violation of the CLRA, FAL, and UCL, as they would not have purchased the Products, or would have purchased them only on different terms, had they known the truth about the misrepresentations on the labels. As a proximate and direct result of Defendant's conduct, Plaintiff and Class members have suffered economic losses by purchasing the Products. Likewise, Defendant has unlawfully profited from its misconduct.

///

*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 14 of 22

### The Products' "All-Natural" Claim Violates the CLRA, UCL, and FAL

The front labels of the Products prominently state "All Natural," "100% Natural," or "100% All Natural." In reality, the Products cannot live up to these claims because they contain at least one of the following ingredients: added color (annatto, vegetable juice, fruit and vegetable juices, or beta carotene); high fructose corn syrup; citric acid; ascorbic acid; natural flavors; malic acid; and erythritol.

#### Added Color

Specifically, Defendant adds "vegetable juice," "fruit and vegetable juices," "annatto," and "beta carotene" as food coloring agents in the Products. For example, in its natural state, strawberry juice is not bright pink. Rather, the added food coloring agents makes the beverages look more vibrant and appetizing for consumption. Although beta carotene can be extracted naturally from carrots, the high cost of doing so has turned producers away from this method, and towards chemical synthesis.[4] Synthetic beta carotene is often used by manufacturers of inexpensive goods, like the Products, as a means of cutting costs. Approximately 98% of commercial beta carotene is synthesized, rather than extracted from natural sources.[5] The Food and Drug Administration ("**FDA**") does not consider foods with added coloring as natural, no matter the source. "Further, we said that we have considered 'natural' to mean that nothing artificial or synthetic (including colors regardless of source) is included in, or has been added to, the product that would not normally be expected to be there (56 FR 60421 at 60466)."[6] *See Martin v. Tradewinds Bev. Co.*, No. CV 16-9249 PSG-MRW, 2017 U.S. Dist. LEXIS 214501, *13 (C.D. Cal. Sep. 5, 2017) ("the statement that Iced Tea Products were '100% Natural' or made with '100% Natural Ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false due to the presence of an artificial color additive."); *see also Morales v. Kraft Foods Grp.*, No. LA CV14-04387 JAK (PJWx), 2016 U.S. Dist. LEXIS 204427, *59 (C.D. Cal. Dec. 2, 2016) (denying defendant's motion for summary judgment in a false advertising case concerning an "All Natural" label attribute where annatto extract was an ingredient).

///

---

[4] Ludmila Bogacz-Radomska and Joanna Harasym, *β-Carotene—Properties and Production Methods*, 2 FOOD QUALITY AND SAFETY 69, 70-71 (2018).
[5] Irene Hjorth Jacobsen, et al., *Recombinant β-Carotene Production by Yarrowia lipolytica – Assessing the Potential of Micro-Scale Fermentation Analysis in Cell Factory Design and Bioreaction Optimization*, FRONTIERS IN BIOENGINEERING AND BIOTECHNOLOGY (Feb. 13, 2020), https://www.frontiersin.org/articles/10.3389/fbioe.2020.00029/full#:~:text=Commercially%20%CE%B2%2Dcarotene%20is%20produced,synthesis%20from%20acetone%2C%20butadiene%2C%20di.
[6] Leslie Kux, *FDA Rulemaking Re Term Natural* (November 12, 2015).

*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 15 of 22

**High Fructose Corn Syrup**

The Products also contain high fructose corn syrup, another unnatural, grossly processed, and highly synthesized sugar additive. High fructose corn syrup is a synthetic compound that is manufactured and is certainly not a natural ingredient. High fructose corn syrup, or HFCS, "is a liquid alternative sweetener to sucrose that is made from corn . . . using chemicals (caustic soda, hydrochloric acid) and enzymes (α-amylase and glucoamylase) to hydrolyze corn starch to corn syrup containing mostly glucose and a third enzyme (glucose isomerase) to isomerize glucose in corn syrup to fructose to yield HFCS products."[7] Experts and consumer groups believe that high fructose corn syrup cannot be considered a natural ingredient because it undergoes fundamental chemical changes in the manufacturing process.[8] Thus, Defendant's Products are not natural because they are artificial and/or synthetic. 56 FR 60421 at 60466.

Additionally, California and Ninth Circuit courts have held that HFCS runs afoul of "All Natural" claims. *See Bohac v. General Mills, Inc.*, No. 12-CV-05280-WHO, 2014 WL 1266848 (N.D. Cal. Mar. 26, 2014) (holding that "All Natural" claims "could easily be interpreted by consumers as a claim that *all* of the ingredients in the products are natural, which appears to be false because they allegedly contain . . . highly-processed ingredients such as . . . high fructose corn syrup."); *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1123 (N.D. Cal. 2010) ("High fructose corn syrup is not a 'naturally' occurring substance"); *Hitt v. Arizona Beverage Co.*, LLC, No. 08-CV-809-WQH, 2009 WL 449190, at *6-7 (S.D. Cal. Feb. 4, 2009) (denying defendant's motion to dismiss the plaintiff's UCL, FAL, and CLRA claims where the plaintiff alleged that a reasonable consumer would find the "All Natural" labeling on the defendant's products, which contained HFCS, deceptive).

**Citric Acid**

The Products also contain citric acid. While citric acid is a naturally occurring compound found in various fruits and vegetables, this naturally occurring citric acid is not what is used as a food and beverage additive and <u>is not what is present in the Products</u>. Instead, manufactured citric acid (MCA), a synthetic compound, is used.[9] Approximately 99% of the world's supply of MCA

---

[7] Kay Parker, et al., *High Fructose Corn Syrup: Production, Uses and Public Health Concerns*, 5 BIOTECHNOLOGY AND MOLECULAR BIOLOGY REV. 71, 71 (2010).

[8] Lorraine Heller, *HFCS is Not 'Natural,' Says FDA*, BEVERAGEDAILY.COM (Apr. 1, 2008), https://www.beveragedaily.com/Article/2008/04/02/HFCS-is-not-natural-says-FDA.

[9] Iliana E. Sweis and Bryan C. Cressey, *Potential Role of the Common Food Additive Manufactured Citric Acid in Eliciting Significant Inflammatory Reactions Contributing to Serious Disease States: A Series of Four Case Reports*, PUBMED CENTRAL (2018) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/ ("Citric acid naturally exists in fruits and vegetables. However, it is not the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and beverage additive.").

*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 16 of 22

is produced using the known allergen and fungus *Aspergillus Niger*, better known as black mold.[10] To produce MCA, black mold is soaked in an acidified solution containing small amounts of inorganic salts.[11] Experts believe ingestion of MCA may lead to harmful side effects, and point to a number of cases where "significant and repetitive inflammatory reactions including respiratory symptoms, joint pain, irritable bowel symptoms, muscular pain and enervation" were noticed after ingestion of MCA.[12]

Here, Defendant's Products run afoul of "natural" claims also because they contain MCA, a synthetic compound. *See* 56 FR 60421 at 60466.[13] Further, additives produced from black mold are not something that consumers would reasonably expect to be in their food and beverages. The presence of synthetic MCA in the Products makes the "All Natural" claim deceptive and false.

California and Ninth Circuit courts have suggested that synthetic citric acid cannot be labeled as a "natural" ingredient. *See Brazil v. Dole Packaged Foods, LLC,* 660 Fed. Appx. 531, 533 (denying summary judgment and concluding that a trier of fact could conclude that synthetic citric and ascorbic acids were not "natural," and that a reasonable consumer would be misled); *Wilson v. Frito-Lay, N.A.,* 2013 WL 1320468, at *12-13 (N.D. Cal. Apr. 1, 2013) (holding plaintiff stated a claim that an "All Natural" claim was misleading when it contained . . . citric acid); *Ries v. Arizona Beverages USA LLC,* 287 F.R.D. 523 (N.D. Cal. 2012) (holding that the issue of whether citric acid contradicted "All Natural" claims was appropriate to satisfy the commonality requirement for class certification).

**Ascorbic Acid**

The Products also contain ascorbic acid. While, like citric acid, ascorbic acid is a naturally occurring compound found in many fruits and vegetables, "it is rarely extracted from these sources on an industrial scale, because the production cost would be too high."[14] Instead, ascorbic acid is mass produced using the most cost-effective method, often to accommodate the low price point reflected in affordable goods, such as the Products. Ascorbic acid is highly processed for use in foods and beverages through hydrogenation, double fermentation, ion exchange, esterification, dissolving, decoloring, filtering, crystallization, centrifugation, vacuum drying, and sieving before the ascorbic acid is synthesized.[15] Similarly to citric acid, this chemical process creates a synthetic

---

[10] *Id.* ("Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919. *Aspergil[l]us niger* is a known allergen.").

[11] Rosaria Ciriminna, et al., *Citric Acid: Emerging Applications of Key Biotechnology Industrial Product,* 11 CHEMISTRY CENTRAL JOURNAL (2017).

[12] *Id.*

[13] Leslie Kux, *FDA Rulemaking Re Term Natural* (November 12, 2015).

[14] DOLCHEM QUALITY CHEMICALS, *Ascorbic Acid Journey: From Production to Applications,* https://www.dolchem.com/blog/ascorbic-acid-journey-from-production-to-applications/ (last visited June 10, 2022).

[15] *Id.*

*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 17 of 22

compound which cannot be considered "natural" under the FDA definition. The presence of synthesized ascorbic acid in the Products renders the "All Natural" claim deceptive and false.

California courts and the Ninth Circuit have found that ascorbic acid should not be recognized as an "All Natural" ingredient. *See Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531, 533 (denying summary judgment and concluding that a trier of fact could conclude that synthetic citric and ascorbic acids were not "natural," and that a reasonable consumer could be misled); *Larsen v. Trader Joe's Co.*, 917 F.Supp.2d 1019, 1024 (N.D. Cal. 2013) (holding that synthetic ascorbic acid is not natural merely because it has the same properties as naturally occurring vitamin C); *Wilson v. Frito-Lay, N.A.*, 2013 WL 1320468, at *12-13 (N.D. Cal. Apr. 1, 2013) (holding plaintiff stated a claim that an "All Natural" claim was misleading when it contained . . . ascorbic acid).

**Malic Acid**

Select Products, including Defendant's Pineapple Fruit Juice Cocktail, contain malic acid. While malic acid is a naturally occurring compound found in fruits, the malic acid that is "widely used in the food industry . . . is generally obtained through a chemical synthesis."[16] Malic acid produced for use as a food additive is called DL-Malic Acid. The FDA specifies that DL-Malic Acid is commercially produced by the hydration of fumaric acid or maleic acid, and the European Food Safety Authority ("EFSA") mentions a production process involving "hydration of maleic anhydride under high temperature and pressure to form malic and fumaric acid."[17] DL-Malic Acid can also be produced by "the catalytic oxidation of benzene to maleic acid, which is converted to Malic Acid by heating with steam under pressure."[18] This chemical process renders malic acid a highly synthesized compound and far from a "natural" additive under the FDA's definition. Thus, labeling products containing malic acid as "All Natural" is deceptive, misleading, and false. Furthermore, experts have found that ingestion of malic acid can cause skin irritation, loose stools/diarrhea, nausea, indigestion, numbness, muscle pain, tightness of chest, and other side effects.[19]

---

[16] POLYNT GROUP, *Malic Acid for Food*, https://www.polynt.com/malic-acid-in-food/ (last visited June 13, 2022); James Han, *What is Malic Acid (E296) in Food? Benefits, Uses, Safety, Side Effects*, FoodAdditives.net (Jan. 19, 2020), https://foodadditives.net/acidulents/malic-acid/ ("Malic acid sold in the market usually refers to its DL form . . . . [DL-Malic Acid] does not occur naturally and according to the FDA, it can be commercially produced by hydration of fumaric acid or maleic acid.").

[17] *Id.*

[18] Monice Zondlo Fiume, et al., *Final Report on the Safety Assessment of Malic Acid and Sodium Malate*, 20 Int'l J. of Toxicology, 47, 48 (June 15, 2000), https://journals.sagepub.com/doi/pdf/10.1080/109158101750300946.

[19] *See Fiume, supra*, at 52-54; Lisa Maloney, *5 Potential Benefits of Malic Acid and Side Effects to Consider*, LIVESTRONG.COM (Apr. 6, 2022), https://www.livestrong.com/article/40552-side-effects-benefits-malic/ (reviewed by Claudia Thompson, PhD, RD); James Uden, *Malic Acid Side Effects*, STEADYHEALTH (Nov. 19, 2010), https://ic.steadyhealth.com/malic-acid-side-effects.

*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 18 of 22

### Erythritol

Select Products, including Defendant's Diet Lemon Iced Tea, Diet Peach Iced Tea, and Diet Raspberry Iced Tea products contain erythritol. Erythritol is an artificial sweetener that is "generally crafted from GMO cornstarch and has been referred to as an 'invisible GMO ingredient.'"[20] It is produced through a "multi-step process that starts with the fermentation of a pure culture of a non-toxigenic microorganism—*Moniliella pollinis*—that feeds on a carbohydrate-based medium and ends with the purification of erythritol from the fermentation broth."[21] This process is not the collecting or extracting of a naturally occurring compound, but is a process in which erythritol is manufactured. This artificial compound is not a "natural" additive pursuant to the FDA's definition and labeling and labeling products as "All Natural" while they contain erythritol is deceptive, misleading and false. *See Viggiano v. Johnson & Johnson*, No. CV-14-07250 DMG, 2015 U.S. Dist. LEXIS 191437, at *2 (C.D. Cal. June 12, 2015) (denying defendant's motion to dismiss when a product was labeled "All Natural," but contained erythritol, and recognizing erythritol as a synthetic ingredient). Reasonable consumers would not expect a man-made artificial compound to be present in products they purchase which claim to be "All Natural." Furthermore, side effects have been observed in connection with ingesting erythritol, including weight gain, digestive problems such as diarrhea, bloating, cramps, and gas, nausea, and headaches.[22]

### Natural Flavors

The Products contain "Natural Flavors." The FDA defines "natural flavor" as: "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from spice, fruit, or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional." 20 C.F.R. § 101.22. However, not everything encompassed in the definition of "natural flavors" falls within the FDA's definition of "natural." *See* 56 FR 60421 at 60466; *see also Lam v. General Mills, Inc.*, 859 F.Supp.2d 1097, 1102 (recognizing that a product in compliance with the FDA's "natural flavors" definition may still be artificial). Many of the ingredients compatible with the FDA's definition of "natural flavors" are artificial or highly processed, despite being derived from natural ingredients. Thus, labeling a

---

[20] MERITAGE MEDICAL NETWORK, *What is Erythritol? Erythritol Side Effects and Dangers* (May 14, 2018), https://meritagemed.com/erythritol/.

[21] Donald F. Schmidt, *GRAS Determination for Erythritol for Use in Human Food*, TOX STRATEGIES (June 5, 2018), https://www.fda.gov/media/132946/download (submitted to and published by the FDA).

[22] *See* MERITAGE MEDICAL NETWORK, *What is Erythritol? Erythritol Side Effects and Dangers* (May 14, 2018), https://meritagemed.com/erythritol/; Marygrace Taylor, *What is Erythritol? Benefits, Side Effects and More*, LIVESTRONG.COM (Aug. 16, 2021), https://www.livestrong.com/article/468892-stevia-vs-sugar/; James Han, *What is Erythritol (E968) in Food? Use, Safety, Side Effects*, FOODADDITIVES.NET (Feb. 17, 2020), https://foodadditives.net/sugar-alcohols/erythritol/.

*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 19 of 22

product containing "natural flavors" as being "All Natural," when there may be subcomponents within the ingredient "natural flavors" that are artificial, or synthetic is deceptive, misleading, and false.

Defendant has misled Plaintiff and the Plaintiff Class into believing they are purchasing "All Natural" beverages without additives. If Plaintiff and other consumers knew the Products were not "all natural," as advertised, they would not have purchased the Products or would have paid significantly less. Defendant has capitalized on health-conscious consumers seeking natural foods.

### The Products' "No Preservatives" Claim Violates the CLRA, UCL, and FAL

The front labels of the various Products, including the Kiwi Strawberry Fruit Juice Cocktail, Lemonade, Mucho Mango Fruit Juice Cocktail, Fruit Punch Fruit Juice Cocktail, Watermelon Fruit Juice Cocktail, Orangeade, and Grapeade prominently state "No Preservatives." In reality, these products all contain the ingredients ascorbic acid and citric acid, which are established preservatives.

#### Ascorbic Acid

The FDA classifies ascorbic acid as a preservative.[23] Unknowing consumers who read the "No Preservatives" labels on the Products are thus misled into buying Products that do, in fact, contain preservatives.

#### Citric Acid

The FDA classifies citric acid as a preservative in their *Overview of Food Ingredients, Additives, and Colors*, on the FDA's website.[24] The FDA's classification of citric acid as a preservative is further confirmed by its Warning Letter, dated October 6, 2010, to the manufacturer of Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites," in which the FDA proclaims the "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of Section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to affirm these preservatives with a description of their functions."[25] The FDA clearly classifies citric acid as a preservative.

---

[23]*See* FDA website, U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.htm (last visited Dec. 13, 2021).
[24] *Id.*
[25]*See* FDA label compliance website, U.S. FOOD & DRUG ADMINISTRATION, https://www.fdalabelcompliance.com/letters/ucm228663 (last visited Dec. 13, 2021).

*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 20 of 22

In addition, scientific studies and research confirm citric acid possesses properties and functions that qualify it as a preservative. For example, the chelating and acidic properties of citric acid enable it to optimize the stability of food products by enhancing the action of antioxidants and inactivating naturally present enzymes, which could cause undesirable browning and loss of flavor in the foods.[26],[27] Citric acid functions as a preservative regardless of whether it is also being used as a flavorant.[28]

By representing the Products are natural and have no preservatives, Defendant seeks to capitalize on consumers' preferences for less processed products with fewer additives, including preservatives, and the association between such products and a healthy diet. Consumers are willing to pay more for products with no preservatives because of this association as well as the perceived higher quality, health, and safety benefits associated with preservative free foods. Not only are consumers increasingly seeking out healthy foods, but they are also willing to pay a premium for them.

According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods.[29] This, coupled with the fact that global sales of healthy food products reached $1 trillion in 2017, according to Euromonitor, means consumers are eager and willing to pay more for preservative-free foods.[30] Defendant's practice of capitalizing on consumers' preferences for healthy foods is false and deceptive. This deception continues today, as consumers continue to purchase the Products under the mistaken belief that they are preservative free.

Plaintiff and other reasonable consumers do not know that citric acid, ascorbic acid, and added coloring are in the Products, which are labeled "All Natural" and "No Preservatives." Defendant's failure to disclose that the Products contain preservatives constitutes a material omission, especially in light of labeling the Products "All Natural" and "No Preservatives."

---

[26] KIRK-OTHMER FOOD AND FEED TECHNOLOGY 262 (2007).
[27] Lazlo P. Somogyi, *Direct Food Additives in Fruit Processing*, PROCESSING FRUITS: SCIENCE AND TECHNOLOGY, 302 (2d ed. 2004).
[28] John M. deMan, *Additives and Contaminants*, PRINCIPLES OF FOOD CHEMISTRY 429, 438 (3d ed. 1999).
[29] *See* Global Health and Wellness Report 2015, NIELSON, https://www.nielsen.com/wp-content/uploads/sites/3/2019/04/Nielsen20Global20Health20and20Wellness20Report20-20January202015-1.pdf (last visited Dec. 13, 2021).
[30] *See* Health and Wellness the Trillion Dollar Industry in 2017, EUROMONITOR, https://blog.euromonitor.com/health-and-wellness-the-trillion-dollar-industry-in-2017-key-research-highlights/ (last visited Dec. 13, 2021).

*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 21 of 22

Plaintiff purchased the Product in reliance upon the label and advertising claims representing the Product as "All Natural" and containing "No Preservatives" and would not have purchased the Product if he had known that the labeling and advertising as described was false, misleading, and deceptive.

Defendant is in violation of California Civil Code Sections 1770(a)(5), (a)(7), (a)(9) and (a)(16) by: (i) representing the Products have "sponsorship, approval, characteristics, ingredients, uses, benefits or qualities" which they do not have; (ii) representing the Products are "of a particular standard, quality, or grade," when it is of another; (iii) advertising the Products "with intent not to sell [the goods] as advertised;" and (iv) "representing [the Products have] been supplied in accordance with a previous representation when [they have] not."

**D. Breach of Express Warranty Claim**

Defendant expressly warrants that the Products are "All Natural" and contain "No Preservatives" as set forth above. Defendant's claims constitute an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff placed importance on Defendant's claims.

All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class. Defendant breached the terms of the contract, including the express warranties, with Plaintiff and the Class by not providing Products that conform to the advertising and label claims. As a result of Defendant's breach of contract, Plaintiff and the Class have been damaged because had Plaintiff known the Products were in fact not "All Natural," or that the Products contained preservatives, Plaintiff would not have purchased the Product.

**III. DEMAND FOR RELIEF**

Pursuant to California Civil Code Section 1782(b), Plaintiff demands that Defendant agree to correct, repair, and rectify its unlawful acts within 30 days. In particular, Plaintiff demands that Defendant changes its labeling of the Products. We also request that Defendant compensate Plaintiff for his attorneys' fees and costs pursuant to Civil Code Section 1780(e) and Code of Civil Procedure Section 1021.5.

**Litigation Hold Notice**: This letter also serves as a demand that you preserve and maintain all of the following records, including but not limited to, all electronically stored information ("**ESI**"), records, and data, pending resolution of this matter, in accordance with state and federal law:

(1) All internal manuals, written policies, directives, memoranda, correspondence, emails, ESI, and other records of communication concerning the Products' sales, marketing, and advertising within the last four (4) years;

*Iglesias v. Hornell Brewing Co., Inc.*
June 13, 2022
Page 22 of 22

(2) All internal manuals, written policies, directives, memoranda, correspondence, emails, ESI, and other records of communication concerning the Products' "All Natural" and "No Preservatives" claims within the last four (4) years;

(3) All advertising, marketing, and other promotional materials and ESI disseminated in the State of California within the last four (4) years;

(4) All documents, including ESI, concerning consumer complaints or employee complaints from all sources in connection with the Products within the last four (4) years;

(5) All documents, including ESI, concerning the Products' returns within the last four (4) years; and

(6) All business records, including ESI, evidencing the number of units of the Products sold in California within the last four (4) years.

If you wish to discuss this matter prior to Plaintiff initiating formal litigation, then please contact me at yhart@clarksonlawfirm.com. If we do not hear from you on or before July 13, 2022, then we, on behalf of Plaintiff and the proposed Plaintiff Class, will file our client's complaint.

Thank you for your attention to this matter.

Sincerely,

CLARKSON LAW FIRM, P.C.

Yana Hart, Esq.