# EXHIBIT K

<u>DECLARATION OF ANDRÉ E. JARDINI IN SUPPORT OF DEFENDANT'S</u>

<u>MOTION FOR AWARD OF ATTORNEY'S FEES</u>

I, André E. Jardini, declare as follows:

1.     I am an attorney licensed to practice law in the state of California and a member of the firm Knapp Petersen and Clarke. I have been asked to present opinion testimony by way of this declaration regarding my analysis of the appropriate rates to be applied to the hours expended by Stevens & Lee ("Stevens") in successfully litigating this matter on behalf of defendant *Arizona Beverages USA, LLC* ("ABUSA") from October 1, 2024 to August 14, 2025.

2.     ABUSA retained attorney Robert P. Donovan of Stevens to represent them in their defense of the various false advertising claims sought by Thomas Iglesias in the matter of *Iglesias v. AriZona Beverages USA, LLC*, Case No. 4:22-cv-09108-JSW in the United States District Court, Northern District of California.

**QUALIFICATIONS**

3.     I have practiced law, principally as a litigation attorney, in California, for 48 years.  I have a Bachelor of Arts Degree from the University of Notre Dame, granted in 1973.  I graduated from University of California College of the Law, San Francisco (formerly Hastings College of the Law) with a Juris Doctorate in 1976 and was admitted to the Bar of the State of California that same year.  I have also been admitted to practice before the United States District Court for the Central District of California, as well as in the Southern District, Northern District and Eastern District.  I am admitted to practice and have often appeared before the Ninth Circuit Court of Appeals.

4.     I served as a law clerk to the Honorable Robert Firth of the United States District Court, Central District of California, in 1977 and 1978.

5.     From time to time, I serve as an arbitrator in the Los Angeles County Bar Association Dispute Resolutions Services Program, which concerns attorney-client disputes over legal billings.

**KNAPP, PETERSEN & CLARKE**

-1-

7140661.1  90035/00000

6. I have participated as an expert witness in arbitrations and hearings in various courts of general jurisdiction concerning attorney fee disputes throughout California and the U.S. I have testified on attorney fee issues in 37 states and a number of foreign countries.

7. I have been employed at Knapp, Petersen & Clarke since its inception as a law firm in 1981. I am currently President of the firm. My practice has consisted predominantly of trial work. I have tried 55 jury trials to conclusion during my tenure with the firm. I am a member of the American Board of Trial Advocates, having achieved "Advocate" status with ABOTA based on the completion of more than 50 jury trials. (Attached hereto as **Exhibit 1** is a listing of some of my trial experience.) These trials cover a wide variety of subject areas. I have had extensive experience in litigating and trying cases in various Superior Courts in the State of California and in California Federal Courts, including the Northern District. I am aware of the rates applicable to and the time and effort required to effectively litigate cases in these jurisdictions.

8. I have often litigated sophisticated unfair competition, false advertising and other business tort claims in California state and federal courts.

9. Attached hereto as **Exhibit 2** is a listing of 4 years of cases in which I have appeared as an expert witness and reviewed attorneys' fees issues and testified at deposition or trial.

10. Since 1985, I have been retained by clients and actively engaged in the auditing of legal billings and consulting with companies to control legal expenditures. As a consultant or expert witness, I have personally audited the billings of a large proportion of the major law firms in California, as well as billings of numerous out-of-state firms. To date, I have performed more than 1,950 such legal fee audits, with billing reviewed in excess of $2.75 billion.

11. I have tried and arbitrated numerous cases in which the predominant issue involved is the reasonableness of attorneys' fees and costs and applicable attorney rates.

12. Attached as **Exhibit 3** is an outline of my qualifications to testify as an expert concerning reasonableness of fees issues, including analysis of attorney rates.

-2-

13. Based on my significant experience relating to legal audit matters and our firm's belief that there was a need for such a service in the legal community, in October of 1991, Knapp, Petersen & Clarke established KPC Legal Audit Services, Inc. I am the founder and the President of that company.

14. KPC Legal Audit Services, Inc. is a dba of Knapp, Petersen & Clarke. The company specializes in the review and audit of legal billings and consulting and education on legal cost containment.

15. KPC Legal Audit has been a member of the National Association of Legal Fee Analysis ("NALFA") since its inception. I have often been a speaker on attorney fee topics at NALFA seminars and other MCLE events. NALFA has included me on its list of "The Nation's Top Fee Experts" since that listing was created. (Attached as **Exhibit 4** is a NALFA fact sheet describing its mission.)

16. I have taught attorney fee issues at UCLA Law School and USC Law School.

17. KPC Legal Audit has reviewed billing relating to a wide variety of different types of litigation including hundreds of matters involving business practices, unfair competition, consumer remedies, and many other topic areas including indemnity claim litigation, intellectual property litigation, civil rights claims, commercial law matters, transactional matters, real estate matters, public interest cases, environmental litigation, family law, bankruptcy and others. These cases include complex litigation involving attorney fee issues in the Superior Court in Los Angeles and in United States District Courts throughout the U.S. I have often provided expert opinions on attorney fee issues in the Northern District.

18. I have testified as an expert witness, through declaration or live testimony, in more than 560 cases regarding reasonableness of legal fees, and/or allocation of such fees both on behalf of the proponent of such fees and on behalf of the opposing party.

19. On rare occasions, concerning past opinions, judges have disagreed with some or all of my conclusions. Far more frequently, in fact in most matters as to which I am informed of the result, the judge, arbitrator or jury has accepted most, if not all, of my

**KNAPP,
PETERSEN
& CLARKE**

-3-

reasoning and opinions.  Given the volume of my opinions over the decades that I have presented testimony on attorney fee issues, the occasional, and specific, critical comments as have been made are understandable and minor.  In no past court finding has any specific opinion on a specific audit issue reached the basis and underpinning of my opinions in this case.  I am not aware of ever being excluded as an expert witness for any reason.

**STANDARD OF REVIEW**

20.     I am guided by Rule 1.5 of the State Bar of California Rules of Professional Conduct.  The rule, as applied by court decisions, discusses factors to be considered in determining the reasonableness of attorneys' fees.  That Rule states:

a.     A lawyer shall not make an agreement for, charge, or collect an unconscionable or illegal fee.

b.     Unconscionability of a fee shall be determined on the basis of all the facts and circumstances existing at the time the agreement is entered into except where the parties contemplate that the fee will be affected by later events.  The factors to be considered, in determining the unconscionability of a fee include, without limitation, the following:

(1)  Whether the lawyer engaged in fraud or overreaching in negotiating or setting the fee;

(2)  whether the lawyer has failed to disclose material facts;

(3)  the amount of the fee in proportion to the value of the services performed;

(4)  the relative sophistication of the lawyer and the client;

(5)  the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly;

(6)  the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(7)  the amount involved and the results obtained;

(8)  the time limitations imposed by the client or by the circumstances;

KNAPP,
PETERSEN
& CLARKE

-4-

7140661.1  90035/00000

(9)  the nature and length of the professional relationship with the client;

(10)  the experience, reputation, and ability of the lawyer or lawyers performing the services;

(11)  whether the fee is fixed or contingent;

(12)  the time and labor required; and

(13)  whether the client gave informed consent to the fee.

21.     In my experience, these standards are regularly applied by courts to determine the reasonableness of attorneys' fees.

22.     Similar standards exist in every jurisdiction.  In the 9th Circuit, these factors are considered and are known as the "Kerr factors."  (*Kerr v. Screen Actors Guild, Inc.*, 526 F.2d 97 (9th Cir. 1975).

23.     These standards inform an evaluation of attorneys' fees considering the relevant market (here, San Francisco) and the attorneys' skill, reputation and experience.

24.     The United States Supreme Court opinion in *Hensley v. Eckerhart* (1983) 461 U.S. 424 is instructive.  The court, in discussing an award of attorneys' fees to a prevailing party, enumerated the factors which should be considered in making such an award.  The starting point in the analysis is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  (*Id*. at 433.)

25.     In the course of my audit work, I have utilized a number of sources to support my conclusions, including California case law on the topic of reasonable attorneys' fees, those principles frequently discussed in presentations on attorneys' fee topics, including by notable jurists, Arbitration Advisories re attorney fee arbitration, NALFA principles, and secondary sources on legal fee issues.

26.     In assessing appropriate rates to apply to the hours of services rendered by Stevens I have considered relevant survey information.

////

////

**KNAPP,
PETERSEN
& CLARKE**

-5-

7140661.1  90035/00000

27.     ELM Solutions, a Walter Kluwer company, publishes a widely accepted annual survey of attorney rates broken down by a number of key variables. I have relied upon their current 2024 Real Rate Report in the rate analysis herein.

28.     KPC Legal Audit Services has maintained a database of attorney rates concerning the hundreds of audits we have performed. That database over the relevant period has more than 5000 entries, most of them in California.

29.     NALFA has a rate survey broken down by years of experience, location and case complexity.  I have considered that survey.

30.     The standard of reasonableness which will be applied in this matter is based on these principles, on my experience in litigation, and my experience in the legal audit practice.  I have analyzed the amount sought in fees using my experience and the above standards.

**BACKGROUND INFORMATION**

31.     I have been provided with considerable information concerning this litigation and its status.

32.     A complaint was filed by Iglesias against ABUSA on December 23, 2022. This matter is venued in the Northern District of California and alleges five claims including Violation of California Consumers Legal Remedies Act; Violation of California False Advertising Law, Business and Professions Code; Violation of California Unfair Competition Law, Business and Professions Code; Unjust Enrichment; and Breach of Express Warranty.  The claims are specific to the AriZona beverage products and the labeling as containing all natural ingredients and free of preservatives.

33.     Plaintiff sought injunctive relief to stop ABUSA from "unlawful labeling and advertising of the Products,"

34.     Through a successful motion for summary judgment, ABUSA succeeded as the prevailing party in the litigation.

35.     I have been provided with, and have had the opportunity to carefully review, the relevant billing from Stevens pertaining to the representation of ABUSA in this matter.

**KNAPP, PETERSEN & CLARKE**

-6-

The period covered in these invoices runs from October 1, 2024 through August 14, 2025, over a 10-month period.

36.    Legal services described in the invoice total 1,103.5 hours, an average of approximately only 110.4 hours per month.

37.    Of these hours, 573.5 hours were recorded by Robert Donovan, almost 52% of all time spent on the matter. This concentration of hours in one attorney is an efficient and economic allocation of resources.

38.    Stevens charged rates of $350 an hour for partner time, $275 an hour for associate time and $125 an hour for paralegal time.

39.    I have had the opportunity to review file materials from Stevens. The file materials and pleadings provide detailed and reliable background information. Those materials include:

- Court Register of Actions
- Complaint filed against ABUSA in December 2022
- First Amended Complaint filed in March 2023
- ABUSA Motion for Summary Judgment dated June 20, 2025
- Court Judgment granting summary judgment in favor of ABUSA
- Biographies of attorneys billing at Stevens in this matter
- The 10 Stevens invoices from 2024 to 2025

40.    As a result of the review of these documents the following schedules were prepared: (Attached as **Exhibit 5**)

- Fees and Costs Billed
- Index of Billing Personnel

**OPINIONS**

41.    Based upon my review of significant background information, review of the Stevens invoices and consideration of relevant surveys, I have reached conclusions as to the appropriate hourly rates which should be applied for the successful work done by the firm.

////

KNAPP,
PETERSEN
& CLARKE

-7-

7140661.1  90035/00000

42.     As reflected on the attached **Index of Billing Personnel,** Stevens used the services of 11 timekeepers during the 10-month pendency of this matter. As stated, the most significant commitment of time in the case (almost 52%) was made by attorney Robert Donovan. Associates Nicholas Eliades and partner John Visconi spent 171.4 hours and 101.8 hours, respectively. The time was concentrated in few individuals.

43.     Mr. Donovan is a 1989 New Jersey State Bar admittee and has therefore been practicing law in that state for 36 years (also approved as pro hac vice attorney for this matter in February 2023). Nicholas Eliades is a 10-year attorney, acting as an associate attorney at Stevens.  The following attorneys have also been approved as pro hac vice attorneys:

Matthew C. Brunelli

Catherin MacDuff

Christopher McDonald

Shirley Moreno

John N. Visconi

44.     In my opinion the hourly rates for Mr. Donovan's and Mr. Visconi's services of $350 are reasonable.

45.     The hourly rate for Mr. Eliades of $275 is reasonable.

46.     The appropriate rate for the services of paralegal Miller of $125 is reasonable.

47.     Other rates for the minimal time spent by other timekeepers are consistent with these rates.

48.     The above conclusions are based upon review of pertinent survey information and my experience in litigating and auditing cases in the Northern District over the decades that experience entails.

////

////

////

////

**KNAPP,
PETERSEN
& CLARKE**

-8-

7140661.1  90035/00000

**The Real Rate Report Measures the Appropriate Market Attorney Rates in Northern California**

49.     ELM Solutions publishes a report annually concerning attorney rates broken down by a number of key variables.  I have relied upon the current 2024 Real Rate Report in the rate analysis herein.

50.     The Real Rate Report has been commonly relied upon by courts as evidence of what is the customary rate charged in the forum.  This is true nationwide.

51.     A Westlaw search of District Court cases (published and unpublished) in the Ninth Circuit which have cited to the Real Rate Report numbers 337 cases.

52.     The Report is frequently used by parties and considered by courts in determining local rates.  The Court's comment in *Pritchett v. Slauson Gas Station, LLC* (2022) WL 319989, at *2 (C.D. Cal. Jan. 10, 2022) is indicative.  There the Court stated "[T]his court and others regularly consult the Real Rate Report . . . when awarding attorneys' fees because it is based on actual legal billing, matter information, and paid and processed invoices from a wide range of companies."

53.     California District Courts have previously found the Real Rate Report to be useful in assessing reasonable rates.  For instance, the Court in *Garcia v. Burbank Oil Company, Inc.* (2021) WL 3557834 (C.D. Cal. Apr. 19, 2021), at *4 discussed an attorney rate issue in an ADA case and stated:

> The provided hourly rates for the attorneys involved are within range for lawyers with comparable experience in the Los Angeles area.  See *Wolters Kluwer/CEB*, 2020 Real Rate Report at 34, 38 (showing the requested rates lie on the lower range in Los Angeles for partners with more than 21 years of experience and for associates with between 3 to 7 years of experience).

54.     Also, in *Hernandez v. FCA US LLC* (2019) WL 2932637 (C.D. Cal. Jan. 4, 2019) at fn 3, the court used the Real Rate Report in assessing the fee issues in a Song-Beverly Act matter.  The Court stated:

////

////

**KNAPP, PETERSEN & CLARKE**

-9-

7140661.1  90035/00000

This Court has recently cited with approval the Real Rate Report as a benchmark for reasonable hourly rates.  See, e.g., *Housing Works v. County of Los Angeles*, case no. 2:15-cv-08982-GW-(RAOx), docket no. 155, at 7. (C.D. Cal. July 12, 2018); *Nesbit v. Am. Nat-l Red Cross, et al.*, case no. 2:16-cv-7342-GW(ASx) docket no. 136, at 14, N. 12 (C.D. Cal. Jun. 7, 2018); *Harrison v. Archdiocese of Los Angeles, et al.*, case no. 2:13-cv-8257-GW-(SSx), docket no. 115, at 9-10 (C.D. Cal. May 7, 2015).  The <u>Court finds that the Real Rate Report provides objective empirical data that serves as a better benchmark of reasonableness than scouring a litany of cases from within and outside the judicial district</u>.  (Emphasis added.)

55.    The Court in that matter recognized at fn 3 that "other judicial officers within the Central District have cited with approval and utilized the Real Rate Report in calculating the appropriate award of attorneys' fees.  See for example *Downey Surgical Clinic Inc. v. Injenix, Inc.*, case number CV09-5457-PFG-(JCx), (2015) WL 1265755, at *14, 17 N. 5 (C.D. Cal. Nov. 11, 2015)."

56.    In *Hernandez*, the court recognized that the Real Rate Report segregates rates "based on the demarcation of partner or associate."  (Supra *3.)

57.    In *Housing Works v. County of Los Angeles* (2018) WL 11309909 (C.D. Cal. July 12, 2018) *5, the Court adopted Real Rate Report hourly rates in an ADA matter, stating:

[T]he Court appreciates that the rates requested by plaintiffs are within the range other courts have approved.  Nonetheless, this court has recently cited with approval the Real Rate Report as a benchmark for reasonable hourly rates in Los Angeles (citations omitted).  <u>The court finds that the Real Rate Report provides objective empirical data that serves as a better benchmark of reasonableness than scouring a litany of cases from within and outside the judicial district</u>. (Emphasis added.)

58.    In *Colt Relman Colfax PLLC v. Fair Housing Council of San Fernando Valley* (2021) WL 1895905 (C.D. Cal. Mar. 16, 2021) the Honorable Philip S. Gutierrez considered a fee motion which arose under a default judgment in assessing rates ranging as high as $1,170 per hour in 2021.  The Court stated:

The Court turns to the 2020 Real Rate Report: the industries' leading analysis of law firm rates, trends and practices (Real Rate Report) as a useful guidepost to assess the reasonableness of these hourly rates in the Central District.  See *Eksouzian v. Albanese* (No. 15-cv-13-728 PSG (AJWx), 215

KNAPP, PETERSEN & CLARKE

-10-

WL 12765585, at \*4 - \*5 (Central District of California Oct. 23, 2015). <u>The Real Rate Report identifies attorney rates by</u> location, experience, firm size, areas of expertise and industry as well as specific practice areas, and is based on actual legal billing, matter <u>information, and paid and processed invoices for more than 80 companies. (Citation omitted.) Court have found the Real Rate Report is "a much better reflection of true market rates than self-reported rates in all practice areas."</u> (Citation omitted.) (Emphasis added.)

59. In 2021, using the then current edition of the Real Rate Report, the Court in *Martinez v. Helzberg's Diamond Shops*, Case No. ED CV 20-1085 PSG (SHKx), 2021 WL 9181893 used that data in determining reasonable rates in an employment matter. The court stated, "The Real Rate Report provides that, in Los Angeles, partners litigating employment and labor matters have hourly rates ranging from $470 to $753, and associates have hourly rates ranging from $335 to $570". (at \*10)

60. Relevant sections of the 2024 Real Rate Report are attached hereto as **Exhibit 6**. ("Real Rate Report")

61. The Real Rate Report data is a proper benchmark for attorney rates in this case, in my opinion. The data is sourced from corporations and law firms who use a billing and time management program. The data is compiled anonymously from the Wolters Kluwer billing program. Thereafter, the data is filtered by specific practice and sub practice areas, metropolitan areas and types of matters. (Real Rate Report, p. 4.)

## **Real Rate Report Data Supports my Opinions Herein**

62. The Real Rate Report discusses the factors that impact rates. Principal among those factors is the location of the litigated case. Here, Northern District (San Francisco) rates should be applied. Those rates are higher than the rates in many other jurisdictions.

63. The Real Rate Report also considers years of experience of counsel. More experienced attorneys, on average, command higher rates than less experienced attorneys.

64. The Report also breaks down rates by the type of case involved. Here, the case is generally product and product liability litigation.

65. Complexity of the representation is also considered. The cost of representation will be higher if the case is particularly complex or time-consuming.

KNAPP,
PETERSEN
& CLARKE

-11-

7140661.1  90035/00000

66.   I have considered the foregoing factors in assessing the data in the Report.

67.   San Francisco litigation rates for partners and associates at the 1st quartile and median and 3d quartile levels are as follows:

|  | First Quartile | Median | Third Quartile |
|---|---|---|---|
| Partner | $420.00 | $825.00 | $1,208.00 |
| Associate | $431.00 | $614.00 | $824.00 |

68.   San Francisco rates for partners based on years of experience are as follows:

|  | First Quartile | Median | Third Quartile |
|---|---|---|---|
| Fewer than 21 years | $580.00 | $923.00 | $1,278.00 |
| 21 or more years | $598.00 | $885.00 | $1,350.00 |

69.   San Francisco rates for associates based on years of experience are as follows:

|  | First Quartile | Median | Third Quartile |
|---|---|---|---|
| Three to fewer than seven years | $635.00 | $788.00 | $813.00 |
| Seven or more years | $525.00 | $890.00 | $1,077.00 |

70.   Nationwide rates for product liability litigation cases for partners and associates are as follows:

|  | First Quartile | Median | Third Quartile |
|---|---|---|---|
| Partners | $335.00 | $460.00 | $669.00 |
| Associates | $250.00 | $350.00 | $500.00 |

71.   It should be considered that San Francisco rates are higher than overall or nationwide rates. It should also be considered that Mr. Donovan has years of experience reflecting the highest rates.  Product liability cases have slightly lower rates than the overall San Francisco litigation rates.  However, this case is predominantly a false advertising and unfair competition case.

72.   In my view, given the length and complexity of this matter, an appropriate rate in each instance would be between the 1st quartile and median hourly rates using the

-12-

KNAPP,
PETERSEN
& CLARKE

7140661.1  90035/00000

nationwide Real Rate Report taking into consideration Mr. Donovan's primary practice of law in New Jersey.

73. This midpoint analysis for Mr. Donovan supports his $350 rate. The midpoint analysis for the associates on the case results in a midpoint rate of $275.

**NALFA Rates are In Excess of and  Supporting of These Opinions**

74. NALFA conducts an annual litigation hourly rate survey. The survey typically has upwards of 28,000 responses.

75. The survey breaks down the responses in tiers based on location and complexity and years of service.  (A copy of relevant portions of the 2024 NALFA rate survey is attached as **Exhibit 7**.

76. Tier 2 rates in San Francisco range from $451 to $700 an hour and reflect approximately 42.7% of all survey responses.

77. For attorneys with 35 to 37 years of litigation experience, Tier 3 rates represent almost 35% of all responses with rates ranging from $701 to $950.

78. For associates with 10 to 11 years of experience the midpoint of the responses is within Tier 2 and approximately $575 an hour.

**KPC Data Supports This Analysis**

79. For more than 10 years KPC Legal Audit Services has been compiling attorney rate data as disclosed in the hundreds of audits conducted. That data is searchable by type of case, years of experience, and relevant period.

80. That data reflects rates in product defect and business competition cases based on years of experience.  The data can be sorted as to San Francisco cases.

81. KPC data in these cases ranges from $550 an hour to $899 an hour for attorneys with between 35 and 37 years of experience.

82. For attorneys with 10-12 years of experience in these cases the rates range from $325 to $850.

////

////

**KNAPP,
PETERSEN
& CLARKE**

-13-

**THE HOURS SPENT BY STEVENS ARE REASONABLE**

83.     I have considered the professional hours in the Stevens invoices and assessed the time for reasonableness.

84.     In my experience, a key issue reflecting on the reasonableness of fees is whether staffing by the law firm was appropriate. Overstaffing and unreasonable levels of staffing are often the principal cause of unreasonably high attorney billing.

85.     Here, 85% of all time was spent by only four timekeepers.  Over 52% of all time was spent by Mr. Donovan. This concentration of time in very few individuals is efficient and economical.

86.     The total number of hours, 1,103.5, is eminently reasonable and would be expected in a case of this size, complexity and duration.

87.     Given the lean staffing in the case, the amount of time spent on specific litigation events was reasonable.  That time can be assessed by review of the significant services provided.  The services include drafting defendant's motion for summary judgment in June 2025 and reply.  Stevens also logged hours to prepare for and attend defendant's three 30(b)(6) depositions; prepared for the depositions of plaintiff's experts Dr. McCartney, Susan Yanes and Dr. Dennis; prepared for and attended mediation on March 17, 2025; and drafted written discovery responses and conducted document review. Appropriate division of services included associate attorneys who handled the majority of document review and production, including drafting meet and confer letters.  The litigation demands also required Stevens to research and begin preparation of an opposition to plaintiff's motion for class certification, including Daubert motions in support of the opposition.  The time spent was reasonable and necessary.

88.     The invoices were reviewed for typical billing issues as might be present such as block billing, excessive conferencing, vague entries, overhead entries and the like. I did not see any significant issue with regard to the typical billing issues which might arise. In fact, no systemic problematic billing issues were identified.

////

KNAPP,
PETERSEN
& CLARKE

-14-

89.     The Rule 1.5 and *Kerr* factors are supportive of the fees is requested.

90.     The time and labor required are consistent with the complexity and duration of the litigation.

91.     The case required the skills of an attorney who handles product advertising disputes such as those possessed by Mr. Donovan.

92.     The result obtained was exactly that sought, with summary judgment awarded.

93.     In my experience fees at the level here requested are well within the range of previous awards in similar litigation.

## CONCLUSION

94.     Based on the hours billed and application of appropriate hourly rates, the total of $352,925 represents reasonable fees in the litigation.  The fees are calculated using reasonable market hourly rates as set forth below.

| Timekeeper | Sum of Hours | Hourly Rate | Sum of Fees |
|---|---|---|---|
| Brunelli, Matthew C. | 51.1 | $275.00 | $14,052.50 |
| Donovan, Robert P. | 573.5 | $350.00 | $200,725.00 |
| Eliades, Nicholas | 171.4 | $275.00 | $47,135.00 |
| MacDuff, Catherin | 82.2 | $275.00 | $22,605.00 |
| McDonald, Christopher | 90.6 | $275.00 | $24,915.00 |
| Miller, Mark J. | 0.2 | $125.00 | $25.00 |
| Moreno, Shirley | 13.3 | $275.00 | $3,657.50 |
| Muehlbauer, Portia | 7.7 | $125.00 | $962.50 |
| Portenti, Rita | 2.1 | $275.00 | $577.50 |
| Visconi, John N. | 101.8 | $350.00 | $35,630.00 |
| Ware, Elizabeth A. | 9.6 | $275.00 | $2,640.00 |
| **Total** | **1,103.5** | | **$352,925.00** |

Executed on this 2nd day of September, 2025, at Glendale, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

André E. Jardini

-15-

KNAPP, PETERSEN & CLARKE

7140661.1  90035/00000

**EXHIBIT 1**

**ANDRÉ E. JARDINI**
**TRIAL EXPERIENCE**

**December 2019**          *LaFace v. Ralphs*

trial in Los Angeles Superior Court
Private Attorneys General Action to enforce wage order
re seating for cashiers
4-week trial, and subsequent appeal

**October 2012**          *Mendoza v. Nordstrom*

- trial in United States District Court
- enforcement of day of rest statutes (Labor Code sections 551 and 552)
- Nordstrom had employees work more than six consecutive days on more than 26,000 occasions
- case referred by Ninth Circuit Court of Appeals to California Supreme Court to answer questions regarding interpretation of statutes

**March 2010**          *Mendoza v. ABM Industries*

- 6-week trial (Los Angeles Superior Court)
- prosecution of whistleblower case against employer of HR Director
- financial irregularities and labor violations were observed and reported
- jury finds that the violations and financial issues existed and were accurately reported
- jury finds that whistleblower's activity was not the direct cause of the termination

**August 2009**          *Allstate Insurance v. Thacher, et al.*

- 5-day trial (U.S. District Court/Los Angeles)
- insurance coverage action against insurer who denied coverage and defense to a long-time insured for a personal injury accident at a rental property
- jury finds that primary and excess policies are in force
- jury finds arbitration result in underlying action was not collusive or unreasonable
- $780,000 awarded, to firm's clients.  Judgment affirmed on appeal

Revised 9-2022
5641105.1  90000/00007  MISC.

| | |
|---|---|
| **November 2008** | *Selvin & Weiner v. Bench International Search, Inc.* |

- 11-week trial (Los Angeles Superior Court – Malibu)
- defense of Bench International in a collection action by a law firm
- law firm sought approximately $643,000 (with interest)
- Bench International defended with suit for legal malpractice
- jury awarded only $200,000, without interest
- jury found legal malpractice and misrepresentations had occurred
- case resumed with new jury due to mistrial after 4 weeks

| | |
|---|---|
| **April 2007** | *Roy v. Edgetech, Inc.* |

- 7-day trial (Los Angeles Superior Court)
- suit to enforce two-year employment contract
- defendant paid for only two months to employee who moved from France to take the job
- offer of $40,000; demand of $52,500
- jury finds for plaintiff with penalties, interest and attorneys' fees, award is $225,000

| | |
|---|---|
| **April 2006** | *Confidential Case Name* |

- $30 million class action settlement
- case alleging wage and hour violations against an international package delivery company
- recovery for 13,000 California employees who were allegedly unpaid for hours worked and were not provided required meal and rest breaks
- defendant company altered its procedure at the time of the settlement to comply with California law

| | |
|---|---|
| **August 2006** | *HJF, Inc., Sitara Management v. Equilon* |

- 15-day trial (Los Angeles Superior Court)
- suit for breach of contract and fraud against oil company by gas station owner client
- jury verdict for firm client that administration of lease program caused harm to gas station owner
- jury awards $225,000

| | |
|---|---|
| **May 2005** | *Goodwin v. City of San Bernardino* |

- 5-day retrial (U.S. District Court/Riverside)
- civil rights case for unlawful entry and arrest
- second mistrial due to lack of jury unanimity

-2-

**October 2004**                    *Confidential Case Name*

-       22-day trial (Los Angeles Superior Court)
-       legal malpractice case; lawyers lost summary judgment for failure
        to produce available evidence
-       jury verdict (10-2) that firm client would have recovered for breach
        of contract and fraud in underlying case
-       client deprived of partnership interest in 129 lot residential
        development
-       jury awards $4.2 million

**June 2004**                       *Confidential Case Name*

-       legal malpractice case
-       Imperfect CCP § 998 offer in catastrophic injury case causes loss
        of hundreds of thousands of dollars
-       settled first day of trial (Los Angeles Superior Court)

**March 2003**                      *Goodwin v. City of San Bernardino*

-       5-day trial (U.S. District Court/Riverside)
-       civil rights case for unlawful entry and arrest
-       mistrial due to lack of jury unanimity

**May 2002**                        *Amezquita v. John J. Fox, M.D., Inc.*

-       14-day trial (Los Angeles Superior Court - Glendale)
-       medical malpractice case
-       OB/GYN implants IUD in woman who is already pregnant
        resulting in premature birth of child with developmental delays

**January 2002**                    *Titus v. Randazzo*

-       6-day trial (Los Angeles Superior Court - Glendale)
-       client, a juror on a prior case, causes automobile accident
-       victim claims serious degenerative nerve problems with medical
        expenses of six figures
-       jury finds accident did not cause claimed injuries

5641105.1  90000/00007

**November 2001**          *Valdivia v. Burlington Northern Santa Fe Corporation*

-          11-day trial (San Bernardino Superior Court - Victorville)
-          wrongful death of 10-year-old boy killed by train; accident is witnessed by seven-year-old sister
-          settlement offer doubled during trial

**May 2001**          *Orlandini v . San Gabriel Valley Medical Center*

-          6-day trial (Los Angeles Superior Court - Pasadena)
-          medical malpractice case
-          woman awakens under general anesthesia during hysterectomy

**December  2000**          *Spaggiari v. 21st Century*

-          trial (Los Angeles Superior Court - Van Nuys)
-          insurance bad faith case
-          insurer discontinues living expense coverage necessary for family displaced by Northridge earthquake
-          settled for firm client for $525,000 on first day of trial

**October 2000**          *Gaggero v. Stacey*

-          10-day trial (Los Angeles Superior Court - Norwalk)
-          firm client, a developer, sues former attorney for legal malpractice
-          attorney failed to advise concerning California's anti-SLAPP
-          statute before filing suit for malicious prosecution against neighborhood activists protesting Venice Beach development, resulting in award of attorneys' fees of $102,000
-          jury awards $332,177 to firm client

**April 2000**          *Barraza v. Stephenson, Acquisto & Colman*

-          6-day trial (Los Angeles Superior Court - Glendale)
-          suit for wrongful termination on account of pregnancy
-          law firm fires employee in same telephone conversation in which it learns she is pregnant

5641105.1  90000/00007

**July 1999**                    *Briggs v. Villa Esperanza*

- 5-day trial (Los Angeles Superior Court)
- firm client, a registered nurse, seeks unpaid overtime, interest, penalties and attorney's fees
- compensation awarded by the Department of Labor
- employer appealed; trial de novo in Superior Court
- $59,000 award, plus interest, costs and attorney's fees

**February 1999**                *Erath v. UCLA, et al.*

- 8-day trial (Los Angeles Superior Court)
- scientific records loaned to UCLA by firm client are lost
- question to be decided is value of the lost documents
- UCLA offers $50,000 before trial, and argues at trial that the documents have no value
- jury awards $125,000 to firm client

**March 1998**                   *Hughes Aircraft v. Associated Aviation Underwriters, et al.*

- 12-day trial (Los Angeles Superior Court)
- representation of AAU, excess carrier in a complicated multi-issue suit for insurance coverage for environmental contamination at Hughes' facility in Fullerton
- damages of $35,000,000 claimed; $25,000,000 had been paid by primary insurers
- jury determines that only 32% of contamination is from a sudden and accidental cause; also, jury diminishes claimed damages by more than $5,000,000
- on appeal award is reduced to nothing based on verdict and offsets

**March 1998**                   *Liberty Paper v. San Paolo Bank, et al.*

- 5-day trial (Los Angeles Superior Court)
- retrial of punitive damage phase of suit for fraud in real estate transaction against Italian bank
- $150,000 offered by defendant bank before trial
- jury awards $1,700,000 to firm's client

5641105.1  90000/00007

**February 1998**          *Del Babb v. Property Tax Assistance, Inc.*

- 2-day trial (Martinez Superior Court)
- former employee sues to recover unpaid overtime compensation and unpaid bonuses in the amount of $750,000 against firm client
- case dismissed by plaintiff upon ruling of no entitlement to overtime compensation

**January 1998**          *Hugo Valdivia v. MCE Corporation, Hardy & Harper, Inc.*

- 8-day trial (Los Angeles Superior Court)
- personal injury case, involving knee injury to firefighter at station caused by a defective rolling gate
- $100,000 statutory offer by defendants to firm's client
- client had returned to work 10 months after the accident and had worked without restriction for 20 months before trial
- jury awards $1.5 million to firm's client (12-0 vote)

**November 1997**          *Associated Aviation Underwriters v. Wolfe Air, et al.*

- 12-day trial (Los Angeles Superior Court - Central Civil West)
- insurance bad faith case
- $18,000,000 sought by air carrier for damages caused by alleged failure to pay benefits by insurer due to alleged prior cancellation of insurance policy, all arising out of helicopter accident
- air carrier contended cancellation was ineffective and won summary judgment on this issue
- court finds that insurance company's coverage position is reasonable and judgment awarded for firm's client

**August 1997**          *Liberty Paper v. San Paolo Bank, et al.*

- 5-day trial (Los Angeles Superior Court)
- suit to recover damages for defendant bank's failure to complete sale of commercial office building to firm's client
- $25,000 offered by defendant bank before trial
- jury awards $2,505,000 (including punitive damages) to firm's client

5641105.1  90000/00007

| | | |
|---|---|---|
| **June 1997** | | *Hospital Learning Centers v. Century Properties, et al.* |

- 6-day trial (Los Angeles Superior Court - Van Nuys)
- suit to recover value of business property destroyed by post-earthquake demolition of office building
- no offer by defendant building owner
- jury awards $370,000 to firm client (with pre-judgment interest, costs and attorneys' fees, award exceeds $700,000)

**April 1997**      *Moshfegh v. California Pizza Kitchen*

- 7-day trial (Los Angeles Superior Court - Malibu)
- false imprisonment and discrimination case
- party of eight kept from leaving restaurant and arrested for failure to pay tip

**October 1996**      *Investor's Thrift v. Old Republic Insurance Company*

- 8-day trial (Orange County Superior Court - Harbor)
- suit to recover loan losses covered by insurance for firm's thrift client
- $200,000 offered by defendants before trial
- jury awards $437,096 (with pre-judgment interest and costs, award exceeds $600,000) to firm's client

**May 1996**      *Steven Lenarth v. Stephanie Pacetti, Mount Vernon Foods*

- 13-day trial (Los Angeles Superior Court - Burbank)
- casualty case, personal injury from rear end accident; firm represents defendants
- $4,050,000 settlement demand by plaintiff injured on LADOT DASH bus hit by minivan
- Plaintiff suffered fractured knee and torn meniscus allegedly resulting in reflex sympathetic dystrophy.  Plaintiff in wheelchair, had not used leg in two years, and would not walk again
- C.C.P. §998 formal offer to compromise of $250,000 made; structured settlement with present value of $286,000 offered
- plaintiff dismissed case with prejudice on 13th day of trial for no payment and waiver of costs

-7-

| **January 1996** | *RGP Orthopedic Appliances v. Atlantic Mutual Insurance Company* |

- 13-day trial (San Diego Superior Court)
- insurance bad faith case
- $11,250,000 sought by company and two severely injured judgment creditors for failure to pay $2,000,000 limits of umbrella insurance policy for damages incurred in a very serious automobile accident
- insured asserted exclusion was missing key language due to a clerical error; court finds exclusion unenforceable
- award of $1,225,000 in extra-contractual damages; (defendant insurer had offered $1,400,000 in settlement)

| **October 1995** | *Landers v. State Farm Fire and Casualty Company* |

- 29-day trial (Los Angeles Superior Court)
- insurance bad faith case
- $150,000 sought for alleged failure to pay no-fault benefits under a New York insurance policy
- award of $50,000 to plaintiff

| **August 1995** | *Rosenfield v. (Confidential - two defendants)* |

- trial (Los Angeles Superior Court - Santa Monica)
- wrongful termination on the basis of sexual orientation settlement during trial; firm's client receives $575,000

| **July 1995** | *Nationwide Insurance Company v. Great American Insurance Company* |

- 7-day trial (Los Angeles Superior Court - Santa Monica)
- recovery sought for progressive loss arising out of soil settlement at residence in Pacific Palisades
- believed to be first jury trial after Supreme Court decision in
- Montrose Chemical Corporation v. Admiral Insurance Company regarding allocation between insurers for continuous loss
- 10-2 jury verdict for client finding defendant insurer should participate in paying loss; $125,000 awarded, including interest

-8-

**December 1994**            *Glick v. State Farm Fire and Casualty Company*

- 5-day trial (United States District Court - Los Angeles)
- insurance bad faith case
- $338,000 sought, plus consequential damages, for business personal property lost in theft and for lost income caused by business interruption
- 8-0 defense verdict for client, State Farm

**July 1994**            *Brown v. South Los Angeles Mortuary*

- 25-day trial (Los Angeles Superior Court - Central Civil West)
- mortuary malpractice case involving 17 plaintiffs who were relatives of a decedent whose remains were mishandled and exposed to insects
- more than $5 million sought for emotional distress and punitive damages
- jury verdict finding firm client only 10 percent responsible (cemetery found 90 percent responsible)
- total award against firm client $97,000 - more than $300,000 had been offered in settlement

**April 1994**            *Edison v. Labowe, Labowe & Hoffman*

- 30-day trial (Los Angeles Superior Court)
- legal malpractice case against firm client
- $2.7 million sought for law firm errors in complicated real estate transaction involving loss of 65 percent interest in a commercial property
- jury verdict for plaintiff for $430,000; reversed on appeal on statute of limitations grounds; plaintiff takes nothing

**September 1993**            *International Registered Nurses of America, Inc. v. State Farm Fire and Casualty Company*

- 1 day trial (United States District Court - Los Angeles)
- insurance bad faith case
- $1,424,000 sought, plus consequential damages, for lost business income and failure to pay claim
- judgment in favor of client, State Farm

5641105.1  90000/00007

**September 1993**          *Smith v. Battalia, Remax South Bay Realty*

-          3-day binding arbitration per real estate purchase contract
-          real estate fraud
-          $150,000 sought for misrepresentation in sale of real estate, failing to disclose movement from subsurface soil condition
-          judgment in favor of client seller

**March 1993**          *Esters v. State Farm Mutual Automobile Insurance Company*

-          7-day trial (United States District Court - Los Angeles)
-          insurance bad faith case
-          $250,000 sought for five-year delay in paying
-          uninsured motorist claim and for unreasonably low offer
-          8-0 defense verdict for client

**September 1992**          *Block v. State Farm Mutual Automobile Insurance Company*

-          6-day trial (Los Angeles Superior Court - Beverly Hills)
-          insurance bad faith case
-          $100,000 sought for failure to settle uninsured motorist claim and failure to pay medical bills
-          12-0 defense verdict for firm client

**May 1992**          *Shane v. Neil Lloyd & Co., Daniel Monnin*

-          5-day trial (Los Angeles Superior Court - Glendale)
-          wrongful death of four-year-old child by drunk driver
-          represented employer of drunk driver, good Samaritan who attempted to drive the drunk driver home and his employer
-          tried on liability issues only
-          motion for non-suit and directed verdict granted for all three firm clients

5641105.1  90000/00007

**March 1992**            *Reid v. Ulysses M. Carbajal, M.D.*

-    8-day trial (Los Angeles Superior Court - Central Civil West)
-    medical malpractice action
-    unnecessary surgery for acute sinusitis
-    $72,000 award for plaintiff client

**January 1992**          *Stern v. State Farm Mutual Automobile Insurance Company*

-    3-day binding arbitration (JAMS Santa Monica)
-    insurance bad faith case
-    alleged mishandling of claims re collision and UM coverages
-    award for client defendant on all claims

**November 1991**         *Tucker v. Westminster Memorial Park*

-    trial (Orange County Superior Court)
-    crematory misfeasance case
-    settled for our initial offer of $120,000 during trial

**September 1991**        *Bohall v. ARCS Mortgage, Bank of New York*

-    10-day trial (Los Angeles Superior Court)
-    retrial of wrongful termination case
-    branch manager fired with cause
-    $2 million dollar demand; $2,718 award

**May/June 1991**         *Proposition 103 Hearings*

-    4 weeks of hearings (San Francisco and Los Angeles)
-    cross-examination of Department of Insurance expert witnesses on rate of return, leverage, allowable expense, executive compensation and other issues

-11-

**January 1991**                  *Bohall v. ARCS Mortgage, Bank of New York*

- 10-day trial (Los Angeles Superior Court)
- wrongful termination, defamation and conversion case
- $1.5 million dollar demand; $300,000 offer
- $1.2 million dollar award, including $6,500 punitive damages, new trial motion granted

**October 1990**                  *Smoke Island Interiors v. General Accident Insurance*

- trial (Los Angeles Superior Court)
- insurance bad faith case
- allegations of unreasonable claims handling and denial of claim for stolen artwork; claim for $180,000 plus consequential and punitive damages
- settled for $17,500 during trial

**June 1990**                     *The Austin Company v. J.H. Baxter Company*

- 5-day trial (United States District Court - Los Angeles)
- product defect case
- failure of three-acre roof with a $2.5 million dollar replacement cost allegedly due to corrosion caused by fire retardant chemicals used by J.H. Baxter
- 6-0 defense verdict for our client J.H. Baxter

**May 1990**                      *Blanchard v. State Farm Fire and Casualty Company*

- 10-day trial (Los Angeles Superior Court - Santa Monica)
- insurance bad faith case
- $450,000 sought for failure to provide independent counsel in defense of covered construction defect litigation
- 10-2 defense verdict for our client, upheld on appeal

**February 1990**                 *Sykes, et al., v. Associated Farm Management*

- 9-day trial (United States District Court - Los Angeles)
- federal securities law case
- 100+ plaintiffs sought recovery of amounts lost in investments in nine limited partnerships in farmland - grapes, tree fruit, citrus - in California's Central Valley
- $29 million recovery requested; judgment rendered for $8.6 million

-12-

5641105.1  90000/00007

| **June 1989** | *Aetna Insurance Company v. Centennial Insurance Company* |
|---|---|

- 5-day trial (United States District Court - Los Angeles)
- insurance equitable subrogation case
- Aetna sought contribution re two-thirds of $725,000 in defense costs expended in defending underlying patent litigation
- court agreed with our position that two-sevenths was proper allocation and that attorney bills were unreasonably high; upheld on appeal

| **February 1989** | *Della Ripa v. Kaiser Hospital* |
|---|---|

- 5-day binding arbitration
- medical malpractice case
- $187,000 award for our client for defendant's failure to diagnose "panic disorder"

| **November 1988** | *Transtechnology, Inc. v. Allied Signal Corporation* |
|---|---|

- 11-day binding arbitration (3 arbitrator panel)
- environmental case
- second ever arbitration to apportion fault for groundwater pollution under California Health and Safety Code
  our client, Allied Signal, found responsible for 4 percent of response costs of $1.5 million dollars

| **June 1988** | *Wolf v. Fisher* |
|---|---|

- 6-day trial (Los Angeles Superior Court)
- suit for violation of rent control ordinance and intentional infliction of emotional distress
- 12-0 defense verdict for our clients, property owners

| **October 1987** | *Frederick v. Ambassador Insurance* |
|---|---|

- trial (Los Angeles Superior Court)
- insurance bad faith case
- insurer and parent company sued for failing to defend and indemnify in personal injury case
- client insurer insolvent per Vermont liquidation and dismissed; client employee pays $2,000; parent company, represented by another law firm, suffers $2 million dollar verdict

-13-

| **September 1987** | *Olson/Hurston v. L.B. Foster Company* |

- 8-day trial (United States District Court - Los Angeles)
- product defect case
- two pile drivers suffered multiple leg fractures when a ground release shackle failed and dropped a 900-pound sheet pile
- 6-0 defense verdict for our client, the distributor of the device

| **May 1986** | *Noma Corporation v. Centennial Insurance Company* |

- 7-day trial (United States District Court - Los Angeles)
- insurance bad faith case
- insured franchisor sought payment of $243,000 in legal fees for defense of covered suits by franchisees and $18,000,000 in consequential damages for failure to defend
- determined that $19,000 was only amount due

| **April 1986** | *Shea v. Owen, Century 21 Realty* |

- trial/stipulated judgment
- real estate fraud case
- fraudulent trade of primary residence for two unsecured greenhouses
- client plaintiff recovered $115,000 from defendants for fraudulent real estate transaction

| **December 1985/** | |
| **January 1986** | *Stotts v. Wallace and Tiernan Division of Pennwalt Corporation* |

- 28-day trial (Los Angeles Superior Court)
- product defect case
- client manufacturer's valve cracks exposing plaintiff to chlorine gas and causing serious impairment of lung function
- award $400,000

-14-

**EXHIBIT 2**

## ANDRÉ E. JARDINI'S DEPOSITION AND TRIAL TESTIMONY
## (LAST FOUR YEARS)

| | File Name | Type Of Testimony | Case Number | Court/Jurisdiction |
|---|---|---|---|---|
| 1 | Gadinis v. United Services (2018) | Deposition | 37-2018-00015334-cu-UM-CTL | Superior Court State of California County of San Diego, Central |
| 2 | Pech v. Morgan | Deposition and Trial | 18STCV02178 | LASC Central District |
| 3 | Averon v. The Crosby & AMS Paving | Deposition | 19-cv-02369-WQH-NLS | USDC Southern District |
| 4 | Mesa Water District v. KDC, Inc., et al. | Trial | 30-2016-00832860-cu-BC-CJC | OCSC |
| 5 | In Re Marriage of Skylar Peak and Janet Freisen Peak | Trial | 19STFL09382 | LASC |
| 6 | Simplot v. McCain | Deposition | 1:16-cv-00449-DCN | US District Court District of Idaho (Boise) |
| 7 | Greenberg Glusker v. Amin S. Lakha | Deposition | 1210036873 (JAMS) | JAMS Arbitration |
| 8 | Fraissl v. Moore | Deposition | BC535745 | LASC |
| 9 | Mark Hughes Family Trust | Deposition | BP 063500 | LASC |
| 10 | Travelers Insurance v. Salesforce | Deposition | JAMS Ref. 1100111905 | JAMS San Francisco |
| 11 | Golden Pacific Bank v. Kronick, Moskovich, Tiedeman & Girard | Deposition and Trial | 34-2018-00236905 | Superior Court State of California County of Sacramento |
| 12 | Premier Reimbursement Solutions v. Koetsier | Deposition | VCU281481 | Superior Court of the State of California County of Tulare |
| 13 | Dryit Inc. dba Jarvis Restoration v. Allstate Insurance Company | Deposition | 30-2020-01149888-CU-BC-CJC | Superior Court of the State of California County of Orange |
| 14 | Hughes v. Libeu | Deposition and Trial | SCv-261621 | Superior Court of California County of Sonoma |
| 15 | Hakkasan USA Inc. v. Endurance American Specialty Insurance, et al. | Deposition | A-20-816145-B | District Court clarke County, Nevada |
| 16 | Madeline8, LLC, et al. v. Alvaradosmith, APC, et al. | Deposition | 30-2020-01124146-CU-PN-CJC | Superior Court of California County of Orange Central Division |
| 17 | Green Solar Technologies, Inc. v. Raymond McElfish, et al. | Deposition | BC712758 | LASC |

| | File Name | Type Of Testimony | Case Number | Court/Jurisdiction |
|---|---|---|---|---|
| 18 | Miller Marital Deduction Trust, et al. v. Estate of Mark B. Dubois, et al. | Deposition and Trial | 2:16-cv-01883-SB | US District Court Eastern District of California |
| 19 | Google LLC v. Sonos | Deposition | 3:21-cv-07559-WHA | US District Court Northern District of California |
| 20 | Tutor Perini v. First Mercury | Deposition | 2:20-cv-09329-CAS-GJSx.(aco) | US District Court Central District of California |
| 21 | Caruso Affiliated v. Allied World | Deposition and Trial | 21STCV12443 | LASC |
| 22 | Clean & Sober Media, et al. v. HUB International Insurance Services | Deposition and Trial | 21STCV20391 | LASC |
| 23 | Richard Pech v. Thomas E. Morgan, III, et al. | Trial | 18STCV02178 | LASC |
| 24 | Epicgenetics/Gillis v. Gibson, Dunn & Crutcher | Deposition | Ref. No.5210000295 | JAMS |
| 25 | Motavassel v. Mokhtarzadeh | Deposition andTrial | 20 STCV02243 | LASC |
| 26 | The Charles Company v. Bryan Cave | Deposition | Ref. No. 1200059383 | JAMS |
| 27 | Barbizon School of San Francisco, et al. v. Putterman Landry & Yu | Deposition | Ref. No. 11300110356 | JAMS |
| 28 | Fashion Nova, LLC v. Citizens Insurance Company of America | Deposition | 23STCV01107 | USDC Central District |
| 29 | Katab v. Performance Team | Deposition | 2:23-cv-05811-ODW-JPR | USDC California Western Division |
| 30 | In Re Power Property v. DC-19-00695 | Deposition | DC-19-00695 | USDC Dallas, TX |
| 31 | White, Arnold & Dowd v. TomPaul ACIPCO LLC | Deposition | 2:23-cv01372-ACA | USDC of Alabama Southern District |
| 32 | Hogs & Heifers v. 201 North 3rd Street LV | Deposition | A-19-795091-B | District Clark County, Nevada |
| 33 | Peiffer Wolf Carr, et al. v. Valley Forge Insurance Co. | Deposition | 2:23-CV-06235 | USDC Eastern District of Louisiana |
| 34 | Jenee Child v. Certain Underwriters | Deposition | CIVSB2300838 | San Bernardino Superior Court |

| | File Name | Type Of Testimony | Case Number | Court/Jurisdiction |
|---|---|---|---|---|
| 35 | Maria Fresonke v. Navy Military Personnel Command, et al. | Deposition | OWCP No. 18-090613; 18-304964; 18-486100; 18-100991; 18-486103 and other OALJ case numbers | United States Department of Labor, Office of Administrative Law Judges |

# EXHIBIT 3

OUTLINE OF BACKGROUND AND QUALIFICATIONS
ANDRÉ E. JARDINI

- Practicing lawyer, principally as a trial attorney, in California since 1976.

- B.A. University of Notre Dame 1973; J.D. Hastings College of the Law 1976; admitted to the State Bar, December 1976.

- Clerkship in 1977 and 1978 in United States District Court in Los Angeles with Judge Robert Firth.

- Admitted to practice in all courts in the State of California, including four United States District Courts and the Ninth Circuit Court of Appeals. Admitted in the District Court for the Eastern District of Michigan.

- Partner at Knapp, Petersen & Clarke, a law firm providing litigation and transactional services to its clients.   Currently serving as President of the firm.

- Founder and President of KPC Legal Audit Services, Inc.

- Trial and arbitration of numerous cases in which the predominant issue was the reasonableness of attorney's fees.

- Since 1986, has personally audited the billings of a large proportion of the major law firms in California, has conducted audits throughout the U.S., and internationally.  More than 1,800 audits performed.

- Has audited billings exceeding cumulatively $2 billion.

- Has been under contract to the State of California (Cal PERS, California Lottery, Attorney General's Office) and numerous other government entities regarding audit services.

- Arbitrator in the Los Angeles County Bar Association Dispute Resolution Services Program regarding attorney/client disputes over legal billings.

- Qualified as an expert witness with regard to reasonableness of attorney's fees issues and ethical and attorney performance issues.

- Testimony as an expert witness at trial and in arbitration concerning attorney fee disputes.

- Experience as an attorney for litigants in matters concerning attorney fee disputes.

3462590.1  90000/00007
REVISED 3/21

- Practice consists predominantly of trial work.  More than 50 jury trials conducted to conclusion.

- Member, American Board of Trial Advocates. (Advocate status.)

- Articles written, seminars conducted and speaking engagements on the subject of reasonableness of attorney's fees and auditing practices.

- Martindale-Hubbell, rated AV, "Preeminent."

- Super Lawyer 2012 – 2020.

- The National Association of Legal Fee Analysis ("NALFA") ranks André E. Jardini as a "Top Attorney Fee Expert," and ranks KPC Legal Audit Services, Inc. as one of nation's top outside legal bill review programs, which follows Best Practices in Legal Fee Analysis.

- Representative cases on appeal:

**Simon v. San Paolo U.S. Holding Co., Inc.**  (2005)  35 Cal. 4th 1159
California Supreme Court case establishing Constitutional limits on punitive damages.

**Blanchard v. State Farm** (1991) 2 Cal. App. 4th 345
Case finding no entitlement to independent counsel in construction defect case.

**Kliger v. Superior Court**  (1990)  52 Cal. 3d 65
California Supreme Court case establishing parameters for suits for employer conduct in violation of public policy.

**Trope v. Katz (1995)** 11 Cal. 4th 274
Trial testimony in case establishing that attorneys cannot recover fees representing themselves in a fee collection action.

**Lance Camper v. Republic Indemnity** (2001) 90 Cal App. 4th 1151
Trial testimony concerning *Brandt* fees in insurance bad faith case.

# EXHIBIT 4



# NATIONAL ASSOCIATION OF LEGAL FEE ANALYSIS
## Specializing in Legal Billing & Attorney Fees
### A Network of Experts & Ethics

The National Association of Legal Fee Analysis (NALFA) is a 501(c)(6) non-profit professional association for the legal fee analysis field. Our members provide a range of services on attorney fee and legal billing matters. We serve as the organizing and governing body for the legal fee analysis profession.

Courts and clients turn to us for expertise when attorney fees and expenses are at issue in large, complex cases. NALFA members are fully qualified attorney fee experts, special masters, bankruptcy fee examiners, fee dispute neutrals, and legal bill auditors. All our members follow Best Practices in Legal Fee Analysis.

### NALFA Fact Sheet:

NALFA is an approved 501(c)(6) federal tax-exempt organization under the IRS Code.

NALFA is an A.M. Best Recommended Expert Service Provider (2008-Present).

NALFA has recommended qualified attorney fee experts on legal fee and billing matters ranging from $42,000-$500 million.

Since 2008, NALFA has hosted over 45 different CLE and professional development programs on attorney fees and legal billing topics. Our CLE faculty has included 23 sitting federal judges.

Every year, NALFA announces, "The Nation's Top Attorney Fee Experts".

Every year, NALFA conducts an hourly rate survey of civil litigation in the U.S. This is the nation's largest and most comprehensive survey or study of hourly billing rates in litigation.

NALFA offers a Certificate in Ethical Billing & Reasonable Fees, the nation's first and only certificate of its kind for registered guests of multiple CLE programs.

NALFA has established Best Practices in Outside Legal Fee Analysis, a peer-review driven code of professional conduct for professionals who routinely perform outside legal fee analysis.

NALFA's News Blog covers legal billing and attorney fee issues from across the U.S.

NALFA filed Amicus Briefs in *Worley v. Storage USA*, *Pipefitters v. Oakley* in California appellate courts and in the landmark ADA case, *Covington v. McNeese State University* in the Louisiana Supreme Court.

NALFA has been cited or quoted by over 20 different media outlets and/or publications: The Wall Street Journal, Bloomberg News, ALM's American Lawyer, The Chicago Tribune, Bloomberg BNA, CNBC, Thomson Reuters, Insurance Journal, Minneapolis-St. Paul Business Journal, Daily Journal, ALM's Daily Business Review, ALM's National Law Journal, FindLaw.com, The Florida Bar Journal, Law 360, Politico, ALM's Law.com, Missouri Lawyers Media, ALM's Critical Mass, Portland Business Journal, Detroit Free Press, and ABA Journal.

NALFA houses a body of scholarship on reasonable attorney fees including surveys, reports, articles, and studies. NALFA also recognizes the nation's most influential scholarship on attorney fees.

NALFA conducts custom design hourly rate surveys for law firms and corporate legal departments. A federal judge cited a NALFA hourly rate survey in his attorney fee award in the *Vortens* class settlement.

**EXHIBIT 5**

# TOTAL FEES AND COSTS BILLED

**ARIZONA BEVERAGE ADV. IGLESIAS FEE REVIEW**
**Re: Stevens & Lee**
**Reasonable Fees**

| Statement Date | Invoice | Reasonable Fees |
|---|---|---|
| 11/6/2024 | 99281388 | $19,355.00 |
| 12/12/2024 | 99285237 | $47,862.50 |
| 1/16/2025 | 99289095 | $73,722.50 |
| 2/13/2025 | 99357027 | $22,660.00 |
| 3/20/2025 | 99361098 | $25,387.50 |
| 4/23/2025 | 99365525 | $24,780.00 |
| 5/13/2025 | 99369680 | $7,840.00 |
| 6/24/2025 | 99373921 | $25,112.50 |
| 7/22/2025 | 99378467 | $37,990.00 |
| 8/22/2025 | 99382955 | $68,215.00 |
| **Total** | | **$352,925.00** |

# INDEX OF BILLING PERSONNEL

**ARIZONA BEVERAGE ADV. IGLESIAS FEE REVIEW**
**Re:  Stevens & Lee**
**Index of Billing Personnel**

| Timekeeper | Bar Admittance Date | Rate | Hours Billed |
|---|---|---|---|
| **Shareholder** | | | |
| Donovan, Robert P. | 1989 NJ | $350.00 | 573.50 |
| Visconi, John N. | 2010 NJ | $350.00 | 101.80 |
| **(2) $350.00 Shareholder Total  (61.20%)** | | | **675.30** |
| **Associate** | | | |
| Brunelli, Matthew C. | 2004 NJ | $275.00 | 51.10 |
| Eliades, Nicholas | 2015 NJ | $275.00 | 171.40 |
| MacDuff, Catherin | 2021 NJ | $275.00 | 82.20 |
| McDonald, Christopher | 2023 PA | $275.00 | 90.60 |
| Moreno, Shirley | 2021 NJ | $275.00 | 13.30 |
| Portenti, Rita | 2024 NJ | $275.00 | 2.10 |
| Ware, Elizabeth A. | 2012 NJ | $275.00 | 9.60 |
| **(7) $275.00 Associate Total  (38.09%)** | | | **420.30** |
| **Other Billing Personnel** | | | |
| Miller, Mark J. | NA | $125.00 | 0.20 |
| Muehlbauer, Portia | NA | $125.00 | 7.70 |
| **(2) $125.00 Other Billing Personnel Total  (0.72%)** | | | **7.90** |
| **(11) $319.82 All Timekeepers Total** | | | **1,103.50** |

# EXHIBIT 6

*ELM Solutions*

# 2024 Real Rate Report®

The industry's leading analysis of law firm rates, trends, and practices



 Wolters Kluwer

**Report Editor**

Jennifer McIver
Director, Legal Operations and Industry Insights
Wolters Kluwer ELM Solutions

**Lead Data Analysts**

**Carol Au**
Business Systems Quantitative Analyst
Wolters Kluwer ELM Solutions

**Aaryak Shandilya**
Data Scientist
Wolters Kluwer ELM Solutions

**ELM Solutions Creative**

**David Andrews**
Senior Graphic Designer
Wolters Kluwer ELM Solutions

**Contributing Analysts and Authors**

**Jason Bender**
Legal Analytics Product Manager
Wolters Kluwer ELM Solutions

**Haemi Jung**
Strategic Business Intelligence Manager
Wolters Kluwer ELM Solutions

**Margie Sleboda**
Lead Technology Product Manager
Wolters Kluwer ELM Solutions

**Executive Sponsor**

**Brian Jorgenson**
Vice President, Product Management
Wolters Kluwer ELM Solutions

© 2004 - 2024 Wolters Kluwer ELM Solutions. All rights reserved. This material may not be reproduced, displayed, modified, or distributed in any form without the express prior written permission of the copyright holders. To request permission, please contact:

ELM Solutions, a Wolters Kluwer business
2929 Allen Pkwy Ste 3300
Houston, TX 77019 United States
ATTN: Marketing
ELMSolutionsSales@wolterskluwer.com

**LEGAL CAVEAT**

Wolters Kluwer ELM Solutions has worked to ensure the accuracy of the information in this report; however, Wolters Kluwer ELM Solutions cannot guarantee the accuracy of the information or analyses in all cases. Wolters Kluwer ELM Solutions is not engaged in rendering legal, accounting, or other professional services. This report should not be construed as professional advice on any particular set of facts or circumstances. Wolters Kluwer ELM Solutions is not responsible for any claims or losses that may arise from any errors or omissions in this report or from reliance upon any recommendation made in this report.

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2024 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2024 | 2023 | 2022 |
|---|---|---|---|---|---|---|---|---|---|
| **San Diego CA** | **Litigation** | Partner | 43 | $252 | $400 | $907 | $568 | $539 | $550 |
| | | Associate | 44 | $195 | $250 | $343 | $315 | $303 | $303 |
| | **Non-Litigation** | Partner | 75 | $401 | $523 | $889 | $678 | $676 | $717 |
| | | Associate | 57 | $250 | $374 | $458 | $412 | $393 | $378 |
| **San Francisco CA** | **Litigation** | Partner | 166 | $420 | $825 | $1,208 | $856 | $821 | $760 |
| | | Associate | 120 | $431 | $614 | $824 | $659 | $606 | $534 |
| | **Non-Litigation** | Partner | 220 | $460 | $770 | $1,172 | $838 | $832 | $790 |
| | | Associate | 167 | $342 | $575 | $860 | $625 | $578 | $566 |
| **San Jose CA** | **Litigation** | Partner | 36 | $650 | $830 | $1,303 | $996 | $990 | $899 |
| | | Associate | 29 | $497 | $640 | $833 | $682 | $678 | $674 |
| | **Non-Litigation** | Partner | 57 | $703 | $931 | $1,350 | $1,069 | $1,097 | $1,046 |
| | | Associate | 46 | $474 | $600 | $1,055 | $752 | $759 | $637 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2024 - Real Rates for Partner, Associate, and Paralegal**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2024 | 2023 | 2022 |
|---|---|---|---|---|---|---|---|---|---|
| General Liability: Product and Product Liability | Litigation | Partner | 307 | $335 | $460 | $669 | $546 | $505 | $472 |
| | | Associate | 221 | $250 | $350 | $500 | $408 | $383 | $350 |
| | | Paralegal | 195 | $124 | $160 | $226 | $190 | $179 | $173 |
| | Non-Litigation | Partner | 53 | $330 | $500 | $680 | $519 | $457 | $459 |
| | | Associate | 31 | $283 | $335 | $453 | $375 | $343 | $345 |
| | | Paralegal | 28 | $137 | $150 | $200 | $172 | $162 | $159 |
| General Liability: Property Damage | Litigation | Partner | 56 | $393 | $493 | $616 | $528 | $502 | $504 |
| | | Associate | 40 | $330 | $406 | $433 | $427 | $325 | $328 |
| | | Paralegal | 26 | $153 | $175 | $209 | $207 | $175 | $174 |
| General Liability: Toxic Tort | Litigation | Partner | 22 | $355 | $400 | $485 | $511 | $519 | $490 |
| | | Associate | 16 | $264 | $296 | $790 | $475 | $496 | $376 |
| | | Paralegal | 18 | $135 | $175 | $205 | $202 | $202 | $153 |
| Government Relations | Non-Litigation | Partner | 54 | $812 | $950 | $1,182 | $1,024 | $980 | $920 |
| | | Associate | 38 | $544 | $950 | $950 | $831 | $721 | $592 |

# Section I: High-Level Data Cuts

## Cities
By YOE

**2024 - Real Rates for Partner**                    **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2024 | 2023 | 2022 |
|---|---|---|---|---|---|---|---|---|
| **Richmond VA** | 21 or More Years | 11 | $429 | $665 | $740 | $684 | $514 | $547 |
| **Salt Lake City UT** | Fewer Than 21 Years | 17 | $390 | $410 | $458 | $415 | $393 | $374 |
| | 21 or More Years | 17 | $275 | $385 | $450 | $394 | $413 | $416 |
| **San Diego CA** | Fewer Than 21 Years | 13 | $385 | $428 | $515 | $546 | $596 | $554 |
| | 21 or More Years | 29 | $479 | $1,099 | $1,343 | $971 | $821 | $834 |
| **San Francisco CA** | Fewer Than 21 Years | 37 | $580 | $923 | $1,278 | $957 | $882 | $791 |
| | 21 or More Years | 96 | $598 | $885 | $1,273 | $931 | $878 | $808 |
| **San Jose CA** | Fewer Than 21 Years | 10 | $929 | $1,120 | $1,283 | $1,142 | $1,061 | $952 |
| | 21 or More Years | 37 | $650 | $800 | $1,350 | $1,009 | $1,051 | $1,022 |
| **Seattle WA** | Fewer Than 21 Years | 37 | $460 | $533 | $755 | $596 | $546 | $520 |
| | 21 or More Years | 70 | $495 | $671 | $875 | $704 | $632 | $625 |
| **St. Louis MO** | Fewer Than 21 Years | 11 | $369 | $530 | $573 | $489 | $454 | $432 |
| | 21 or More Years | 39 | $252 | $337 | $523 | $408 | $459 | $442 |
| **Tampa FL** | Fewer Than 21 Years | 10 | $403 | $425 | $510 | $462 | $434 | $410 |
| | 21 or More Years | 22 | $398 | $540 | $625 | $523 | $508 | $480 |

# Section I: High-Level Data Cuts

## Cities
By YOE

**2024 - Real Rates for Associate**                                    **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2024 | 2023 | 2022 |
|---|---|---|---|---|---|---|---|---|
| | 7 or More Years | 288 | $489 | $821 | $1,205 | $866 | $804 | $773 |
| **Philadelphia PA** | 3 to Fewer Than 7 Years | 71 | $421 | $475 | $566 | $495 | $438 | $420 |
| | 7 or More Years | 120 | $460 | $590 | $710 | $587 | $529 | $488 |
| **Pittsburgh PA** | 3 to Fewer Than 7 Years | 24 | $252 | $400 | $621 | $430 | $387 | $395 |
| | 7 or More Years | 33 | $386 | $565 | $700 | $578 | $493 | $439 |
| **Portland OR** | 3 to Fewer Than 7 Years | 22 | $361 | $405 | $469 | $447 | $385 | $375 |
| | 7 or More Years | 51 | $450 | $492 | $568 | $521 | $454 | $451 |
| **San Diego CA** | 7 or More Years | 10 | $369 | $425 | $435 | $438 | $501 | $380 |
| **San Francisco CA** | 3 to Fewer Than 7 Years | 10 | $635 | $788 | $813 | $751 | $596 | $528 |
| | 7 or More Years | 25 | $525 | $890 | $1,077 | $812 | $657 | $570 |
| **San Jose CA** | 7 or More Years | 13 | $525 | $600 | $863 | $719 | $680 | $645 |
| **Seattle WA** | 3 to Fewer Than 7 Years | 17 | $325 | $350 | $439 | $383 | $334 | $318 |
| | 7 or More Years | 15 | $370 | $438 | $490 | $469 | $514 | $413 |

**EXHIBIT 7**



# NATIONAL ASSOCIATION OF LEGAL FEE ANALYSIS
## Specializing in Legal Billing & Attorney Fees
### A Network of Experts & Ethics

# The 2024 Litigation Hourly Rate Survey & Report

Annual Survey of Prevailing Market Rates

in Civil Litigation in the U.S.

*Published & Released on February 20, 2025*

1

## About NALFA

NALFA is a non-profit professional association for the outside legal fee analysis field. Our members provide a range of services on attorney fee and legal billing matters. NALFA serves as the organizing and governing body for the legal fee analysis profession.

Courts and corporations turn to us for expertise when attorney fees and expenses are at issue in large, complex cases.  NALFA members are fully qualified attorney fee experts, special masters, bankruptcy fee examiners, fee dispute neutrals, and legal bill auditors.  All our members follow Best Practices in Outside Legal Fee Analysis.

Copyright © 2025 NALFA. All Rights Reserved.

**NALFA Fact Sheet:**

NALFA is an A.M. Best Recommended Expert Service Provider (2008-Present).

NALFA has recommended qualified attorney fee experts on legal fee and billing matters ranging from $500,000-$500 million.

Since 2008, NALFA has hosted over 45 different CLE and professional development programs on attorney fees and legal billing topics.  Our CLE faculty has included 23 sitting federal judges.

Every year, NALFA announces, "The Nation's Top Attorney Fee Experts".

Every year, NALFA conducts an hourly rate survey of civil litigation in the U.S.  This is the nation's largest and most comprehensive survey or study of hourly billing rates in litigation.

NALFA offers a Certificate in Ethical Billing & Reasonable Fees, the nation's first and only certificate of its kind for registered guests of multiple CLE programs.

NALFA has established Best Practices in Outside Legal Fee Analysis, a peer-review driven code of professional conduct for professionals who routinely perform outside legal fee analysis.

NALFA's News Blog covers legal billing and attorney fee issues from across the U.S.

NALFA filed Amicus Briefs in *Worley v. Storage USA*, *Pipefitters v. Oakley* in California appellate courts and in the landmark ADA case, *Covington v. McNeese State University* in the Louisiana Supreme Court.

NALFA has been cited or quoted by over 20 different media outlets and/or publications: The Wall Street Journal, Bloomberg News, ALM's American Lawyer, The Chicago Tribune, Bloomberg BNA, CNBC, Thomson Reuters, Insurance Journal, Minneapolis-St. Paul Business Journal, Daily Journal, ALM's Daily Business Review, ALM's National Law Journal, FindLaw.com, The Florida Bar Journal, Law 360, Politico, ALM's Law.com, Missouri Lawyers Media, ALM's Critical Mass, Portland Business Journal, Detroit Free Press, and ABA Journal.

NALFA houses a body of scholarship on reasonable attorney fees including surveys, reports, articles, and studies.  NALFA also recognizes the nation's most influential scholarship on attorney fees and legal billing.

NALFA conducts custom design hourly rate surveys for law firms and corporate legal departments.  A federal judge cited a NALFA hourly rate data in his attorney fee award in the *Vortens* class action settlement.

Copyright © 2025 NALFA. All Rights Reserved.                                                    3

## The Ethics of Reviewing Outside Legal Fees:
## Dedicated to Founding Member Bruce R. Meckler (1955-2016)

Legal fee analysis is the comprehensive review and analysis of attorney fees and costs by an outside party in a legal matter. Professionals who routinely perform outside or third-party legal fee analysis include attorney fee experts, special masters, bankruptcy fee examiners, fee dispute neutrals, and legal bill auditors.

The following ten best practice measures were developed over several years with input and consensus from thought leaders (members and non-members) from across the legal fee analysis professional community. These best practice measures promote values such as ethics, independence, and professional development.

Adopted in 2012, these peer review driven standards help strengthen the legal fee analysis field by ensuring integrity in the process and reliability in the results. These best practice measures are the generally accepted standards within the legal fee analysis professional community.

All our members (i.e. qualified attorney fee experts, special masters, bankruptcy fee examiners, fee dispute neutrals, and legal bill auditors) are signatories to the following ethics for outside or post-bill legal fee analysis:

**1.00   Adhere to the proper standard of reasonableness in fee analysis.**

**2.00   Observe a consistent and reliable methodology in fee analysis.**

**3.00   Keep updated on the latest fee and billing jurisprudence (i.e. the body of law, key court rulings, bar advisories, etc.) on reasonable attorney fees and expenses.**

**4.00   Keep updated on the latest fee and billing scholarship (i.e. empirical papers, studies, surveys, reports, etc.) on reasonable attorney fees and expenses.**

**5.00   Participate in professional development and CLE programs on litigation management, attorney fees, and legal billing topics.**

**6.00   Do not advertise false or intentionally misleading information or offer any guarantee of outcome in fee analysis.**

**7.00   Do not charge fee analysis work on a contingency basis (i.e. based on the fee analysis results obtained).**

**8.00   Do not accept a fee or billing case or client where there is an inherent conflict of interest.**

**9.00   Keep all fee, billing, rate, and work product information in the strictest of confidence.**

**10.00   Employ data science and technology in your fee analysis work.**

Copyright © 2025
NALFA. All Rights Reserved.

# San Francisco, CA (Micro Data)

| | Rate Tier | Rate Range | Regular Rate | | Complex Rate | | Regular Rate | | Complex Rate | | All Rates | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | **2024 Rate Data for San Francisco, CA** | | | | | | | | | |
| | | | **Defense** | | | | **Plaintiffs** | | | | **Totals** | |
| | | | # | % | # | % | # | % | # | % | # | % |
| 1 | Tier 1 | $250 or Less | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| 2 | Tier 1 | $251-$300 | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| 3 | Tier 1 | $301-$350 | 4 | 0.58% | 2 | 0.29% | 8 | 1.24% | 10 | 1.56% | 24 | 0.90% |
| 4 | Tier 1 | $351-$400 | 9 | 1.30% | 18 | 2.59% | 25 | 3.89% | 22 | 3.42% | 74 | 2.77% |
| 5 | Tier 1 | $401-$450 | 34 | 4.90% | 21 | 3.03% | 37 | 5.75% | 25 | 3.89% | 117 | 4.38% |
| | **Sub Totals** | | **47** | **6.77%** | **41** | **5.91%** | **70** | **10.89%** | **57** | **8.86%** | **215** | **8.04%** |
| 6 | Tier 2 | $451-$500 | 47 | 6.77% | 47 | 6.77% | 44 | 6.84% | 49 | 7.62% | 187 | 6.99% |
| 7 | Tier 2 | $501-$550 | 60 | 8.65% | 54 | 7.78% | 51 | 7.93% | 52 | 8.09% | 217 | 8.12% |
| 8 | Tier 2 | $551-$600 | 61 | 8.79% | 58 | 8.36% | 52 | 8.09% | 49 | 7.62% | 220 | 8.23% |
| 9 | Tier 2 | $601-$650 | 60 | 8.65% | 52 | 7.49% | 51 | 7.93% | 52 | 8.09% | 215 | 8.04% |
| 10 | Tier 2 | $651-$700 | 68 | 9.80% | 61 | 8.79% | 59 | 9.18% | 56 | 8.71% | 244 | 9.12% |
| | **Sub Totals** | | **296** | **42.65%** | **272** | **39.19%** | **257** | **39.97%** | **258** | **40.12%** | **1083** | **40.50%** |
| 11 | Tier 3 | $701-$750 | 48 | 6.92% | 36 | 5.19% | 39 | 6.07% | 57 | 8.86% | 180 | 6.73% |
| 12 | Tier 3 | $751-$800 | 32 | 4.61% | 48 | 6.92% | 44 | 6.84% | 40 | 6.22% | 164 | 6.13% |
| 13 | Tier 3 | $801-$850 | 39 | 5.62% | 44 | 6.34% | 48 | 7.47% | 41 | 6.38% | 172 | 6.43% |
| 14 | Tier 3 | $851-$900 | 42 | 6.05% | 46 | 6.63% | 55 | 8.55% | 39 | 6.07% | 182 | 6.81% |
| 15 | Tier 3 | $901-$950 | 51 | 7.35% | 54 | 7.78% | 33 | 5.13% | 48 | 7.47% | 186 | 6.96% |
| | **Sub Totals** | | **212** | **30.55%** | **228** | **32.85%** | **219** | **34.06%** | **225** | **34.99%** | **884** | **33.06%** |
| 16 | Tier 4 | $951-$1000 | 22 | 3.17% | 39 | 5.62% | 33 | 5.13% | 29 | 4.51% | 123 | 4.60% |
| 17 | Tier 4 | $1001-$1100 | 25 | 3.60% | 22 | 3.17% | 18 | 2.80% | 19 | 2.95% | 84 | 3.14% |
| 18 | Tier 4 | $1101-$1200 | 33 | 4.76% | 33 | 4.76% | 15 | 2.33% | 22 | 3.42% | 103 | 3.85% |
| 19 | Tier 4 | $1201-$1300 | 28 | 4.03% | 27 | 3.89% | 19 | 2.95% | 17 | 2.64% | 91 | 3.40% |
| 20 | Tier 4 | Over $1300 | 31 | 4.47% | 32 | 4.61% | 12 | 1.87% | 16 | 2.49% | 91 | 3.40% |
| | **Sub Totals** | | **139** | **20.03%** | **153** | **22.05%** | **97** | **15.09%** | **103** | **16.02%** | **492** | **18.40%** |
| | | | | | | | | | | | | |
| | **Totals** | | **694** | **100%** | **694** | **100%** | **643** | **100%** | **643** | **100%** | **2674** | **100%** |

Copyright © 2025 NALFA. All Rights Reserved.

# San Francisco, CA (Macro Data)





Copyright © 2025 NALFA. All Rights Reserved.

# 10-11 Years of Litigation Experience (Micro Data)

| | Rate Tier | Rate Range | Defense | | | | Plaintiff | | | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Regular Rate | | Complex Rate | | Regular Rate | | Complex Rate | | All Rates | |
| | | | # | % | # | % | # | % | # | % | # | % |
| 1 | Tier 1 | $250 or Less | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| 2 | Tier 1 | $251-$300 | 9 | 0.90% | 0 | 0.00% | 11 | 1.18% | 0 | 0.00% | 20 | 0.52% |
| 3 | Tier 1 | $301-$350 | 9 | 0.90% | 19 | 1.90% | 31 | 3.32% | 20 | 2.14% | 79 | 2.04% |
| 4 | Tier 1 | $351-$400 | 88 | 8.79% | 123 | 12.29% | 99 | 10.60% | 55 | 5.89% | 365 | 9.43% |
| 5 | Tier 1 | $401-$450 | 214 | 21.38% | 168 | 16.78% | 147 | 15.74% | 203 | 21.73% | 732 | 18.91% |
| | **Sub Totals** | | **320** | **31.97%** | **310** | **30.97%** | **288** | **30.84%** | **278** | **29.76%** | **1196** | **30.90%** |
| 6 | Tier 2 | $451-$500 | 122 | 12.19% | 122 | 12.19% | 116 | 12.42% | 105 | 11.24% | 465 | 12.02% |
| 7 | Tier 2 | $501-$550 | 98 | 9.79% | 107 | 10.69% | 102 | 10.92% | 97 | 10.39% | 404 | 10.44% |
| 8 | Tier 2 | $551-$600 | 101 | 10.09% | 104 | 10.39% | 99 | 10.60% | 111 | 11.88% | 415 | 10.72% |
| 9 | Tier 2 | $601-$650 | 102 | 10.19% | 99 | 9.89% | 108 | 11.56% | 100 | 10.71% | 409 | 10.57% |
| 10 | Tier 2 | $651-$700 | 97 | 9.69% | 87 | 8.69% | 91 | 9.74% | 103 | 11.03% | 378 | 9.77% |
| | **Sub Totals** | | **520** | **51.95%** | **519** | **51.85%** | **516** | **55.25%** | **516** | **55.25%** | **2071** | **53.51%** |
| 11 | Tier 3 | $701-$750 | 31 | 3.10% | 25 | 2.50% | 30 | 3.21% | 22 | 2.36% | 108 | 2.79% |
| 12 | Tier 3 | $751-$800 | 20 | 2.00% | 22 | 2.20% | 19 | 2.03% | 19 | 2.03% | 80 | 2.07% |
| 13 | Tier 3 | $801-$850 | 19 | 1.90% | 23 | 2.30% | 15 | 1.61% | 15 | 1.61% | 72 | 1.86% |
| 14 | Tier 3 | $851-$900 | 22 | 2.20% | 22 | 2.20% | 11 | 1.18% | 19 | 2.03% | 74 | 1.91% |
| 15 | Tier 3 | $901-$950 | 18 | 1.80% | 20 | 2.00% | 9 | 0.96% | 18 | 1.93% | 65 | 1.68% |
| | **Sub Totals** | | **110** | **10.99%** | **112** | **11.19%** | **84** | **8.99%** | **93** | **9.96%** | **399** | **10.31%** |
| 16 | Tier 4 | $951-$1000 | 22 | 2.20% | 24 | 2.40% | 15 | 1.61% | 19 | 2.03% | 80 | 2.07% |
| 17 | Tier 4 | $1001-$1100 | 10 | 1.00% | 13 | 1.30% | 11 | 1.18% | 9 | 0.96% | 43 | 1.11% |
| 18 | Tier 4 | $1101-$1200 | 9 | 0.90% | 10 | 1.00% | 10 | 1.07% | 9 | 0.96% | 38 | 0.98% |
| 19 | Tier 4 | $1201-$1300 | 5 | 0.50% | 9 | 0.90% | 5 | 0.54% | 5 | 0.54% | 24 | 0.62% |
| 20 | Tier 4 | Over $1300 | 5 | 0.50% | 4 | 0.40% | 5 | 0.54% | 5 | 0.54% | 19 | 0.49% |
| | **Sub Totals** | | **51** | **5.09%** | **60** | **5.99%** | **46** | **4.93%** | **47** | **5.03%** | **204** | **5.27%** |
| | | | | | | | | | | | | |
| | **Totals** | | **1001** | **100%** | **1001** | **100%** | **934** | **100%** | **934** | **100%** | **3870** | **100%** |

Table title: **2024 Rate Data for 10-11 Years of Litigation Experience**

Copyright © 2025 NALFA. All Rights Reserved.

# 10-11 Years of Litigation Experience (Macro Data)





Copyright © 2025 NALFA. All Rights Reserved.

158

# 35-37 Years of Litigation Experience (Micro Data)

| | Rate Tier | Rate Range | Defense | | | | Plaintiff | | | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Regular Rate | | Complex Rate | | Regular Rate | | Complex Rate | | All Rates | |
| | | | # | % | # | % | # | % | # | % | # | % |
| 1 | Tier 1 | $250 or Less | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| 2 | Tier 1 | $251-$300 | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| 3 | Tier 1 | $301-$350 | 3 | 0.34% | 0 | 0.00% | 1 | 0.17% | 0 | 0.00% | 4 | 0.14% |
| 4 | Tier 1 | $351-$400 | 23 | 2.64% | 6 | 0.69% | 9 | 1.57% | 8 | 1.40% | 46 | 1.59% |
| 5 | Tier 1 | $401-$450 | 43 | 4.93% | 63 | 7.22% | 24 | 4.19% | 21 | 3.66% | 151 | 5.22% |
| | Sub Totals | | 69 | 7.91% | 69 | 7.91% | 34 | 5.93% | 29 | 5.06% | 201 | 6.96% |
| 6 | Tier 2 | $451-$500 | 45 | 5.16% | 33 | 3.78% | 19 | 3.32% | 9 | 1.57% | 106 | 3.67% |
| 7 | Tier 2 | $501-$550 | 54 | 6.19% | 42 | 4.82% | 15 | 2.62% | 12 | 2.09% | 123 | 4.26% |
| 8 | Tier 2 | $551-$600 | 58 | 6.65% | 43 | 4.93% | 20 | 3.49% | 21 | 3.66% | 142 | 4.91% |
| 9 | Tier 2 | $601-$650 | 50 | 5.73% | 42 | 4.82% | 18 | 3.14% | 20 | 3.49% | 130 | 4.50% |
| 10 | Tier 2 | $651-$700 | 64 | 7.34% | 50 | 5.73% | 31 | 5.41% | 22 | 3.84% | 167 | 5.78% |
| | Sub Totals | | 271 | 31.08% | 210 | 24.08% | 103 | 17.98% | 84 | 14.66% | 668 | 23.11% |
| 11 | Tier 3 | $701-$750 | 55 | 6.31% | 61 | 7.00% | 39 | 6.81% | 33 | 5.76% | 188 | 6.51% |
| 12 | Tier 3 | $751-$800 | 61 | 7.00% | 67 | 7.68% | 48 | 8.38% | 52 | 9.08% | 228 | 7.89% |
| 13 | Tier 3 | $801-$850 | 57 | 6.54% | 72 | 8.26% | 44 | 7.68% | 50 | 8.73% | 223 | 7.72% |
| 14 | Tier 3 | $851-$900 | 61 | 7.00% | 72 | 8.26% | 47 | 8.20% | 58 | 10.12% | 238 | 8.24% |
| 15 | Tier 3 | $901-$950 | 71 | 8.14% | 77 | 8.83% | 57 | 9.95% | 65 | 11.34% | 270 | 9.34% |
| | Sub Totals | | 305 | 34.98% | 349 | 40.02% | 235 | 41.01% | 258 | 45.03% | 1147 | 39.69% |
| 16 | Tier 4 | $951-$1000 | 40 | 4.59% | 40 | 4.59% | 31 | 5.41% | 41 | 7.16% | 152 | 5.26% |
| 17 | Tier 4 | $1001-$1100 | 45 | 5.16% | 49 | 5.62% | 40 | 6.98% | 40 | 6.98% | 174 | 6.02% |
| 18 | Tier 4 | $1101-$1200 | 47 | 5.39% | 50 | 5.73% | 35 | 6.11% | 39 | 6.81% | 171 | 5.92% |
| 19 | Tier 4 | $1201-$1300 | 45 | 5.16% | 49 | 5.62% | 40 | 6.98% | 40 | 6.98% | 174 | 6.02% |
| 20 | Tier 4 | Over $1300 | 50 | 5.73% | 56 | 6.42% | 55 | 9.60% | 42 | 7.33% | 203 | 7.02% |
| | Sub Totals | | 227 | 26.03% | 244 | 27.98% | 201 | 35.08% | 202 | 35.25% | 874 | 30.24% |
| | | | | | | | | | | | | |
| | Totals | | 872 | 100% | 872 | 100% | 573 | 100% | 573 | 100% | 2890 | 100% |

*2024 Rate Data for 35-37 Years of Litigation Experienc*

Copyright © 2025 NALFA. All Rights Reserved.

# 35-37 Years of Litigation Experience (Macro Data)





Copyright © 2025 NALFA. All Rights Reserved.

178