**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS IGLESIAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ARIZONA BEVERAGES USA, LLC,<br><br>Defendant. | Case No. 4:22-cv-09108-JSW<br>FAC Filed: March 10, 2023<br><br>Judge: Hon. Jeffrey S. White<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS UNDER FED. R. CIV. P. 54 AND L.R. 54-5.**<br><br><u>Hearing Information:</u><br>Date:   October 10, 2025<br>Time:   9:00 a.m.<br>Ctrm:   5, 2nd Floor |

# REDACTED – PUBLICLY FILED

**TABLE OF CONTENTS**

**Page No.**

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ....................................................................................................................2

III. LEGAL STANDARD..............................................................................................................3

IV. ARGUMENT ..........................................................................................................................4

    A. Defendant Has Proffered Zero Evidence of Subjective Bad Faith ......................................4

        1. Entry of Summary Judgment Alone Does Not Establish Subjective Bad Faith......4

        2. Plaintiff Pursued this Case to Vindicate Important Consumer Rights.....................6

        3. Plaintiff Did Not Act with Ulterior Motives.............................................................7

    B. Fees Are Not Justified Under Rule 37(C)(2) Because The Admissions Sought Were Objectionable, Of No Substantial Importance, Or Were Not Proven To Be True ..............9

    C. Equitable Considerations Strongly Weigh Against Awarding Fees .................................11

        1. Plaintiff's Limited Financial Resources and the Gross Disparity in Wealth Between Plaintiff and Defendant Weigh Against Fee Shifting to Plaintiff...........11

        2. Fee Shifting to Plaintiff Would Create a Chilling Effect in Future Consumer Protection Matters................................................................................................13

    D. Defendant Has Not Shown It Is Entitled to the Amount Requested..................................13

V. CONCLUSION.....................................................................................................................15

**TABLE OF AUTHORITIES**

**Cases**                               **Page No.**

*Ass'n of Mexican-Am. Educators v. Cal.*,
  231 F.3d 572 (9th Cir. 2000) ................................................................................................ 11

*Citizens of Humanity v. Hass*,
  46 Cal. App. 5th 589 (4th Dist. Ct. App. 2020) ...................................................................... 8

*Clark v. InComm Fin. Servs.*,
  No. EDCV 22-1839 JGB (SHKx),
  2024 U.S. Dist. LEXIS 208042 (C.D. Cal. Sept. 13, 2024) .................................................... 5

*Corbett v. Hayward Dodge, Inc.*,
  119 Cal. App. 4th 915 (2004) ................................................................................. 3, 6, 7, 11

*Crawford v. Arizona Beverages USA LLC*,
  No. 22-cv-220-DWD,
  2025 WL 658100 (S.D. Ill. Feb. 25, 2025) ............................................................................. 5

*Diamond State Ins. Co. v. Deardorff*,
  No. No. 1:10-cv-00004 AWI JLT,
  2011 U.S. Dist. LEXIS 60834 (E.D. Cal. Jun. 8, 2011) ........................................................ 10

*Draper v. Rosario*,
  836 F.3d 1072 (9th Cir. 2016) ......................................................................................... 11, 12

*Escriba v. Foster Poultry Farms, Inc.*,
  743 F.3d 1236 (9th Cir. 2014) .............................................................................................. 11

*Fitzpatrick v. Big Heart Pet Brands*,
  No. 2:16-cv-00063-JAM-AC,
  2017 U.S. Dist. LEXIS 37299 (E.D. Cal. Mar. 15, 2017) ...................................................... 8

*Goodyear Tire & Rubber Co. v. Haeger*,
  581 U.S. 101 (2017) .............................................................................................................. 11

*Heather Farms Homeowners Assn. v. Robinson*,
  21 Cal. App. 4th 1568 (1994) ............................................................................................... 14

*Holmgren v. State Farm Mut. Auto. Ins. Co.*,
  976 F.2d 573 (9th Cir. 1992) ................................................................................................ 11

*In re NJOY Inc. Consumer Class Action Litig.*,
  No. CV 14-428-JFW (JEMx),
  2016 U.S. Dist. LEXIS 184747 (C.D. Cal. May 25, 2016) ............................................ 3, 5, 6

*Jones v. Conagra Foods, Inc.*,
  No. C 12-01633 CRB,
  2013 U.S. Dist. LEXIS 176314 (N.D. Cal. Dec. 16, 2013) ............................................ *passim*

*Kleffman v. Vonage Holdings Corp.*,
  387 Fed. App'x 696 (9th Cir. 2010) ....................................................................................... 3

*Lahiri v. Universal Music & Video Distrib. Corp.*,
   606 F.3d 1216 (9th Cir. 2010) ................................................................................................ 14

*Llanes v. Zalewski*,
   No. 3:18-cv-00267-SB,
   2020 U.S. Dist. LEXIS 6098 (D. Or. Jan. 14, 2020) ................................................................ 4

*Morris v. Hyundai Motor America*,
   41 Cal.App.5th 24 (2019) ...................................................................................................... 14

*Netlist Inc. v. Samsung Elecs. Co.*,
   No. 8:20-cv-00993-WLH-ADS,
   2025 U.S. Dist. LEXIS 122940 (C.D. Cal. Jun. 26, 2025) ..................................................... 11

*Nghiem v. Santa Clara University*,
   No. 21-cv-06872-PCP,
   2024 U.S. LEXIS 22627 (N.D. Cal. 2024) ............................................................................. 13

*Parallax Grp. Int'l, LLC v. Incastores, LLC*,
   No. SACV 16-00929 JVS (DFMx),
   2024 U.S. Dist. LEXIS 112056 (C.D. Cal. Apr. 5, 2024) ....................................................... 10

*Parkinson v. Hyundai Motor Am.*
796 F. Supp. 2d 1160 (C.D. Cal. 2020) ....................................................................................... 15

*Rielly v. D.R. Horton, Inc.*,
   No. SACV 06-0867 AG (ANx),
   2008 U.S. Dist. LEXIS 71336 (C.D. Cal. Sep. 17, 2008) ......................................................... 4

*Severson & Werson v. Bolinger*,
   235 Cal. App. 3d 1569 (1991) ................................................................................................ 12

*Sharma v. City of Redding*,
   No. 17-cv-00487-MCE-AC PS,
   2018 U.S. Dist. LEXIS 89335 (E.D. Cal. May 29, 2018) ........................................................ 4

*Space Data Corp. v. Hosie Rice LLP*,
   No. 20-cv-08256-JSW,
   2021 U.S. Dist. LEXIS 263088 (N.D. Cal. Nov. 11, 2021) ................................................... 14

*Stanley v. University of S. California*,
   178 F.3d 1069 (9th Cir. 1999) ................................................................................................ 13

*United Energy Corp. v. United States*,
   622 F. Supp. 43 (N.D. Cal. 1985) ............................................................................................ 4

*Unity Courier Serv. Inc. v. Hudson Ins. Co.*,
   No. 218-cv-08143-RGK-GJS,
   2019 U.S. Dist. LEXIS 221174 (C.D. Cal. Nov. 6, 2019) ..................................................... 11

**Statutes**

Cal. Civ. Code § 1760 .................................................................................................................. 6, 7

Cal. Civ. Code § 1780(e) ................................................................................................................. 3

**Rules**

Fed. R. Civ. P. 37(c)(2) ............................................................................................................... 9, 10

Case No. 4:22-cv-09108-JSW     iv

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES

I.  **INTRODUCTION**

Defendant Arizona Beverages USA, LLC ("Arizona" or "Defendant") asks this Court to impose an extraordinary and unjust financial burden on Plaintiff Thomas Iglesias, an ordinary consumer who brought this case to protect the public from deceptive labeling. Mr. Iglesias pursued this action in good faith because he believes consumers have a right to truthful information about the products they purchase. He alleged that Arizona falsely marketed its beverages as "All Natural" while containing high fructose corn syrup and other synthetic ingredients, conduct that could mislead reasonable consumers. These allegations were anything but trivial: this Court denied Arizona's motion to dismiss, recognizing that Plaintiff presented plausible claims on an issue of great importance to California consumers and policymakers.

From the start, Mr. Iglesias fully committed himself to this case. He sat for a lengthy deposition, responded thoroughly to written discovery, and worked closely with his attorneys to ensure the case was prosecuted responsibly and transparently. His efforts were grounded in evidence, expert analysis, and a reasonable interpretation of California's consumer protection statutes. The case progressed through extensive fact and expert discovery and motion practice, further underscoring its legitimacy. Arizona's present attempt to recast this litigation as "frivolous" is nothing more than revisionist history. At no point has the Court found, or even suggested, that Plaintiff's claims lacked merit or were pursued in bad faith—the stringent standard required for fee-shifting under Cal. Civ. Code § 1780(e) and Ninth Circuit precedent.

Arizona is a multi-billion-dollar corporation with vast resources that seeks to saddle Mr. Iglesias with crushing financial liability—hundreds of thousands of dollars in attorneys' fees and thousands more in costs. Mr. Iglesias is a lifelong San Franciscan of unvarnished character: He honorably served ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. His household depends on the combined income from his and his wife's public service jobs to pay for their mortgage, utilities, and three children, while also pitching in to care for his elderly father and mother, the latter of whom suffers from ▬▬▬▬▬▬▬▬▬▬. Such an award would be catastrophic, potentially forcing him and his family ▬▬▬▬▬▬▬▬▬▬▬. The inequity of this request cannot be overstated. California's consumer protection laws are designed to empower individuals to challenge corporate misconduct, not to deter them through the threat of financial ruin.

Case No. 4:22-cv-09108-JSW                                         1
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS

If fees were awarded here, it would send a dangerous message: that ordinary consumers risk devastating financial consequences simply for speaking up when companies mislead the public. This would embolden corporations to engage in deceptive marketing with impunity, knowing that few consumers would dare to challenge them. Because Mr. Iglesias pursued his claims responsibly and in good faith, and because Arizona has failed to meet the exceptionally high bar required for shifting fees to a losing consumer plaintiff, this Court should deny Arizona's motion in its entirety.

## II.   BACKGROUND

Plaintiff Iglesias filed this action on December 23, 2022, alleging that Defendant misled consumers by marketing its Arizona Tea beverages as "All Natural" despite containing synthetic and processed ingredients such as high fructose corn syrup, malic acid, erythritol, and "natural flavors." (Dkt. No. 1). Plaintiff alleged that these labels were deceptive to reasonable consumers and brought claims under California's consumer protection statutes—the Consumers Legal Remedies Act (CLRA), False Advertising Law (FAL), and Unfair Competition Law (UCL)—as well as common law claims for unjust enrichment and breach of express warranty.

On March 10, 2023, Plaintiff filed a First Amended Complaint with additional factual allegations and a request for damages, restitution, and injunctive relief under the CLRA. (Dkt. No. 29). Defendant moved to dismiss on April 14, 2023. (Dkt. No. 34). After full briefing, the Court denied the motion, holding that Plaintiff plausibly alleged a reasonable consumer could be misled by Defendant's "All Natural" labeling. (Dkt. No. 47). The Court dismissed only the unjust enrichment claim, allowing Plaintiff's core statutory and warranty claims to proceed. *Id*. When Defendant later filed a second motion to dismiss under the "first-to-file" rule, the Court again rejected Defendant's arguments, permitting the case to move forward. (Dkt. No. 62).

Following these rulings, Plaintiff vigorously pursued his claims through discovery and motion practice. Mr. Iglesias sat for a lengthy deposition, responded fully to Defendant's written discovery, and worked closely with his attorneys throughout the litigation—even while balancing his full-time job, family responsibilities, and the care of his elderly parents. Declaration of Thomas Iglesias ("Iglesias Decl.") ¶¶ 7–8. Plaintiff and his counsel took and defended multiple depositions, retained and worked with experts, and prepared a robust class certification motion supported by expert reports and extensive evidence.

Declaration of Bahar Sodaify ("Sodaify Decl.") ¶ 3. Plaintiff also actively engaged in settlement discussions and complied with all Court orders. *Id.* At no point did Plaintiff or his counsel engage in any conduct that could be construed as bad faith, vexatious, or frivolous. And while Defendant obtained judgment (Dkt. No. 120), this case raised legitimate, complex questions about labeling practices, consumer perceptions, and damages.

On September 3, 2025, Defendant filed its Motion for Attorneys' Fees and Costs (Dkt. No. 127), seeking to impose a crushing financial burden on Mr. Iglesias. Such an award would have catastrophic consequences for his family, potentially forcing them ████████████ and sending a chilling message to consumers across California. Iglesias Decl. ¶¶ 13, 17. Plaintiff now respectfully submits this opposition to ensure that California's consumer protection laws remain a shield for ordinary people, not a sword for corporate defendants to punish those who dare to challenge deceptive practices.

## III. LEGAL STANDARD

California Civil Code Section 1780(e) states that a prevailing plaintiff may be awarded attorneys' fees "upon a finding by the court that the plaintiff's prosecution of the action was not in good faith." Cal. Civ. Code § 1780(e). The defendant has the burden of proof. *Corbett v. Hayward Dodge, Inc.*, 119 Cal. App. 4th 915, 926 (2004). "Courts have uniformly constructed this language as requiring a subjective test." *Id.* at 924. In other words, in order to award a prevailing defendant attorneys' fees under the CLRA, the Court must conduct a factual inquiry into the plaintiff's subjective state of mind, and find that the plaintiff prosecuted the action in "subjective bad faith." *Id.* at 923, 926; *In re NJOY Inc. Consumer Class Action Litig.*, 2016 U.S. Dist. LEXIS 184747, at *3 (C.D. Cal. May 25, 2016); *Jones v. Conagra Foods, Inc.*, 2013 U.S. Dist. LEXIS 176314, at *4 (N.D. Cal. Dec. 16, 2013). This CLRA fee-shifting provision "does not include 'frivolous' actions as a consideration for awarding attorney fees to prevailing defendants." *Id.* at *15. Nor should courts "automatically infer some ulterior motive where the theory underlying a plaintiff's claim is simply 'weak.' . . . . Even when a defendant successfully defends itself against CLRA claims, the defendant is not necessarily entitled to attorneys' fees." *Id.* at *16-17; *Kleffman v. Vonage Holdings Corp.*, 387 Fed. App'x 696, 698 (9th Cir. 2010).

///

///

## IV. ARGUMENT

### A. Defendant Has Proffered Zero Evidence of Subjective Bad Faith

Defendant cannot meet the high bar that protects consumers from punitive attorney fee awards that would chill legitimate challenges to corporate misconduct for three reasons: (1) entry of summary judgment alone is insufficient; (2) Plaintiff prosecuted his claims to vindicate important consumer protection rights; and (3) Plaintiff did not act with any ulterior motives.

#### *1. Entry of Summary Judgment Alone Does Not Establish Subjective Bad Faith*

Defendant's primary argument that Plaintiff acted in bad faith by continuing to litigate his claims after his deposition, which served as the basis for entry of summary judgment against him, twists the record and misstates the law. Plaintiff testified that he relied on the challenged "All Natural" attribute, purchased the products because of it, stopped buying the products after filing suit, and would purchase the products again if he could trust the "All Natural" claim. (Dkt. 109-2 at 74:9-10, 83:11-15, 106:14-18, 113:17-18, 114:23-24, 118:17-20, 119:3-13.) Any minor confusion Plaintiff had about his purchase history was understandable, reflecting ordinary lapses in memory or unclear legal terminology, not bad faith. *United Energy Corp. v. United States*, 622 F. Supp. 43, 47 (N.D. Cal. 1985) (inability to recall accurately the events as they occurred does not constitute "bad faith" when a "reasonable explanation" is offered); *Rielly v. D.R. Horton, Inc.*, 2008 U.S. Dist. LEXIS 71336, at *7 (C.D. Cal. Sep. 17, 2008) (inconsistencies between statements by a person and evidence presented by the opposing party do not rise to bad faith) (citing *United Energy Corp.*, 622 F. Supp. at 47); *see also Llanes v. Zalewski*, 2020 U.S. Dist. LEXIS 6098, at *6 (D. Or. Jan. 14, 2020) ("[A] false or inconsistent statement in a deposition does not compel the conclusion of bad faith.") (citations omitted).

The Court ultimately ruled against Plaintiff on the issue of actual reliance, focusing on his testimony that he stopped purchasing the beverages after the "lawsuit" or when the lawsuit was "filed." (Dkt. No. 120.) The Court credited Defendant's interpretation that this testimony meant Plaintiff continued purchasing products after the pre-litigation CLRA notice phase. However, a plausible competing inference exists: As a layperson, Plaintiff reasonably understood "start of the lawsuit" to mean when the CLRA notice letters were sent, rather than the later formal filing. *See e.g., Sharma v. City of Redding*, 2018 U.S. Dist. LEXIS 89335, *5 (E.D. Cal. May 29, 2018) ("A layperson like Plaintiff, then, should not be held to

the same standard of care in prosecuting a lawsuit as a lawyer."). This interpretation is supported by other deposition testimony—omitted by Defendant—in which Plaintiff repeatedly affirmed that he saw and relied on the "All Natural" claim when purchasing the products, though he could not recall exact dates due to the passage of time. (*See* Dkt. No. 109-2 at 74:9–10, 106:14-18.) This testimony is significant because Plaintiff explained that purchasing a product he believed to be truly natural was important to him and his family's health, reflecting his good-faith motive for filing suit. Iglesias Decl. ¶¶ 5-6, 9, 15. A jury could reasonably credit this testimony, particularly given Plaintiff's consistent concern for truthful labeling and his commitment to standing up for consumers. *Id*.

Defendant's assertion of bad faith or ulterior motive to justify imposing hundreds of thousands of dollars in fees is therefore unsupported by the record as a whole and especially untenable when compared to cases where courts actually found bad faith and improper motives, e.g., where a plaintiff never purchased the product at all or only purchased it to manufacture standing to sue. *See, e.g., Clark v. InComm Fin. Servs.*, 2024 U.S. Dist. LEXIS 208042, at *8-9, 13 (C.D. Cal. Sept. 13, 2024).

Defendant's reliance on the non-binding Seventh Circuit case of *Crawford v. Arizona Beverages USA LLC*, 2025 WL 658100 (S.D. Ill. Feb. 25, 2025), is misplaced. *Crawford* involved a plaintiff who could not even establish he ever purchased the product at issue, while simultaneously describing it as "the best product" with "the best value." *Id*. at *3. The court there also noted the plaintiff failed to raise key arguments that might have avoided an adverse fee award, including his inability to pay. *Id*. Here, by contrast, Mr. Iglesias—a longtime custodian for the ███████████████████████████ ███████████, and a devoted family man of modest means—cannot possibly afford to pay a large fee award. Iglesias Decl. ¶¶ 3,4, 12-14. Mr. Iglesias also relied on the product's misleading "All Natural" label when making his purchases and was unaware it contained non-natural ingredients like high fructose corn syrup. (Dkt. No. 102-4 ¶ 4; Dkt. No. 109-2 at 74:9-10, 83:11-15, 106:14-18.) While the Court ultimately ruled against him on this issue, unlike *Crawford*, it was a close call.

A far more analogous case in this Circuit is *In re NJOY, Inc. Consumer Class Action Litig.*, 2016 U.S. Dist. LEXIS 184747 (C.D. Cal. May 25, 2016). There, the defendant sought fees based on deposition testimony that allegedly contradicted the plaintiffs' claims. *Id*. The court rejected this argument,

emphasizing that it must "consider the entire record," including that the plaintiff's claims had survived a motion to dismiss, and concluded there was insufficient evidence of bad faith. *Id*. at *4-5.

As in *NJOY*, this Court should consider the full record. Mr. Iglesias's case was carefully investigated, supported by expert analysis, and advanced through extensive discovery and class certification briefing. (*See* Dkt. Nos. 102, 102-1, 102-2, 102-3; Sodaify Decl. ¶ 4.) His deposition testimony did not erase the core factual disputes or render this legitimate consumer action frivolous, let alone conjure a basis for subjective bad faith. Defendant may disagree with Plaintiff's theory of liability, but that is not—and has never been—enough to show bad faith. *Jones*, 2013 U.S. Dist. LEXIS 176314, at *12-14.

Plaintiff's claims alleging misleading "All Natural" labeling are precisely the type of serious, reasonable claims the CLRA is designed to encourage. Defendant's products prominently displayed "All Natural" labels (Dkt. No. 102-6, 102-7), yet contained several non-natural additives such as high fructose corn syrup. (Dkt. No. 47 at 5:26–28.) This Court denied Defendant's motion to dismiss, holding that Plaintiff had "plausibly alleged that a reasonable consumer would be deceived by the 'All Natural' representations." (Dkt. No. 47.)

### 2.   *Plaintiff Pursued this Case to Vindicate Important Consumer Rights*

Courts consider deterrence and public importance when deciding whether to award costs and fees. The CLRA's legislative policy and caselaw strongly disfavor punishing plaintiffs who bring actions under the statute—even those that, unlike Plaintiff's case, may ultimately prove frivolous or without merit—because encouraging consumers to bring CLRA claims serves the public interest. *See Jones,* 2013 U.S. Dist. LEXIS 176314, *14-15; *Corbett v. Hayward Dodge, Inc.*, 119 Cal. App. 4th 915, 924 (2004). The statute explicitly provides that the CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices…." Cal. Civ. Code § 1760. To further "encourage such prosecutions," courts have recognized that the CLRA "notably omitted any language . . . that indicates attorney fees can be imposed upon a plaintiff prosecuting a CLRA claim solely on a finding that the prosecution was 'frivolous' or without 'reasonable cause.'" *Jones*, 2013 U.S. Dist. LEXIS 176314, *14-15 (citing *Corbett*, 119 Cal. App. 4th at 924).

Plaintiff's lawsuit exemplifies the very type of action the CLRA seeks to encourage: a consumer protection class action in which individual consumers suffered small, dispersed financial harms that would make private lawsuits economically unfeasible. Mr. Iglesias brought this case not for personal gain, but to hold a multi-billion-dollar corporation accountable and protect other families like his own from misleading "All Natural" labels on products that in fact contain synthetic ingredients. Iglesias Decl. ¶ 5. Mr. Iglesias, a lifelong San Francisco resident and public employee raising three children and caring for elderly parents, fully participated in discovery, sat for a deposition, and worked tirelessly with counsel to ensure that his claims were prosecuted transparently and in good faith. *Id.* ¶ 7-8.

Imposing hundreds of thousands of dollars in attorneys' fees on Mr. Iglesias would devastate his family financially and send a chilling message to ordinary consumers: that standing up against corporate deception carries the risk of financial ruin. *Id.* ¶ 17. This outcome would directly undermine the CLRA's purpose by deterring future consumer lawsuits and leaving deceptive practices unchecked. See Cal. Civ. Code § 1760; *Jones*, 2013 U.S. Dist. LEXIS 176314, at *14-15. It is therefore consistent with both the policy and caselaw underlying the CLRA for this Court to exercise its discretion and decline to punish Plaintiff simply because he dared to challenge a powerful corporation and ultimately did not prevail.

### 3. *Plaintiff Did Not Act with Ulterior Motives*

Defendant conflates Plaintiff not winning a case with acting in "bad faith" by threading a disjointed string of logic: that Plaintiff's loss of the case proves lack of merit, that lack of merit indicates ulterior motive, and that ulterior motive in turn represents bad faith. To make that tortured connection, Defendant offers this quote from *Corbett v. Hayward Dodge, Inc.*: "When a tactic or action utterly lacks merit, a court is entitled to infer a party knew it lacked merit yet pursued that action for some ulterior motive." 119 Cal. App. 4th at 928. Defendant conveniently leaves out *Corbett*'s very next sentence: "However, it is within a court's discretion not to draw that inference if convinced the party was acting in the good faith belief the action was meritorious." *Id*.

Defendant's claim that Plaintiff acted with "ulterior motives" based on past lawsuits is unfounded. In the Welch's case, handled by different counsel, Plaintiff challenged Welch's "No Preservatives" label due to ascorbic acid, later dismissing that narrow claim and settling. Defendant also cites Plaintiff's suits against Ferrara Candy Company and For Life Products, Inc., both involving false labeling. This history

reflects Plaintiff's consistent concern with accurate labeling, not bad faith, and aligns with this case, where Arizona marketed its beverages as "All Natural" despite containing processed ingredients. Iglesias Decl. ¶ 5. Prior litigation alone cannot establish bad faith without clear evidence of abuse, which Defendant does not and cannot provide. *See In re NJOY, Inc.*, 2016 U.S. Dist. LEXIS 184747, at *4-5 (rejecting bad faith argument where defendant relied on plaintiff's deposition testimony and litigation history, finding insufficient evidence when viewing the entire record); *Fitzpatrick v. Big Heart Pet Brands*, 2017 U.S. Dist. LEXIS 37299, at *4 (E.D. Cal. Mar. 15, 2017) (finding that plaintiff's prior lawsuit, voluntary dismissal, refiling, and subsequent amendments to the complaint do not show bad faith).

Likewise unavailing, is Defendant's comparison to *Citizens of Humanity v. Hass*, 46 Cal. App. 5th 589 (4th Dist. Ct. App. 2020). *Citizens* involved a malicious prosecution and Anti-SLAPP suit—very different standards than the CLRA's bad-faith fee-shifting provisions. There, the court required "significant evidence to support the reasonable inference that Clark was a shill plaintiff," including admitting she does not read labels always, and that almost none of her clothes were made in the USA despite that claim being central to her case. *Id*. at 601. The court even noted that being related to her attorneys and serving as a plaintiff in other cases would not alone establish "shill" status. *Id*. There are no comparable circumstances here, as the record evidence shows: Plaintiff cares about misleading labeling, is not related to his attorneys, was not solicited for this case but instead reached out to seek counsel, desires natural products, read and relied on the challenged label claim, and would only purchase it again if he could be sure it delivered the promised all natural benefit that matters to him. (Dkt. No. 109-002, 40:18-41:6; 119:3-12) Defendant's only "evidence" of bad faith is Plaintiff's participation in other similar consumer cases, none of which can Defendant argue were frivolous and which, unlike in *Citizens*, reflects consistent advocacy and supports the CLRA's purpose of protecting consumers—not ulterior motives. Iglesias Decl. ¶ 5.

Finally, Defendant stretches minor lapses in Plaintiff's memory into baseless accusations of bad faith. Plaintiff understandably did not recall peripheral individuals—Yana Hart, an attorney he has not worked with in two years who is no longer counsel on the case (Dkt. No. 33), and Ryan Ardi, a junior associate briefly involved in the case who is no longer at the firm. Sodaify Decl. ¶ 5. Defendant also misleadingly omits that Plaintiff knew and acknowledged working with each of the attorneys with day-

to-day responsibility for the case, undermining any suggestion of bad faith. *Id*.; Dkt. No. 109-2 at 14:11-21, 15:10-13. Defendant also highlights confusion over the case's procedural history: the suit was initially filed against Hornell Brewing Co. before being voluntarily dismissed when it was determined Hornell was not responsible for the "All Natural" labeling. Plaintiff clearly testified that he knew a lawsuit had been filed over the misleading labels (Dkt. No. 109-2 at 72:15-21) but did not recall Hornell's lack of affiliation with Arizona (*id*. at 140:11-20). These isolated memory lapses are easily explained and fall far short of proving the type of subjective "bad faith" that would be required to impose hundreds of thousands in fees on Mr. Iglesias.

### B. Fees Are Not Justified Under Rule 37(C)(2) Because The Admissions Sought Were Objectionable, Of No Substantial Importance, Or Were Not Proven To Be True

Defendant seeks $18,906.33 in fees, claiming this amount represents "the cost of preparing for, traveling to, and taking Plaintiff's deposition" and attempting to link those expenses to six disputed Requests for Admission ("RFAs"), relying on Rule 37(c)(2). These RFAs concern whether Plaintiff liked the taste of Mucho Mango, purchased it partly because of its flavor, would never buy the products again, and whether he purchased Lemonade and Grapeade in 2018. (Dkt. No. 127 at 7–9).

However, Rule 37(c)(2) allows fee-shifting only in narrow circumstances. The requesting party must prove the matter true, and the court must find that none of four exceptions apply: (A) the request was objectionable under Rule 36(a); (B) the admission sought was immaterial to the case; (C) the responding party had a reasonable basis to dispute the matter; or (D) there was another good reason for not admitting it. This rule is intended to prevent parties from unreasonably denying clearly established facts—not to punish good-faith objections or disputes over marginal, speculative, or irrelevant issues. Defendant's request fails because these RFAs were properly objected to, concern matters that are irrelevant or speculative, or were never actually proven true as required by Rule 37(c)(2). At most, Defendant is improperly using Rule 37(c)(2) to recover general deposition costs, which the rule does not permit.

Plaintiff properly objected to RFAs asking him to admit he purchased Mucho Mango "in part because of the flavor/taste" and that he "liked the taste" as irrelevant and vague. (Dkt. No. 127-009, at 7-9). Whether Plaintiff liked the product's flavor has no bearing on the core issue: whether Arizona's "All

Natural" label misled consumers. The Court's final judgment never mentioned Plaintiff's taste preferences, underscoring their lack of "substantial importance" under Rule 37(c)(2)(B). (Dkt. No. 120).

Defendant also misquotes Plaintiff's deposition, claiming he said he bought the product "Because I just love mango." (Dkt. No. 127 at 7). In fact, he testified: "Because I love mango," adding, "I thought it was okay. Seemed like it was a hundred percent natural. That's what it said." (Dkt. No. 109-2 at 106:14-18). Adding the word "just" falsely implies flavor was his only reason for purchase, directly contradicted by his full testimony. *Id*.

Plaintiff also objected to the RFA asking whether he "will never purchase any of the products in the future" as speculative. (Dkt. No. 127-009, at 12). His testimony confirmed this was proper: he stated that if the labeling were corrected, "I would—if I wanted to… If I decided—if I felt like it, I would buy it again," (Dkt. No. 109-2, Iglesias Dep., 119:3-9), but currently has "no present intention" to purchase because "I just feel like I'm being lied to." (Id. at 119:12-16; Dkt. No. 102-4 ¶ 5). Lack of present intent is not proof he will never purchase again, so Defendant failed to meet Rule 37(c)(2)'s threshold.

Finally, Plaintiff objected as unduly burdensome to the RFA about whether he purchased Lemonade or Grapeade in 2018. (Dkt. No. 127-009, at 29-30). Defendant relies on testimony where Plaintiff, when shown labels, said he "believe[d]" they looked like ones he previously bought. (Dkt. No. 109-2 at 151:9-12; 153:2-5). A mere statement of belief is not definitive proof of purchases in a specific year, falling far short of Rule 37(c)(2)'s "proving" requirement. *See Parallax Grp. Int'l, LLC v. Incastores, LLC*, 2024 U.S. Dist. LEXIS 112056 (C.D. Cal. Apr. 5, 2024) (favorable testimony did not "prove" the RFAs, and Rule 37(c)(2) sanctions were therefore not warranted).

These six disputed RFAs represent a tiny fraction of the case record, and Defendant has not shown that the significant costs it claims—such as those for a multi-hour deposition—were incurred solely to prove these immaterial points. Plaintiff's initial objections were appropriate and made in good faith, and none of these RFAs satisfy Rule 37(c)(2)'s standard for fee-shifting.

Even if Defendant could recover costs for proving these RFAs, its demand for the full $18,906.33 for preparing for, traveling to, and taking Plaintiff's deposition is unreasonable. *Diamond State Ins. Co. v. Deardorff,* 2011 U.S. Dist. LEXIS 60834 (E.D. Cal. Jun. 8, 2011), does not support this request. In *Diamond*, plaintiffs failed to seek out and provide key information and did not speak with a crucial witness

before answering the RFAs, making deposition travel costs directly necessary to obtain that information. Here, Defendant would have deposed Plaintiff regardless of whether he admitted liking mango or purchasing Grapeade or Lemonade in 2018. These routine deposition expenses were therefore not incurred to prove the RFAs and cannot be shifted under Rule 37(c)(2). *See Netlist Inc. v. Samsung Elecs. Co.*, 2025 U.S. Dist. LEXIS 122940 at *3-4 (C.D. Cal. Jun. 26, 2025) ("only reasonable expenses incurred in proving the facts at issue in the RFAs are recoverable. . . . [P]arties may only recover fees and costs necessarily incurred by the opposings party's unreasonable failure to admit."); *Unity Courier Serv. Inc. v. Hudson Ins. Co.*, 2019 U.S. Dist. LEXIS 221174 (C.D. Cal. Nov. 6, 2019); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 581 (9th Cir. 1992) (district court abused discretion when awarding expenses that "did not flow" from wrongful failure to qualify denials during discovery); *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 102, 137 S. Ct. 1178, 197 L. Ed. 2d 585 (2017) ("[A] court may award only those fees that the innocent party would not have incurred in the absence of litigation misconduct.").

### C. Equitable Considerations Strongly Weigh Against Awarding Fees

Even if Defendant met the high bar for showing "subjective bad faith," the Court should exercise its discretion to deny Defendant's Motion because equity and public policy weigh heavily against shifting costs to Plaintiff. *Jones*, 2013 U.S. Dist. LEXIS 176314, *14-15; *Corbett*, 119 Cal. App. 4th at 924.

#### 1. *Plaintiff's Limited Financial Resources and the Gross Disparity in Wealth Between Plaintiff and Defendant Weigh Against Fee Shifting to Plaintiff*

Plaintiff is an individual consumer of modest financial means, while Defendant is a multi-billion-dollar, well-capitalized corporation. Mr. Iglesias has worked for ████████████ ████████████████████████████████████████—a steady but modest income, not a lucrative career. Iglesias Decl. ¶¶ 3-4. Years ago, Plaintiff was forced to ████ ████, and he and his wife have worked diligently ████████████████. *Id.* ¶ 12. Despite their efforts, their household budget remains carefully managed to cover essential expenses, including their mortgage, utilities, and the costs of raising their three children. *Id.*

Courts routinely deny costs where there is a gross disparity of resources between the parties. *See, e.g., Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236 (9th Cir. 2014); *Ass'n of Mexican-Am. Educators v. Cal.*, 231 F.3d 572, 592 (9th Cir. 2000); *Draper v. Rosario*, 836 F.3d 1072, 1089 (9th Cir.

2016) (finding that "severe injustice would result from . . . taxing costs of $3,018.35 against" plaintiff due, in part, to disparity between plaintiff's "limited resources" and defendant's significant resources). Like *Draper*, there is "no comparison" here: Arizona's litigation budget as a multi-billion-dollar company dwarfs Mr. Iglesias's ability to pay.

Defendant tries to sidestep this clear disparity by cherry-picking facts to paint a false picture of Plaintiff's finances, pointing to his home ownership, supposed "trust fund," and prior settlements. This is misleading. As Mr. Iglesias explained, he and his wife must carefully budget their public service incomes simply to keep up with Bay Area living expenses and raising three children. Iglesias Decl. ¶ 4. Regarding the alleged trust fund, Mr. Iglesias testified that he had no evidence such a fund exists, has never received a dime from it, and does not expect to receive any such funds in the future. (Dkt. No. 109-2 at 62:3-17, 63:1, 69:20-70:1). Defendant's reliance on prior settlements is equally misplaced. Settlements are a routine feature of consumer litigation and often result in minimal or symbolic payments to individual plaintiffs. The fact that Mr. Iglesias has resolved other matters demonstrates his consistent efforts to hold corporations accountable for deceptive labeling—not a windfall that could cover Arizona's outsized fee demand.

Defendant wrongly claims Plaintiff's counsel would bear any fee award. In fact, Plaintiff alone is responsible under his retainer agreement: "I alone am responsible for paying any fines, penalties, or damages assessed against me personally." Iglesias Decl. ¶ 11; Dkt. No. 109-3 ¶ 5. Defendant's reliance on *Severson & Werson v. Bolinger*, 235 Cal. App. 3d 1569, 1572 (1991), is inapplicable. *Severson* involved attorneys secretly changing billing rates, unlike here, where there is no dispute over the retainer and no changes made without Plaintiff's knowledge. Iglesias Decl. ¶ 11. Mr. Iglesias fully understands he would be personally liable for any fees or costs imposed. *Id*.

Defendant's claim that Mr. Iglesias can afford to pay hundreds of thousands of dollars is misleading. Mr. Iglesias lives in San Francisco, one of the most expensive cities in the U.S., and supports a household of five plus two elderly parents, one with ▮▮▮▮ Iglesias Decl. ¶¶ 3-4, 8. His most recent joint tax return shows a modest combined annual income for him and his wife, far less than Defendant suggests. *Id*. ¶¶ 13, 15, Ex. A. Even Defendant's Motion shows Mr. Iglesias's 2023 salary of ▮▮▮▮ is ▮▮▮▮ the San Francisco median income. (Dkt No. 127-013). Yet Defendant seeks nearly $400,000— more than *three times* his household's total annual income—which would almost certainly bankrupt his

family given the Bay Area's high cost of living. Iglesias Decl. ¶¶ 12, 17. By contrast, Arizona reported over $2 billion in revenue in 2024. *Id.* ¶ 14; Sodaify Decl., Ex. 1. Imposing such a crushing award on a single consumer with a ■■■■■■ salary while sparing a multi-billion-dollar corporation runs directly counter to the CLRA's purpose of protecting, not punishing, consumers.

### 2. Fee Shifting to Plaintiff Would Create a Chilling Effect in Future Consumer Protection Matters

Ordering Plaintiff to pay Defendant's legal fees when there is such a gross disparity of wealth between the parties could have a chilling effect on future consumers bringing suit under the CLRA. If individual plaintiffs were to face the risk of paying massive corporate defense fees, no rational consumer would bring a case, even in the face of blatant deception. *See Stanley v. University of S. California*, 178 F.3d 1069, 1072 (9th Cir. 1999) (reversing the order taxing costs to plaintiff, because it would "render her indigent and have a chilling effect on civil rights suits."); *see also, e.g., Nghiem v. Santa Clara University*, 2024 U.S. LEXIS 22627 (N.D. Cal. 2024) (finding that awarding costs to defendants in that case would have a "chilling effect" on future civil rights litigation). Like the civil rights cases cited, consumer protection cases rely upon individuals' willingness to stand up to large corporations with orders of magnitude more wealth than they possess. The risk that individual consumers may be saddled with thousands of dollars of fees to corporations may intimidate future plaintiffs in consumer protection cases from being willing to bring suit, thus chilling an important avenue for enforcing consumer rights and checking businesses that engage in unfair practices.

### D. Defendant Has Not Shown It Is Entitled to the Amount Requested

Even if the Court were inclined to award fees, Defendant has failed to justify the specific amount it seeks and even improperly requests mediation fees to which it is not legally entitled.

Defendant seeks to recover $360,425.00 in attorney fees as the "prevailing party," plus an additional $17,500.00 fees Defendant alleges it incurred in filing its motion for attorney fees. However, its prevailing-party status is at best technical, and its degree of success extremely limited. The CLRA's fee-shifting standard is fundamentally different from a generic cost statute: "The CLRA is an entirely different analysis than under a cost statute. . . . While a cost statute focuses on the procedural outcome of the claims, the CLRA's fee-shifting provision looks to whether each party has realized its objectives."

*Jone*s, 2013 U.S. Dist. LEXIS 176314, *9 (citing *Heather Farms Homeowners Assn. v. Robinson*, 21 Cal. App. 4th 1568, 1572 (1994)). Here, the Court never addressed whether Defendant's "All Natural" labeling was false or misleading at summary judgment, meaning Defendant remains exposed to future liability for the same conduct. Thus, as in *Jones*, where dismissal of a plaintiff for contradictory testimony did not render ConAgra a true prevailing party because it "still face[d] liability on every claim that was extant when [plaintiff] was dismissed from the case," Defendant's purported victory here is limited. 2013 U.S. LEXIS 176314, at *10-12.

Even setting aside its limited success, Defendant's billing records are vague, block-billed, highly redacted, and rife with questionable entries, making it impossible to determine whether the work was necessary, duplicative, or overstaffed. *Space Data Corp. v. Hosie Rice LLP*, 2021 U.S. Dist. LEXIS 263088, at *11–12 (N.D. Cal. Nov. 11, 2021) (court unable to determine the reasonableness of the fee when the supporting document reflected only "large time increments" without "enough detail for the [c]ourt to properly assess how much time was spent on particular activities"); *see also Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222–23 (9th Cir. 2010) (affirming district court's reduction of 80% of attorneys' and paralegals' hours by 30% to account for block-billing). For example, Defendant billed 30 hours for variations of "Document review: Potentially Privileged"—essentially reviewing its own documents for privilege before production. One entry charges 0.2 hours ($55.00) merely for "revising" privilege tags, while another charges 0.5 hours ($175.00) for "attention to status of document production." Similarly, 0.7 hours ($192.50) were billed for "Attention to remaining documents to be reviewed." (Dkt. No. 127-002). These vague descriptions leave the Court guessing whether the entries reflect actual legal work or simple administrative oversight.

The problem is compounded by overstaffing: at least eight different attorneys billed on this matter, virtually guaranteeing duplicative review, excess internal meetings, and inflated costs. (Dkt. No. 127-002, at 14). Defendant provides no justification for why such a large team was necessary. Courts regularly reduce or deny fee requests where overstaffing results in inefficiencies and unreasonable billing. *See e.g. Morris v. Hyundai Motor America,* 41 Cal.App.5th 24, 39 (2019) (finding it was appropriate to reduce a fee award based on "inefficient or duplicative efforts" in the attorney billing).

Defendant also seeks $7,500.00 in mediation costs, citing *Parkinson v. Hyundai Motor Am.* for the sweeping claim that "mediation fees are recoverable under Section 1780(e)." (Dkt. No. 127 at 13) (citing 796 F. Supp. 2d 1160, 1176-77 (C.D. Cal. 2020)). This is incorrect. In *Parkinson*, the court awarded mediation fees to prevailing plaintiffs under Cal. Civ. Proc. Code § 1033.5(c)—not under § 1780(e). *See Parkinson*, 796 F. Supp. 2d at 1176-77. Defendant makes no argument that Section 1033.5 applies here, nor could it. Even setting that aside, *Parkinson* awarded only a fraction of claimed mediation and travel expenses due to insufficient proof. *Id*. at 1177. Here, Defendant offers nothing beyond a bare assertion that its $7,500 fee was "reasonable," providing no evidence. Because mediation was a joint process benefiting both parties, it would be inequitable to shift the entire cost to Plaintiff.

Defendant has not demonstrated that it is a true prevailing party, nor has it met its burden to show its fees and costs are reasonable, documented, and tied to legitimate litigation needs. The billing entries reveal vague, duplicative, and inflated charges, while the mediation cost request is wholly unsupported and legally improper. The Court should deny Defendant's motion in its entirety or, at a minimum, substantially reduce any award to reflect only properly documented and necessary expenditures.

## V.  CONCLUSION

Arizona has not met the heavy burden required to justify shifting attorneys' fees and costs to an individual consumer plaintiff. Plaintiff brought this case in good faith to protect consumers and promote transparency. An award of fees would devastate Plaintiff, deepen the imbalance of power between corporations and consumers, and deter future enforcement of vital consumer protection laws. For these reasons, the Court should deny Defendant's Motion for Attorneys' Fees and Costs in its entirety.

DATED: September 17, 2025                             **CLARKSON LAW FIRM, P.C.**

By: */s/ Bahar Sodaify*
     Ryan J. Clarkson
     Bahar Sodaify

*Attorneys for Plaintiff*